GERARD G. PECHT *(Admitted Pro Hac Vice)*
gerard.pecht@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:     (713) 651-5151
Facsimile:     (713) 651-5246

M. SCOTT INCERTO *(Admitted Pro Hac Vice)*
scott.incerto@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701-4255
Telephone:     (512) 474-5201
Facsimile:     (512) 536-4598

JOSHUA D. LICHTMAN (SBN 176143)
joshua.lichtman@nortonrosefulbright.com
MICHELLE L. MELLO (SBN 288081)
michelle.mello@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street, Forty-First Floor
Los Angeles, California  90071
Telephone:     (213) 892-9200
Facsimile:     (213) 892-9494

Attorneys for Defendants
HCC LIFE INSURANCE COMPANY and HCC
MEDICAL INSURANCE SERVICES, LLC
(*erroneously sued as* TOKIO MARINE HCC –
MEDICAL INSURANCE SERVICES GROUP)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| MOHAMMED AZAD and DANIELLE BUCKLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOKIO MARINE HCC – MEDICAL INSURANCE SERVICES GROUP, HEALTH INSURANCE INNOVATIONS, INC., HCC LIFE INSURANCE COMPANY, and CONSUMER BENEFITS OF AMERICA,<br><br>Defendants. | Case No.:  4:17-cv-00618-PJH<br><br>**HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS**<br><br>**[FED. R. CIV. P. 12(f), 23(c)(1)(A) AND/OR 23(d)(1)(D)]**<br><br>Date:   May 24, 2017<br>Time:   9:00 a.m.<br>Ctrm : 3<br><br>Complaint Filed:  February 7, 2017 |

DOCUMENT PREPARED ON RECYCLED PAPER

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................... 1

ISSUES TO BE DECIDED ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ........................ 2

ARGUMENT AND AUTHORITIES ......................................................................... 4

    I.      Standard of Decision for Motion to Strike Class Action Allegations ................... 4

    II.     The Class Allegations Fail As to Plaintiffs' Misrepresentation Claims Because Putative Class Members Were Exposed to Disparate Information About the Preexisting Conditions Exclusion ........................ 5

        A.    Plaintiff Azad's purchase transaction ........................................ 7

        B.    Plaintiff Buckley's purchase transaction .................................. 8

        C.    Plaintiffs' Complaint demonstrates that putative class members were not uniformly exposed to any alleged misrepresentations of the preexisting conditions exclusion ........................ 9

    III.    Plaintiffs' Improper Claims-Handling Theory Is Not Amenable to a Class Action ........................ 13

CONCLUSION ................................................................................................... 18

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
5
   2015 U.S. Dist. LEXIS 34589, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) .......................17

6

*Basurco v. 21st Century Ins. Co.*,
   108 Cal. App. 4th 110 (2003) ...............................................................................................15
7

*Bates v. Bankers Life & Cas. Co.*,
8
   993 F. Supp. 2d 1318 (D. Or. 2014) ..............................................................................16, 17

9

*Berger v. Home Depot USA, Inc.*,
10
   741 F. 3d 1061 (9th Cir. 2014) ...............................................................................................5

11

*Campion v. Old Republic Home Prot. Co.*,
   272 F.R.D. 517 (S.D. Cal. 2011) .................................................................................6, 13, 15
12

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
13
   90 Cal. App. 4th 335 (2001) .................................................................................................14

14

*Cohen v. DirecTV*,
15
   178 Cal. App. 4th 966 (2010) ...............................................................................................13

16

*In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practices Litig.*,
   277 F.R.D. 568 (S.D. Cal. 2011) .............................................................................................6
17

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
18
   313 F.R.D. 578 (S.D. Cal. 2016) ...................................................................................5, 8, 13

19

*Henry v. Allstate Insurance Co.*,
20
   2007 U.S. Dist. LEXIS 57822 (E.D. La., Aug. 8, 2007) .......................................................17

21

*Hernandez v. State Farm Fire & Cas. Co.*,
   2017 U.S. Dist. LEXIS 34174 (S.D. Cal. Mar. 9, 2017) ...........................................4, 5, 12, 17
22

*Langan v. United Servs. Auto. Ass'n*,
23
   69 F. Supp. 3d 965 (N.D. Cal. 2014) ......................................................................................4

24

*Mazza v. American Honda Motor Co., Inc.*,
25
   666 F. 3d 581 (9th Cir. 2012) .................................................................................................5

26

*Newell v. State Farm Gen. Ins. Co.*,
   118 Cal. App. 4th 1094 (2004) ..............................................................................14, 15, 16, 17
27

*Ramirez v. Baxter Credit Union*,
28
   2017 U.S. Dist. LEXIS 40810 (N.D. Cal. Mar. 21, 2017) .......................................................4

DOCUMENT PREPARED
ON RECYCLED PAPER

- ii -

# <u>TABLE OF AUTHORITIES (continued)</u>

**Page(s)**

**Cases**

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................12

*Spires v. Liberty Mutual Fire Ins. Co.*,
  2006 U.S. Dist. LEXIS 95248 (E.D. La., Nov. 21, 2006).......................................17

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011)...............................................................................5, 6

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................4, 5

**Rules and Statutes**

Cal. Bus. & Prof. Code § 17200 .........................................................2, 5, 6, 8, 12, 13, 16

Fed. R. Civ. P. 12(b)(6)................................................................................................1

Fed. R. Civ. P. 12(f) .................................................................................................1, 4

Fed. R. Civ. P. 23(a)....................................................................................................5

Fed. R. Civ. P.  23(b) ...................................................................................................5

Fed. R. Civ. P.  23(c)(1)(A) ......................................................................................1, 4

Fed. R. Civ. P.  23(d)(1)(D) ......................................................................................1, 4

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 24, 2017 at 9:00 a.m., before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Court, Northern District of California, Oakland Courthouse, 1301 Clay St, Oakland, CA 94612, Courtroom 3 – 3rd Floor, Defendants HCC Life Insurance Company ("HCC") and HCC Medical Insurance Services, LLC (*erroneously sued as* Tokio Marine HCC – Medical Insurance Services Group) (collectively, the "HCC Defendants") will and hereby do move this Court for an order to strike the class action allegations from each Count of the Complaint filed by plaintiffs Mohammed Azad ("Azad") and Danielle Buckley ("Buckley") (collectively, "Plaintiffs"), as alternative relief in case the Court does not grant the HCC Defendants' concurrently-filed motion to dismiss Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  This motion is made on the ground that Plaintiff's class allegations are deficient and, thus, constitute immaterial matter that should be stricken pursuant to Fed. R. Civ. P. 12(f), 23(c)(1)(A) and 23(d)(1)(D).

