1  Kelly M. Dermody (State Bar No. 171716)
   kdermody@lchb.com
2  Michelle A. Lamy (State Bar No. 308174)
   mlamy@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  415.956.1000
5  Facsimile:  415.956.1008

6  Rachel Geman (*pro hac vice*)
   rgeman@lchb.com
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
8  New York, NY  10013-1413
   Telephone:  212.355.9500
9  Facsimile:  212.355.9592

10 Allen Carney (*pro hac vice*)
   acarney@cbplaw.com
11 David Slade (*pro hac vice*)
   dslade@cbplaw.com
12 CARNEY BATES & PULLIAM, PLLC
   519 W. 7th Street
13 Little Rock, AR  72201
   Telephone:  501.312.8500
14 Facsimile:  501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314.226.1015
Facsimile:  202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:  202.789.3960
Facsimile:  202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone:  202.822.5100

15 *Attorneys for Plaintiffs*

16                    UNITED STATES DISTRICT COURT

17                   NORTHERN DISTRICT OF CALIFORNIA

18                            OAKLAND DIVISION

| | |
|---|---|
| MOHAMMED AZAD and DANIELLE BUCKLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOKIO MARINE HCC—MEDICAL INSURANCE SERVICES GROUP, HEALTH INSURANCE INNOVATIONS, INC., HCC LIFE INSURANCE COMPANY, and CONSUMER BENEFITS OF AMERICA,<br><br>Defendants. | Case No.: 4:17-cv-00618-PJH<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY PENDING RESOLUTION OF RULE 12 MOTIONS**<br><br>DATE:<br>TIME:<br>CTRM:  3<br>FILED: February 7, 2017 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. RELEVANT FACTUAL BACKGROUND .................................................................... 2
    A. Defendants' Sale and Administration of Short-Term Medical Insurance Policies. ................................................................................................. 2
    B. Defendants' Common Alleged Practices Cause Common Injuries. ........... 2
III. ARGUMENT .................................................................................................................... 4
    A. Defendants' Motion Will Not Succeed. ....................................................... 5
    B. Defendants' Inconsistent Positions About Discovery Underscore the Need to Move Forward. ......................................................................... 7
    C. A Stay Would Prejudice Plaintiffs. .............................................................. 7
    D. Defendants' Conflation of the Discovery Standards of Rule 26(b)(1) With the Standards for a Motion to Stay Does Not Permit an End-Run to Justify an Otherwise-Unwarranted Stay. ........................... 8
IV. CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baker v. Ark. Blue Cross*,
  No. C-08-03974 SBA (EDL), 2009 WL 904150 (N.D. Cal. Mar. 31, 2009) .............................. 4

*Ciuffitelli v. Deloitte Touche, LLP*,
  Case No. 3:16–cv–0580–AC, 2016 WL 6963039 (D. Or. Nov. 28, 2016) ................................ 8

*Fosselman v. Evans*,
  No. C 07-2606 PJH (PR), 2011 WL 939616 (N.D. Ca. Mar. 15, 2011) ..................................... 6

*Gilead Sciences, Inc. v. Merck & Co.*,
  No. 5:13-cv-04057-BLF, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ...................................... 8

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 40 (N.D. Cal. 1990) ........................................................................................... 5

*Hall v. Tilton*,
  No. C 07-3233 RMW (PR), 2010 WL 539679 (N.D. Cal. Feb. 9, 2010) .................................. 4

*In re Graphics Processing Units Antitrust Litig.*,
  No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ..................................... 5

*Mlejnecky v. Olympus Imaging Amer., Inc.*,
  No. 2:10-cv-02630, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011) ....................................... 1, 4, 5

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
  15 Civ. 0293 (LTS) (JCF), 2016 WL 3906712 (S.D.N.Y. July 14, 2016) ................................ 9

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ..................................................................................................... 7

