1  Kelly M. Dermody (State Bar No. 171716)
   kdermody@lchb.com
2  Michelle A. Lamy (State Bar No. 308174)
   mlamy@lchb.com
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  415.956.1000
5  Facsimile:  415.956.1008

6  Rachel Geman (*pro hac vice*)
   rgeman@lchb.com
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
8  New York, NY  10013-1413
   Telephone:  212.355.9500
9  Facsimile:  212.355.9592

10 Allen Carney (*pro hac vice*)
   acarney@cbplaw.com
11 David Slade (*pro hac vice*)
   dslade@cbplaw.com
12 CARNEY BATES & PULLIAM, PLLC
   519 W. 7th Street
13 Little Rock, AR  72201
   Telephone:  501.312.8500
14 Facsimile:  501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314.226.1015
Facsimile:  202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:  202.789.3960
Facsimile:  202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone:  202.822.5100

15
16 *Attorneys for Plaintiffs and the Proposed Class*

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                         OAKLAND DIVISION

20 | MOHAMMED AZAD and DANIELLE | Case No.  4:17-cv-618-PJH
21 | BUCKLEY, on behalf of themselves and |
   | all others similarly situated, | **PLAINTIFFS' MEMORANDUM OF**
22 | | **POINTS AND AUTHORITIES IN**
   | Plaintiffs, | **OPPOSITION TO HCC LIFE INSURANCE**
   | | **COMPANY AND HCC MEDICAL**
23 | v. | **INSURANCE SERVICES, LLC'S MOTION**
   | | **TO DISMISS**
24 | TOKIO MARINE HCC – MEDICAL |
25 | INSURANCE SERVICES GROUP, | Date:       June 14, 2017
   | HEALTH INSURANCE INNOVATIONS, | Time:       9:00 a.m.
   | INC., HCC LIFE INSURANCE | Place:      Courtroom 3
26 | COMPANY, and CONSUMER |
   | BENEFITS OF AMERICA, | Complaint Filed: February 7, 2017
27 | |
   | Defendants. |
28

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ........................................................................................................ 1

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

    A.    Defendants' Sale and Administration of Short-Term Medical Insurance Policies ........................................................................................ 2

    B.    Defendants' Common Alleged Practices Cause Common Injuries ........................ 3

    C.    Plaintiffs' Experiences and the Underlying Litigation................................ 5

    D.    Procedural History ........................................................................ 6

LEGAL STANDARDS.............................................................................................................. 6

    A.    Rule 12(b)(6) .............................................................................. 6

    B.    Rule 9(b) .................................................................................... 6

    C.    Incorporation by Reference............................................................. 7

ARGUMENT .......................................................................................................................... 8

    A.    Plaintiffs' UCL Claim Should Not Be Dismissed ................................. 8

        1.    Plaintiffs Have Stated a Claim Under the "Unlawful" Prong of the UCL ................................................................ 11

        2.    Plaintiffs Have Stated a Claim Under the "Unfair" Prong of the UCL................................................................ 13

        3.    Plaintiffs Have Stated a Claim Under the "Fraudulent" Prong of the UCL .......................................... 15

    B.    Plaintiffs' FAL Claim Should Not Be Dismissed.............................. 17

    C.    Plaintiffs' Claim for Breach of Contract Should Not Be Dismissed ..................... 18

    D.    Plaintiffs' Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Should Not Be Dismissed ............................................. 20

    E.    Plaintiffs' Claim for Unjust Enrichment Should Not Be Dismissed ..................... 22

    F.    Plaintiffs Should Be Permitted to Amend the Complaint if the Court Identifies Any Pleading Infirmities ....................................... 23

CONCLUSION....................................................................................................................... 23

1346074.8

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aho v. AmeriCredit Fin. Servs., Inc.*,
277 F.R.D. 609 (S.D. Cal. 2011).................................................................................. 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 6

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014)...................................................................................... 22

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir.1994)............................................................................................. 8

*Casey v. Metro. Life Ins. Co.*,
688 F. Supp. 2d 1086 (E.D. Cal. 2010)........................................................................ 22

*Cheviot Vista Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
143 Cal. App. 4th 1486 (2006) .................................................................................... 20

*Cohen v. Penn Mut. Life Ins. Co.*,
48 Cal. 2d 720 (Cal. 1957)........................................................................................... 12

*Comerica Bank v. McDonald*,
2006 WL 3365599 (N.D. Cal. Nov. 17, 2006)............................................................... 7

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (Cal. 1983)........................................................................................... 11

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997).......................................................................................... 7

*Davenport v. Seattle Bank*,
2015 WL 6150926 (C.D. Cal. Oct. 15, 2015)................................................................. 7

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012).......................................................................... 7, 17, 18

*Day v. AT & T Corp.*,
63 Cal. App. 4th 325 (1998) ........................................................................................ 18

*Egan v. Mut. of Omaha Ins. Co.*,
24 Cal. 3d 809 (1979) .................................................................................................. 20

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) ................................................................................................. 16

*Ferrington v. McAfee, Inc.*,
No. 10-1455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ......................................... 14

*Ford v. Hotwire, Inc.*,
No. 07-CV-1312 H(NLS), 2008 WL 5874305 (S.D. Cal. Feb. 25, 2008)................... 17

*Frezza v. Google Inc.*,
No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ................. 14

*Frommoethelydo v. Fire Ins. Exch.*,
42 Cal. 3d 208 (1986) .................................................................................................. 20

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997).......................................................................................... 6

*Hailey v. California Physicians' Serv.*,
158 Cal. App. 4th 452 (Cal. App. 2007) ..................................................................... 13

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE AND HCC
MEDICAL INSURANCE SERVICE'S MOTION TO DISMISS
CASE NO. 4:17-CV-618

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................... 23

*In re Bank of Amer. Credit Protection Mktg. & Sales Practices Litig.*,
  No. MD-11-2269 TEH, 2012 WL 1123863 (N.D. Cal. Apr. 3, 2012) ...................... 21

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal., May 11, 2007) .......................................... 14

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................ 8

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................ 7

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ............................................................... 14

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2010) ................................................................ 14, 16

*Kaar v. Wells Fargo Bank, N.A.*,
  No. C 01290 WHA, 2016 WL 3068396 (N.D. Cal. June 1, 2016) ......................... 19

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ............................................................... 18

*Love v. Fire Ins. Exch.*,
  221 Cal. App. 3d 1136 (1990) .............................................................. 20

*McDonald v. Coldwell Banker*,
  543 F.3d 498 (9th Cir. 2008) ........................................................... 7, 14

*Medrazo v. Honda of N. Hollywood*,
  205 Cal. App. 4th 1 (2012) ................................................................ 14

*Misha Consulting Grp., Inc. v. Core Educ. & Consulting Solutions, Inc.*,
  No. C-13-04262-RMW, 2013 WL 6073362 (N.D. Cal. Nov. 15, 2013) .................. 19

*Mohamed v. Jeppesen Dataplan, Inc.*,
  579 F.3d 943 (9th Cir. 2009) ................................................................ 6

*Mony Life Ins. Co. v. Marzocchi*,
  857 F. Supp. 2d 993 (E.D. Cal. 2012) ...................................................... 21

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ............................................................... 23

*Olivera v. Am. Home Mortgage Servicing, Inc.*,
  689 F. Supp. 2d 1218 (N.D. Cal. 2010) .................................................... 14

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (Cal. App. 2d Dist. 2002) .......................................... 15

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ............................................................. 23

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) .......................................................... 9, 15

*Samet v. Procter & Gamble Co.*,
  No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ................ 23

*Schlagal v. Learning Tree Int'l*,
  No. CV 98–6384 ABC (EX), 1998 WL 1144581 (C.D. Cal. Dec. 23, 1998) ............. 7

# TABLE OF AUTHORITIES
## (continued)

Page

*Shroyer v. New Cingular Wireless Servs., Inc.,*
   606 F.3d 658 (9th Cir. 2010) ............................................................................. 6

*Sierzega v. Country Preferred Ins. Co.,*
   650 F. App'x 388 (9th Cir. 2016) ..................................................................... 22

