Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
David Slade (*pro hac vice*)
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR  72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314.226.1015
Facsimile:  202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:  202.789.3960
Facsimile:  202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone:  202.822.5100

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOHAMMED AZAD and DANIELLE BUCKLEY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>TOKIO MARINE HCC – MEDICAL INSURANCE SERVICES GROUP, HEALTH INSURANCE INNOVATIONS, INC., HCC LIFE INSURANCE COMPANY, and CONSUMER BENEFITS OF AMERICA,<br><br>        Defendants. | Case No.  4:17-cv-618-PJH<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO HCC LIFE INSURANCE COMPANY AND HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE CLASS ACTION ALLEGATIONS**<br><br>Date:    June 14, 2017<br>Time:    9:00 a.m.<br>Place:    Courtroom 3<br><br>Complaint Filed: February 7, 2017 |

1346075.7

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO.  4:17-CV-618

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ................................................................................................. 1

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 2

    A.    Defendants' Sale and Administration of Short-Term Medical Insurance
        Policies. ....................................................................................................... 2

    B.    Defendants' Common Alleged Practices Cause Common Injuries. ................ 2

    C.    Plaintiffs' Experiences and the Underlying Litigation............................... 4

    D.    Procedural History .................................................................................... 5

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT .................................................................................................................... 6

    A.    Motions to Strike Class Allegations Are Routinely Rejected. ...................... 6

        1.    Motions to Strike Class Allegations Are Premature and Disfavored.......... 6

        2.    Defendants' Case Law Confirms the Impropriety of Their Motion. .......... 8

    B.    At the Appropriate Time, Plaintiffs Will Show that Their Claims Are Well-
        Suited to Class-Wide Adjudication........................................................... 11

        1.    Plaintiffs and the Class Were Exposed to Serial and Uniform
            Misrepresentations About the Quality of Defendants' STMs.................. 11

        2.    Defendants' Improper Claims Handling Is Amendable to Class
            Treatment. ........................................................................................... 12

        3.    Defendants Ignore the Various Class Structure and Case
            Management Tools at this Court's Disposal. ........................................... 15

    C.    Defendants Fail to Articulate that They Are Prejudiced by Plaintiffs' Class
        Allegations. ............................................................................................. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Western Door & Trim v. Arch Specialty Ins. Co.*,
No. CV 15-00153 BRO SPX, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015).........................11

*Amey v. Cinemark USA Inc*,
No. 13-CV-05669-WHO, 2015 WL 2251504 (N.D. Cal. May 13, 2015) .................................15

*Andrews v. Home Depot U.S.A., Inc.*,
No. C-03-5200, 2005 WL 1490474 (D.N.J. June 23, 2005) ......................................................7

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011)............................7, 8, 12, 15

*Baker v. Microsoft Corp.*,
797 F.3d 607 (9th Cir. 2015).....................................................................................................8

*Basurco v. 21st Century Ins. Co.*,
108 Cal. App. 4th 110 (2003) ..................................................................................................17

*Bates v. Bankers Life and Casualty Co.*,
993 F. Supp. 2d 1318 (D. Or. 2014) ..................................................................................12, 13

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014)..................................................................................................17

*Blackie v. Barrack*,
524 F.2d 891, 902 (9th Cir.1975)..............................................................................................14

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)...........................................................................................11, 18

*Campion v. Old Republic Home Prot. Co.*,
272 F.R.D. 517 (S.D. Cal. 2011)........................................................................................17, 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) .....................................................................................8

*Cohen v. DirectTV, Inc.*,
178 Cal. App. 4th 966 (2009) ..................................................................................................17

*Coolsystems, Inc. v. Nice Recovery Sys. LLC*,
No. 16-CV-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016)....................................6

*Covillo v. Specialtys Cafe*,
Case No. C-11-00594 DMR, 2011 WL 6748514 (N.D. Cal. Dec. 22, 2011) ...........................9

*Cruz v. Sky Chefs, Inc.*,
No. C-12-02705 DMR, 2013 WL 1892337 (N.D. Cal. May 6, 2013)........................................9

*Doninger v. Pac. Nw. Bell, Inc.*,
564 F.2d 1304 (9th Cir. 1977)..........................................................................................7, 8, 19

*Graves v. Sw. & Pac. Specialty Fin., Inc.*,
No. C 13-1159 SBA, 2013 WL 5945851 (N.D. Cal. Nov. 4, 2013)..........................................9

*Henry v. Allstate Insurance Co.*,
No. 07-1738, 2007 WL 2287817 (E.D. La., Aug. 8, 2007) ....................................................12

*Hernandez v. Dutch Goose, Inc.*,
No. C 13-03537 LB, 2013 WL 5781476 (N.D. Cal. Oct. 25, 2013).........................................6

*Hernandez v. State Farm Fire & Casualty Co.*,
No. 16CV200-LAB (JLB), 2017 WL 932198 (S.D. Cal. Mar. 9, 2017) .................................12

**TABLE OF AUTHORITIES**
(continued)

Page

*Hibbs-Rines v. Seagate Tech., LLC.*,
  No. C 08–05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ................................. 9

*In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*,
  274 F.R.D. 286 (N.D. Cal. 2011) ................................................................................ 16

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
  277 F.R.D. 586 (S.D. Cal. 2011) ................................................................................ 17

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ...................................................................................... 11

*In re First All. Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ...................................................................................... 16

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
  313 F.R.D. 578 (S.D. Cal. 2016) ................................................................................ 17

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................. 6, 8, 15

*In Re: Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  No. 09-02047, ECF No. 20740 (E.D. La. April 21, 2017) .......................................... 11

