Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
David Slade (*pro hac vice*)
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR  72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314.226.1015
Facsimile:  202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:  202.789.3960
Facsimile:  202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone:  202.822.5100

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOHAMMED AZAD and DANIELLE BUCKLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOKIO MARINE HCC – MEDICAL INSURANCE SERVICES GROUP, HEALTH INSURANCE INNOVATIONS, INC., HCC LIFE INSURANCE COMPANY, and CONSUMER BENEFITS OF AMERICA,<br><br>Defendants. | Case No.  4:17-cv-618-PJH<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CONSUMER BENEFITS OF AMERICA'S MOTION TO DISMISS**<br><br>Date:  June 14, 2017<br>Time:  9:00 a.m.<br>Place:  Courtroom 3<br><br>Complaint Filed: February 7, 2017 |

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ........................................................................................ 1

INTRODUCTION .................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

    A.    Defendants' Sale and Administration of Short-Term Medical Insurance
            Policies. ........................................................................................................ 2

    B.    Defendants' Common Alleged Practices Cause Common Injuries. ....................... 2

    C.    Plaintiffs' Experiences and the Underlying Litigation ........................................ 4

    D.    Procedural History. .......................................................................................... 6

LEGAL STANDARDS ............................................................................................. 6

ARGUMENT ........................................................................................................... 7

    A.    Plaintiffs Adequately Allege Fraud-Based Claims Under the UCL and the
            FAL Against CBA. ........................................................................................... 7

    B.    Plaintiffs Adequately Allege that CBA's Conduct Also Violates the Unfair
            and Unlawful Prongs of the UCL. .................................................................. 10

    C.    Plaintiffs Adequately Allege Contract-Based Claims Against CBA: Breach
            of Contract and Breach of the Duty of Good Faith and Fair Dealing. .............. 12

    D.    Plaintiffs Adequately Allege Unjust Enrichment .............................................. 13

    E.    Plaintiffs Should Be Permitted to Amend the Complaint if the Court
            Identifies Any Pleading Infirmities. ................................................................. 14

CONCLUSION ...................................................................................................... 14

1346076.8

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Abels v. Bank of Am.*,
   No. 11-208, 2011 WL 1362074 (N.D. Cal. Apr. 11, 2011) ....................................... 13

5

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................... 7

6

*Bank of New York Mellon v. Citibank, N.A.*,
   8 Cal. App. 5th 935 (2017) ........................................................................................... 15

7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 7

8

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)....................................................................................... 15

9

*Bruce v. Harley-Davidson, Inc.*,
   No. 9-6588, 2010 WL 3521776 (C.D. Cal. Apr. 19, 2010) ........................................... 9

10

*Chapman v. Skype Inc.*,
   220 Cal. App. 4th 217 (2013) ........................................................................................ 9

11

*Comerica Bank v. McDonald*,
   2006 WL 3365599 (N.D. Cal. Nov. 17, 2006)............................................................... 8

12

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003) ...................................................................................... 9

13

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997)......................................................................................... 7

14

*Davenport v. Seattle Bank*,
   2015 WL 6150296 (C.D. Cal. Oct. 15, 2015) ............................................................... 8

15

*Ferrington v. McAfee, Inc.*,
   No. 10-1455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ......................................... 12

16

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997)......................................................................................... 6

17

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................................... 9

18

*In re Bank of Amer. Credit Protection Marketing & Sales Practices Litig.*,
   No. MD-11-2269 TEH, 2012 WL 1123863 (N.D. Cal. Apr. 3, 2012) ......................... 14

19

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*,
   274 F.R.D. 286 (N.D. Cal. 2011)................................................................................. 14

20

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)........................................................................................ 11

21

*Jones v. Nutiva*,
   2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ............................................................. 9

22

*McKell v. Wa. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) .................................................................................... 12

23

*McNeary–Calloway v. JP Morgan Chase Bank, N.A.*,
   863 F. Supp. 2d 928 (N.D. Cal. 2012) ........................................................................ 11

24

*Meister v. Mensinger*,
   230 Cal. App. 4th 381 (2014) ...................................................................................... 16

25

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008).................................................................. 6

4

*Mohamed v. Jeppesen Dataplan, Inc.*,
  579 F.3d 943 (9th Cir. 2009).................................................................... 6

5

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009).................................................................. 16

6

*Nasseri v. Wells Fargo Bank, N.A.*,
  147 F. Supp. 3d 937 (N.D. Cal. 2015) .................................................... 14

7

*Racine v. Laramie, Ltd., Inc. v. Dep't of Parks and Recreation*,
  11 Cal. App. 4th 1026 (1992) ................................................................ 14

8

*Rubke v. Capitol Bancorp*,
  2006 WL 1699569 (N.D. Cal. June 16, 2006) ........................................ 11

9

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832 (1994) .................................................................. 12

10

*Schlagal v. Learning Tree Int'l*,
  1998 WL 1144581 (C.D. Cal. Dec. 23, 1998) .......................................... 8