The motion is based on this Notice of Motion and Motion, the included Memorandum of Points and Authorities in Support, the Declarations of Jon Padgett, Dan Garavuso, and Sumera Khan filed herewith, the Proposed Order filed herewith, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## ISSUES TO BE DECIDED

Should the Court strike Plaintiffs' class action allegations because the complaint fails to allege facts sufficient to establish that commonly triable issues will predominate, in that:

(1)    as to Plaintiffs' theory that the HCC Defendants' misrepresented and/or failed to disclose the preexisting conditions exclusion in their Short Term Medical ("STM") insurance policies, Plaintiffs fail to allege facts showing that class members were uniformly exposed to or received the alleged misrepresentations; and

(2)    Plaintiffs' theory that the HCC Defendants unreasonably denied claims for policy benefits and engaged in improper claims-handling practices cannot be adjudicated on a common, classwide basis, without individualized review of how each class member's claim was handled, and whether any policy benefits due were unreasonably delayed or denied.

- 1 -

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Plaintiffs seek certification of a putative class of either all California purchasers of Short-Term Medical ("STM") insurance policy Certificates issued by HCC or all California insureds whose claims for benefits were denied.  (Compl. ¶ 82.)[1]  As detailed in the HCC Defendants' concurrently-filed motion to dismiss, while Plaintiffs assert five Counts on behalf of that putative class (for violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), false advertising, breach of contract, bad faith, and "unjust enrichment"), they allege two theories of misconduct:

(1)    That the HCC Defendants misrepresented and/or failed to adequately disclose that the STM Certificates excluded coverage for preexisting conditions (Compl. ¶¶ 3, 19-22, 39-50, 53-54, 93-99, 105-113); and

(2)    That the HCC Defendants employed (and misrepresented they did not engage in) improper claims-handling practices to unreasonably deny or delay paying claims.  (Compl. ¶¶ 3, 25-28, 33-36, 58-73.)

Based on the facts alleged or incorporated by reference into Plaintiffs' Complaint, neither of those theories can proceed as a class action because commonly triable issues will not predominate as to either theory.

Plaintiffs' false advertising/misrepresentation theory relies on one "exemplar 'brochure'" available on the HCC website that, Plaintiffs contend, when "read in conjunction" with the STM application, failed to adequately disclose the preexisting conditions exclusion.  (Compl. ¶¶ 40-47, 54, 93-99, 105-113.)  However, Plaintiffs allege no facts demonstrating that this brochure was uniformly disseminated to or reviewed by all putative class members prior to their purchases.  (*Id.*)  Indeed, neither named plaintiff alleges they actually saw or relied on that brochure to make their purchase decision.  Further, the facts alleged about Azad's and Buckley's purchases further highlight that putative class members were exposed to disparate information about the STM

---

[1] STM coverage was issued in California as a group policy through Consumer Benefits of America ("CBA"), with insureds receiving individual Certificates that contained detailed terms and conditions of coverage and also incorporated the group policy.  (*See* Compl. ¶¶ 18, 57; *see also* Declaration of Jon Padgett ("Padgett Decl.") ¶¶ 1, 9, 11 and Exs. 13 and 15.)

DOCUMENT PREPARED
ON RECYCLED PAPER

1   product—including numerous other materials on the website that expressly disclosed the

2   preexisting conditions exclusion—such that many, if not all, putative class members could not

3   have been misled.  (*See id.*)  Thus, commonly-triable issues will not predominate as to Plaintiffs'

4   false advertising/misrepresentation theory.

5          As to Plaintiffs' improper claims-handling theory, the predominance requirement cannot

6   be satisfied because in order for any given putative class member to prevail on this theory, he or

7   she must establish not only that the HCC Defendants engaged in allegedly improper claims-

8   handling practices but also that his or her claim for policy benefits was improperly denied or

9   delayed.  It is well-established that making this assessment with respect to insurance claims-

10  handling activities cannot be done on a classwide basis, because it requires individualized

11  examination of how each claim was investigated and handled.

12         In addition, Plaintiffs' allegations of various improper claims-handling activities (and the

13  alleged non-disclosure thereof) demonstrate the disparate, uncommon nature of the alleged

14  misconduct and the need for individualized inquiry.  For example, the Complaint appears to base

15  the improper claims-handling theory at least in part on the allegation that the HCC Defendants

16  failed to disclose that claims are routinely denied for pre-existing conditions.  (*See* Compl. ¶ 3,

17  54.)  But, neither Azad's nor Buckley's claims were denied, let alone denied due to the

18  preexisting conditions exclusion; rather, their claims were abated pending receipt of requested

19  information from their medical service providers.