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Res. Dev. Servs. Inc.*,
  No. C 10-01324 JF PVT, 2010 WL 3746290 (N.D. Cal. Sept. 18, 2010) ................................. 4

*Pettit v. Pulte Mortg., LLC*,
  2:11-cv-00149-GMN-PAL, 2011 WL 5546422 (D. Nev. Nov. 14, 2011) ................................ 5

*Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*,
  No. C17F-070142LKKGGH, 2007 WL 1146607 (E.D. Cal. Apr. 18, 2007) ......................... 4, 6

*Skellercup Indus. Ltd. v. City of L.A.*,
  163 F.R.D. 598 (C.D. Cal. 1995) .............................................................................................. 5

*Wenger v. Monroe*,
  282 F.3d 1068 (9th Cir. 2002) ................................................................................................... 4

*Wood v. McEwen*,
  644 F.2d 797 (9th Cir. 1981) ..................................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page

**Other Authorities**

Pat Wechsler, *63% of Americans Can't Cover Unexpected Expenses*, Fortune (Jan. 6, 2016) available at http://fortune.com/2016/01/06/savings-unexpected-expenses/ ...................... 7

*Report to the Chief Justice of the United States on the 2010 Conference on Civil Litigation* (May 2010) .................................................................................................................. 8

Roberts, C.J., *2015 Year-End Report on the Federal Judiciary* (Dec. 31, 2015) ............................ 8

## I. INTRODUCTION

Defendants' Motion to Stay Discovery misstates and ignores the well-pleaded allegations in Plaintiffs' Complaint and should be denied. Plaintiffs assert that Defendants' misleading marketing and bad-faith administration of their short-term insurance plans results in the systematic non-payment of (often very costly) claims, and violates California laws. This is an ongoing scheme, harming consumers every day.

A discovery stay in these circumstances is contrary to the Federal Rules and is disfavored under applicable case law (Defendants' assertion to the contrary notwithstanding). Although the Ninth Circuit has not specifically addressed the issue, district courts addressing this question have looked at whether the motion to dismiss is dispositive and whether the motion can be decided without additional discovery. In so doing, Defendants must, *at minimum*, show an "immediate and clear possibility" that their motion will succeed. *Mlejnecky v. Olympus Imaging Amer., Inc.*, No. 2:10-cv-02630, 2011 WL 489743, at *8 (E.D. Cal. Feb. 7, 2011). And, even when that heavy standard is met, there is discretion by the Court; a stay is not required.

Defendants have not shown, and cannot show, that their motions to dismiss will succeed. They rely on disputed fact-based assertions that will require discovery. Notably, Defendants also seek to have it both ways: having opted—improperly—to include extensive one-sided evidence with their motion to dismiss (material this Court should not consider, but that, in any event, does not advance Defendants' motions), here they claim that no discovery is needed. Defendants discuss, without providing any context, the "proportionality" standards, although they refuse to consider any discovery.

The cases and additional arguments on which Defendants rely further demonstrate the unsuitability of their requested relief. Their cases, in the main, either allow discovery or involve outlier scenarios—often with pro se plaintiffs—in atypical procedural postures. Finally, Defendants' unspecified argument that they will need to spend untold amounts on discovery before the motion is ruled on presupposes a lengthy interval between the briefing and a ruling, which, if true, would only exacerbate Plaintiffs' prejudice if the case is stayed.

## II. RELEVANT FACTUAL BACKGROUND

Defendants[1] distort the allegations in Plaintiffs' Complaint. Briefly, Plaintiffs' allegations are as follows:

### A. Defendants' Sale and Administration of Short-Term Medical Insurance Policies.

Defendants HCC, HII, and CBA collectively market and administer short-term medical insurance policies ("STMs") to California consumers. Complaint (Dkt. No. 1) ("Compl.") at ¶¶ 17-18, 22, 22 n.5, 51-53, 55, 57. Defendants HCC and HII have jointly developed—and market and provide—their STM in 45 states, including California. *Id.* at ¶¶ 17, 22, 22 n.5, 51-53, 55. Defendant CBA colludes with HCC and HII by acting as the group administrator for the STMs, thereby allowing HCC and HII to avoid more stringent regulatory requirements governing individually-issued health insurance policies. *Id.* at ¶¶ 18, 57.