*Siracusano v. Matrixx Initiatives, Inc.,*
   585 F.3d 1167 (9th Cir. 2009) ........................................................................... 6

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ............................................................................. 7

*Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.,*
   160 Cal. App. 4th 528 (Cal. Ct. App. 2008) .................................................... 13

*United States for Use and Benefit of HCI Sys., Inc. v. Agbayani Construction Co.,*
   No. 14-cv-02503-MEJ, 2014 WL 4979336 (N.D. Cal. Oct. 6, 2014) ............... 7

*Van Buskirk v. Cable News Network, Inc.,*
   284 F.3d 977 (9th Cir. 2002) ............................................................................. 8

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ........................................................................... 6

*Walling v. Beverly Enters.,*
   476 F.2d 393 (9th Cir. 1973) ............................................................................. 7

*Williams v. Gerber Prods. Co.,*
   552 F.3d at 938 (9th Cir. 2008) ....................................................................... 18

*Wilson v. Hewlett–Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012) ..................................................................... 8, 22

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................................ 6, 8

Cal. Bus. & Prof. Code § 17500, *et seq.* .......................................................... 6, 18

Cal. Ins. Code § 10123 ........................................................................................ 12

Cal. Ins. Code § 10123.13 ...................................................................... 12, 18, 19

Cal. Ins. Code § 10123.13(a) ....................................................................... 12, 13

Cal. Ins. Code § 10123.13(c) ....................................................................... 12, 19

Cal. Ins. Code § 10384 ........................................................................................ 13

Cal. Ins. Code § 332 ........................................................................................... 11

Cal. Ins. Code § 790.03 ...................................................................................... 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 6, 8

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 23

Fed. R. Civ. P. 8 ................................................................................................... 22

Fed. R. Civ. P. 8(d) .............................................................................................. 22

Fed. R. Civ. P. 9(b) ............................................................................................ 6, 7

**Treatises**

4 Witkin, Cal. Proc. (4th ed. 1997) ..................................................................... 18

Stern, § 5.166, BUS & PROF. C. § 17200 PRACTICE (The Rutter Group 2012) ....... 15

**TABLE OF AUTHORITIES**
(continued)

Page

**Other Authorities**

Thomas C. Cady and Georgia Lee Gates, *Post Claim Underwriting*, 102 W. Va. L. Rev.
809, 813 (2000) .................................................................................................................. 13

1346074.8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

1.     Have Plaintiffs pleaded plausible facts relating to Defendants' obstructive and unlawful claims processing practices (such as post-claims underwriting), bad-faith denials of coverage, and deceptive marketing?

2.     Are the facts pleaded, when accepted as true and drawing inferences in Plaintiffs' favor, sufficient to support Plaintiffs' claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), contract law, and the common law?

**INTRODUCTION**

Defendants[1] collaborated to develop, market, sell, and administer Short-Term Medical ("STM") insurance policies that do not provide the coverage they purport to provide, miring Plaintiffs and Class members in a nightmare of obstruction, delay, and denial at the moment insurance matters:  when Plaintiffs are facing large, even catastrophic, medical bills.

The STMs at issue here are not Affordable Care Act ("ACA") compliant ones, in which pre-existing conditions must be covered—and Plaintiffs nowhere claim otherwise.  However, as Plaintiffs allege, Defendants engage in distinct fraudulent and bad faith conduct by misusing and misapplying the pre-existing conditions limitations (and engaging in related misconduct) to deny claims that should be paid via improper delay and unlawful post-claims underwriting.  The common alleged scheme, pled with specificity, thus consists of both fraudulent marketing and improper claims practices.

In support of its motion to dismiss, HCC misrepresents Plaintiffs' allegations.  HCC argues that Plaintiffs' claims fail because the pre-existing conditions exclusion was disclosed prior to their purchases.  HCC demonstrates precisely nothing by stating—and repeating—the undisputed fact that it represents to the public that it does not pay for pre-existing conditions under some circumstances.  What HCC omits is that it systematically denies claims that are

---

[1] Defendants on this motion are HCC Life Insurance Company and HCC Medical Insurance Services LLC ("HCC").  Health Insurance Innovations, Inc. ("HII") and Consumer Benefits of America ("CBA") are also Defendants in this action, and are included within the term "Defendants" where no specific Defendant is indicated.

1   unrelated to pre-existing conditions, engages in improper and unlawful underwriting to try to find

2   pre-existing conditions that may or may not exist, and otherwise engages in fraud and breach of

3   contract by its common (and centrally-directed) course of conduct in its claims denial scheme and

4   its sale of insurance that is practically worthless.

5         HCC also argues that no reasonable consumer could have been misled as to the pre-

6   existing conditions exclusion.  This argument is belied not only by Plaintiffs' well-pleaded

7   allegations, but also by the numerous other consumers who have come forward to express

8   precisely what HCC suggests, as an improper fact-based argument, to be impossible.  Finally,

9   HCC argues that Plaintiffs do not allege they were discouraged or obstructed during the claims

10  handling process.  This statement is incorrect in light of Plaintiffs' fulsome allegations that they

11  were both subjected to months of HCC's unconscionable claims-handling practices, despite

12  complying in good faith with HCC's increasingly unreasonable (and impossible to fulfill) medical

13  records requests.

14        When considered as actually pled, Plaintiffs' allegations clearly support their claims of

15  unfair competitive practices, deceptive advertising, breach of contract, bad faith, and unjust

16  enrichment.  HCC's motion to dismiss should be denied in its entirety.

17                              **FACTUAL BACKGROUND**

18        As a threshold matter, HCC's Motion radically misstates the allegations of Plaintiffs'

19  Complaint and even injects extrinsic evidence that is self-serving and incomplete.  Briefly,

20  Plaintiffs' allegations are as follows:

21     **A.**    **Defendants' Sale and Administration of Short-Term Medical Insurance**
22              **Policies**

23        Defendants HCC, HII, and CBA collectively market and administer STMs to California

24  consumers.  Complaint (Dkt. No. 1) ("Compl.") ¶¶ 17-18, 22, 22 n.5, 23, 51-53, 55, 57.

25  Defendants HCC and HII have jointly developed—and market and provide—their STM in 45

26  states, including California.  *Id.* ¶¶ 17, 22, 22 n.5, 23, 51-53, 55.  Defendant CBA colludes with

27  HCC and HII by acting as the group administrator for the STMs, thereby allowing HCC and HII

28  to avoid more stringent regulatory requirements governing individually-issued health insurance

1    policies.  *Id.* ¶¶ 18, 57.

2          **B.**     **Defendants' Common Alleged Practices Cause Common Injuries**

3          In conjunction with Defendants HII and CBA, HCC's claim processing procedures for

4    their STMs—and the requirements placed upon the insureds—are purposely engineered and

5    uniformly applied to cause the delay and denial of the claims of policyholders.  *Id.* ¶¶ 3, 54, 56,

6    58-73.  Upon submitting claims, insureds are required to provide virtually every identifiable

7    medical record in the last five years of their history, regardless of whether such record relates to

8    the claim at issue, and notwithstanding that this requirement is not disclosed in advance.  *Id.* ¶¶ 3,

9    26-27, 33-37, 39-73.  This requirement, common to all Class members, gives Defendants three

10   common avenues for denying valid claims, effectively and improperly guaranteeing that Class

11   members' often large bills go unpaid.

12         The *first* step in the strategy is to comb through all records provided by the insured in an

13   effort to characterize the claim at issue as a "pre-existing condition."  *Id.* ¶¶ 3, 26-27, 33-37, 39-

14   57, 63-73.  Defendants uniformly omit any appropriate explanation of the scope of this exclusion

15   from their public-facing marketing materials.  *Id.* ¶¶ 3, 39-57, 63-73.  However, once a claim is

16   submitted, the term is interpreted so broadly and incorrectly, and in such bad faith, as to

17   encompass virtually any medical condition, regardless of when—or even whether—it was

18   diagnosed or treated.  *Id.*  If the insured's presented claim can be linked to *anything* in the

19   insured's past, *from any point in time*, the claim is denied.  *Id.*

20         *Second*, when there is no plausible way to link an insured's claim to a prior medical

21   condition, Defendants again demand to search through all available records—regardless of their

22   relation to the claim—seeking evidence of a condition that would have rendered the claimant

23   ineligible for coverage under the STM, thereby allowing Defendants to void the policy and not

24   pay the claim.  *Id.* ¶¶ 3, 26-27, 33-37, 56-73.  This practice is also uniform to all Class members.