*Kazemi v. Payless Shoesource Inc.*,
  No. C 09–5142 MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ........................... 7

*Langan v. United Services Automobile Ass'n*,
  69 F. Supp. 3d 965 (N.D. Cal. 2014) ......................................................................... 10

*Meyer v. Bebe Stores, Inc.*,
  No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ..................... 7, 18

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) .................................................................................... 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ................................................................................ 16

*Newell v. State Farm Gen. Ins. Co.*,
  118 Cal. App. 4th 1094 (2004) ................................................................................... 17

*Oracle Am., Inc. v. Micron Tech., Inc.*,
  817 F. Supp. 2d 1128 (N.D. Cal. 2011) ....................................................................... 6

*Ramirez v. Baxter Credit Union*,
  No. 16-CV-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) ........................ 10

*Roberts v. Wyndham Int'l, Inc.*,
  Nos. 12–CV–5180–PSG, 12–CV–5083–PS, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ..... 9

*Rosales v. FitFlop USA, LLC*,
  882 F. Supp. 2d 1168 (S.D. Cal. 2012) ...................................................................... 10

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................ 10

*Spiers v. Liberty Mutual Fire Insurance Co.*,
  No. CIV.A. 06-4493, 2006 WL 4764430 (E.D. La. Nov. 21, 2006) ........................... 12

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .................................................................................... 16

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................ 10, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Wal-Mart v. Dukes,*
   131 S.Ct. 2541 (2011) ................................................................................................ 14

*Wells v. Allstate Ins. Co.,*
   210 F.R.D. 1 (D.D.C. 2002) ..................................................................................... 16

*Whittlestone, Inc. v. Handi-Craft Co.,*
   618 F.3d 970 (9th Cir. 2010) .............................................................................. 6, 15

*Wit v. United Behavioral Health,*
   317 F.R.D. 106 (N.D. Cal. 2016) ............................................................................ 16

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 5

Cal. Bus. & Prof. Code § 17500 ...................................................................................... 5

Cal. Ins. Code § 10384 ................................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(f) .................................................................................................... 5, 9

Fed. R. Civ. P. 23 .................................................................................................. 7, 12, 13

**Treatises**

7AA Charles A. Wright, Arthur R. Miller & Mary K. Kane,
   Fed. Prac. & Proc. Civ. § 1785.3 (3d. ed. 2017) ...................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES TO BE DECIDED

1.      Have Defendants demonstrated that Plaintiffs' well-pleaded, pre-discovery allegations of a common fraudulent scheme—involving the use of central scripts and conduct that has been scrutinized (and sanctioned) by various government agencies—can never be certified, notwithstanding that other courts have certified (on a proper record) similar claims involving insurance schemes?

2.      Is Defendants' failure to even argue prejudice another basis to deny their premature motion to strike?

### INTRODUCTION

Defendants HCC Life Insurance Company and HCC Medical Insurance Services LLC's motion to strike Plaintiffs' class action allegations is premature and without merit.  Defendants conflate the standard on a motion to strike with the standard for class certification.  Defendants invite the Court to skip the pleading and discovery stages of this litigation, and summarily decide the question of class treatment in their favor without the benefit of *any* record, let alone the sort of fulsome record Plaintiffs are required to present, and thus entitled to develop.

Defendants' motion runs contrary to well-settled law in the Ninth Circuit, as (correctly) applied by this Court.  This Court—like many others—has recognized that class allegations should not be struck at the pleading stage, except in unusual circumstances that are not present here.  At the appropriate time, Plaintiffs will show that their claims are well-suited to class-wide adjudication.  All Class members were subjected to the same common and fraudulent scheme, whereby Defendants engage in fraudulent marketing and take Class members' premium payments only to subject them, if or when they incur potentially catastrophic medical expenses, to a claims process that is designed to uniformly and unconscionably deny the payment of valid claims.  Plaintiffs' claims sound in common evidence and raise numerous overriding commonalities.  In addition, Defendants ignore the various class structure and manageability tools that will be at the Court's disposal when the issue of certification is ripe.

Defendants also fail to make the threshold showing that they are prejudiced by Plaintiffs'

1   class allegations.  Plaintiffs anticipate that Defendants will raise arguments about prejudice for

2   the first time in reply, but garden variety discovery is not prejudice, it is litigation. In addition, to

3   the extent Defendants have elsewhere asserted that *all* their policies and practices are consistently

4   lawful and appropriate, the class is the legally appropriate and efficient way to test this.

5   **FACTUAL BACKGROUND**

6       Defendants[1] distort the allegations in Plaintiffs' Complaint, in part by relying on disputed

7   fact-based assertions that will require discovery from common sources.[2]  Defendants assert that

8   Plaintiffs' claims rest on disparate representations regarding Defendants' Short Term Medical

9   ("STM") insurance policies and will require individualized inquiry into each Class members'

10  claims-handling experience.  To the contrary, Defendants engage in a common and fraudulent

11  scheme whereby they take Class members' premium payments, only to subject them to a claims

12  process that is designed to uniformly and unconscionably deny the payment of valid claims.

13  Complaint (Dkt. No. 1) ("Compl.") ¶¶ 90-146.

14  **A.      Defendants' Sale and Administration of Short-Term Medical Insurance**
            **Policies.**
15

16      Defendants HCC, HII, and CBA collectively market and administer STMs to California

17  consumers.  *Id*. ¶¶ 17-18, 22, 22 n.5, 42, 51-53, 55, 57.  Defendants HCC and HII have jointly

18  developed—and market and provide—their STMs in 45 states, including California.  *Id.* ¶¶ 17,

19  22, 22 n.5, 42, 51-53, 55.  Defendant CBA colludes with HCC and HII by acting as the group

20  administrator for the STMs, thereby allowing HCC and HII to avoid more stringent regulatory

21  requirements governing individually-issued health insurance policies.  *Id.* ¶¶ 18, 57.