11

*Siracusano v. Matrixx Initiatives, Inc.*,
  585 F.3d 1167 (9th Cir. 2009).................................................................. 7

12

*Smith v. State Farm Mutual Automobile Ins. Co.*,
  93 Cal. App. 4th 700 (2001) .................................................................. 12

13

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007).................................................................... 7

14

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal. Rptr. 2d 861 (1991) ....................................................................... 8

15

*United States for Use and Benefit of HCI Sys., Inc. v. Agbayani Construction Co.*,
  2014 WL 4979336 (N.D. Cal. Oct. 6, 2014).............................................. 7

16

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).................................................................. 7

17

*Walling v. Beverly Enters.*,
  476 F.2d 393 (9th Cir. 1973).................................................................... 7

18

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008)............................................................. 8, 9

19

**Statutes**

20

Cal. Bus. & Prof. Code § 17200 .................................................................. 1

21

Cal. Bus. & Prof. Code § 17500 .............................................................. 1, 6

22

Cal. Ins. Code § 10384 .............................................................................. 13

23

Cal. Ins. Code § 332................................................................................... 13

24

**Rules**

25

Fed. R. Civ. P. 12(b)(6)............................................................................... 6

26

Fed. R. Civ. P. 15(a)(2) ............................................................................. 16

27

Fed. R. Civ. P. 8 ........................................................................................ 15

28

Fed. R. Civ. P. 8(d) ................................................................................... 15

Fed. R. Civ. P. 9(b) ................................................................................. 7, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES TO BE DECIDED

1.      Have Plaintiffs pleaded plausible facts relating to Defendants', including CBA's, obstructive claims processing practices, bad-faith denials of coverage, and deceptive marketing?

2.      Do the allegations in Plaintiffs' Complaint—which are corroborated, not belied, by the documents separately and improperly introduced into the record by Defendants—sufficiently state claims for relief against CBA for (1) violations of Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violations of Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) breach of contract; (4) breach of the implied duty of good faith and fair dealing; and (5) unjust enrichment?

### INTRODUCTION

Defendants[1] collaborated to develop, market, sell, and administer Short-Term Medical ("STM") insurance policies that do not provide the coverage they purport to provide, miring Plaintiffs and Class members in a nightmare of obstruction, delay, and denial at the moment insurance matters:  when Plaintiffs are facing large, even catastrophic, medical bills.

The STMs at issue here are not Affordable Care Act ("ACA") compliant ones, in which pre-existing conditions must be covered—and Plaintiffs nowhere claim otherwise.  However, as Plaintiffs allege, Defendants engage in distinct fraudulent and bad faith conduct by misusing and misapplying the pre-existing conditions limitations (and engaging in related misconduct) to deny claims that should be paid via improper delay and unlawful post-claims underwriting.  The common alleged scheme, pled with specificity, thus consists of both fraudulent marketing and improper claims practices.

CBA seeks to disclaim culpability in this scheme by claiming, *inter alia*, that it was not a party to the fraudulent misrepresentations and omissions related to the marketing of the STMs, or the unconscionable bad-faith administration of the policies.  This position does not withstand scrutiny.  The documents referenced in Plaintiffs' Complaint, and even those improperly

---

[1] Defendant on this motion is Consumer Benefits of America ("CBA").  Health Insurance Innovations, Inc. ("HII") and HCC Life Insurance Company and HCC Medical Insurance Services LLC ("HCC") are also Defendants in this action, and are included within the term "Defendants" where no specific Defendant is indicated.

1346076.8

1  introduced by Defendants into the record, make clear that CBA was involved and featured in the

2  marketing of the STMs at issue, and was a party to the contract created when Plaintiffs and Class

3  members signed up for coverage under the STMs.  These allegations support Plaintiffs' claims of

4  unfair competitive practices, deceptive advertising, breach of contract, bad faith, and unjust

5  enrichment at the pleading stage.

6       CBA's motion to dismiss should be denied in its entirety.

7                    **FACTUAL AND PROCEDURAL BACKGROUND**

8       As a threshold matter, CBA's Motion does not (and cannot) challenge the accuracy of the

9  facts stated in Plaintiffs' Complaint, and in fact barely addresses them.  As described below,

10  Plaintiffs allege that CBA has colluded with Defendants HCC and HII in a fraudulent scheme to

11  provide insurance policies to Class members that are practically worthless in that there is a

12  systematic denial of insureds' claims under a bad faith and deceptive application of its

13  undisclosed policies, in violation of California law.

14
15       **A.    Defendants' Sale and Administration of Short-Term Medical Insurance
                  Policies.**

16       Defendants HCC, HII, and CBA *collectively* market and administer short-term medical

17  insurance policies ("STMs") to California consumers.  Complaint (Dkt. No. 1) ("Compl.") ¶¶ 17-

18  18, 22, 22 n.5, 23, 51-53, 55, 57.  Defendants HCC and HII have jointly developed—and market

19  and provide—their STM in 45 states, including California.  *Id.* ¶¶ 17, 22, 22n.5, 23, 51-53, 55.