20         Further, Plaintiffs' claim-handling theory is based on additional asserted misconduct that

21  either is not alleged to have occurred as to the named plaintiffs or which it is apparent did not

22  occur in common to the entire putative class.  For instance, the Complaint asserts, among other

23  things, that the HCC Defendants: (i) trained claims representatives to obstruct, delay or deceive

24  claimants (*id*. ¶ 58); (ii) failed to properly or timely investigate claims (*id*. ¶¶ 69, 120-121, 123);

25  (iii) requested unnecessary medical records (*id*. ¶¶ 27, 69), (iv) "forced" claimants to perform

26  "claim processing" functions (*id*. ¶¶ 70, 122), (v) trained claims representatives to lie to claimants

27  about escalating appeals of adverse claim decisions (*id*. ¶ 67), and/or (vi) denied claimants the

28  right to request independent medical reviews of the necessity of certain medical treatment (*id*. ¶

- 3 -

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

1  124).   Thus, Plaintiffs' allegations make clear that determining whether any given claimant was

2  subjected to improper claims-handling activities will require individualized adjudication and

3  cannot be determined on a classwide basis.   For the same reason, Plaintiffs' attempt to dress up

4  their claims-handling allegations as misrepresentations—*e.g.*, the allegations that the HCC

5  Defendants failed to disclose that they "routinely attempt to deny most claims on the basis of

6  preexisting conditions or other grounds" (*id.* ¶ 54) or that they would not provide "fair claims

7  processes" (*id.* ¶ 93)—does not save their class action allegations.   Adjudicating that non-

8  disclosure theory would require the same individualized assessment to determine whether any

9  given claim was properly handled as would the direct improper claims-handling theory.

10     Accordingly, Plaintiffs' class action allegations should be stricken as to both their

11  misrepresentation and improper claims-handling theories.

12  ## ARGUMENT AND AUTHORITIES

13  **I.     Standard of Decision for Motion to Strike Class Action Allegations**

14     Federal Rules of Civil Procedure 12(f), 23(c)(1)(A) and 23(d)(1)(D) permit the Court to

15  strike class allegations where it is clear from the pleadings that a class cannot be certified and

16  numerous courts in the Ninth Circuit have done so.   *E.g.*, *Hernandez v. State Farm Fire & Cas.*

17  *Co.*, 2017 U.S. Dist. LEXIS 34174, at *7-8 (S.D. Cal. Mar. 9, 2017) ("sometimes the issues are

18  plain enough from the pleadings" that a motion to strike is "an appropriate means of testing class

19  claims") (citations omitted); *Ramirez v. Baxter Credit Union*, 2017 U.S. Dist. LEXIS 40810, at

20  *21 (N.D. Cal. Mar. 21, 2017) (class allegations may be stricken "[w]here the complaint

21  demonstrates that a class action cannot be maintained on the facts alleged"); *Langan v. United*

22  *Servs. Auto. Ass'n*, 69 F. Supp. 3d 965 (N.D. Cal. 2014) (class allegations may be stricken where

23  the complaint "shows conclusively" that the claims at issue are not subject to certification under

24  Rule 23); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145-46 (N.D. Cal. 2010) (a court may

25  "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot

26  be maintained.")

27     As with motions to dismiss, in deciding a motion to strike class allegations the Court may

28  consider materials incorporated by reference in the Complaint and/or subject to judicial notice

- 4 -

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

along with the plaintiff's factual allegations. *See Tietsworth*, 720 F. Supp. 2d at 1146; *Hernandez*, 2017 U.S. Dist. LEXIS 34174, at *7-8 (in assessing the sufficiency of class action allegations "[a]t the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, whose authenticity is not questioned, and matters judicially noticed.")

To bring a class action, a plaintiff must satisfy both Fed. R. Civ. P. 23(a) and 23(b). Under Rule 23(a), Plaintiffs must show the factors colloquially referred to as numerosity, commonality, typicality and adequacy of representation. *Mazza v. American Honda Motor Co., Inc.*, 666 F. 3d 581, 588 (9th Cir. 2012). As Plaintiffs' claims in this action seek monetary relief (Compl. ¶¶ 100-101, 103, 116, 125-127, 138-139), they must also meet the predominance and superiority requirements of Rule 23(b)(3). *Mazza*, 666 F.3d at 588.

As discussed below, this is a case in which it is appropriate to strike the class action allegations at the pleadings stage because it is apparent that common issues will not predominate.

## II. The Class Allegations Fail As to Plaintiffs' Misrepresentation Claims Because Putative Class Members Were Exposed to Disparate Information About the Preexisting Conditions Exclusion

The predominance requirement cannot be satisfied as to Plaintiffs' misrepresentation/false advertising claims if the putative class members were not uniformly "exposed to" the alleged misrepresentations. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (predominance would not be satisfied if putative class members "were exposed to quite disparate information from various representatives"); *Berger v. Home Depot USA, Inc.*, 741 F. 3d 1061, 1068 (9th Cir. 2014) ("class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue"); *In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 609 (S.D. Cal. 2016) (same). Thus, if "disparate" communications occurred with different potential purchasers and, in particular, if at least some such communications disclosed the preexisting conditions exclusion, then there is "no cohesion" and the putative class cannot be certified because Plaintiffs' misrepresentation claims are not subject to common proof. *See, e.g., Stearns*, 655 F.3d at 1020; *Berger*, 741 F. 3d at 1068; *In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practices Litig.*, 277 F.R.D. 568, 608 (S.D.

- 5 -

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Cal. 2011) (plaintiffs "must show 'uniform conduct likely to mislead the entire class' to satisfy

2   predominance.")   Here, the factual allegations contained or incorporated by reference in the

3   Complaint demonstrate that putative class members were not uniformly exposed to common

4   misrepresentations or omissions as to the STM Certificates' preexisting conditions exclusion and,

5   to the contrary, that the preexisting conditions exclusion was widely disclosed to putative class

6   members.