### B. Defendants' Common Alleged Practices Cause Common Injuries.

Defendants' claim processing procedures for their STMs—and the requirements placed upon the insureds—are purposely engineered and uniformly applied to allow Defendants to delay and deny the claims of their policyholders. *Id.* at ¶¶ 3, 54, 56, 58-73. Upon submitting claims, insureds are required to provide every identifiable medical record in their history, regardless of whether such record relates to the claim at issue, and notwithstanding that this requirement is not disclosed in advance. *Id.* at ¶¶ 3, 26-27, 33-36, 39-73. This requirement, common to all Class members, gives Defendants three common avenues for denying valid claims, effectively and improperly guaranteeing that Class members' (often large) bills go unpaid.

*First*, Defendants comb through all records provided by the insured in an effort to characterize the claim at issue as a "pre-existing condition." *Id.* at ¶¶ 3, 26-27, 33-36, 39-57, 62-73. Defendants uniformly omit any appropriate explanation of the scope of this exclusion from their marketing materials. *Id.* at ¶¶ 3, 39-57, 62-73. However, once a claim is submitted, Defendants interpret the term so broadly and incorrectly, and in such bad faith, as to encompass

---

[1] Defendants are HCC Life Insurance Company and HCC Medical Insurance Services LLC ("HCC"), Health Insurance Innovations, Inc. ("HII"), and Consumer Benefits of America ("CBA").

1    virtually any medical condition, regardless of when—or even whether—it was diagnosed or
2    treated.  *Id.*  If Defendants can link the insured's presented claim to *anything* in the insured's past,
3    *from any point in time*, the claim is denied.  *Id.*

4         *Second*, when there is no plausible way to link an insured's claim to a prior medical
5    condition, Defendants again demand to search through all available records—regardless of their
6    relation to the claim—seeking evidence of a condition that would have rendered the claimant
7    ineligible for coverage under Defendants' STM, thereby allowing Defendants to void the policy
8    and not pay the claim.  *Id.* at ¶¶ 3, 26-27, 33-36, 56-73.  This practice is also uniform to all Class
9    members.  *Id.*

10        *Third*, Defendants' policy and practice is to premise refusals to pay on false assertions that
11   there is insufficient information to process claims.  *Id.* at ¶¶ 3, 26-27, 33-36, 54, 58-73.  This
12   allows Defendants to sidestep paying proper claims because it is extremely difficult or impossible
13   for the insured to provide the level of detail purportedly needed.  *Id.*

14        Defendants' internal policies and procedures, marketing materials, and customer service
15   scripts reveal that the above-described practices are uniform to the Class.  A whistleblower
16   contractor in HCC's customer service department confirmed that these policies and procedures
17   are designed to frustrate Class members' attempts to appeal a claim's denial or provide the
18   information purportedly sought by Defendants, and further confirmed that Defendants have
19   created a rigid script for dealing with insureds, from which their employees cannot deviate.  *Id.* at
20   ¶¶ 58-72.  As the whistleblower states:  "[T]he name of the game is runaround. . . .  It really felt
21   like everything was designed to be so cumbersome that the customer would either get frustrated
22   and give up or they could stall long enough to not have to pay out on the claim. . . .  The whole
23   idea here is that we're a legal buffer between HCC and [the insured] as was made crystal clear in
24   training when they said outright that we'd be thrown under the bus if we ever deviated from the
25   script."  *Id.* at ¶ 67.