25   *Id.*

26         *Third*, Defendants' policy and practice is to premise refusals to pay on common and

27   incorrect assertions that there is insufficient information to process claims.  *Id.* ¶¶ 3, 26-27, 33-37,

28   54, 58-73.  This allows Defendants to sidestep paying proper claims because it would be

1    impossible for the insured to provide the level of detail purportedly needed.  *Id.*

2          In light of the above, common conduct, Defendants have also engaged in uniform material

3    omissions and misrepresentations to Class members.  Namely, they have marketed health

4    insurance policies that, because of the unconscionable claims-handling processes described

5    above, improperly and unlawfully exclude material numbers of claims, making the insurance

6    nearly worthless.  *Id.* ¶¶ 3, 39-57, 104-14.  Through various declarations, HCC has introduced

7    copious pages of website screen shots and welcome kits.  *See, generally*, Dkt. Nos. 50-52.

8    However, none of these documents, nor any documents referenced in Plaintiffs' Complaint, alert

9    an insured or a prospective insured to the virtually limitless exclusions (or the burdensome record

10   requests) applied by Defendants in their claims-handling practices.  *Id.*; *see also* Compl. ¶¶ 3, 39-

11   72; 104-14.  Such omissions constitute false advertising.  *Id.* ¶¶ 104-14.

12         Defendants' internal policies and procedures, public-facing representations, and customer

13   service scripts reveal that the above-described practices are uniform to the Class.  A

14   whistleblower contractor in HCC's customer service department confirmed that these policies and

15   procedures are designed to frustrate Class members' attempts to appeal a claim's denial or to

16   provide the information purportedly sought by Defendants, and further confirmed that Defendants

17   have created a rigid script for dealing with insureds, from which their employees cannot deviate.

18   *Id.* ¶¶ 58-72.  As the whistleblower states: "[T]he name of the game is runaround . . . . It really

19   felt like everything was designed to be so cumbersome that the customer would either get

20   frustrated and give up or they could stall long enough to not have to pay out on the claim. . . .

21   The whole idea here is that we're a legal buffer between HCC and [the insured] as was made

22   crystal clear in training when they said outright that we'd be thrown under the bus if we ever

23   deviated from the script."  *Id.* ¶ 67.

24         As discussed in Plaintiffs' Opposition to Defendants' Motion to Stay (Dkt. No 66),

25   Defendants minimize and misconstrue the Complaint, asserting that 'Plaintiffs say X is non-

26   disclosed but it is disclosed.'  This  misses the point.  Defendants engage in a common and

27   fraudulent scheme whereby they take Class members' premium payments, only to subject those

28   insureds to a claims process that is designed to uniformly and unconscionably deny the payment

1  of valid claims.  Plaintiffs' well-pleaded claims of complex fraud are cognizable under statutory

2  and common law.  Compl. ¶¶ 90-146.

3        **C.**      **Plaintiffs' Experiences and the Underlying Litigation**

4        Plaintiffs Azad and Buckley were each insured under Defendants' STMs.  *Id*. ¶¶ 19-38.

5  Each Plaintiff purchased their STM policies in the belief that such policies would cover

6  unexpected medical conditions.  *Id.*  Each Plaintiff *did* suffer an unexpected and major health

7  incident and, in reliance upon the language of the policies, properly submitted claims.  *Id*.  Upon

8  submitting claims to Defendants, however, each Plaintiff was asked for an ever-increasing

9  number of medical records.  *Id.*  Specifically, as pled in the Complaint and supported with explicit

10  references to Defendants' records, Plaintiffs' were not merely required to provide medical records

11  relevant to their claims; rather, they were required to provide *all* medical records, provider notes,

12  and labs for the five years preceding their claims.  *Id.* ¶¶ 26, 33; *see also* Declaration of John

13  Padgett in Support of HCC Life Insurance Company and HCC Medical Insurance Services,

14  LLC's Motion to Dismiss and Their Alternative Motion to Strike Class Allegations ("Padgett

15  Decl.") at Exs. 16-19.

16        After months of complying with Defendants' requests for more information, both Azad

17  and Buckley were again told that their claims could not be processed.  Compl. ¶¶ 26-28, 33-38;

18  Padgett Decl. at Exs. 16-19.  Plaintiff Azad's bills totaled roughly $12,000, and Plaintiff

19  Buckley's roughly $3,500.  Motion to Stay (Dkt. No 63) at n.4.  Plaintiffs each made continual

20  efforts to provide sufficient information to Defendants, and were continually asked for more.

21  Compl. ¶¶ 26-38.  Discouraged and convinced that Defendants were not acting in good faith,

22  Plaintiffs gave up and realized they would have to pay their medical bills directly.  *Id.*

23        Thus, like all Class members, Plaintiffs were:  (1) misled into purchasing insurance

24  policies that they believed would cover unforeseen medical events; (2) subjected to Defendants'

25  unconscionable claims-handling practices, despite complying in good faith with Defendants'

26  increasingly-unreasonable (and impossible to fulfill) requests; and (3) ultimately had their claims

27  files closed by  Defendants, in bad faith, which left Plaintiffs (like all Class members) on their

28  own to resolve their unpaid, substantial medical bills.

1

### D.    Procedural History

2

Plaintiffs filed their Complaint on February 7, 2017, alleging five claims for relief:

3

(1) violations of Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of Cal. Bus. & Prof. Code

4

§ 17500, *et seq.*; (3) breach of contract; (4) breach of the implied covenant of good faith and fair

5

dealing; and (5) unjust enrichment.  Defendant HCC then filed the instant Motion to Dismiss.

6

Dkt. No. 48 ("Mot.").[2]

7

### LEGAL STANDARDS

8

### A.    Rule 12(b)(6)

9

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks "a

10

cognizable legal theory" or "sufficient facts to support a cognizable legal theory."  *Shroyer v.*

11

*New Cingular Wireless Servs., Inc.*, 606 F.3d 658, 664 (9th Cir. 2010).  The issue is not whether

12

the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support

13

the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Moreover,

14

the Court must draw "all reasonable inferences from the complaint in [plaintiffs'] favor,"

15

*Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009), and "must accept as true

16

all of the factual allegations contained in a complaint" and "construe them in the light most

17

favorable to the plaintiffs."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Siracusano v. Matrixx*

18

*Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

19

### B.    Rule 9(b)

20

Plaintiffs' claims under the deceptive prong of the UCL and FAL must satisfy Rule 9(b).[3]

21

The Ninth Circuit has long construed Rule 9(b) to require only that "'allegations of fraud are

22

specific enough to give defendants notice of the particular misconduct which is alleged to

23

constitute the fraud charged so that they can defend against the charge and not just deny that they

24

25

[2] Each Defendant filed separate Motions to Dismiss (Dkt. Nos. 48, 58, 60) and, in the case of HCC and HII, Motions to Strike (Dkt. Nos. 49, 60), as well as a Motion to Stay (Dkt. No. 63).

26

[3] Plaintiffs' other claims—namely, the common-law claims and the claims under other prongs of the UCL—need not satisfy Rule 9(b).  Under Ninth Circuit law, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the

27

heightened pleading requirements.  Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

28

1105 (9th Cir. 2003).

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE AND HCC
MEDICAL INSURANCE SERVICE'S MOTION TO DISMISS
CASE NO. 4:17-CV-618

1   have done anything wrong.'" *United States for Use and Benefit of HCI Sys., Inc. v. Agbayani*

2   *Construction Co.*, No. 14-cv-02503-MEJ, 2014 WL 4979336, at *3 (N.D. Cal. Oct. 6, 2014)

3   (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)).