22  **B.      Defendants' Common Alleged Practices Cause Common Injuries.**

23      Defendants' claim processing procedures for their STMs—and the requirements placed

24  _____

25  [1] Defendants on this motion are HCC Life Insurance Company and HCC Medical Insurance
    Services LLC ("HCC").  Health Insurance Innovations, Inc. ("HII") and Consumer Benefits of
26  America ("CBA") are also Defendants in this action, and are included within the term
    "Defendants" where no specific Defendant is indicated.

27  [2] Notably, Defendants seek to have it both ways: having opted—improperly—to include
    extensive self-serving and one-sided evidence with their pending motions to dismiss and strike
28  (material this Court should not consider, but that, in any event, does not advance Defendants'
    motions), here they claim that no discovery is needed.

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO.  4:17-CV-618

upon the insureds—are purposely engineered and uniformly applied to allow the delay and denial of the claims of policyholders.  *Id.* ¶¶ 3, 54, 56, 58-73.  Upon submitting claims, insureds are required to provide every identifiable medical record in their history, regardless of whether such record relates to the claim at issue, and notwithstanding that this requirement is not disclosed in advance.  *Id.* ¶¶ 3, 26-27, 33-37, 39-73.  This requirement, common to all Class members, gives Defendants three common avenues for denying valid claims, effectively and improperly guaranteeing that Class members' often large bills go unpaid.

The ***first*** step in the strategy is to comb through all records provided by the insured in an effort to characterize the claim at issue as a "pre-existing condition."  *Id.* ¶¶ 3, 26-27, 33-37, 39-57, 63-73.  Defendants uniformly omit any appropriate explanation of the scope of this exclusion from their public-facing marketing materials.  *Id.* ¶¶ 3, 39-57, 63-73.  However, once a claim is submitted, the term is interpreted so broadly and incorrectly, and in such bad faith, as to encompass virtually any medical condition, regardless of when—or even whether—it was diagnosed or treated.  *Id.*  If the insured's presented claim can be linked to *anything* in the insured's past, *from any point in time*, the claim is denied.  *Id.*

***Second***, when there is no plausible way to link an insured's claim to a prior medical condition, Defendants again demand to search through all available records—regardless of their relation to the claim—seeking evidence of a condition that would have rendered the claimant ineligible for coverage under the STM, thereby allowing Defendants to void the policy and not pay the claim.  *Id.* ¶¶ 3, 26-27, 33-37, 56-73.  This practice is also uniform to all Class members.  *Id.*

***Third***, Defendants' policy and practice is to premise refusals to pay on common and incorrect assertions that there is insufficient information to process claims.  *Id.* ¶¶ 3, 26-27, 33-37, 54, 58-73.  This allows Defendants to sidestep paying proper claims because it would be impossible for the insured to provide the level of detail purportedly needed.  *Id.*

In light of the above, common conduct, Defendants have also engaged in uniform material omissions in their representations to, and misrepresentations to, Class members.  Namely, they have marketed health insurance policies that, because of the unconscionable claims-handling

1   processes described above, exclude virtually *all claims* submitted by the insureds, and are

2   therefore borderline worthless. *Id*. ¶¶ 67, 100.  Through various declarations, HCC has

3   introduced copious pages of website screen shots and welcome kits.  *See, generally*, Dkt. Nos. 50-

4   52.  However, none of these documents, nor any documents referenced in Plaintiffs' Complaint,

5   could reasonably be said to alert an insured or a prospective insured to the virtually limitless

6   obstructions and exclusions applied by Defendants in their claims-handling practices.  *Id*.; *see*

7   *also* Compl. ¶ 67.

8           Defendants' internal policies and procedures, public-facing representations, and customer

9   service scripts reveal that the above-described practices are uniform to the Class.  A

10  whistleblower contractor in HCC's customer service department confirmed that these policies and

11  procedures are designed to frustrate Class members' attempts to appeal a claim's denial or to

12  provide the information purportedly sought by Defendants, and further confirmed that Defendants

13  have created a rigid script for dealing with insureds, from which their employees cannot deviate.

14  *Id*. ¶¶ 58-72.  As the whistleblower states: "the name of the game is runaround…It really felt like

15  everything was designed to be so cumbersome that the customer would either get frustrated and

16  give up or they could stall long enough to not have to pay out on the claim….The whole idea here

17  is that we're a legal buffer between HCC and [the insured] as was made crystal clear in training

18  when they said outright that we'd be thrown under the bus if we ever deviated from the script."

19  *Id*. ¶ 67.

20          **C.      Plaintiffs' Experiences and the Underlying Litigation**

21          Plaintiffs Azad and Buckley were, respectively, insured under Defendants' STMs.  *Id*. ¶¶

22  19-38.  Each Plaintiff purchased their STM policies in the belief that such policies would cover

23  unexpected medical conditions.  *Id*.  Each Plaintiff *did* suffer an unexpected and major health

24  incident and, in reliance upon the language of the policies, properly submitted claims.  *Id*.  Upon

25  submitting claims to Defendants, however, each Plaintiff was asked for an ever-increasing

26  number of medical records.  *Id*.  Specifically, as pled in the Complaint and supported with explicit

27  references to Defendants' records, Plaintiffs were not merely required to provide medical records

28  relevant to their claims; rather, they were required to provide *all* medical records, provider notes,

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO.  4:17-CV-618

1   and labs for the five years preceding their claims. *Id.* ¶¶ 26, 33; *see also*, Declaration of John

2   Padgett in Support of HCC Life Insurance Company and HCC Medical Insurance Services,

3   LLC's Motion to Dismiss and Their Alternative Motion to Strike Class Allegations (Dkt. No. 52)

4   ("Padgett Decl.") at Exs. 16-19.