20  Defendant CBA colludes with HCC and HII by acting as the group administrator for the STMs,

21  thereby allowing HCC and HII to avoid more stringent regulatory requirements governing

22  individually-issued health insurance policies.  *Id.* ¶¶ 18, 57.  In other words, CBA provides a

23  cloak of legitimacy to HCC and HII's fraudulent scheme.

24       **B.    Defendants' Common Alleged Practices Cause Common Injuries.**

25       In conjunction with Defendants HCC and HII, CBA facilitates the provision of insurance

26  policies whose claim processing procedures—and the requirements placed upon the insureds—

27  are purposely engineered and uniformly applied to allow the delay and denial of the claims of

28  policyholders.  *Id.* ¶¶ 3, 54, 56, 58-73.  Upon submitting claims, insureds are required to provide

PLAINTIFFS' OPPOSITION TO CONSUMER
BENEFITS OF AMERICA'S MOTION TO DISMISS
CASE NO.  4:17-CV-618

every identifiable medical record in their history, regardless of whether such record relates to the claim at issue, and notwithstanding that this requirement is not disclosed in advance. *Id.* ¶¶ 3, 26-27, 33-37, 39-73. This requirement, common to all Class members, gives Defendants three common avenues for denying valid claims, effectively and improperly guaranteeing that Class members' often large bills go unpaid.

First, Defendants comb through all records provided by the insured in an effort to characterize the claim at issue as a "pre-existing condition." *Id.* ¶¶ 3, 26-27, 33-37, 39-57, 63-73. Defendants uniformly omit any appropriate explanation of the scope of this exclusion from their public-facing marketing materials. *Id.* ¶¶ 3, 39-57, 63-73. However, once a claim is submitted, the term is interpreted so broadly and incorrectly, and in such bad faith, as to encompass virtually *any* medical condition, regardless of when—or even whether—it was diagnosed or treated. *Id.* If the insured's presented claim can be linked to *anything* in the insured's past, *from any point in time*, the claim is denied. *Id.*

Second, when there is no plausible way to link an insured's claim to a prior medical condition, Defendants again demand to search through all available records—again, regardless of their relation to the claim—seeking evidence of a condition that would have rendered the claimant ineligible for coverage under the STM, thereby allowing Defendants to void the policy and not pay the claim. *Id.* ¶¶ 3, 26-27, 33-37, 56-73. This practice is also uniform to all Class members. *Id.*

Third, Defendants' policy and practice is to premise refusals to pay on common and incorrect assertions that there is insufficient information to process claims. *Id.* ¶¶ 3, 26-27, 33-37, 54, 58-73. This allows Defendants to sidestep paying proper claims because it would be impossible for the insured to provide the level of detail purportedly needed. *Id.*

In light of this common conduct, Defendants have also engaged in serial and uniform misrepresentations and omissions to Class members. Namely, they have marketed health insurance policies that, because of the unconscionable claims-handling processes described above, improperly and unlawfully exclude material numbers of claims, making the insurance nearly worthless. *Id.* ¶¶ 3, 39-57; 104-14. Through various declarations, HCC has introduced

-3-

1    copious pages of website screen shots and welcome kits.  *See generally*, Dkt. Nos. 50-52.

2    Introduction of this material is improper on a motion to dismiss.  Notably, though, none of these

3    documents, nor any documents referenced in Plaintiffs' Complaint, alert a reasonable insured or a

4    prospective insured to the virtually limitless exclusions (and burdensome record requests) applied

5    by Defendants in their claims-handling practices.  Instead, these material facts are omitted.  *Id*.;

6    *see also* Compl. ¶¶ 3, 39-72; 104-14.  Such misrepresentations and omissions constitute false

7    advertising.  *Id.* ¶¶ 104-14.

8            Defendants' internal policies and procedures, marketing representations, and customer

9    service scripts reveal that the above-described practices are uniform to the Class.  A

10   whistleblower contractor in HCC's customer service department confirmed that these policies and

11   procedures are designed to frustrate Class members' attempts to appeal a claim's denial or to

12   provide the information purportedly sought by Defendants, and further confirmed that Defendants

13   have created a rigid script for dealing with insureds, from which their employees cannot deviate.

14   *Id.* ¶¶ 58-72.  As the whistleblower states:  "[T]he name of the game is runaround. . . .  It really

15   felt like everything was designed to be so cumbersome that the customer would either get

16   frustrated and give up or they could stall long enough to not have to pay out on the claim. . . .

17   The whole idea here is that we're a legal buffer between HCC and [the insured] as was made

18   crystal clear in training when they said outright that we'd be thrown under the bus if we ever

19   deviated from the script."  *Id*. ¶ 67.