7        Plaintiffs acknowledge that the HCC STM product was marketed through multiple

8   distribution channels, with some customers (like plaintiff Azad) purchasing through defendant

9   Health Insurance Innovations ("HII") and/or its affiliated sub-producers, such as Insurance Care

10  Direct; other customers purchasing through non-HII-affiliated brokers (like plaintiff Buckley,

11  who purchased via Healthy Halo Insurance Services, Inc.); and still other customers purchasing

12  directly from HCC.  (*See* Compl. ¶¶ 15-17, 19-23, 29, 39; *see* Declaration of Dan Garavuso

13  "Garavuso Decl.") ¶¶ 1-2; Declaration of Jon Padgett ("Padgett Decl.") ¶ 11 and Ex. 15 at 40.)

14  Plaintiffs nonetheless make broad, vague, conclusory allegations of "common omissions and

15  representations" and of the use of "common unscrupulous and dishonest tactics" employed by

16  brokers to sell STM Certificates.  (Compl. ¶¶ 49-50, 53-54.)  But, Plaintiffs allege no specific

17  facts to support these conclusory assertions or account for the differing information available to

18  purchasers via the different distribution channels.

19       Even the limited information Plaintiffs allege or incorporate by reference about the Azad

20  and Buckley purchases demonstrates that putative class members were not uniformly "exposed

21  to" any misrepresentations or omissions, let alone the same alleged misrepresentations or

22  omissions and, therefore, the class claims fail.  *See, e.g.*, *Campion v. Old Republic Home Prot.*

23  *Co.*, 272 F.R.D. 517, 536 (S.D. Cal. 2011) ("an inference of common reliance is permitted in

24  claims arising under the UCL [only] when a specific material misrepresentation of a particular

25  fact was made to each class member and the claims of all the class members stem from this

26  source.   [But,] [w]here a class of consumers may have seen all, some or none of the

27  advertisements that form the basis of a plaintiff's suit, an inference of common reliance or

28  liability is not permitted.")

- 6 -

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

### A.      Plaintiff Azad's purchase transaction

While Plaintiffs do not identify any specific alleged misrepresentation made to or relied on by Azad, the circumstances of his purchase reflect that the preexisting conditions exclusion was repeatedly disclosed to him and also readily ascertainable from the HCC website.  (Compl. ¶¶ 19-22, 40-47, 53-54.)  First, Plaintiffs assert that in or about December 2015 Azad conducted an "online search for health insurance" that resulted in him being "directed to the website for a broker, Insurance Care Direct (http://www.insurancecaredirect.com)."  (Compl. ¶ 19.)  A screenshot of that website's page describing short term health insurance, as it existed in December 2015, reflects that Azad was expressly advised that, under such policies, "pre-existing conditions are not covered."  (Declaration of Sumera Khan ("Khan Decl."), ¶¶ 2-3 and Ex. 1.)

Second, Azad alleges that after visiting the Insurance Care Direct website he was referred to a broker and that his "application process [for the STM policy] was entirely verbal, with all representations regarding the policy being made to Azad over the phone."  (Compl. ¶ 20.)  Notably, Azad does not identify any representation made to him during that phone call that preexisting conditions would be covered by HCC.  To the contrary, the recording of the phone call made under the direction of the independent selling agency verifies that Azad was explicitly advised of and assented to the preexisting conditions exclusion.  (Garavuso Decl. ¶ 2 and Ex. A; Khan Decl., ¶ 4 and Ex. 2, pp. 2-4.)

Third, given that Azad alleges his application process "was entirely verbal," the allegations central to Plaintiff's misrepresentation theory—that a single "exemplar brochure" for the STM product contained on the HCC website was allegedly deceptive "when read in conjunction with" or "read together with" the STM "Application Form" (Compl. ¶¶ 40-47, 49)—simply do not apply to Azad.  In short, because Azad does not allege that he even visited the HCC website, let alone carried out the extensive steps that would have been necessary to download the brochure (Padgett Decl. ¶¶ 8 and Exs. 9-10), and does not allege that he read either the brochure or the application, he cannot claim to have been "exposed" to any alleged misrepresentations therein.  Thus, the putative class allegations are defective because neither Azad, nor any other putative class member who also did not obtain that brochure, would have a viable UCL or FAL

DOCUMENT PREPARED
ON RECYCLED PAPER

claim based on the brochure, even assuming that the brochure was somehow misleading (which it was not).  *See In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 609 (S.D. Cal. 2016) (certification of UCL and FAL "claims is available only to those class members who were actually exposed to the business practices at issue" because "one who was not exposed to the alleged misrepresentation and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution.")

Moreover, Azad alleges that, upon completing and submitting his application, on December 8, 2015, he received an email confirming that coverage had been issued, advising him he had 10 days to cancel, and providing instructions on how to create an online account.  (Compl. ¶¶ 22-23 and n. 6.)  Indeed, that email, along with instructing him how to access the "plan documents" online, advised Azad that "[t]o learn more about how your plan works, click here," with a hyperlink to a one and a half minute video HCC had uploaded to You Tube that, among other things, explained the preexisting conditions exclusion.  (*See id.* ¶ 23; Garavuso Decl. ¶¶ 3-4 and Ex. B; *see* Padgett Decl. ¶ 10 and Ex. 14.)  Thus, even assuming—contrary to his representations in the recorded phone call—that Azad was reasonably unaware of the preexisting conditions exclusion prior to making his purchase, he was well aware of it in sufficient time to exercise his 10 day free look right to cancel.

## B.   Plaintiff Buckley's purchase transaction

Plaintiffs allege no facts about Buckley's transaction, other than that: (i) Buckley's husband made the purchase; and (ii) did so on or about April 1, 2016.  (Compl ¶¶ 9, 29.)  Plaintiffs do not identify any alleged oral representations made to the Buckleys, or even allege that they spoke to any broker or other alleged representative of the HCC Defendants about the policy prior to purchase.  And, as with Azad, Plaintiffs do not identify any specific alleged misrepresentation or omission made to or relied on by the Buckleys, let alone that they relied on any particular alleged misrepresentation or omission as to the existence of the preexisting conditions exclusion.  (*See id.* ¶¶ 29-38, 40-47, 53-54, 99.)  Nor do Plaintiffs allege any facts to support the conclusion that the Buckleys were exposed to or relied on the same alleged misrepresentations or omissions as Azad.