26        Defendants minimize and misconstrue the Complaint in their respective motions to
27   dismiss, asserting that 'Plaintiffs say X is non-disclosed but it is disclosed.'  This completely
28   misses the point.  Defendants engage in a common and fraudulent scheme whereby they take

Class members' premium payments, only to subject those insureds to a claims process that is designed to uniformly and unconscionably deny the payment of valid claims.  Plaintiffs' well-pleaded claims seek to hold Defendants accountable for their fraudulent scheme.  Compl. at ¶¶ 90-146.

### III.    ARGUMENT

Defendants' suggestion that courts in the Ninth Circuit "favor" discovery stays is flatly wrong.  In fact, to the contrary, "district courts look *unfavorably* upon [] blanket stays of discovery."  *Mlejnecky*, 2011 WL 489743, at *6 (emphasis added; citing numerous cases in and out of this District); *see also, e.g., Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.*, No. S-07-0142 LKK GGH, 2007 WL 1146607, at *2-4 (E.D. Cal. Apr. 18, 2007) (any "lesser standard" than forcing defendants to make a "clear and convincing showing" of success on a motion to dismiss "encourages blanket discovery stays where such stays are probably not warranted"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Res. Dev. Servs. Inc.*, No. C 10-01324 JF (PVT), 2010 WL 3746290, at *2 (N.D. Cal. Sept. 18, 2010) (denying stay).

Defendants reference four cases, but *none* express a general preference for discovery stays.  In *Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002), the court noted only that a "district court may . . . stay discovery when it is *convinced* that the plaintiff will be unable to state a claim for relief.  *Id.* at 1077 (emphasis added).  *Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981), also using the strong "convinced" language, arose in the context of a *pro se* plaintiff who had refiled a case against more than 100 defendants after his earlier case was dismissed and otherwise engaged in sanctionable conduct.  *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679 (N.D. Cal. Feb. 9, 2010), also involving a *pro se* plaintiff (a prisoner), granted the discovery stay without stating any general rule,[2] and in *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417

---

[2] Defendants' emphasis on *Hall's* "two-part test" distorts the full and proper inquiry.  While it is true that a court considers whether the pending motion is potentially dispositive, and whether such a motion can be considered absent discovery—2010 WL 539679, at *2—there must *also* be "an immediate and clear possibility" that the moving party will *prevail* on its dispositive motion.  *Baker v. Ark. Blue Cross*, No. C-08-03974 SBA (EDL), 2009 WL 904150, at *1 (N.D. Cal. Mar. 31, 2009).  *See also id.* ("[T]he Court notes that it is not clear that Plaintiffs will fail to state a claim, so a stay of discovery is not warranted.").  Indeed, the Ninth Circuit holds that it is proper to stay discovery only "when [the district court] is *convinced* that the plaintiff will be unable to state a claim for relief."  *Wenger*, 282 F.3d at 1077 (emphasis added).

1   WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) the court granted the stay but at the same
2   time entertained the possibility of "revisiting the issue of focused, limited discovery in the event
3   the motions to dismiss are granted." *Id.* at *1.

4   Overall, it is "well established that a party seeking a stay of discovery carries the heavy
5   burden of making a strong showing why discovery should be denied." *Pettit v. Pulte Mortg.,*
6   *LLC*, 2:11-cv-00149-GMN-PAL, 2011 WL 5546422, at *3 (D. Nev. Nov. 14, 2011)[3]; *Skellercup*
7   *Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) (noting that "[h]ad the
8   Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay
9   discovery, the Rules would contain a provision for that effect," and that stays are "directly at odds
10  with the need for expeditious resolution of litigation") (quoting *Gray v. First Winthrop Corp.*,
11  133 F.R.D. 39, 40 (N.D. Cal. 1990). Against the backdrop of that heavy burden, courts engage in
12  the two-part test of examining whether the motion is potentially dispositive of the entire case and
13  whether the motion can be decided without additional discovery.