4         Thus, while Rule 9(b) imposes a heightened standard, it does not require a plaintiff to

5   allege each and every detail about the alleged conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

6   Cir. 1997) ("[W]e cannot make Rule 9(b) carry more weight than it was meant to bear."); *Walling*

7   *v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973); *see also Schlagal v. Learning Tree Int'l*,

8   No. CV 98–6384 ABC (EX), 1998 WL 1144581, at *8 (C.D. Cal. Dec. 23, 1998) ("The Court

9   must strike a careful balance between insistence on compliance with demanding pleading

10  standards and ensuring that valid grievances survive."); *Davenport v. Seattle Bank*, 2015 WL

11  6150926, at *4 (C.D. Cal. Oct. 15, 2015) ( "[Rule 9(b)] must be read in harmony with Fed. R.

12  Civ. P. 8's requirement of a 'short and plain' statement of the claim.").

13        Moreover, "the requirement of specificity is relaxed when the allegations indicate that a

14  defendant must necessarily possess full information concerning the facts of the controversy or

15  when the facts lie more in the knowledge of the opposite party." *Comerica Bank v. McDonald*,

16  2006 WL 3365599, at *2 (N.D. Cal. Nov. 17, 2006) (citations omitted).

17        Plaintiffs' fraud-based allegations readily satisfy the requirements of Rule 9(b).

18        **C.**     **Incorporation by Reference**

19        Defendants contend, further, that the Court should apply the "incorporation by reference"

20  doctrine in this case, and consider voluminous additional materials as part of the Complaint.

21  Citing among other cases *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159-60 (9th Cir.

22  2012), Defendants urge that the Court consider (i) representations in documents on the websites

23  of HCC or its affiliates, (ii) Plaintiffs' applications and Certificates, and (iii) telephonic or written

24  communications between Plaintiffs and HCC's agents.

25        The incorporation by reference doctrine is inapposite here.  In this Circuit, courts enjoy

26  discretion to consider documents "whose contents are alleged in a complaint and whose

27  authenticity no party questions, but which are not physically attached to the [plaintiff's]

28  pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting

1    *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994)) (alteration in original).  In such cases, it is

2    possible to "look beyond the pleadings without converting the Rule 12(b)(6) motion into one for

3    summary judgment."  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.

4    2002).  But in this case, no such possibility exists.  The documents that Defendants seek to

5    incorporate are incapable of accurately resolving Plaintiffs' claims without the benefit of further

6    discovery.

7         Defendants apparently wish to alert the Court that the documents they seek to incorporate

8    disclose that HCC does not cover pre-existing conditions.  *See* Def. Decl's. of Khan, Garvuso,

9    and Padgett, Dkt. Nos. 50-52.  But these documents, and the disclosures therein, come nowhere

10   near resolving Plaintiffs' allegations, and indeed, add nothing to the Complaint, which already

11   transparently observes that the pre-existing condition exclusion was disclosed.  *See* Compl. ¶ 47.

12   Plaintiffs' claims concern what Defendants omit and misrepresent about their policies and

13   practices.  Defendants' disclosures do not encompass, and in fact belie, Defendants' routine

14   practice of deceptively obstructing, discouraging, delaying, and denying claims, regardless of

15   whether any pre-existing condition was implicated.  *See id.* ¶¶ 40-47, 49, 54, 62.  Plaintiffs

16   therefore submit that detailed consideration of Defendants' documents is premature at the motion

17   to dismiss stage, for various reasons, including that proper discovery will reveal the documents to

18   be incomplete and misleading.

19                                    **ARGUMENT**

20   **A.    Plaintiffs' UCL Claim Should Not Be Dismissed**

21        The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or

22   practice . . . ."  Cal. Bus. & Prof. Code § 17200.  The statute's "coverage is sweeping."  *Wilson v.*

23   *Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).  As a threshold matter, HCC attempts

24   to conflate the three UCL prongs, and argue that because Plaintiffs have failed to allege fraud

25   they have also failed on the unlawful and unfair prongs.  Mot. at 19, 21.  This premise finds no

26   support in the law, for "[e]ach of these three adjectives captures a separate and distinct theory of

27   liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation

28   marks omitted).  Plaintiffs have adequately stated claims under each of the UCL's unlawful,

1    unfair, and fraudulent prongs.

2           In attempting to defend against Plaintiffs' UCL allegations, HCC relies primarily on the

3    argument that "the preexisting conditions exclusion was repeatedly disclosed" to policyholders.

4    *See* Mot. at 2, 4, 5, 6. This contention misses the point.

5           While HCC disclosed to prospective purchasers that it had a *limited, 6-month* preexisting

6    condition exclusion clause,[4] in practice it systematically excluded coverage for any preexisting

7    condition during the last five years. Compl. ¶¶ 26, 28, 33, 34, 38, 41, 49, 56, 73. Specifically,

8    Plaintiffs allege in their Complaint that "HCC's promotional materials and application form . . .

9    lead a customer to believe that its [pre-existing conditions] carveouts are much more cabined than

10   they actually are," that, in fact, the carve-out "is applied with absurd results," and that Defendants

11   "enforce (and misuse) a much broader list of exclusions." *Id.* ¶¶ 41, 49.

12          Further, "neither the plan brochures nor application forms explain the scope of the

13   policies' exclusion for pre-existing conditions" in practice. *Id.* ¶ 54. Plaintiffs also provide

14   concrete allegations regarding how the pre-existing conditions carve-out works in practice:

15   "[W]hen Plaintiffs needed medical treatment, they called Defendants' customer service

16   representatives to ensure they were covered for the treatment in question, and were told they were

17   covered. Thereafter, Defendants proceeded to deny them the coverage to which Plaintiffs were

18   entitled." *Id.* ¶ 56. For example, one individual was denied coverage after a major heart attack

19   "due to a doctor's note about 4 years ago stating that [he had] a degenerative disc in [his] lower

20   back." *Id.* ¶ 73(b).

21   _____

     [4] HCC argues that it "clearly excluded coverage for preexisting conditions treated or diagnosed
22   within the prior six months." Mot. at 6. HCC's exhibits highlight this same 6-month period and
     make no mention of the far longer period applied in practice. *See* Padgett Decl. at 38 ("Charges
23   resulting directly or indirectly from a condition for which a Covered Person received medical
     treatment, diagnosis, care or advice within the six (6) month period immediately preceding such
24   person's Effective Date are excluded for the first six (6) months of coverage hereunder"); *id.* at 91
     (same); *id.* at 134 (same).
25
     To the extent HCC relies on Plaintiff Azad's verbal consent to a broader preexisting conditions
26   exclusion as explained to Plaintiff Azad by HCC agent Montgomery, Mot. at 7, Agent
     Montgomery's verbal explanation is contradicted by the very written policy documents HCC
27   points to in its brief. *See generally* Padgett Decl.. Further, Agent Montgomery states that "this
     limitation may vary by state" and gives no explanation whether it applies in Plaintiff Azad's case.
28   *Id.* at 9.

In addition, HCC states that it discloses that policyholders must submit a "proof of loss form" in order for their claims to be paid,[5] and that claims will be paid within 30 working days of receipt of the proof of loss. *See* Padgett Decl. at 45, 86, 141 ("Time of Payment of Claim: Benefits for loss covered by the policy will be paid as soon as we receive proper written proof of such loss, but no later than 30 working days after We receive Proof of Loss.").  However, in practice, HCC requires policyholders to submit not only this proof of loss form, but also ***five or more years*** of medical records unrelated to the particular medical issue at hand in order to get their claims paid.  Compl. ¶¶ 26-28, 33-38, 73; Padgett Decl. at 155.  This medical records requirement is improper, given that the average patient would not have possession of such records, nor would they be able to remember each and every medical provider and facility visited over such a long time period, and especially not at a vulnerable moment when the patient is recovering from the distress of a recent hospitalization.  *Id.* ¶¶ 25, 33; *see also id.* ¶ 73(a) ("I tried very hard to have HCC pay for our bills . . . [w]ith a husband who almost die and care for, I ran out of energy.").