5          After months of complying with Defendants' requests for more information, consistent

6   with the class allegations, both Azad and Buckley were again told that their claims could not be

7   processed.  Compl. ¶¶ 26-28, 33-38; Padgett Decl. at Exs. 16-19.  Plaintiff Azad's bills totaled

8   roughly $12,000, and Plaintiff Buckley's roughly $3,500.  Motion to Stay (Dkt. No. 63) at n.4.

9   Plaintiffs each made continual efforts to provide sufficient information to Defendants, and were

10  continually asked for more.  Compl. ¶¶ 26-38.  Discouraged and convinced that Defendants were

11  not acting in good faith, consistent with Defendants' common scheme (and thus the experience of

12  other Class members), Plaintiffs gave up and realized they would have to pay their medical bills

13  directly. *Id.*

14         Thus, like all Class members, Plaintiffs were: (1) misled into purchasing insurance

15  policies that they believed would cover unforeseen medical events; (2) subjected to Defendants'

16  unconscionable claims-handling practices, despite complying in good faith with Defendants'

17  increasingly-unreasonable (and impossible to fulfill) requests; and (3) ultimately had their claims

18  files closed by  Defendants, in bad faith, which left Plaintiffs (like all Class members) on their

19  own to resolve their unpaid, substantial medical bills.

20         **D.**      **Procedural History**

21         Plaintiffs filed their Complaint on February 7, 2017, alleging five claims for relief:  (1)

22  violations of Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of Cal. Bus. & Prof. Code

23  § 17500, *et seq.*; (3) breach of contract; (4) breach of the implied covenant of good faith and fair

24  dealing; and (5) unjust enrichment.  Defendant HCC then filed the instant Motion to Strike.  Dkt.

25  No. 48 ("Mot.").

26                              **LEGAL STANDARD**

27         Federal Rule of Civil Procedure ("Rule") 12(f) provides that a court "may strike from a

28  pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted). Motions to strike are "generally disfavored because [they] may be used as delaying tactics and because of the strong policy favoring resolution of the merits." *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *3 (N.D. Cal. Oct. 25, 2013) (citation and internal quotation marks omitted).

A motion to strike should be denied "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Coolsystems, Inc. v. Nice Recovery Sys. LLC*, No. 16-CV-02958-PJH, 2016 WL 6091577, at *2 (N.D. Cal. Oct. 19, 2016) (Hamilton, J.) (citation and internal quotation marks omitted). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). Moreover, "courts may not resolve disputed and substantial factual or legal issue[s] in deciding . . . a motion to strike," *Whittlestone*, 618 F.3d at 973 (internal quotation marks omitted), and "must view the pleading in a light most favorable to the pleading party," *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1131 (N.D. Cal. 2011) (Hamilton, J.) (internal quotation marks omitted).

"Given the disfavored status of Rule 12(f) motions, courts often require a showing of prejudice by the moving party before granting the requested relief." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *5 (N.D. Cal. Feb. 2, 2015) (internal quotation marks omitted).

## **ARGUMENT**

### A.   **Motions to Strike Class Allegations Are Routinely Rejected.**

#### 1.   **Motions to Strike Class Allegations Are Premature and Disfavored.**

Motions to strike are not properly directed at class allegations, where such allegations are "clearly relevant to the subject matter of the litigation, and do not amount to redundant, immaterial, impertinent, or scandalous matters." *Astiana v. Ben & Jerry's Homemade, Inc.*, No.

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO.  4:17-CV-618

1    C 10-4387 PJH, 2011 WL 2111796, at *14 (N.D. Cal. May 26, 2011) (Hamilton, J.) (citation

2    omitted).  A motion to strike class allegations is appropriate only in the "rare case[]" that the

3    complaint, on its face, demonstrates that the requirements of Rule 23 cannot possibly be

4    satisfied.  *Kazemi v. Payless Shoesource Inc.*, No. C 09–5142 MHP, 2010 WL 963225, at *2

5    (N.D. Cal. Mar. 16, 2010) (quoting *Andrews v. Home Depot U.S.A., Inc.*, No. C-03-5200, 2005

6    WL 1490474, at *2 (D.N.J. June 23, 2005)).  *See also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d

7    1304, 1313 (9th Cir. 1977) (holding that class certification may be denied at such an early stage

8    of the litigation only where a plaintiff's allegations "fail to make even a prima facie showing of

9    Rule 23's prerequisites"); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245

10    (C.D. Cal. 2011) ("While defendant cites several cases for the proposition that class allegations

11    can be stricken at the pleadings stage, it is in fact rare to do so in advance of a motion for class

12    certification.").

13        The appropriate course is to permit discovery before requiring plaintiffs to defend the

14    propriety of class certification.  As this Court has recognized:

15

16            Determining whether to certify the class is normally done through a motion for class certification under Rule 23.  While it is true that a few courts have held that Rule 12(f) provides a means of striking

17            class allegations, such a motion appears to allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification.