20           As discussed in Plaintiffs' Opposition to Defendants' Motion to Stay (Dkt. No. 66),

21   Defendants minimize and misconstrue the Complaint, asserting that 'Plaintiffs say X is non-

22   disclosed but it is disclosed.'  This misses the point.  Defendants engage in a common and

23   fraudulent scheme whereby they take Class members' premium payments, only to subject those

24   insureds to a claims process that is designed to uniformly and unconscionably deny the payment

25   of valid claims.  Plaintiffs' well-pleaded claims of complex fraud are cognizable under statutory

26   and common law against all Defendants, including CBA.  Compl. ¶¶ 90-146.

27        **C.    Plaintiffs' Experiences and the Underlying Litigation.**

28           Plaintiffs Azad and Buckley were, respectively, insured under Defendants' STMs.  *Id*. ¶¶

PLAINTIFFS' OPPOSITION TO CONSUMER
BENEFITS OF AMERICA'S MOTION TO DISMISS
CASE NO. 4:17-CV-618

19-38. Each Plaintiff purchased their STM policies in the belief that such policies would cover unexpected medical conditions. *Id.* Each Plaintiff *did* suffer an unexpected and major health incident and, in reliance upon the language of the policies, properly submitted claims. *Id.* Upon submitting claims to Defendants, however, each Plaintiff was asked for an ever-increasing number of medical records. *Id.* Specifically, as pled in the Complaint and supported with explicit references to Defendants' records,[2] Plaintiffs' were not merely required to provide medical records relevant to their claims; rather, they were required to provide *all* medical records, provider notes, and labs for the five years preceding their claims. *Id.* ¶¶ 26, 33; *see also,* Declaration of John Padgett in Support of HCC Life Insurance Company and HCC Medical Insurance Services, LLC's Motion to Dismiss and Their Alternative Motion to Strike Class Allegations ("Padgett Decl.") at Exs. 16-19.

　　　　After months of complying with Defendants' requests for more information, both Azad and Buckley were again told that their claims could not be processed. Compl. ¶¶ 26-28, 33-38; Padgett Decl. at Exs. 16-19. Plaintiff Azad's bills totaled roughly $12,000, and Plaintiff Buckley's roughly $3,500. Motion to Stay (Dkt. No 63) at n.4. Plaintiffs each made continual efforts to provide sufficient information to Defendants, and were continually asked for more. Compl. ¶¶ 26-38. Discouraged and convinced that Defendants were not acting in good faith, Plaintiffs, consistent with the conduct of reasonable Class members, gave up and realized they would have to pay their medical bills directly. *Id.*

　　　　Thus, like all Class members, Plaintiffs were: (1) misled into purchasing insurance policies that they believed would cover unforeseen medical events; (2) subjected to Defendants' unconscionable claims-handling practices, despite complying in good faith with Defendants' increasingly-unreasonable (and impossible to fulfill) requests; and (3) ultimately had their claims files closed by Defendants, in bad faith, which left Plaintiffs (like all Class members) on their own to resolve their unpaid, substantial medical bills.

---

[2] As explained more fully in Plaintiffs' concurrently-filed Opposition to Defendant HCC's Motion to Dismiss (at pp. 7-8), Defendants are incorrect to suggest the Court should apply the "incorporation by reference" doctrine to consider voluminous additional materials as part of the Complaint. The doctrine is inapposite here.

1

### D.     Procedural History.

2        Plaintiffs filed their Complaint on February 7, 2017, alleging five claims for relief: (1)

3   violations of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); (2) violations of Cal. Bus. & Prof.

4   Code § 17500, *et seq.* ("FAL"); (3) breach of contract; (4) breach of the implied covenant of good

5   faith and fair dealing; and (5) unjust enrichment.  Defendant CBA then filed the instant Motion to

6   Dismiss.  Dkt. No. 58 ("Mot.").[3]

7                                 **LEGAL STANDARDS**

8        A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

9   Dismissal is appropriate only where the complaint lacks "a cognizable legal theory" or "sufficient

10  facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

11  1097, 1104 (9th Cir. 2008).  The issue is not whether the non-moving party will ultimately prevail

12  but whether it is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev.*

13  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The Court should draw "all reasonable inferences from

14  the complaint in [plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th

15  Cir. 2009) (quoting *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)), and "accept the

16  plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs."

17  *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).  A complaint need

18  only "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible

19  on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v.*

20  *Twombly*, 550 U.S. 544, 570 (2007)).

21        Plaintiffs' claims under the deceptive prong of the California UCL and the False

22  Advertising Law must satisfy Rule 9(b).[4]  The Ninth Circuit has long construed Rule 9(b) to

23

---

24  [3] Each Defendant filed a separate Motion to Dismiss (Dkt. Nos. 48, 58, 60) and, in the case of
    HCC and HII, a Motion to Strike (Dkt. Nos. 49, 60), as well as a Motion to Stay (Dkt. No. 63).