DOCUMENT PREPARED
ON RECYCLED PAPER

Further, because the Buckleys made their purchase online (through the broker Healthy Halo Insurance Services, Inc.), the "fulfillment" package emailed to them on April 1, 2016, the day after their purchase, was different from that sent to Azad by HII.  (*See* Garavuso Decl. ¶ 3 and Ex. B; Padgett Decl. ¶ 11 and Ex. 15.)  The Buckleys' package included, among other things, their payment receipt, their insurance cards, information about CBA, and their Certificate (including the preexisting conditions exclusion).  (Padgett Decl. Ex. 15.)  The Buckleys' package also had a one page cover letter that explicitly advised them, under the heading "**Pre-Existing Conditions**," that "charges resulting directly or indirectly from any pre-existing condition are excluded from this insurance," and also advised (under the heading "**Free Look Provision**") that they could cancel the policy "for any reason" within ten days.  (*Id.*) (emphasis in original).

C.   **Plaintiffs' Complaint demonstrates that putative class members were not uniformly exposed to any alleged misrepresentations of the preexisting conditions exclusion**

While Plaintiffs' Complaint is lengthy, their fraud/false advertising theory hinges on two central factual allegations:

- That an "exemplar brochure" available on the HCC website and the STM application, when "read together," would lead reasonable consumers to believe that only those specific medical conditions listed in the application were subject to a preexisting conditions exclusion; and

- That the HCC Defendants made a sample STM policy "difficult to locate" on the website, so as to prevent potential buyers from discovering the actual preexisting conditions exclusion until it was too late.  (*See* Compl ¶¶ 40-47, 49, 53-54.)

However, as noted above, the Complaint does not allege that either Azad or the Buckleys saw or relied on that brochure.  Nor is it alleged that either Azad or the Buckleys read the application form, let alone read it "together" with the brochure to reach the conclusion about the scope of the preexisting conditions exclusion posited by the Complaint.  Nor is it alleged that either Azad or the Buckleys tried to review the sample STM policy Certificate on the HCC website but found it "difficult to locate."

DOCUMENT PREPARED
ON RECYCLED PAPER

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

More importantly, Plaintiffs allege no facts to demonstrate that all putative class members were uniformly "exposed to" the brochure that is the linchpin of their false advertising theory. Given where that brochure was located on the HCC website at the time of Plaintiffs' purchases (under either the "Producers" or the "Claim Forms" tabs), to obtain it a consumer would have needed to: (i) know what he or she was looking for and (ii) followed multiple steps to download a copy.  (Padgett Decl. ¶¶ 2 and 8 and Exs. 9-10.)

Specifically, from the HCC website homepage at http://www.hccmis.com/, one way a consumer could have obtained the brochure would have been to: (1) decide to navigate to the "Producers" tab; (2) scroll through the "Producer Zone" and "Getting Contracted" options; (3) click on the "Brochures and Downloads" tab without knowing what was there; (4) after the "Downloads" page opened to the "Claim" options, know to instead navigate over to the "Brochures" options; (5) from the various brochures options know enough of HCC's jargon to recognize that the box labeled "STM Complete" related to Short Term Medical insurance, and (6) click on the link to "CA STM brochure."  (*Id.* ¶ 8 and Ex. 9.)  Alternatively, a consumer on the HCC homepage could also have reached that brochure by: (1) navigating to the "Customer Service" tab; (2) clicking on "Claim Forms;" (3) when the "Claim Forms" page opened, navigating to the "Brochures" sub-tab; and then following steps (5) and (6) described above.  (*Id.* Ex. 10.)  Thus, just as neither Azad nor Buckley alleges they actually downloaded, reviewed or relied on the brochure, it is unlikely that any critical mass of putative class member consumers would have done so.  And, it is certainly not alleged that all putative class members uniformly obtained and reviewed the brochure, but did not review all of the other materials specifically disclosing the pre-existing conditions exclusion, let alone were confused by the brochure as to the scope of the preexisting conditions exclusion.

Further, while Plaintiffs focus entirely on one brochure, they ignore the primary consumer-facing materials that were available on the HCC website at the time of Plaintiffs' purchases in December 2015 and on or about April 1, 2016.  In particular, Plaintiffs ignore the "Short-Term Medical Insurance" product description page, which prominently warned of the preexisting conditions exclusion, stating immediately under the product heading:

- 10 -

DOCUMENT PREPARED
ON RECYCLED PAPER

**Please note, our Short Term Medical insurance is intended for temporary gaps in health insurance.  It is not compliant with the federal Affordable Care Act and *does not cover expenses related to pre-existing conditions*.**

(Padgett Decl., ¶¶ 4-5 and Exs. 3-5) (emphasis in original and additional emphasis added).

This product description page on the HCC website was more readily available to potential purchasers than the brochure emphasized by Plaintiffs.  For example, a consumer visiting HCC's website homepage would get to this product description page by simply navigating to the "Products" tab, and clicking on "Short-Term Medical."  (*Id*. ¶ 5 and Ex. 3.)  Additionally, a consumer on the HCC website homepage who merely read the very first heading asking "Affordable Short Term Insurance – which best describes you?," looked to part of the page for "U.S. Residents," and clicked on "Tell Me More," would immediately reach the same Short-Term Medical product page, with the warning that it "**does not cover expenses related to pre-existing conditions.**"  (*Id*. Ex. 4) (emphasis in original.)  And, at the time of Buckley's purchase, from the HCC homepage clicking on the "Products" heading would take a user to a "Travel Health Plans and Short Term Insurance" summary page from which, by clicking on the "Short Term Medical" hyperlink, the user would again reach the "Short-Term Medical" product description page with the preexisting condition warning.  (*Id*. ¶ 5 and Ex. 5.)