14  **A.   Defendants' Motion Will Not Succeed.**

15  Defendants cannot show that they will, or even might or should, succeed on their motion
16  to dismiss. Their three sentences purportedly supporting their assertion that the motion will
17  "dispose of this entire case" actually demonstrate exactly the opposite: that there are no clear
18  legal infirmities, but rather factual disputes, and discovery must go forward. Def. Mot. at 7.

19  *First*, Defendants assert that they "did not falsely advertise or misrepresent" facts relating
20  to their pre-existing conditions exclusions, and offer the defense that "HCC made several
21  disclosures related to this exclusion on its website, the application for insurance, and the
22  certificate of coverage." *Id*. The conclusion that they did not falsely advertise or misrepresent
23  (coupled with the implicit acknowledgement of common representations), when Plaintiffs have
24  clearly and adequately alleged otherwise, creates a quintessential factual issue. *See, e.g.*,
25  *Mlejnecky*, 2011 WL 489743, at *2, *10 (denying motion to stay in consumer class action under,
26  among other laws, California's Unfair Competition Law).

---

[3] Defendants also rely on *Pettit*, where the district judge had already granted motions to dismiss filed by two of the defendants, a factor that, along with others, militated in favor of a stay. That case is factually inapposite.

1   *Second*, Defendants assert that Plaintiffs "fail to allege facts supporting a conclusion" that Plaintiffs' claims were improperly handled in any way. Def. Mot. at 7. Again, this is flatly contradicted by the pleadings. For example, Plaintiffs cite to a whistleblower contractor of Defendants detailing Defendants' systemic acts of obstruction and bad faith. Compl. at ¶¶ 58-72. Further, the Complaint tethers this internal information to Plaintiffs' *own* experiences, in which Defendants unceasingly, and in bad faith, sought "all medical records, provider notes, and labs" from Plaintiffs despite the irrelevance of those records to Plaintiffs' claims. *Id.* at ¶¶ 3, 26-27, 33-37. Defendants' bald assertion to the contrary does nothing more than raise questions of fact. *See Seven Springs Ltd. P'ship*, 2007 WL 1146607, at *2-4 (defendant could not make a clear and convincing showing that it would prevail on its motion to dismiss where, as here, the facts were complicated and disputed).[4]

*Third*, Defendants state that the Complaint does not allege any wrongdoing as to CBA, and that it cannot determine which allegations apply to HII. As a threshold matter, Plaintiffs vigorously dispute this assertion, as the Complaint makes clear that HII develops and administers the sub-standard STMs *hand-in-glove* with HCC throughout the United States (Compl. at ¶¶ 17, 22, 22 n.5, 51-53, 55), and further specifies that CBA operates with HCC and HII in bad faith to provide the sub-standard STMs to Class members, and is in fact integral to Defendants' attempts to evade regulation (*id.* at ¶¶ 18, 57). However, even if Defendants' position is correct, these are misplaced arguments *on a motion to stay*, because these arguments contemplate dismissal of the *entire* case. Assuming, *arguendo*, that CBA or HII were to be dismissed, Plaintiffs' case would nonetheless proceed. *See, e.g.*, *Fosselman v. Evans*, No. C 07-2606 PJH (PR), 2011 WL 939616, at *1-2 (N.D. Cal. Mar. 15, 2011) (denying motion to stay discovery in context where qualified immunity motion at issue would not dispose of entire case) (Hamilton, J.).

---

[4] Notably, in *Seven Springs*, the court denied the motion to stay even while acknowledging that defendant appeared to have the "more logical argument." *Id.* at *4. Here, Plaintiffs respectfully submit that their basic allegation—that Defendants fraudulently marketed, and unlawfully and in bad faith administered, STMs in a manner that violated well-established laws—is the more logical of the arguments in that resolution of the allegations simply needs factual development.