Further, due to HCC's intentionally obstructionist and evasive customer service, policyholders like the Plaintiffs find themselves in a nightmarish loop in which they can neither satisfy HCC's previously-undisclosed, burdensome request to provide the requested medical records, nor obtain answers from HCC as to how they can otherwise get their claims paid.  *Id.* ¶¶ 27, 34-36, 58-72.  For example, Plaintiff Azad received no indication when purchasing his insurance that HCC would require him to provide extensive medical records in order to get his claims paid.  *Id.* ¶¶ 19-24; Dkt. 50 at 7-21.  Only after he had purchased HCC insurance and submitted a claim did HCC seek "all medical records, provider notes, and labs" for the prior ***six years***.  Compl. ¶ 26; Padgett Decl. at 155.  Though Plaintiff Azad sought to comply with the request, and attempted to contact HCC over the course of seven months, Compl. ¶ 27, HCC

---

[5] The disclosures do not come close to even hinting, much less clearly communicating, that "proof of loss" would in practice entail a requirement to submit at least five years of medical records. *See* Dkt. No. 52 at 45, 98, 141 ("When the Company receives notice of claim, forms for filing proof of loss will be sent to the claimant. If claim forms are not supplied within 15 days, a claimant can give proof as follows: (1) in writing; (2) setting forth the nature and extent of the loss; and (3) Within the time stated in the Proof of Loss provision. Written proof of loss must be given to the Company within 90 days after the loss begins.")

refused to pay any of his claims, *id.* ¶ 28.  Similarly, HCC requested "medical records for the past five years" from Plaintiff Buckley after her hospitalization.  *Id.* ¶ 33.  HCC told Buckley that HCC would contact her doctor to obtain the bills, and Buckley did contact the doctor to confirm her willingness to provide the necessary records.  *Id.* ¶¶ 33-34.  Yet HCC continued to stonewall Plaintiff Buckley and left her with unpaid medical bills.  *Id.* ¶¶ 35-38.

Plaintiffs also allege that a former HCC employee exposed this practice, writing that HCC customer service representatives "had no way to contact HCC directly, or to interact with them (I'm guessing by design)," and that "everything was designed to be so cumbersome that the customer would either get frustrated and give up or they could stall long enough to not have to pay out on the claim."  *Id.* ¶¶ 63, 67.

Defendants do not rebut any of these allegations (and cannot do so on a motion to dismiss), and these are the exact kind of practices the UCL was designed to combat.  *See Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 209 (Cal. 1983) (noting that the UCL is written to codify "the right of the public to protection from fraud and deceit").  As set forth below, these allegations provide a more than substantial basis to plead claims under all three prongs of the UCL.

### 1.    Plaintiffs Have Stated a Claim Under the "Unlawful" Prong of the UCL

Plaintiffs have stated a claim under the UCL's "unlawful" prong.  First, Plaintiffs allege that HCC acted "unlawfully" based on the company's violation of § 332 of the California Insurance Code, which requires each party to an insurance contract to communicate "in good faith, all facts within his knowledge which are or which he believes to be material to the contract. . ."  Cal. Ins. Code § 332.  The Complaint explains that Defendants violated § 332, and therefore the UCL, by failing to communicate in good faith (1) that their policies did not include claims for conditions that were diagnosed or treated within five years of the effective date of coverage, (2) that Plaintiffs would be required to provide years of medical records in addition to a proof of loss form to get their claims paid out, (3) that it would be impracticable to fulfill HCC's requests to provide such medical records, and (4) that HCC does not have a fair claims process or

functional customer service.  Compl. ¶¶ 26-28, 33-38, 58-73.  All of these are material terms

within HCC's knowledge and none were communicated to HCC policyholders.  *See Cohen v.*

*Penn Mut. Life Ins. Co*., 48 Cal. 2d 720, 727 (Cal. 1957) (noting that a party's disclosures on

insurance form "pictured a risk entirely different from that in fact involved").

     Importantly, California Insurance Code § 10123.13(c), which HCC offers as a defense on

the merits, in fact confirms the allegations and makes clear that HCC has violated the law in

multiple ways.  First, § 10123 requires an insurer to reimburse claims "no later than 30 working

days after the receipt of the claim," § 10123.13(a), and HCC has not done so.  Second, § 10123

provides that if an insurer wishes to officially contest the claim, it must:

> (1)  notify the claimant "in writing, that the claim is contested or denied, within 30  working days after receipt of the claim by the insurer"; and

> (2) "identify the portion of the claim that is contested or denied and the specific reasons" including "the factual and legal basis"; and

> (3) "provide a copy of the notice to each insured . . . and to the insured's health care provider that provided the services at issue"; and

> (4) "advise . . . the insured that [he or she] may seek review by the department of a claim that the insurer contested or denied, and the notice shall include the address, Internet Web site address, and telephone number of the unit within the department that performs this review function."

Cal Ins. Code § 10123.13(a).  HCC has complied with none of those statutory mandates.  The

Complaint alleges that HCC:  (1) did not state that it was "contesting" Plaintiff Azad's claim,

Compl. ¶ 26; *see also* Padgett Decl. at 155; (2) did not contact Plaintiff Buckley at all regarding

any such contest, Compl. ¶ 33; (3) did not notify Buckley's provider in writing, *id*. ¶¶ 34-35; and

(4) rather than advising customers of their rights, threw multiple customer-service hurdles in

Plaintiffs' path.  *Id*. ¶¶ 27, 33, 34.

     Perhaps even more significant, HCC's requiring Plaintiffs to submit five years of medical

records only *after* it had determined they were eligible for a policy, *after* it had accepted and

invested their premium payments, and *after* Plaintiffs had submitted a claim, is a textbook

example of post-claims underwriting, which Cal. Ins. Code § 10384 *prohibits*.  That section

1  defines such unlawful underwriting as

2

3       the rescinding, canceling, or limiting of a policy or certificate due to
       the insurer's failure to complete medical underwriting and resolve
       all reasonable questions arising from written information submitted
       on or with an application before issuing the policy or certificate.

4

5        The principle underlying the prohibition on post-claims underwriting is that "[a]n insurer

6  has an obligation to its insureds to do its underwriting at the time a policy application is made, not

7  after a claim is filed." *Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452, 465 (Cal.

8  App. 2007).  As the *Hailey* court explained, "it is patently unfair for a claimant to obtain a policy,

9  pay his premiums and operate under the assumption that he is insured against a specified risk,

10  only to learn after he submits a claim that he is not insured, and, therefore, cannot obtain any

11  other policy to cover the loss."  *Id.* (internal citation omitted).  *See also Ticconi v. Blue Shield of*

12  *Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 534, 541-42 (Cal. Ct. App. 2008) (holding

13  insurer's rescission of short-term health insurance policy violated § 10384, which "explicitly

14  makes postclaims underwriting unlawful and thus provides a basis for an injunction under the

15  UCL"); Thomas C. Cady and Georgia Lee Gates, *Post Claim Underwriting*, 102 W. Va. L. Rev.

16  809, 813 (2000) (characterizing post-claims underwriting as "a complete inversion of the

17  established sequence of underwriting").  Notably, *HCC does not deny that it engaged in post-*

18  *claims underwriting*; to the contrary, it seeks to justify it.  *See* Mot. at 20 (attempting to defend

19  denying claims on the grounds that the policyholder had a medical condition "during the

20  preceding five years that would have rendered him or her ineligible to obtain the policy").

21        In short, HCC's bad faith conduct in violation of Ins. Code § 332, its failure to comply

22  with the consumer protection requirements of Ins. Code § 10123.13(a), and its post-claims

23  underwriting in violation of Ins. Code § 10384 provide ample support for Plaintiffs' claim under

24  the "unlawful" prong of the UCL.  These facts also show why HCC's representations about its

25  services are misleading, and why its omissions are material.

26        **2.      Plaintiffs Have Stated a Claim Under the "Unfair" Prong of the UCL**

27        Plaintiffs similarly state a claim under the "unfair" prong of the UCL.  An "unfair"

28  business practice under the UCL is "one that either offends an established public policy or is

-13-

1 immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

2 *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal citations and

3 quotations omitted).