18

19    *Astiana*, 2011 WL 2111796, at *14.  *See also* 7AA Charles A. Wright, Arthur R. Miller & Mary

20    K. Kane, Fed. Prac. & Proc. Civ. § 1785.3 (3d. ed. 2017) ("As a practical matter, the court's

21    [class certification] determination . . . usually should be predicated on more information than the

22    complaint itself affords.").

23        This Court's analysis was—and remains—consistent with Ninth Circuit precedent.  *See,*

24    *e.g.*, *Doninger*, 564 F.2d at 1313 ("[T]he better and more advisable practice for a District Court

25    to follow is to afford the litigants an opportunity to present evidence as to whether a class action

26    was maintainable."); *Baker v. Microsoft Corp.*, 797 F.3d 607, 615 (9th Cir. 2015) ("We hold

27    only that the district court committed an error of law and abused its discretion when it struck the

28    class action allegations from the complaint in contravention of applicable Ninth Circuit

1    precedent.").

2         Other courts within this District overwhelmingly agree with this Court's conclusion and

3    follow this Ninth Circuit precedent.  *See, e.g.*, *Wal-Mart*, 505 F. Supp. 2d at 615-16 ("[D]ismissal

4    of class allegations at the pleading stage should be done rarely[.] . . . [T]he better course is to

5    deny such a motion because the shape and form of a class action evolves only through the process

6    of discovery. . . .  [P]laintiffs should at least be given the opportunity to make the case for

7    certification based on appropriate discovery.") (internal quotation marks omitted); *Hibbs-Rines v.*

8    *Seagate Tech., LLC.*, No. C 08–05430 SI, 2009 WL 513496, at *3 (N.D. Cal. Mar. 2, 2009)

9    (same); *Roberts v. Wyndham Int'l, Inc.*, Nos. 12–CV–5180–PSG, 12–CV–5083–PS, 2012 WL

10   6001459, at *7 (N.D. Cal. Nov. 30, 2012) ("The court agrees that Defendants' arguments are

11   premature.  Defendants' papers highlight that they really seek an early class certification

12   determination, rather than merely striking class allegations."); *Graves v. Sw. & Pac. Specialty*

13   *Fin., Inc.*, No. C 13-1159 SBA, 2013 WL 5945851, at *4 (N.D. Cal. Nov. 4, 2013) ("Defendant's

14   motion to strike is premature given that Defendant has not filed an answer to the complaint,

15   discovery has not yet commenced, and no motion for class certification has been filed."); *Cruz v.*

16   *Sky Chefs, Inc.*, No. C-12-02705 DMR, 2013 WL 1892337, at *7 (N.D. Cal. May 6, 2013) ("Sky

17   Chefs has yet to file an answer and class discovery began only recently.  Given the relatively

18   early stage of the proceedings, it is premature to determine whether this matter should proceed as

19   a class action."); *Covillo v. Specialtys Cafe*, No. C-11-00594 DMR, 2011 WL 6748514, at *7

20   (N.D. Cal. Dec. 22, 2011) (denying Rule 12(f) motion to strike class allegations and noting that

21   "[d]iscovery is integral to developing the shape and form of a class action, and the court will

22   determine the propriety of the class allegations during the class certification process") (internal

23   quotation marks and citation omitted).

24              **2.    Defendants' Case Law Confirms the Impropriety of Their Motion.**

25        Defendants offer no reason to depart from this general rule.  The majority of the cases

26   Defendants cite were decided at class certification on a full record,[3] and therefore do not support

27   _____

28   [3] *See infra* at Section B.2 (explaining why these cases are also inapposite for the purposes of a
     certification analysis).

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
                                                          HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
                                                                          CASE NO.  4:17-CV-618

1   Defendants' argument that an early certification decision is warranted on this motion to strike.

2   The remaining cases are inapposite and readily distinguishable.  In *Sanders v. Apple Inc.*, 672 F.

3   Supp. 2d 978, 991 (N.D. Cal. 2009), for example, the court struck a proposed nationwide class,

4   with leave to plead a more narrow class, because the class definition necessarily included non-

5   class members.  Moreover, courts within the Ninth Circuit have expressly rejected *Sanders*,

6   opting instead to follow this Court's analysis in *Astiana*.  *See Rosales v. FitFlop USA, LLC*, 882

7   F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (rejecting *Sanders*, adopting *Astiana*, and finding "that

8   class suitability issues are best resolved during a motion for class certification").  In *Ramirez v.

9   Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017), the

10  court actually noted that "it is in fact rare to [strike class allegations] in advance of a motion for

11  class certification," *id*. at *7, and struck a *period* of plaintiffs' class allegation only because

12  plaintiffs sought to certify a class for longer than permitted by the statute of limitations, *id*. at *8.

13  In *Langan v. United Services Automobile Ass'n*, 69 F. Supp. 3d 965, 988 (N.D. Cal. 2014), the

14  court again noted that "[c]ourts in this district rarely grant motions to strike class allegations," but

15  granted because plaintiff—a pro se law student with no expectation of passing the bar—could not

16  possibly serve as an adequate class representative.  And in *Tietsworth v. Sears*, 720 F. Supp. 2d

17  1123, 1146 (N.D. Cal. 2010), the Court struck class allegations on the basis of an outdated[4]

18  ascertainability analysis.  *See id.* at 1147 ("[T]he class as alleged in the SAC is not ascertainable.