25  [4] It is unclear whether CBA asserts that any of Plaintiffs' other claims—namely, the common-law
    claims and the claims under other prongs of the UCL—must satisfy Rule 9(b), but no such

26  requirement exists.  Under Ninth Circuit law, "where fraud is not an essential element of a claim,
    only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading

27  requirements.  Allegations of non-fraudulent conduct need satisfy only the ordinary notice
    pleading standards of Rule 8(a)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir.

28  2003).

1   require only that "allegations of fraud are specific enough to give defendants notice of the

2   particular misconduct which is alleged to constitute the fraud charged so that they can defend

3   against the charge and not just deny that they have done anything wrong." *United States for Use*

4   *and Benefit of HCI Sys., Inc. v. Agbayani Construction Co.*, 2014 WL 4979336, at *3 (N.D. Cal.

5   Oct. 6, 2014) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)).

6       Thus, while Rule 9(b) imposes a heightened standard, it does not require a plaintiff to

7   allege each and every detail about the alleged conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

8   Cir. 1997) ("[W]e cannot make Rule 9(b) carry more weight than it was meant to bear."); *Walling*

9   *v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973); *see also Schlagal v. Learning Tree Int'l*,

10  1998 WL 1144581, *8 (C.D. Cal. Dec. 23, 1998) ("The Court must strike a careful balance

11  between insistence on compliance with demanding pleading standards and ensuring that valid

12  grievances survive."); *Davenport v. Seattle Bank*, 2015 WL 6150296, at *4 (C.D. Cal. Oct. 15,

13  2015) ("[Rule 9(b)] must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and

14  plain' statement of the claim.").

15      Moreover, "'the requirement of specificity is relaxed when the allegations indicate that a

16  defendant must necessarily possess full information concerning the facts of the controversy' 'or

17  when the facts lie more in the knowledge of the opposite party.'" *Comerica Bank v. McDonald*,

18  2006 WL 3365599, *2 (N.D. Cal. Nov. 17, 2006) (quoting *Tarmann v. State Farm Mut. Auto. Ins.*

19  *Co.*, 2 Cal. Rptr. 2d 861, 863 (1991)).

20      Plaintiffs' fraud-based allegations readily satisfy the requirements of Rule 9(b).

21                              **ARGUMENT**

22  A.    **Plaintiffs Adequately Allege Fraud-Based Claims Under the UCL and the
        FAL Against CBA.**

23

24      The FAL, and the UCL's "fraud" prong, both prohibit representations that are false or that

25  are "misleading or which ha[ve] a capacity, likelihood or tendency to deceive or confuse the

26  public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  As CBA

27  acknowledges, whether a representation has a tendency to deceive is determined based on its

28  likely impact on a "reasonable consumer." *Id.*; *see also Consumer Advocates v. Echostar*

1   *Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (cited by CBA).

2        Ninth Circuit courts have repeatedly recognized that whether a representation has a

3   tendency to deceive "will usually be a question of fact not appropriate for decision on [a motion

4   to dismiss]." *Williams*, 552 F.3d at 938-40 (dismissal at pleading stage is "rare"); *see also, e.g.*,

5   *Jones v. Nutiva*, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016).  As long as plaintiffs offer a

6   plausible theory as to why the conduct at issue could mislead a reasonable consumer, their claims

7   should not be dismissed at the pleading stage.  *Williams*, 552 F.3d at 940; *Chapman v. Skype Inc.*,

8   220 Cal. App. 4th 217, 226-27 (2013).  Moreover, a defendant can also violate the UCL "fraud"

9   prong by making an omission that is "contrary to a representation actually made by the defendant,

10   or an omission of a fact the defendant was obliged to disclose."  *In re Adobe Sys., Inc. Privacy*

11   *Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014); *Bruce v. Harley-Davidson, Inc.*, No. 9-6588,

12   2010 WL 3521776, *5 (C.D. Cal. Apr. 19, 2010) ("[P]laintiffs' allegations concerning

13   defendants' superior knowledge and active concealment of a 'material fact' could give rise to the

14   reasonable inference that [defendant] was under a duty to disclose.").

15        Plaintiffs' allegations here more than suffice to state a plausible theory of both falsity and

16   a tendency to deceive.  Plaintiffs allege that Defendants made multiple false representations and

17   material omissions related to the sale of the STMs, fraud that deceived the public.  They failed to

18   mention:  (1) the breadth of the five-plus-year pre-existing conditions carveout; (2) the

19   requirement that at least five years of medical records be submitted prior to claim coverage; and

20   (3) that they engage in unlawful post-claims underwriting.  There is little question that these

21   omissions were material to Plaintiffs' relationship with Defendants and that reasonable

22   policyholders would want to know about such items prior to purchasing the STM.  Or that, in

23   context, these true facts render what Defendants claim about the quality of their services, and of

24   what they uniformly promise about "trust[ing] the company" and coverage meaningless, or at

25   minimum deceptive.  *See, e.g.*, Compl. ¶¶ 42-53.