Moreover, at the time of Plaintiffs' purchases, if a consumer visited the "Short-Term Medical" product page and happened not to see the preexisting conditions warning, but was nonetheless interested enough to click through the "Select Your State" box to choose California, the next page that appeared—"California Short Term Medical Insurance Plans"—made another explicit disclosure of the preexisting conditions exclusion, under the heading "Limits and Considerations of STM Coverage."  (*Id*. ¶ 6 and Ex. 6.)

Plaintiffs allege no facts to support a conclusion that the entire putative class failed to visit any of these pages of the HCC website that clearly and repeatedly disclosed the preexisting conditions exclusion before making their purchases (despite those pages on the website being as easy or easier to find than the brochure).

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

Also, as Plaintiffs concede, the California form STM policy Certificate was available on the HCC website and clearly excluded coverage for preexisting conditions treated or diagnosed within the prior six months.  (*See* Compl. ¶¶ 40, 54; *see also* Padgett Decl. ¶ 7 and Ex. 7, Part VI, p. 18.)  Contrary to Plaintiffs' conclusory assertion that the HCC Defendants made the Certificate "difficult to locate" on the HCC website so as to prevent consumers from learning of the preexisting conditions exclusion (Compl. ¶ 54), the "California Short Term Medical Insurance Plans" product page invited consumers to "get more details … by reviewing the full policy documents here," with a hyperlink to the form Certificate.  (Padgett Decl. ¶ 7 and Ex. 8.)

Accordingly, Plaintiffs allege no facts to demonstrate that all putative class members were somehow able to navigate the HCC website to find and solely rely on the brochure, and yet unable to find either the multiple pages of product descriptions on the website that expressly disclosed the pre-existing conditions exclusion or the hyperlinked Certificate.  In short, Plaintiffs fail to allege facts demonstrating that the putative class was "uniformly exposed" to the alleged misrepresentations or omissions.

Under similar circumstances, numerous California courts have struck class action allegations or denied class certification.  For example, in *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009), the court struck the class allegations in a case alleging that Apple misrepresented the quality of its 20-inch screen iMacs because putative class members were not uniformly exposed to the same representations and relied on differing information.  *Id*. at 982-83 and 990-991.  *Sanders* explained that "no class may be certified that contains members lacking Article III standing" to sue, and that the putative class therein did so because it "necessarily include[d] individuals who … either did not see or were not deceived by [the allegedly misleading] advertisements."  *Id*.  Further, *Sanders* held that common issues would not predominate because the court "would be forced to engage in individual inquiries of each class member with respect to materiality of the [alleged] statement, whether the member saw Apple's ads or visited Apple's website, and what caused the member to make the purchase."  *Id.*; *see Hernandez v. State Farm Fire & Cas. Co.*, 2017 U.S. Dist. LEXIS 34174, at *10-11 (S.D. Cal. March 9, 2017) (striking class claims in suit for fraud and violation of the UCL because many

DOCUMENT PREPARED
ON RECYCLED PAPER

1    putative class members "were not injured, and lack standing to sue.")

2      Similarly, in *Campion*, the court denied certification of a putative class alleging that an

3    issuer of home warranties violated the UCL by misrepresenting that it would pay covered claims

4    and "failing to disclose it maintained policies, procedures and economic incentives to deny

5    legitimate claims." 272 F.R.D. at 536-37. *Campion* held that common issues did not predominate

6    because, despite Plaintiffs' conclusory assertion that the defendant disseminated "uniform written

7    materials," the representations were disseminated a variety of ways (including advertisements,

8    oral representations or the defendant's website) and "proposed class members may have seen

9    some, all or none of [the alleged misrepresentations] prior to their purchase." *Id.*; *see also In re*

10   *First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. at 609 (denying certification

11   because plaintiffs "failed to demonstrate that there was cohesion among class members as to how

12   they were exposed—if they were even exposed at all—to the various alleged false and misleading

13   representations"); *Cohen v. DirecTV*, 178 Cal. App. 4th 966, 979 (2010) (denying certification

14   under the UCL because, among other things, the putative class included people "who never saw

15   DIRECTV advertisements or representations of any kind," and those "who only saw and/or relied

16   upon advertisements that contained no [alleged misrepresentations].")

17     Here, it is appropriate to strike the class allegations on the pleadings because the

18   Complaint's factual allegations and matters incorporated by reference make clear that Plaintiffs

19   cannot establish that the alleged misrepresentations as to the STM product's preexisting

20   conditions exclusions were uniformly made to all putative class members.

21   **III. Plaintiffs' Improper Claims-Handling Theory Is Not Amenable to a Class Action**

22     Plaintiffs assert various unfair claims-handling practices as the basis for their breach of

23   contract and bad faith Counts, and incorporate those allegations as grounds for UCL, FAL and

24   unjust enrichment claims. (Compl. ¶¶ 3, 25-28, 33-36, 58-73, 93, 96, 99-103, 108-110, 118-145.)

25   As detailed in the concurrently-filed motion to dismiss, Plaintiffs allege that the HCC Defendants

26   breached the STM policy Certificates and their implied duty of good faith and fair dealing by:

27     (1) unreasonably denying or delaying payment of Plaintiffs' claims for benefits;

28     (2) failing to conduct an adequate or timely investigation of Plaintiffs' claims,

DOCUMENT PREPARED
ON RECYCLED PAPER

1   including by making excessive demands for medical records; and

2        (3)    training claims representatives ("CSRs") to "deceive," "discourage" and "obstruct"

3   claimants from pursuing claims;  (*see id.*).