1346328.3 - 6 - PLFS.' MEMO. OF POINTS AND AUTHORITIES IN OPP. TO DEFS.' MOT. TO STAY DISCOVERY
CASE NO.: 4:17-cv-00618-PJH

### B. Defendants' Inconsistent Positions About Discovery Underscore the Need to Move Forward.

Defendants assert in this motion that there is no need for discovery. Plaintiffs, to be clear, take the position that Defendants' motions should be denied on their face, but also observe that *Defendants attached an extensive and one-sided record to their motions to dismiss*, in the form of declarations and certain Plaintiff-specific discovery. *See* Dkt. Nos. 50-52.

As Plaintiffs will address in their opposition, these submissions were inappropriate and, more importantly, do not *remotely* establish infirmities with the Complaint. But most important for the instant issue before the Court, Defendants cannot have it both ways, denying Plaintiffs the opportunity for discovery while simultaneously bolstering their 12(b) motions with cherry-picked internal documents and employee declarations. Defendants cite cases for a converse proposition *not* implicated here: that when a complaint is not sufficient, a plaintiff is not entitled to discovery to make it so. *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014). Here, taking alleged facts as true, Plaintiffs satisfy the pleading standards. Again, the rule is *and has always been* that the mere filing of a motion to dismiss, which by definition challenges the plaintiffs' pleading, does not warrant a stay in itself.

### C. A Stay Would Prejudice Plaintiffs.

Defendants claim the stay would not prejudice Plaintiffs because it might not last more than a few weeks. Later, Defendants raise the specter of intrusions on their business and significant cost to discovery, implying they believe the stay would, in fact, be lengthy. Aside from Defendants' desire to have it both ways, the reality is that Plaintiffs are prejudiced by a stay of discovery. Defendants cavalierly dismiss the thousands of dollars of damages each Plaintiff suffered as "nominal,"[5] but unfortunately Plaintiffs, typical of the Class, face mounting medical bills that should be paid by Defendants but improperly are not. Plaintiffs raise serious allegations

---

[5] Defendants' characterization of Plaintiffs' respective losses of $3,500 and $12,000 as "nominal" (Def. Mot. at n.4) is not well taken. Roughly two in three American households do not have enough savings to pay for an unexpected expense—medical or otherwise—of $1,000, let alone a sum three or even *twelve* times that amount. *See, e.g.*, Pat Wechsler, *63% of Americans Can't Cover Unexpected Expenses*, Fortune (Jan. 6, 2016) available at http://fortune.com/2016/01/06/savings-unexpected-expenses/.

1  of delay and denial of meritorious claims, which acts have left Plaintiffs and Class members
2  profoundly injured both financially and with regard to prospects for future medical treatment, and
3  there is no reason this case should be different from other cases, *i.e.*, proceed to appropriate
4  discovery.

5      **D.**     **Defendants' Conflation of the Discovery Standards of Rule 26(b)(1) with the Standards for a Motion to Stay Does Not Permit an End-Run to Justify an Otherwise-Unwarranted Stay.**

7      Defendants' argument about "proportionality"—that the existence of the word
8  "proportional" in the discovery rules (even though "[p]roportionality in discovery under the
9  Federal Rules is nothing new"[6]) changes the standards in their favor—is another end-run around
10 the rules.  A motion to dismiss does not stay discovery, and this has remained the case after the
11 most recent amendments to the Federal Rules.

12     If anything, the amendments place greater emphasis on efficient processes.  The *2015*
13 *Year-End Report on the Federal Judiciary*, cited by Defendants, does not address motions to stay,
14 and indeed touts the importance of "early and effective case management," which is not well-
15 served by Defendant's desire to categorically foreclose any early discovery discussions.  Roberts,
16 C.J., *2015 Year-End Report on the Federal Judiciary* at 7 (Dec. 31, 2015); *see also id.* (the
17 amended rules "have shortened the deadline for that [Rule 16] meeting").  Likewise, the *Report to*
18 *the Chief Justice of the United States on the 2010 Conference on Civil Litigation* (May 2010)
19 does not address discovery stays and makes the unremarkable observation, among many others,
20 that lawyers on both sides of the bar have various complaints about discovery, cost,
21 obstructiveness, and other issues.