4     Plaintiffs here sufficiently plead "unfair" conduct by Defendants under  both the

5 "balancing" test (which compares the gravity of the plaintiff's harm to the utility of the

6 defendant's conduct) and "tethering" test (which examines whether the alleged misconduct is

7 tethered to a legislatively declared policy) that are both applied by California courts.  *Ferrington*

8 *v. McAfee, Inc.*, No. 10-1455, 2010 WL 3910169, at *13 (N.D. Cal. Oct. 5, 2010); *see also id*. at

9 *12 (describing the two tests and explaining that California courts are divided on which applies);

10 Compl. ¶¶ 95, 98-99.

11     Despite HCC's assertions to the contrary, Mot. at 17, Plaintiffs need not prove reliance on

12 misrepresentations in order to state a claim under the "unlawful" or "unfair" prongs of the UCL.

13 *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.17 (2010) (explaining that "[t]here are doubtless

14 many types of unfair business practices in which the concept of reliance . . . has no application");

15 *Frezza v. Google Inc*., No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6  n.3 (N.D. Cal. Apr.

16 22, 2013) ("[N]o reliance is required to prove violations of the UCL based on 'unlawful' or

17 'unfair' conduct.").[6]

18     Plaintiffs' allegations of HCC's marketing, detailed above, demonstrate it to be unethical,

19 _____

20 [6] *See also Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012) (stating that there is no actual reliance requirement in UCL actions that are not based upon a fraud theory and holding that plaintiff had established standing under the "unlawful" prong of the UCL despite no

21 evidence of actual reliance); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154-55, 159 (2010) (explaining that "where the UCL claim is based upon the unlawful prong of the UCL"

22 there is "no issue regarding reliance"); *Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("For claims based on the 'unfair' or 'unlawful' prong of

23 the UCL claim, courts have held that the plaintiff need not allege reliance on misrepresentations, and may allege 'causation more generally.'"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d

24 1098, 1105-06 (N.D. Cal., May 11, 2007) (reasoning in the section entitled "Plaintiffs Need Not Allege Reliance" that reliance is not required "where, as here, plaintiffs allege that they were

25 harmed by other types of misconduct actionable under the UCL the Court finds no basis for requiring reliance on misrepresentations"); *Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609,

26 623 (S.D. Cal. 2011) ("The claim . . . that Defendant has engaged in unlawful conduct under the UCL, does not require reliance."); Stern, § 5.166, BUS & PROF. C. § 17200 PRACTICE (The

27 Rutter Group 2012) ("There are a number of theories that have been litigated and rejected as defenses to claims alleging 'unlawful' business practices . . . .  That no one was actually deceived

28 by the practice is not a defense to a section 17200 'unlawful' business practice claim.").

1   immoral, and unscrupulous.  Compl. ¶¶ 26-28, 33-38, 58-73.  *See also, e.g.*, *Rubio v. Capital One*

2   *Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (reversing dismissal of UCL claim where

3   defendant misleadingly disclosed the terms of its contracts with consumers).

4        HCC's intentional communications to policyholders that treatments are covered (and

5   material omission about its exclusions and practices), and subsequent refusal to actually cover

6   those treatments *after* the costs have been incurred, is unethical.  Compl. ¶ 56.  Further, HCC's

7   intentionally evasive and deceptive customer service methods, including scripts designed to

8   discourage policyholders from seeking payment, *id*. ¶ 62, and a system that by design prevents

9   customer service representatives from being able to communicate with HCC to solve customers'

10  problems or directly address their queries, *id*. ¶¶ 63-67, is nothing if not "immoral, unethical,

11  oppressive, [and] unscrupulous."  All of these practices are substantially injurious to

12  policyholders, including Plaintiffs.  Not only do they cause a drain on time and energy by forcing

13  policyholders to seek answers within a Kafkaesque bureaucracy, they also cause policyholders to

14  pay thousands of dollars out of pocket for medical expenses HCC led them to believe would be

15  covered.  *Id*. ¶¶ 28, 38, 73.  Plaintiffs have thus sufficiently alleged that Defendants' conduct is

16  unfair as well as unlawful.

17            **3.      Plaintiffs Have Stated a Claim Under the "Fraudulent" Prong of the
18                      UCL**

19       Plaintiffs' Complaint also describes several ways in which HCC has engaged in fraudulent

20  conduct.  Under the "fraudulent" prong of the UCL, "the test is whether the public is likely to be

21  deceived . . . a [] violation can be shown even if no one was actually deceived, relied upon the

22  fraudulent practice, or sustained any damage."  *People ex rel. Bill Lockyer v. Fremont Life Ins.*

23  *Co*., 104 Cal. App. 4th 508, 516-17 (Cal. App. 2d Dist. 2002).  Further, reliance can be presumed,

24  or at least inferred, if the misrepresentation or omission was material, *i.e.*, "if a reasonable man

25  would attach importance to its existence or nonexistence in determining his choice of action in the

26  transaction in question."  *In re Tobacco II Cases*, 46 Cal. 4th at 326.  Whether or not a

27  misrepresentation or omission is material and, thus, whether or not the presumption of reliance

28  attaches "is generally a question of fact unless the 'fact misrepresented is so obviously

-15-

1   unimportant that the jury could not reasonably find that a reasonable man would have been

2   influenced by it.'"  *Id.* at 327 (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951,

3   976-77 (1997)).  Notably, in *In re Tobacco II*, the California Supreme Court held that when

4   reliance is required under the UCL, it need not be tied to any specific misrepresentation.  A

5   plaintiff must show that the defendant's deceptions were "an immediate cause of the plaintiff's

6   injury-producing conduct," *id.* at 326, but the deception need not need be "the sole or even the

7   predominant or decisive factor influencing [the plaintiff's] conduct," *id.*

8       Here, Plaintiffs allege that HCC made a number of statements and/or material omissions

9   likely to deceive the public.  HCC failed to mention:  (1) the breadth of its five-plus-year pre-

10  existing conditions carveout; (2) its requirement that medical records for at least five years be

11  submitted prior to claim coverage; and (3) its complete lack of any effective customer service.

12  There is little question that HCC's misrepresentations and omissions were material to Plaintiffs'

13  relationship with HCC and that reasonable policyholders would want to know about such items

14  prior to purchasing HCC insurance.

15      Notwithstanding HCC's attempts to characterize Plaintiffs Buckley and Azad as having

16  unreasonably misunderstood HCC's communications, Mot. at 11, the Complaint's allegations

17  show that Plaintiffs' claims are the norm.  HCC's former customer-service representative

18  admitted that HCC customer service could not help policyholders and "it was obvious that the

19  name of the game was runaround."  Compl. ¶¶ 63, 67.  Additionally, an HCC policyholder wrote

20  that he "deep[ly] regrets" choosing HCC insurance, because while he "was led to believe that this

21  coverage was good short term insurance," HCC later denied his claim under its five-year

22  preexisting condition exclusion practice.  *Id.* ¶ 73(b).  This consumer's advice, based on his

23  experience with HCC's bait-and-switch, is clear: "DO NOT EVEN CONSIDER THIS

24  INSURANCE."  *Id.*; *see also id.* ¶ 73(c) ("I would NEVER, EVER suggest that anyone purchase

25  insurance from HCC.").  Reasonable consumers are likely to be—and in fact have been—

26  deceived by the alleged misrepresentations and omissions of HCC.

27      HCC's reliance on *Davis v. HSBC* and *Ford v. Hotwire* is misplaced.  In both cases, the

28  defendant company disclosed exactly what it was doing, and disclosed it prominently.  In *Davis*,

-16-

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE AND HCC
MEDICAL INSURANCE SERVICE'S MOTION TO DISMISS
CASE NO. 4:17-CV-618

1  for example, Best Buy disclosed the annual fee challenged by the Plaintiff in "boldface font at

2  least twice as large as the other text on the page." *Davis*, 691 F.3d at 1158.  And in *Ford*, in

3  which plaintiff challenged Hotwire's failure to disclose that hotels could impose additional fees as

4  one of its Terms, Hotwire both disclosed that hotels could do so and stated in its Terms of Use

5  that "[i]f you do not agree with any part of these Terms and Conditions, YOU MUST NOT USE

6  THIS SITE." *Ford v. Hotwire, Inc*., No. 07-CV-1312 H(NLS), 2008 WL 5874305, at *9, *1-2

7  (S.D. Cal. Feb. 25, 2008) (emphasis in original).