19  Defendants' motion to strike Plaintiffs' class allegations will be granted, with leave to amend.").

20  None of these concerns exist here.

21          Even the few insurance cases Defendants cite do not save their motion.  To the extent

22  Defendants assert that there is a categorical rule against class certification in the insurance

23  context—or any time a case involves limited discretion in claims handling—that is not the law, as

24  discussed in Section B below.  Moreover, each case is—like the others—readily distinguishable.

25  In *American Western Door & Trim v. Arch Specialty Ins. Co.*, No. CV 15-00153 BRO SPX, 2015

26  _____

27  [4] *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123, 1124 n.3 (9th Cir. 2017) (finding the "ascertainability" requirement some courts read into the class certification analysis "not compatible with the language of Rule 23," and rejecting any such requirement within the Ninth

28  Circuit).

-9-                PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
                        HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
                        CASE NO. 4:17-cv-618

1346075.7

WL 1266787, at *9 (C.D. Cal. Mar. 18, 2015), there seemed no dispute that the factual allegations

of the common scheme presented common questions; rather, the dispute focused on defendants'

argument that the insurance laws of the 50 states differed (and the plaintiffs, rather than

presenting a roadmap to manage this, apparently denied the differences).  After agreeing with

defendants, the court determined that the "main issue"—the amount by which plaintiffs'

deductibles were improperly exhausted, their damages—would "require individualized inquiries

into each class member's situation."  To the extent the court's actual holding was that differences

in damages preclude certification, this is wrong as a matter of well-settled law.[5]

Henry v. Allstate Insurance Co., No. 07-1738, 2007 WL 2287817, at *1 (E.D. La., Aug. 8,

2007) and Spiers v. Liberty Mutual Fire Insurance Co., No. CIV.A. 06-4493, 2006 WL 4764430,

at *1 (E.D. La. Nov. 21, 2006) involved families seeking to obtain full compensation for damages

to their homes caused by Hurricane Katrina; both cases lacked the (pre-discovery) evidence of

common and systemic obstruction and bad faith, which Plaintiffs allege.  See Compl. ¶¶ 58-72.

In Hernandez v. State Farm Fire & Casualty Co., No. 16CV200-LAB (JLB), 2017 WL 932198,

at *4 (S.D. Cal. Mar. 9, 2017), numerous franchises performed the allegedly defective water

mitigation services for the putative class, whereas the plaintiffs were serviced by (and named)

only two, and the court found it unlikely that these various, unnamed local franchises all provided

the same substandard water mitigation service.  And, in Bates v. Bankers Life and Casualty Co.,

993 F. Supp. 2d 1318, 1340-43 (D. Or. 2014), the court's predominance analysis was tied up in an

overly stringent typicality finding that, though lengthy, cited no law (and was set against the

backdrop of Oregon common law).

Accordingly, Defendants offer the Court no reason to depart from its conclusion, and the

general rule, that motions to strike are not properly directed toward class allegations.  Astiana,

2011 WL 2111796, at *14.  On these grounds alone, the Court should deny Defendants' motion

[5] See In Re: Chinese-Manufactured Drywall Prods. Liab. Litig., No. 09-02047, ECF No. 20740 at
14 (E.D. La. April 21, 2017) ("[D]istrict courts may divide damage hearings into phases,
particularly in complex cases where, as here, such a division would serve judicial efficiency by
separating common issues from individual ones."); see also In re Deepwater Horizon, 739 F.3d
790, 815 (5th Cir. 2014) ("[E]ven wide disparity among class members as to the amount of
damages does not preclude class certification and courts, therefore, have certified classes even in
light of the need for individualized calculations of damages.") (internal quotation marks omitted).

1  and allow Plaintiffs the opportunity to demonstrate, at the proper stage of this litigation, that the

2  requirements of Rule 23 are satisfied.

3      **B.**   **At the Appropriate Time, Plaintiffs Will Show that Their Claims Are Well-Suited to Class-Wide Adjudication.**

4

5      Though motions to strike are not properly directed at the merits of class claims,

6  Defendants cannot—and do not—show that certification of a class in this case is impossible or so

7  unlikely that the class allegations deserve to be struck from the pleading.  To the contrary,

8  Plaintiffs' class allegations are more than sufficient to make a prima facie showing of the Rule 23

9  requirements.  This is far from the "rare case" where certification should be denied without

10  affording the opportunity to take discovery.

11      Defendants bear the burden of proving that their arguments defeat class certification at

12  this early stage. *See Bates*, 993 F. Supp. 2d at 1340-41 ("[I]n the context of a motion to *strike*

13  class allegations, in particular where such a motion is brought in advance of the close of class

14  discovery, it is properly the defendant who must bear the burden of proving that the class is *not*

15  certifiable.") (emphasis in original).  As set forth below, Defendants do not meet that burden.

16      At the appropriate time, and with the benefit of a developed record, Plaintiffs will

17  demonstrate that their claims are well-suited to class-wide adjudication.  And, when that time

18  comes, the Court will possess several tools—which Defendants completely ignore—to address

19  any concerns regarding manageability.

20      **1.**   **Plaintiffs and the Class Were Exposed to Serial and Uniform Misrepresentations About the Quality of Defendants' STMs.**

21

22      First, Defendants argue Plaintiffs' class allegations fail because putative class members

23  were exposed to disparate information about the preexisting conditions exclusion.  Mot. at 5-13.

24  That is wrong and misstates the claims.  In light of the Defendants' common, fraudulent scheme

25  to avoid payment of valid claims, Defendants engaged in serial and uniform material omissions

26  and misrepresentations to Class members about the quality of their STMs.  Defendants marketed

27  health insurance policies that, because of the unlawful claims-handling processes described

28  above, were essentially worthless.  None of the documents Defendants attach to their motions to

-11-

1    dismiss and strike, nor any documents referenced in Plaintiffs' Complaint, could reasonably be

2    said to alert an insured or a prospective insured to the virtually limitless exclusions (or the

3    burdensome record requests) applied by Defendants in their claims-handling practices.