26        This axiomatic proposition is underscored repeatedly—and with specificity—throughout

27   Plaintiffs' Complaint, and Plaintiffs' allegations show that Plaintiffs' claims are shared by others.

28   A former customer-service representative admitted that his job was *not* to help policyholders and

1  "it was obvious that the name of the game was runaround." *Id.* ¶¶ 63, 67.  Additionally, an STM

2  insured wrote that he "deep[ly] regrets" choosing the insurance, because while he "was led to

3  believe that this coverage was good short term insurance," his claim was later denied under its

4  five-year preexisting condition exclusion practice. *Id.* ¶ 73(b).  This consumer's advice, based on

5  his experience with the bait-and-switch, is clear: "DO NOT EVEN CONSIDER THIS

6  INSURANCE." *Id.*; *see also id.* ¶ 73(c) ("I would NEVER, EVER suggest that anyone purchase

7  insurance from HCC.").  Reasonable consumers are likely to be—and in fact have been—

8  deceived by the alleged misrepresentations and omissions at issue.

9          Moreover, CBA's premature fact-based argument that it has no culpability in these

10  misrepresentations and omissions is simply untrue.  The record makes clear that CBA *is* complicit

11  in the advertising and marketing of the STMs.  The brochure referenced in Plaintiffs' Complaint

12  (*see, e.g.*, Compl. ¶¶ 42-49) and included as Exhibit 11 to the Padgett Declaration specifically

13  *singles out* CBA and its role in providing the STMs.  In pertinent part, the brochure states:

14                    **Consumer Benefits of America**

15          In most states, HCC Life STM is available to members of the
        Consumer Benefits of America Association. Membership in
16      the association will entitle you to discounts of up to 40%
        off regular retail prices on many short-term and long-term
17      prescription drugs. Discounts are available from over
        59,000 participating pharmacy providers nationwide or
18      by mail service. When membership is required, association
        fees are assessed at the time of application; enrollment in
19      the association is automatic upon payment of the correct
        premium and all applicable
20

21  Padgett Decl. at 66.  A disclaimer on the same page further states that an "applicant may be

22  required to enroll in the Consumer Benefits of America Association." *Id.*  As a general matter,

23  but *certainly* at the pleadings stage, CBA cannot credibly contend that it has nothing to do with

24  this marketing material when the very material it disclaims contains explicit advertisements for

25  CBA and its services.  It strains credulity—and flies in the face of the Complaint's allegations—

26  for CBA to aver that it never reviewed, approved, or otherwise participated in generating the

27  marketing materials in question.  Accordingly, Plaintiffs' UCL and FAL claims are proper and

28  CBA's motion should be denied.

1    CBA's cases do not support a contrary result.  It does not cite any cases in its FAL

2    section.  In its UCL section about fraud, it relies on *Rubke v. Capitol Bancorp*, 2006 WL 1699569

3    (N.D. Cal. June 16, 2006), a class action under the securities laws in which the plaintiff class,

4    minority shareholders who had sold shares pursuant to a tender offer, alleged that that defendants

5    had engaged in a scheme to lower the value of their stock and engaged in related fraudulent

6    conduct to encourage acceptance of the tender offer.  In addition to being entirely factually

7    inapposite, that case arises under the Private Securities Litigation Reform Act, whose "stringent

8    requirements" of pleading fraud and scienter are not applicable here.  *Id.* at *5.

9    **B.      Plaintiffs Adequately Allege that CBA's Conduct Also Violates the Unfair and**
10          **Unlawful Prongs of the UCL.**

11    The UCL's coverage is "sweeping," and its standard for wrongful business conduct is

12    "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).  A

13    claim under the "unfair" prong should survive a motion to dismiss if facts are alleged that, if

14    proven true, could establish a violation.  *McNeary–Calloway v. JP Morgan Chase Bank, N.A.*,

15    863 F. Supp. 2d 928, 961-62 (N.D. Cal. 2012).  "[T]he determination of whether a business

16    practice is unfair is 'one of fact which requires a review of the evidence from both parties' and

17    often cannot be made solely on the pleadings."  *Ferrington v. McAfee, Inc.*, No. 10-1455, 2010

18    WL 3910169, at *13 (N.D. Cal. Oct. 5, 2010) (quoting *McKell v. Wa. Mut., Inc*., 142 Cal. App.

19    4th 1457, 1473 (2006)).

20    Plaintiffs here sufficiently plead "unfair" conduct by Defendants, including CBA, under

21    the "balancing" test (which compares the gravity of the plaintiff's harm to the utility of the

22    defendant's conduct) and "tethering" test (which examines whether the alleged misconduct is

23    tethered to a legislatively declared policy) that are both applied by California courts.  *Ferrington*,

24    2010 WL 3910169, at *12 (describing the two tests and explaining that California courts are

25    divided on which applies); Compl. ¶¶ 95, 98-99.