4        However, neither Azad nor Buckley alleges that their medical providers ever produced the

5   requested records.  (*See id*. at ¶¶ 26-27, 33-36, 70.)  Nor do Plaintiffs allege that HCC actually

6   denied their claims for benefits rather than abated their claims until the requested medical records

7   were received.  (*See id.*; *see* Padgett Decl. ¶¶ 12-13 and Exs. 16-19.)  More importantly, based on

8   these allegations, it is clear that commonly triable issues will not predominate as to Plaintiffs'

9   improper claims-handling theory.

10        Neither the named plaintiffs nor any other putative class member can establish liability for

11   breach of contract or tortious bad faith without establishing that the allegedly improper claims

12   handling activities resulted in unreasonable delay or denial of contract benefits.  *Chateau*

13   *Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001) (a

14   claim for breach of the implied covenant of good faith and fair dealing fails unless policy benefits

15   are unreasonably delayed or denied); *Newell v. State Farm Gen. Ins. Co.*, 118 Cal. App. 4th 1094,

16   1103 (2004) (despite alleged scheme by insurer to limit liability on earthquake claims and use of

17   improper claims practices, holding that "each putative class member could still recover for breach

18   of contract... only by proving his or her claim was wrongfully denied, …, and the insurer's action

19   in doing so was unreasonable," and striking class allegations because this would require

20   individualized inquiry.)

21        Here, determining whether a given HCC insured's claim was unreasonably delayed or

22   denied will necessarily require individualized proof as to a variety of critical facts specific to each

23   insured to determine not only damages, but also liability, including, among other things:

24        (1)    whether the insured made a claim;

25        (2)    whether records were requested from medical providers and, if so, were provided;

26        (3)    whether the insured authorized his or her doctors to provide records to HCC and, if

27   so, whether such requests were honored;

28        (4)    whether the medical records provided (if any) were complete;

- 14 -       Case No.:  4:17-cv-00618-PJH

DOCUMENT PREPARED
ON RECYCLED PAPER

1    (5)    whether the claim was adjusted in a timely manner as compared to when HCC

2  received "proper proof of loss" (*i.e.*, the necessary claim information from both the claimant and

3  his or her medical providers);

4    (6)    whether there were communications between the claimant and HCC CSRs and, if

5  so, their content – *i.e.*, whether, as Plaintiffs allege, the CSRs "obstructed" or "discouraged" the

6  claimant from pursuing the claim;

7    (7)    whether the claimant suffered a covered loss, including any potentially-appropriate

8  assessment whether the insured was "eligible" to obtain the policy Certificate;

9    (8)    whether the claim was denied based on the preexisting conditions exclusion, for

10  failure to provide requested records, or for some other reason.;

11    (9)    if the claim was denied based on the preexisting conditions exclusion, whether

12  such decision was appropriate under the terms of the policy and Certificate (*e.g.*, was the claim

13  based on a medical condition for which the insured had received treatment in the six months prior

14  to the effective date of coverage and, if it was within the last 63 days prior to the effective date

15  coverage, was such treatment subject to the "creditable coverage" exception carved out from the

16  preexisting conditions exclusion)  (*see* Padgett Decl. Ex. 7, Part VI, p. 18, ¶ 1); and

17    (10)    whether the value of the loss, if covered, was below the chosen deductible, as was

18  Buckley's.  (*See* Compl. ¶ 38; Padgett Decl., ¶ 11 and Ex. 15, Part X, p. 28.)

19    These issues cannot be adjudicated on a classwide basis and will necessarily require

20  individualized review of how each particular claim was adjusted.

21    Numerous courts have held that similar suits alleging improper insurance claims-handling

22  practices and claims decisions cannot proceed by class action, irrespective of plaintiffs'

23  allegations that claims were "systematically" underpaid or that the insurer engaged in

24  "institutional bad faith."  *See, e.g.*, *Newell*, 118 Cal. App. 4th at 1098-99 and 1101-06; *Basurco v.*

25  *21st Century Ins. Co.*, 108 Cal. App. 4th 110, 119 (2003); *Campion*, 272 F.R.D. at 531 ("[w]hen

26  Plaintiff's contract-based causes of action are examined from the point at which a claim for

27  benefits was made and Defendant's duty to perform arose, it is evident an individual inquiry into

28  the handling of each class member's claim would be necessary to determine whether a breach

- 15 -

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

DOCUMENT PREPARED
ON RECYCLED PAPER

1    occurred … [because] even if Defendant has a uniform policy that encourages the wrongful

2    denial of claims, the mere existence of this policy would not prove on a class-wide basis that

3    claims were wrongfully denied or inappropriately handled.")

4         The need for individualized proof in a suit challenging an insurer's claims adjusting

5    practices is illustrated by *Newell*, which dismissed class allegations in a case asserting breach of

6    contract, bad faith and violation of the UCL in adjusting earthquake claims.  118 Cal. App. 4th

7    1094 at 1098-1099 and 1101-1106.  The *Newell* plaintiffs alleged that insurers underpaid all

8    putative class members' claims through a common practice of applying improper depreciation

9    deductions, the amount of which "could be determined by a formula."  *Id.* at 1098.  Plaintiffs

10   argued a class action was proper because their claims "require proof of only a pervasive scheme

11   by [the insurers] to limit liability on earthquake claims and widespread use of bad faith practices."

12   *Id.* at 1103.  *Newell* rejected this argument, and dismissed the class allegations, holding that no

13   class member could establish liability unless he or she "did not receive policy benefits to which

14   he [or she] was otherwise entitled," and that this required a necessarily individualized assessment

15   to determine the amount of benefits due, irrespective of plaintiffs' conclusory allegation that the

16   proper depreciation deduction could be determined by a common formula.  *Id*. at 1102-1104.