22     Perhaps, then, it is not surprising that most of the cases Defendants cite allow certain
23 discovery.  *See Ciuffitelli v. Deloitte Touche, LLP*, No. 3:16–cv–0580–AC, 2016 WL 6963039, at
24 *9 (D. Or. Nov. 28, 2016) (requiring the production of audit work papers and four other
25 categories of documents from two defendants); *Mortg. Resolution Servicing, LLC v. JPMorgan*
26 *Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2016 WL 3906712, at *6-9 (S.D.N.Y. July 14,
27

28 [6] *Gilead Sciences, Inc. v. Merck & Co.*, No. 5:13-cv-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016).

2016) (deciding cross motions in a complex mortgage case, allowing plaintiffs various categories of discovery, granting defendants' motion for a protective order for certain RICO discovery only, noting the specific discovery included hundreds of thousands of emails and that, and starkly unlike here, the plaintiffs had not argued that the motion to dismiss was "insufficiently substantial").

Defendants' argument about proportionality is thus misplaced as legally unsupported and belied by their own refusal to produce any documents, despite the fact that, for example, they have centralized scripts and marketing materials, general materials gathered to respond to other investigations, and uniformly-applied claims processing policies designed to frustrate the payment of valid claims.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to stay discovery should be denied.

Dated:  April 27, 2017                LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:  /s/ *Rachel Geman*

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: (212) 355-9500
Facsimile:  (212) 355-9592

Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

|     |                                                      |
| --- | ---------------------------------------------------- |
| 1   | Allen Carney (*pro hac vice*)                        |
|     | acarney@cbplaw.com                                   |
| 2   | David Slade (*pro hac vice*)                         |
|     | dslade@cbplaw.com                                    |
| 3   | Carney Bates & Pulliam, PLLC                         |
|     | 519 W. 7th Street                                    |
| 4   | Little Rock, AR  72201                               |
|     | Telephone:  (501) 312-8500                           |
| 5   | Facsimile:  (501) 312-8505                           |
|     |                                                      |
| 6   | Michael J. Flannery (State Bar No. 196266)           |
|     | mflannery@cuneolaw.com                               |
| 7   | Cuneo Gilbert Laduca, LLP                            |
|     | 7733 Forsyth Boulevard, Suite 1675                   |
| 8   | St. Louis, MO 63105                                  |
|     | Telephone:  (314) 226-1015                           |
| 9   | Facsimile:  (202) 789-1813                           |
|     |                                                      |
| 10  | Matthew Prewitt (State Bar No. 291593)               |
|     | mprewitt@cuneolaw.com                                |
| 11  | Cuneo Gilbert Laduca, LLP                            |
|     | 16 Court Street, Suite 1012                          |
| 12  | Brooklyn, NY 11241                                   |
|     | Telephone:  (202) 789-3960                           |
| 13  | Facsimile:  (202) 789-1813                           |
|     |                                                      |
| 14  | Jay Angoff (*pro hac vice*)                          |
|     | jay.angoff@findjustice.com                           |
| 15  | Mehri & Skalet                                       |
|     | 1250 Connecticut Avenue, NW                          |
| 16  | Suite 300                                            |
|     | Washington, DC 20036                                 |
| 17  | Telephone:  (202) 822-5100                           |
|     |                                                      |
| 18  | *Attorneys for Plaintiffs and the Proposed Class*    |
| 19  |                                                      |
| 20  |                                                      |
| 21  |                                                      |
| 22  |                                                      |
| 23  |                                                      |
| 24  |                                                      |
| 25  |                                                      |
| 26  |                                                      |
| 27  |                                                      |
| 28  |                                                      |