8        Here, in contrast, HCC both failed to disclose the conduct Plaintiffs complain of and

9  sought to obscure even the inadequate disclosures it did make.  Specifically, HCC failed to

10  disclose either its five-year pre-existing conditions carve-out or its burdensome medical record

11  requirement for claim coverage, as well as its wholly ineffective customer service.  Moreover,

12  even the inadequate disclosures it did make were in diminutive, intentionally obscured print.  *See*

13  Padgett Decl. at 65 (indicating in small, light grey print in lower right hand corner that "[t]he

14  description in these pages is for informational purposes only," "[a]ctual coverage will vary based

15  [sic] the terms and conditions of the policy issued," and "[b]enefits, provisions, limitations and

16  exclusions may vary by state").

17        In short, the contrast between Defendants' conduct in this case and that of Best Buy and

18  Hotwire in *Davis* and *Ford* further compels the conclusion that Defendants' conduct here is

19  fraudulent within the meaning of the UCL.

20        **B.**   **Plaintiffs' FAL Claim Should Not Be Dismissed**

21        For the reasons stated above, Plaintiffs have adequately alleged a claim under the FAL,

22  and it should not be dismissed.  For example, Plaintiffs were led to believe that if they did not

23  have certain specified pre-existing conditions, or if their claims did not relate to any pre-existing

24  conditions, their claims would be processed and paid in good faith.  *See* Compl. ¶¶ 40-47.  In fact,

25  as properly and plainly alleged—in detail—in the Complaint, Defendants' unlawful scheme

26  meant that Plaintiffs were denied the coverage they needed.

27        A misleading statement under Cal. Bus. & Prof. Code § 17500 is one that is likely to

28  mislead a reasonable consumer.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.

1   2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003). Indeed, even "[a] perfectly

2   true statement couched in such a manner that it is likely to mislead or deceive the consumer, such

3   as by failure to disclose other relevant information, is actionable under th[is] section[]." *Day v.*

4   *AT & T Corp.*, 63 Cal. App. 4th 325, 327 (1998). In assessing such claims, courts must recall that

5   "whether a business practice is deceptive will usually be a question of fact not appropriate for

6   decision on [a motion to dismiss]." *Davis*, 691 F.3d at 1161-62. Accordingly, Plaintiffs have

7   satisfied their burden and the claim should not be dismissed.

8        **C.       Plaintiffs' Claim for Breach of Contract Should Not Be Dismissed**

9        The elements of a claim for breach of contract are: (1) the existence of the contract; (2)

10   performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant, and (4)

11   damages. 4 Witkin, Cal. Proc. (4th ed. 1997). Here, Plaintiffs have alleged all four elements

12   plainly and specifically.

13       Plaintiffs allege that contracts existed in the form of the STM policies that Defendants

14   sold to Plaintiffs. *See* Compl. ¶¶ 3, 8, 9, 17, 118. Plaintiffs fulfilled their obligations by timely

15   payment of premiums and diligent efforts to submit their insurance claims. *See id.* ¶¶ 25-28, 32-

16   36, 100, 118. However, despite the fact that the policies required timely, good-faith processing of

17   all claims, and payment of claims not related to specified pre-existing conditions, *see id.* ¶¶ 120-

18   26, Defendants pursued a policy of routinely resisting payment without any reason to believe that

19   a claim is invalid, constructing practically impossible barriers to customers' receipt of payment,

20   and otherwise refusing payment in bad faith, as multiple former agents of Defendants have

21   disclosed. *Id.* ¶¶ 54, 58-72. These practices damaged Plaintiffs, as they have damaged the Class

22   members. The breach of contract claim must not be dismissed.

23       HCC argues that the claim should be dismissed for failing to allege the specific breached

24   provision. Mot. at 22. HCC also cites Cal. Ins. Code § 10123.13, which purportedly allows

25   Defendants to engage in their obstructive tactics. *Id.* Finally, HCC argues that Plaintiff Buckley

26   suffered no damage. *Id.* at 23. These arguments fail.

27       In this Circuit, courts have held that "[i]dentifying the specific provision of the contract

28   allegedly breached by the defendant does not require the plaintiff to attach the contract or recite

-18-

the contract's terms verbatim." *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Solutions, Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013). Instead, pleadings are sufficient when the "complaint identifies the specific provision of the contract allegedly breached by the defendants." *Id.* at *2; *see also id.* (finding sufficient a breach of contract allegation where, "although the complaint could have been more specific, it sets out the type of services requested, the dates of performance, and the contract price."); *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2 (N.D. Cal. June 1, 2016). Plaintiffs here have alleged that pursuant to, at least, Part VIII of the policies, the policies required proper investigations, timely processing, and good faith customer service and payment, among other broken promises.  Compl. ¶¶ 119-125.  This clears the hurdle at the motion to dismiss stage.

Further, HCC's reliance on Cal. Ins. Code § 10123.13 for the proposition that they did not breach their contracts because they were entitled to engage in their obstructive tactic of requesting unnecessary and unrelated medical records is entirely misplaced.  The pertinent language of that section reads as follows:

> [A] claim, or portion thereof, is reasonably contested when the insurer has not received a completed claim and all information necessary to determine payer liability for the claim, or has not been granted reasonable access to information concerning provider services.

Cal. Ins. Code § 10123.13(c).  This language does not, and cannot, entitle insurers to contest claims after receiving sufficient information to determine their liability on the claim, and cannot entitle insurers to request information not reasonably tailored to the claim, as part of a cynical bad-faith obstruction tactic.  Yet Plaintiffs have alleged such behavior.

Finally, Defendants wrongly assert that Plaintiff Buckley was undamaged by Defendants' misconduct because her claims did not exceed her deductible.  If a policyholder is obstructed from making claims, she will never reach her deductible.  Recognizing this, Plaintiff Buckley canceled her plan after being harmed by Defendants' scheme, in part because she had been denied rightful credit toward her deductible.  Accordingly, she had a cognizable economic interest in her claim's success, even though it did not exceed the deductible.  The facts in this case, involving a

1    medical insurance policy with a high deductible, are eminently distinguishable from the cases

2    HCC cited on this point, which involved earthquake insurance.  *See Cheviot Vista Homeowners*

3    *Ass'n v. State Farm Fire & Cas. Co.*, 143 Cal. App. 4th 1486, 1488 (2006).  Because damaging

4    earthquakes are rare, it was reasonable for the *Cheviot* court to conclude that the plaintiff could

5    not show damage where the value of the claim that did not exceed the policy deductible.  But

6    because medical expenses are common and routine, and generally aggregated to reach a policy

7    deductible, a plaintiff does not receive the full economic value of her policy when her claims

8    towards the deductible are improperly obstructed or denied.  At a minimum, the economic value

9    of such loss is calculable as the increase in the value of the policy, over its remaining term, when

10   the deductible is reduced by the amount of the claim.  And losses may be even greater when

11   subsequent medical services are foregone due to improper obstruction or denial of the first

12   treatment.

13           **D.**     **Plaintiffs' Claim for Breach of the Implied Duty of Good Faith and Fair**
14                    **Dealing Should Not Be Dismissed**

15           Under California law, "a covenant of good faith and fair dealing is implied in every

16   insurance contract," and it "requires each contracting party to refrain from doing anything to

17   injure the right of the other to receive the agreement's benefits" and to "give at least as much

18   consideration to the interests of the insured as it gives to its own interests."  *Frommoethelydo v.*

19   *Fire Ins. Exch.*, 42 Cal. 3d 208, 214 (1986); *see also Love v. Fire Ins. Exch.*, 221 Cal. App. 3d

20   1136, 1153 (1990); *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (1979).  Moreover,

21   "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly

22   investigating the foundation for its denial."  *Egan*, 24 Cal. 3d at 819; *Love*, 221 Cal. App. 3d at

23   1148.  This provision is intended as a shield for insureds against bad-faith denials—*not* as a

24   sword for insurers who wish to construct unclearable hurdles during the claim submission phase.