4    Meanwhile, Defendants' internal policies and procedures, misrepresentations, and customer

5    service scripts reveal that the above-described practices are uniform to the Class.

6           A common course of fraudulent conduct—such as the one challenged here—readily

7    satisfies the commonality requirement.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)

8    (granting certification where "the class is united by a common interest in determining whether a

9    defendant's course of conduct is in its broad outlines actionable"); *Meyer v. Portfolio Recovery*

10   *Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) ("The existence of shared legal issues with

11   divergent factual predicates is sufficient, as is a common core of salient facts coupled with

12   disparate legal remedies within the class.") (citation omitted).

13          Here, Plaintiffs challenge a common, fraudulent course of conduct perpetrated on all Class

14   members in substantially the same manner, giving rise to numerous common questions.  *See*

15   Compl. ¶ 85 (identifying common questions).  As just one example, one overriding common

16   question—subject to common answers—is the legality of HCC's post-claims underwriting policy.

17   *See* Cal. Ins. Code § 10384 (prohibiting this practice).  HCC may argue it is legal for all;

18   Plaintiffs and the Class allege it is a uniform unlawful practice whose status does not vary by

19   Class member.  If the practice is unlawful—and Plaintiffs are confident that it is—then the

20   consequences of this unlawful conduct will likewise be common to the Class.  If it is lawful, then

21   that question is answered for everyone (although HCC will still be liable for its other misconduct,

22   but the issues are narrowed).

23          Class treatment of the many common questions will be demonstrated to be appropriate,

24   manageable, and a superior way to treat claims of vulnerable Class members facing catastrophic

25   expenses.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

26                        **2.    Defendants' Improper Claims Handling Is Amendable to Class**

27                                **Treatment.**

28          Second, Defendants argue Plaintiffs' improper claims-handling theory is not amenable to

-12-

1    class treatment because individualized examination of how each claim was investigated will be

2    necessary.  Mot. at 13-18.

3        When plaintiffs claim a defendant's policy and practice violates the law, the key question

4    for class certification is whether there is a consistent practice that can serve as a basis for

5    consistent liability.  *Amey v. Cinemark USA Inc*, No. 13-CV-05669-WHO, 2015 WL 2251504, at

6    *6 (N.D. Cal. May 13, 2015).  Here, Plaintiffs have alleged such a practice.

7        Defendants attempt to manufacture individualized issues by asserting that "Plaintiffs'

8    allegations of various improper claims-handling activities . . . demonstrate the disparate,

9    uncommon nature of the alleged misconduct and the need for individualized inquiry."  Mot. at 3.

10   But their assertions are flatly contradicted by the pleadings.  For example, Plaintiffs cite to a

11   whistleblower contractor of Defendants detailing Defendants' systemic acts of obstruction and

12   bad faith.  Compl. ¶¶ 58-72.  Further, the Complaint tethers this internal information to Plaintiffs'

13   *own* experiences, in which Defendants, in bad faith and pursuant to a uniform obstructive tactic,

14   sought "all medical records, provider notes, and labs" from Plaintiffs despite the irrelevance of

15   those records to Plaintiffs' claims.  *Id.* ¶¶ 3, 26-27, 33-37.  Defendants' bald assertions to the

16   contrary, when Plaintiffs have clearly and adequately alleged otherwise, creates a quintessential

17   factual issue.  It would be improper for the Court to resolve this factual dispute on a motion to

18   strike.  *Whittlestone*, 618 F.3d at 973; *In re Wal-Mart Stores*, 505 F. Supp. 2d at 614.  Viewing

19   the complaint in the light most favorable to Plaintiffs, as this Court must on a motion to strike,

20   *Astiana*, 2011 WL 2111796, at *13, demonstrates that Plaintiffs' adequately pleaded common

21   questions will predominate.

22       Indeed, other courts have certified class actions predicated on uniform unlawful policies,

23   including in cases involving discretionary claims handling and similar issues.  *See In re First All.

24   Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) ("It is the underlying scheme which demands

25   attention.  Each plaintiff is similarly situated with respect to it, and it would be folly to force each

26   bond purchaser to prove the nucleus of the alleged fraud again and again.") (citation omitted);

27   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 489-93 (C.D. Cal. 2006) (finding

28   common issues regarding insurer's overarching fraudulent scheme to induce class members to

-13-

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND
HCC MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO.  4:17-CV-618

purchase deferred annuities predominated over questions affecting only individual members); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 140 (N.D. Cal. 2016) (finding plan participants satisfied predominance requirement in class actions challenging arbitrary and capricious denial of coverage for mental health and substance use disorders); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) ("Allstate's alleged failure to disclose material changes to its claims handling procedures with respect to claimants represented by counsel is the legal basis for all class members' claims."); *In re Chase Bank USA, N.A. CHECK LOAN Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011) (certifying a class of cardholders alleging the bank breached the implied covenant of good faith and fair dealing, despite the fact that each class member was subjected to "discretionary" conduct by the defendant).