26    Here, the allegations that Defendants omitted and misrepresented material facts about how

27    they use and misuse their pre-existing condition limitations and deny payments are basically the

28    essence of an unfair balance.  Insurance is only relevant when you need it, by definition.  If only

1  those who need it are denied it, this is all benefit to the insurer (and, here, CBA and HII as well)

2  and all detriment to the insured.  Illusory insurance is of no benefit to consumers.  Notably,

3  CBA's own case law supports this conclusion.  In *Smith v. State Farm Mutual Automobile Ins.*

4  *Co.*, 93 Cal. App. 4th 700 (2001) the court listed examples of unfair business practices and

5  included "placing unlawful or unenforceable terms in form contracts . . . asserting contractual

6  rights one does not have . . . and [systematically] breaching a form contract affecting many

7  consumers."  *Id*. at 719.  Although the list is by no means exclusive, the sort of systematic bad

8  faith Plaintiffs have alleged is plainly unfair.

9       Plaintiffs' allegations of statutory and common law violations also state a claim under the

10  UCL's "unlawful" prong.  *See generally Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-

11  39 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by

12  law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.");

13  *Abels v. Bank of Am.*, No. 11-208, 2011 WL 1362074, at *4 (N.D. Cal. Apr. 11, 2011) ("An act is

14  'unlawful' under section 17200 if it violates an underlying state or federal statute or common

15  law.").

16      In addition to its other unlawful conduct, Defendants breach California Insurance Code

17  § 332 by failing to communicate in good faith:  (1) that their policies did not include claims for

18  conditions that were diagnosed or treated within five years of the effective date of coverage; (2)

19  that Plaintiffs would be required to provide years of medical records in addition to a proof of loss

20  form to get their claims paid out; (3) that it would be impracticable to fulfill  Defendants'

21  inevitable requests to provide such medical records; and (4) that Defendants do not have a fair

22  claims process or functional customer service.  Compl. ¶¶ 26-28, 33-38, 58-73.  Further, and

23  perhaps even more significant, the requirement that Plaintiffs submit five years of medical

24  records only *after* they were deemed eligible for a policy, *after* Defendants accepted and invested

25  their premium payments, and *after* Plaintiffs had submitted a claim, is a textbook example of

26  post-claims underwriting, which California Insurance Code § 10384 prohibits.

27

28

1

**C.**      **Plaintiffs Adequately Allege Contract-Based Claims Against CBA: Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing.**

2

3      CBA cannot convincingly claim it "was never a party to any contract with Plaintiffs."

4 Mot. at 7.  As Plaintiffs allege in the Complaint, "[t]he policies that Defendants sold Plaintiffs,

5 combined with the timely payment of premiums amounted to legally enforceable promises and

6 obligations via contract."  Compl. ¶ 118.  And the record that Defendants improperly introduce

7 actually corroborate Plaintiffs' allegations in that they show that CBA was a party to the

8 certificate of insurance issued to Plaintiff Buckley (Padgett Decl. at Exhibit 15) and Plaintiff

9 Azad (Padgett Decl. at Exhibit 13)—in fact, both documents state, on their first page, that the

10 respective policies have "been issued to Consumer Benefits of America which we will refer to as

11 'the Policyholder.'"  Padgett Decl. at 74, 117.  Those same documents further state "**THIS**

12 **CERTIFICATE IS EVIDENCE OF A CONTRACT BETWEEN THE POLICYHOLDER**

13 **AND THE COMPANY**" (which is defined as HCC).  *Id.* (emphasis in original).

14      In addition, or in the alternative, Plaintiffs assert a valid breach of good faith and fair

15 dealing claim against CBA.  The covenant of good faith and fair dealing "is implied as a

16 supplement to the express contractual covenants to prevent a contracting party from engaging in

17 conduct which (while not technically transgressing the express covenants) frustrates the other

18 party's rights to the benefit of the contract."  *Racine v. Laramie, Ltd., Inc. v. Dep't of Parks and*

19 *Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992).

20      A covenant claim can thus exist alongside, or instead of, a breach of contract claim, and

21 has been applied in similar consumer class action contexts.  *See, e.g.*, *In re Bank of Amer. Credit*

22 *Protection Mktg. & Sales Practices Litig.*, No. MD-11-2269 TEH, 2012 WL 1123863, at *5

23 (N.D. Cal. Apr. 3, 2012) (holding, in case involving credit card add-on products that purported to

24 insure against problems faced by borrowers that could render them unable to pay, "Plaintiffs'

25 contention that the enumeration of allowable fees implies that the cardholder may expect to be

26 free from further charges not expressly disclosed or referenced in the agreement is not so beyond

27 the realm of credibility that dismissal would  be appropriate at this stage"); *Nasseri v. Wells*

28 *Fargo Bank, N.A.*, 147 F. Supp. 3d 937 (N.D. Cal. 2015) (finding Wells Fargo hindered plaintiffs'

1  ability to perform and refused to reinstate her loan in bad faith); *In re Chase Bank USA, N.A.*

2  *"Check Loan" Contract Litig.*, 274 F.R.D. 286 (N.D. Cal. 2011) (granting class certification as to

3  good faith and fair dealing claim).