17        Similar to *Newell*, and on point here, is *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d

18   1318 (D. Or. 2014).  In *Bates*, plaintiffs sued for, among other things, mishandling of claims

19   under long-term health insurance policies "through a combination of delay and nonpayment."  *Id*.

20   at 1324, and 1329.  Plaintiffs alleged that the insurer developed "onerous procedures calculated to

21   discourage policyholders from pursuing valid claims for insurance benefits under the policies and

22   to delay and deny such claims improperly," including, for example, because employees could not

23   respond to policyholders by telephone, routinely lost medical records and other documentation

24   provided by plaintiffs, and denied claims because of missing records.  *Id*. at 1329-30.  The *Bates*

25   court struck plaintiffs' class allegations, holding that "[t]o the extent [the] claims are premised on

26   allegations of claims mishandling, such claims inevitably require case-by-case analysis of the

27   operative facts, because the inquiry is in all respects fact-specific for every insured, including

28

DOCUMENT PREPARED
ON RECYCLED PAPER

Case No.:  4:17-cv-00618-PJH

HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S
NOTICE OF MOTION AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

1    inquiry as to the insured's particular health conditions and medical needs, [and] the particular care

2    provided." *Id*. at 1341.

3         Recent decisions from other district courts in California have also struck class action

4    allegations in similar cases alleging improper insurance claims-handling practices.  For example,

5    in *Hernandez v. State Farm*, 2017 U.S. Dist. LEXIS 34174 (S.D. Cal. Mar. 9, 2017) plaintiffs

6    alleged, among other things, breach of contract, bad faith and unfair business practices arising out

7    of their insurer's handling of the "mitigation" portion of water damage claims.  *Id*. at *3-7.

8    *Hernandez* held that common issues could not predominate and, thus, struck the class allegations

9    because, "even if Defendants did everything" alleged, extensive individualized-fact finding would

10   still be required to determine whether a given putative class member (i) had a "valid claim" and

11   (ii) if so, whether he or she had suffered any compensable injury since, in some instances, their

12   claims may have been fairly valued by the insurer.  *Id*. at *8, 10-11 and 13; *see also Am. W. Door

13   & Trim v. Arch Specialty Ins. Co.,* 2015 U.S. Dist. LEXIS 34589, at *2-4 and *25-26, 2015 WL

14   1266787 (C.D. Cal. Mar. 18, 2015) (striking class allegations in action asserting that insurer

15   breached general liability policies and engaged in bad faith through a practice of settling claims

16   for unreasonably high amounts so as to exhaust insureds' deductibles and avoid having to pay

17   defense costs that would not apply against policy limits for indemnity because it would be

18   necessary to evaluate "each individual insured's claim to determine whether": (1) it was covered;

19   (2) defendant "actually settled that claim rather than litigating it;" and (3) "the amount of the

20   settlement exceeded the liability under the claim.")[2]

21

22

---

23   [2] Reflecting that these decisions are not anomalous, federal courts in other districts have also
     struck or dismissed class allegations in cases alleging that insurers systematically "underpaid" or
24   "under-valued" claims because individualized inquiry would be necessary as to "timing and
     adjustment of each class member's claim" and "the nature and extent of damage."  *E.g.*, *Henry v.*
25   *Allstate Insurance Co.*, 2007 U.S. Dist. LEXIS 57822, *3-6 and 8 (E.D. La., Aug. 8, 2007);
     *Spires v. Liberty Mutual Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 95248, *4 (E.D. La., Nov. 21,
26   2006) (concluding that "while Liberty Mutual's general procedures for adjusting claims might
     arguably be common to all claims, demonstrating a wrongful pattern or practice of failing to
27   adjust claims will require an intensive review of the individual facts of each class member's
     damage claim.")

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1    The rationale of *Newell*, *Bates*, *Hernandez*, and *Am. W. Door & Trim* applies equally here,

2    as it is not possible to determine whether any given putative class member's claim for STM

3    policy benefits was wrongfully denied or otherwise improperly handled by the HCC Defendants

4    without individualized review of their claim.  Accordingly, common issues cannot predominate

5    and the class action allegations should be stricken from each of Plaintiffs' Counts to the extent

6    based on their theory of improper claims-handling practices.[3]

7

## CONCLUSION

8

9    For the foregoing reasons, in the event that the HCC Defendants' concurrently-filed

10   motion to dismiss is not granted in its entirety, the Court should nonetheless strike Plaintiffs'

11   class action allegations.

12   Dated: April 13, 2017              GERARD G. PECHT
                                        M. SCOTT INCERTO
13                                      JOSHUA D. LICHTMAN
                                        MICHELLE L. MELLO
14                                      **NORTON ROSE FULBRIGHT US LLP**

15

16                                      By    /s/ Joshua D. Lichtman
                                             JOSHUA D. LICHTMAN
17                                           Attorneys for Defendants
                                             HCC LIFE INSURANCE COMPANY and
18                                           HCC MEDICAL INSURANCE SERVICES,
                                             LLC *(erroneously sued as* TOKIO MARINE
19                                           HCC – MEDICAL INSURANCE SERVICES
                                             GROUP)
20

21

22

23

24   ────────────────────
     [3] Similarly, to the extent Plaintiffs' attempt to dress up their claims-handling allegations as
25   misrepresentations, common issues will not predominate because the same individualized inquiry
     as to the handling of each underlying claim would be necessary to determine whether there was or
26   was not any misrepresentation or omission.  For example, it is impossible to adjudicate Plaintiffs'
     contentions that the HCC Defendants failed to disclose that they "routinely attempt to deny most
27   claims on the basis of preexisting conditions or other grounds" (*id*. ¶ 54) or that they would not
     provide "fair claims processes" (*id.* ¶ 93) without adjudicating the necessarily individualized
28   issue whether the underlying claims were properly handled.

DOCUMENT PREPARED
ON RECYCLED PAPER