25           A covenant claim can thus exist alongside, or instead of, a breach of contract claim, and

26   has been applied in similar consumer class action contexts.  *See, e.g.*, *In re Bank of Amer. Credit*

27   *Protection Mktg. & Sales Practices Litig.*, No. MD-11-2269 TEH, 2012 WL 1123863, at *5

28   (N.D. Cal. Apr. 3, 2012) (holding, in case involving credit card add-on products that purported to

insure against problems faced by borrowers that could render them unable to pay, "Plaintiffs' contention that the enumeration of allowable fees implies that the cardholder may expect to be free from further charges not expressly disclosed or referenced in the agreement is not so beyond the realm of credibility that dismissal would be appropriate at this stage").

Here, HCC breached the covenant.  Plaintiffs allege that HCC systematically frustrates expectations by erecting common and insurmountable roadblocks (including via unlawful post-claims underwriting) to paying claims, without acknowledging they are doing so and even denying that they will never pay.  Defendants hinder insureds' ability to perform by their claims. This is classic bad faith.  Moreover, Cal. Ins. Code § 790.03 specifically prohibits acts of the type HCC routinely engages in.[7]

HCC correctly observes that a claim for bad faith cannot proceed where there is a genuine dispute as to the insured's liability under the policy.  *See Mony Life Ins. Co. v. Marzocchi*, 857 F. Supp. 2d 993, 996 (E.D. Cal. 2012).  But it is not possible at the motion to dismiss stage to determine whether a genuine dispute exists over coverage:  "A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds."  *Casey v. Metro. Life Ins. Co.*, 688 F. Supp. 2d 1086, 1098 (E.D. Cal. 2010).  Furthermore, "[a]n insurer is entitled to summary judgment [on a bad faith claim] based on a genuine dispute over coverage or the

---

[7] "Unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" include: "(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear . . . . (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."  Cal. Ins. Code § 790.03.

1346074.8

value of the insured's claim **only where the summary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith**." *Id.* (emphasis added) (citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007)).[8]

Here, Plaintiffs allege that their claims were incorrectly denied or obstructed.  Compl. ¶¶ 28, 36, 38, 71, 124, 125.  These allegations, combined with detailed descriptions of HCC's bad faith and obstructive conduct, suffice to survive the motion to dismiss stage.  Without the benefit of discovery as to the merits of Plaintiffs' claims, the Court may not properly find an issue of fact precluding a bad-faith finding against HCC.

**E.      Plaintiffs' Claim for Unjust Enrichment Should Not Be Dismissed**

In stating that there is no claim for unjust enrichment, HCC ignores recent Ninth Circuit authority holding that unjust enrichment is a claim for relief in and of itself.  *See, e.g.*, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014).  While Plaintiffs recognize the case law providing that an unjust enrichment claim should not be brought alongside a UCL claim for restitution when it is duplicative, they respectfully submit that this is not a basis to dismiss Plaintiffs' claim, for various reasons.

First, in light of this recent Ninth Circuit authority, those holdings dismissing unjust enrichment claims at the pleading stage are hard to reconcile with the entitlement of alternative pleading under Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(d) establishes that unjust enrichment may be pled in the alternative to contract or statutory claims, as Plaintiffs have done here.  Compl. ¶¶ 141-46.

Second, and relatedly, HCC challenges the UCL claim.  Although HCC's arguments lack merit—for the reasons set forth above—HCC cannot seriously dispute Plaintiffs' right to restitution in some form.

Third, Plaintiffs expressly seek both restitutionary *and* non-restitutionary disgorgement,

---

[8] The case law cited by HCC on this point is therefore inapposite.  In *Sierzega v. Country Preferred Ins. Co.*, the 9th Circuit upheld a *summary judgment* dismissal of a bad faith claim where the District of Nevada—construing Nevada law and enjoying the benefit of a full discovery record—found a genuine issue of fact as to whether the insured was covered under the policy. 650 F. App'x 388, 390 (9th Cir. 2016).  That case simply provides no guidance here.

1346074.8

1    making their claim non-duplicative on its face.  Compl. at 30 (¶¶ C and D).  And, as a substantive

2    matter, Plaintiffs have alleged not only that Class members spent money they would not have had

3    to spend, but that Defendants have been unjustly enriched in the form of "higher premiums *and*

4    *greater revenues than they would have enjoyed had they acted lawfully.*"  Compl. ¶ 143.  The

5    type of recoupment enjoyed by all Defendants was expressly noted as not being limited to the

6    nominal insurer, but included other economic gains beyond premiums.  At the pleading stage,

7    Plaintiffs have more than adequately alleged that all Defendants have been unjustly enriched.

8           Fourth, the cases cited by HCC involve situations in which courts had already made

9    findings on other allegations that precluded the survival of an unjust enrichment claim.  *See, e.g.*,

10   *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *10 (N.D. Cal.

11   June 18, 2013); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070,

12   1077 (N.D. Cal. 2011).  Unjust enrichment, which is synonymous with restitution in California

13   law, has its own elements—and these elements do not track Plaintiffs' other claims: "The

14   elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of

15   the benefit at the expense of another.'"  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593

16   (2008).

17          **F.      Plaintiffs Should Be Permitted to Amend the Complaint if the Court
18                    Identifies Any Pleading Infirmities**

19          "Dismissal without leave to amend is improper unless it is clear . . . the complaint could

20   not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009);

21   Fed. R. Civ. P. 15(a)(2).  "[R]equests for leave [to amend] should be granted with 'extreme

22   liberality.'"  *Moss*, 572 F.3d at 972.

23          Plaintiffs have articulated viable legal theories for each of the claims discussed in this

24   brief, and should be afforded an opportunity to allege more facts should the Court require it.

25                                    **CONCLUSION**

26          For the reasons set forth above, HCC's motion to dismiss should be denied in its entirety.

27

28

Dated: May 12, 2017                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                       By: /s/ Rachel Geman

                                       Rachel Geman (admitted *pro hac vice*)
                                       rgeman@lchb.com
                                       250 Hudson Street, 8th Floor
                                       New York, NY  10013-1413
                                       (212) 355-9500

                                       Kelly M. Dermody (State Bar No. 171716)
                                       kdermody@lchb.com
                                       Michelle A. Lamy (State Bar No. 308174)
                                       mlamy@lchb.com
                                       275 Battery Street, 29th Floor
                                       San Francisco, CA  94111-3339
                                       (415) 956-1000

                                       CARNEY BATES & PULLIAM, PLLC
                                       Allen Carney (admitted *pro hac vice*)
                                       acarney@cbplaw.com
                                       David Slade (admitted *pro hac vice*)
                                       dslade@cbplaw.com
                                       519 W. 7th Street
                                       Little Rock, AR  72201
                                       (501) 312-8500

                                       CUNEO GILBERT & LADUCA, LLP
                                       Michael J. Flannery (State Bar No. 196266)
                                       mflannery@cuneolaw.com
                                       7733 Forsyth Boulevard, Suite 1675
                                       St. Louis, MO 63105
                                        (314) 226-1015

                                       Matthew Prewitt (State Bar No. 291593)
                                       mprewitt@cuneolaw.com
                                       16 Court Street, Suite 1012
                                       Brooklyn, NY 11241
                                       (202) 789-3960

                                       MEHRI & SKALET
                                       Jay Angoff (admitted *pro hac vice*)
                                       jay.angoff@findjustice.com
                                       1250 Connecticut Avenue, NW, Suite 300
                                       Washington, D.C. 20036
                                       (202) 822-5100

                                       *Attorneys for Plaintiffs and the Proposed Class*