Defendants' case citations do not counsel otherwise.  In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), for example, the Ninth Circuit remanded for the district court to reconsider whether predominance could be shown, and noted that "it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant."  Similarly, several of Defendants' cases concerned UCL claims predicated upon misrepresentations that, *after the appropriate period of discovery*, plaintiffs could not demonstrate were common to the class.  *See Cohen v. DirectTV, Inc.*, 178 Cal. App. 4th 966, 979-81 (2009) (denying certification where the record showed the proposed class included customers never exposed to the alleged misrepresentations); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (same); *In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 609 (S.D. Cal. 2016) (same); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 608 (S.D. Cal. 2011) (same).  That simply is not the case here.  As Plaintiffs allege, all Class members were subjected to the common and systemic acts of obstruction and bad faith documented by the whistleblower contractor, Compl. ¶¶ 58-72, and corroborated by Plaintiffs' *own* experiences, *id.* ¶¶ 3, 26-27, 33-37.

Equally unavailing is the line of home insurance and home warranty cases cited by Defendants—*Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 536 (S.D. Cal. 2011);

1   *Newell v. State Farm Gen. Ins. Co.*, 118 Cal. App. 4th 1094, 1103 (2004); and *Basurco v. 21st*

2   *Century Ins. Co.*, 108 Cal. App. 4th 110, 119 (2003).  The *Campion* plaintiffs alleged, for

3   example, that their insurer fraudulently induced them to buy home warranty policies.  The district

4   court denied class certification of their breach of contract claim because the factual record,

5   *developed after an opportunity for discovery*, showed that "a very high percentage of the class

6   members received benefits under their plans," which introduced a high degree of individualized

7   inquiry into plaintiffs' claim for rescission and restitution.  *Campion*, 272 F.R.D. at 531.  No such

8   facts exist here.  To the contrary, Plaintiffs allege all Class members were subjected to the same

9   common and fraudulent scheme, and this allegation must be taken as true on this motion to strike.

10          To the extent that Defendants dispute Plaintiffs' contentions, Plaintiffs should at least be

11   entitled to conduct discovery to confirm them.  Any attempt by Defendants to foreclose such

12   opportunity at this early stage should be rejected.

13                          **3.      Defendants Ignore the Various Class Structure and Case Management
                                       Tools at this Court's Disposal.**

14

15          In arguing against certification at this early stage, Defendants also ignore the various class

16   structure and case management tools that will be at the Court's disposal when the time is right.

17   As the Ninth Circuit recently affirmed:

18                  [There is a] well-settled presumption that courts should not refuse
                    to certify a class merely on the basis of manageability concerns.
19                  This presumption makes ample sense given the variety of
                    procedural tools courts can use to manage the administrative
20                  burdens of class litigation.  For example, Rule 23(c) enables district
                    courts to divide classes into subclasses or certify a class as to only
21                  particular issues.

22   *Briseno*, 844 F.3d at 1128 (internal quotation marks and citations omitted).  Though it is too early

23   in the case to consider the propriety of such tools, or whether they will be needed at all, they will

24   be available if and when the Court addresses (on a proper record) the issue of class treatment.

25          **C.      Defendants Fail to Articulate that They Are Prejudiced by Plaintiffs' Class
                       Allegations.**

26

27          Defendants also fail to make the threshold showing that they are prejudiced by Plaintiffs'

28   class allegations.  *Meyer*, 2015 WL 431148, at *5.  In fact, Defendants do not even argue that

-15-

1   they face any prejudice as a result of Plaintiffs' class allegations.  Plaintiffs anticipate that

2   Defendants will raise arguments about prejudice for the first time in reply, but garden variety

3   discovery is not prejudice, it is litigation.  *See Doninger*, 564 F.2d at 1313 ("[T]he better and

4   more advisable practice for a District Court to follow is to afford the litigants an opportunity to

5   present evidence as to whether a class action was maintainable.  And, the necessary antecedent to

6   the presentation of evidence is, in most cases, enough discovery to obtain the material.").  In

7   addition, to the extent Defendants have elsewhere asserted that all their policies and practices are

8   consistently lawful and appropriate, they have the opportunity for common vindication through

9   the class device.

10          In the absence of any other conceivable prejudice, the Court should deny Defendants'

11  motion to strike Plaintiffs' class allegations.

12                                      **<u>CONCLUSION</u>**

13          For the reasons set forth above, Defendants' motion to strike should be denied in its

14  entirety.

15

16  Dated: May 12, 2017                  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

17                                       By:  */s/ Rachel Geman*

18                                       Rachel Geman (admitted *pro hac vice*)
                                         rgeman@lchb.com
19                                       250 Hudson Street, 8th Floor
                                         New York, NY  10013-1413
20                                       (212) 355-9500

21                                       Kelly M. Dermody (State Bar No. 171716)
                                         kdermody@lchb.com
22                                       Michelle A. Lamy (State Bar No. 308174)
                                         mlamy@lchb.com
23                                       275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
24                                       (415) 956-1000

25                                       CARNEY BATES & PULLIAM, PLLC
26                                       Allen Carney (admitted *pro hac vice*)
                                         acarney@cbplaw.com
27                                       David Slade (admitted *pro hac vice*)
                                         dslade@cbplaw.com
28                                       519 W. 7th Street

1

Little Rock, AR  72201
(501) 312-8500

2

3

CUNEO GILBERT & LADUCA, LLP
Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
 (314) 226-1015

4

5

6

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
16 Court Street, Suite 1012
Brooklyn, NY 11241
(202) 789-3960

7

8

9

10

MEHRI & SKALET
Jay Angoff (admitted *pro hac vice*)
jay.angoff@findjustice.com
1250 Connecticut Avenue, NW, Suite 300
Washington, D.C. 20036
(202) 822-5100

11

12

13

14

*Attorneys for Plaintiffs and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-