4          Here, CBA breached the covenant.  Defendants, including CBA, systematically frustrate

5  expectations by erecting common and insurmountable roadblocks (including via unlawful post-

6  claims underwriting) to paying claims, without acknowledging they are doing so and even

7  denying that they will never pay.  Defendants hinder insureds' ability to perform by their claims.

8  This is classic bad faith.

9          **D.      Plaintiffs Adequately Allege Unjust Enrichment.**

10         In stating that there is no claim for unjust enrichment, CBA ignores recent Ninth Circuit

11  authority holding that unjust enrichment is a claim for relief in and of itself.  *See, e.g.*, *Berger v.*

12  *Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014).  While Plaintiffs recognize the case law

13  providing that an unjust enrichment claim should not be brought alongside a UCL claim for

14  restitution when it is duplicative, they respectfully submit that this is not a basis to dismiss

15  Plaintiffs' claim, for various reasons.

16         First, in light of this recent Ninth Circuit authority, those holdings dismissing unjust

17  enrichment claims at the pleading stage are hard to reconcile with the entitlement of alternative

18  pleading under Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(d) establishes that unjust

19  enrichment may be pled in the alternative to contract or statutory claims, as Plaintiffs have done

20  here.  Compl. ¶¶ 141-46.

21         Second, and relatedly, CBA challenges the UCL claim.  Although its arguments lack merit

22  for the reasons in Section A above, it cannot seriously dispute Plaintiffs' right to restitution in

23  some form.  Even the cases it cites (neither of which is at the pleading stage) so allow, and CBA's

24  reliance on them is thus misplaced.  *See Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App.

25  5th 935, 955 (2017) (rejecting defendant's argument that plaintiff-appellant's claim for unjust

26  enrichment should be dismissed, on the basis that "we are not bound by the form of appellant's

27  claims or the relief demanded" and finding that plaintiff *had* stated a claim for equitable

28  subrogation, which "may be used to *enforce restitution in order to prevent unjust enrichment*")

1   (emphasis added); *cf. Meister v. Mensinger*, 230 Cal. App. 4th 381, 403 (2014) (discussing at

2   length the relationship of restitution to disgorgement; rather than rejecting the principle of unjust

3   enrichment, the court only held that the trial court, with the assistance of experts, was unable to

4   ascertain "how respondents were enriched, let alone unjustly enriched, by their conduct").

5       Third, Plaintiffs expressly seek both restitutionary *and* non-restitutionary disgorgement,

6   making their claim non-duplicative on its face.  Compl. at 30 (¶¶ C and D).  And, as a substantive

7   matter, Plaintiffs have alleged not only that Class members spent money they would not have had

8   to spend, but that Defendants have been unjustly enriched in the form of "higher premiums *and*

9   greater revenues than they would have enjoyed had they acted lawfully."  Compl. ¶ 143.  The

10  type of recoupment enjoyed by all Defendants was expressly noted as not being limited to the

11  nominal insurer, but included other economic gains beyond premiums.  At the pleading stage,

12  Plaintiffs have more than adequately alleged that all Defendants have been unjustly enriched.

13      **E.**    **Plaintiffs Should Be Permitted to Amend the Complaint if the Court**
14              **Identifies Any Pleading Infirmities.**

15      "Dismissal without leave to amend is improper unless it is clear . . . the complaint could

16  not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009);

17  Fed. R. Civ. P. 15(a)(2) . "[R]equests for leave to amend should be granted with "extreme

18  liberality."  *Moss*, 572 F.3d at 972.

19      Plaintiffs have articulated viable legal theories for each of the claims discussed in this

20  brief, and should be afforded an opportunity to allege more facts should the Court require it.

21                              **CONCLUSION**

22      For the reasons set forth above, Plaintiffs respectfully submit that CBA's motion to

23  dismiss should be denied in its entirety.

24

25  Dated: May 12, 2017              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

26                                  By: */s/ Rachel Geman*

27                                  Rachel Geman (admitted *pro hac vice*)
                                    rgeman@lchb.com
28                                  250 Hudson Street, 8th Floor

New York, NY  10013-1413
(212) 355-9500

Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

CARNEY BATES & PULLIAM, PLLC
Allen Carney (admitted *pro hac vice*)
acarney@cbplaw.com
David Slade (admitted *pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, AR  72201
(501) 312-8500

CUNEO GILBERT & LADUCA, LLP
Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
(314) 226-1015

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
16 Court Street, Suite 1012
Brooklyn, NY 11241
(202) 789-3960

MEHRI & SKALET
Jay Angoff (admitted *pro hac vice*)
jay.angoff@findjustice.com
1250 Connecticut Avenue, NW, Suite 300
Washington, D.C. 20036
(202) 822-5100

*Attorneys for Plaintiffs and the Proposed Class*