Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
David Slade (*pro hac vice*)
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR  72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone:  314.226.1015
Facsimile:  202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone:  202.789.3960
Facsimile:  202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone:  202.822.5100

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOHAMMED AZAD and DANIELLE BUCKLEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOKIO MARINE HCC – MEDICAL INSURANCE SERVICES GROUP, HEALTH INSURANCE INNOVATIONS, INC., HCC LIFE INSURANCE COMPANY, and CONSUMER BENEFITS OF AMERICA,<br><br>Defendants. | Case No.  4:17-cv-618-PJH<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT HEALTH INSURANCE INNOVATIONS, INC.'S MOTION TO DISMISS AND TO STRIKE**<br><br>Date:        June 14, 2017<br>Time:       9:00 a.m.<br>Place:      Courtroom 3<br><br>Complaint Filed: February 7, 2017 |

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ........................................................................................... 1

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

    A.    Defendants' Sale and Administration of Short-Term Medical Insurance
        Policies ....................................................................................................... 2

    B.    Defendants' Common Alleged Practices Cause Common Injuries ......................... 3

    C.    Plaintiffs' Experiences and the Underlying Litigation.......................................... 5

    D.    Procedural History ........................................................................................ 6

LEGAL STANDARDS................................................................................................ 6

    A.    Rule 12(b)(6) .............................................................................................. 6

    B.    Rule 9(b) .................................................................................................... 7

ARGUMENT ........................................................................................................... 8

    A.    The Complaint Alleges Sufficient Facts Linking HII to the Conduct ..................... 8

    B.    The Complaint Alleges Facts Supporting a UCL Claim Against HII.................... 10

    C.    The Complaint Alleges Facts Supporting an FAL Claim Against HII. ................. 13

    D.    The Complaint Alleges Facts Supporting Breach of Contract and Bad
        Faith Against HII ........................................................................................ 14

    E.    The Complaint Alleges Facts Supporting Unjust Enrichment Against HII........... 15

    F.    The Court Should Reject HII's Motion to Strike as Disfavored and
        Unsupported ............................................................................................... 16

        1.    Plaintiffs' Allegations Concerning Prior Cease and Desist Letters
                and Agency Action Are Anything but Immaterial...................................... 16

        2.    HII Fails to Articulate that It Is Prejudiced by Inclusion of
                Allegations Concerning the Cease and Desist Letters ............................... 17

    G.    Plaintiffs Should Be Permitted to Amend the Complaint if the Court
        Identifies Any Pleading Infirmities ................................................................ 18

CONCLUSION........................................................................................................ 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Annunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................. 16

5

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................................... 17

6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 7

7

*Baas v. Dollar Tree Stores, Inc.*,
  2007 U.S. Dist. LEXIS 659 (N.D. Cal. Aug. 29, 2007) ........................................... 8

8

*Bass v. Farmers Mut. Protective Fire Ins. Co.*,
  21 Cal. App. 2d 21  (Cal. App. 1937) ................................................................... 14

9

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 9

10

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ............................................................................... 18

11

*Boggio v. California-Western States Life Ins. Co.*,
  108 Cal. App. 2d 597 (Cal. App. 1952) ................................................................ 14

12

*Brazil v. Dole Food Co., Inc.*,
  935 F.Supp.2d 947 (N.D. Cal. 2013) ..................................................................... 19

13

*Brewer v. Indymac Bank*,
  609 F. Supp. 2d 1104 (E.D. Cal. 2009) ............................................................ 15, 16

14

*Comerica Bank v. McDonald*,
  2006 WL 3365599 (N.D. Cal. Nov. 17, 2006) ......................................................... 9

15

*Coolsystems, Inc. v. Nice Recovery Sys. LLC*,
  No. 16-CV-02958-PJH, 2016 WL 6091577 (N.D. Cal. Oct. 19, 2016) ............ 20, 21

16

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ................................................................................... 8

17

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ................................................................................... 3

18

*Davidson v. Kimberly-Clark Corp.*,
  No. C 14-1783 PJH, 2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) ....................... 21

19

*Dias v. Nationwide Life Ins. Co.*,
  700 F. Supp. 2d 1204 (E.D. Cal. 2010) ................................................................. 14

20

*Doe v. United States*,
  419 F.3d 1058 (9th Cir. 2005) ................................................................................. 9

21

*Egan v. Mut. of Omaha Ins. Co.*,
  24 Cal. 3d 809 (1979) ............................................................................................ 17

22

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994) ........ 21

23

*Ferrington v. McAfee, Inc.*,
  No. 10-1455, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .................................... 14

24

25

26

27

28

1346077.10

**TABLE OF AUTHORITIES**
(continued)

Page

*Fid. Nat. Title Ins. Co. v. Castle*,
   No. C 11-00896 SI, 2011 WL 6141310 (N.D. Cal. Dec. 8, 2011) ........................................ 10

*Foth v. BAC Home Loans Servicing, LP*,
   No. CV 11-00114 DAE-BMK, 2011 WL 3439134 (D. Haw. Aug. 4, 2011) ......................... 10

*Frommoethelydo v. Fire Ins. Exch.*,
   42 Cal. 3d 208 (1986) ....................................................................................................... 17

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ................................................................................................. 7

*Hernandez v. Dutch Goose, Inc.*,
   No. C 13-03537 LB, 2013 WL 5781476 (N.D. Cal. Oct. 25, 2013) ..................................... 19

*In re Fresh & Process Potatoes Antitrust Litig.*,
   834 F. Supp. 2d 1141 (D. Idaho 2011) ................................................................................. 10

*In re Sagent Tech., Inc., Derivative Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................................................ 11

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ........................................................................... 20, 21

*In the Matter of Health Insurance Innovations, Inc., et al.*,
   Case No. INS-2015-348 (May 9, 2016) ................................................................................ 13

*Jamison v. Royal Caribbean Cruises, Ltd.*,
   No. 08-1513 WQH (NLS), 2009 WL 559722 (S.D. Cal. Mar. 4, 2009) ............................... 11

*Love v. Fire Ins. Exch.*,
   221 Cal. App. 3d 1136 (Ct. App. 1990) ................................................................................ 17

*Meyer v. Bebe Stores, Inc.*,
   No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) .............................. 20, 21

*Mohamed v. Jeppesen Dataplan, Inc.*,
   614 F.3d 1070 (9th Cir. 2010) (en banc) ................................................................................ 7

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................................ 22

*Orosco v. Sun-Diamond Corp.*,
   51 Cal. App. 4th 1659 (Cal. App. 5th Dist. 1997) ................................................................ 12

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008) ........................................................... 19

*Rasidescu v. Midland Credit Mgmt., Inc.*,
   435 F. Supp. 2d 1090 (S.D. Cal. 2006) ................................................................................ 11

*Rickless v. Temple*,
   4 Cal. App. 3d 869 (Cal. App. 2d Dist. Feb. 25, 1970) ........................................................ 13

*Samet v. Procter & Gamble Co.*,
   No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ............................. 19

*Schlagal v. Learning Tree Int'l*,
   1998 WL 1144581 (C.D. Cal. Dec. 23, 1998) ........................................................................ 8

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) .................................................................................................. 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND HCC
MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO. 4:17-CV-618

# TABLE OF AUTHORITIES
### (continued)

Page

606 F.3d 658 (9th Cir. 2010)..............................................................................7

*Siracusano v. Matrixx Initiatives, Inc.*,
585 F.3d 1167 (9th Cir. 2009)..........................................................................7

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)............................................................................8

*United States for Use and Benefit of HCI Sys., Inc. v. Agbayani Construction Co.*,
No. 14-cv-02503-MEJ, 2014 WL 4979336 (N.D. Cal. Oct. 6, 2014)......................8

*United States v. S. Cal. Edison Co.*,
300 F. Supp. 2d 964 (E.D. Cal. 2004)..............................................................3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)..........................................................................8

*Walling v. Beverly Enterprises*,
476 F.2d 393 (9th Cir. 1973)............................................................................8

*Weiner v. Fleischman*,
54 Cal. 3d 476 (Cal. 1991)............................................................................12

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010)..........................................................................19

*Zander v. Texaco, Inc.*,
259 Cal. App. 2d 793 (Cal. App. 3d Dist. 1968) ............................................15

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ..........................................................6

Cal. Bus. & Prof. Code § 17500, *et seq.* ......................................................6, 13

Cal. Ins. Code § 1621 ..................................................................................13

Cal. Ins. Code § 332 ....................................................................................10

**Rules**

Fed. R. Civ. P. 12 ........................................................................................11

Fed. R. Civ. P. 12(b)(6) ................................................................................7

Fed. R. Civ. P. 12(f) ...............................................................................19, 20

Fed. R. Civ. P. 15(a)(2) ................................................................................22

Fed. R. Civ. P. 8 ..........................................................................................9

Fed. R. Civ. P. 8(a) ......................................................................................8

Fed. R. Civ. P. 8(a)(20) ................................................................................10

Fed. R. Civ. P. 8(d) ......................................................................................18

Fed. R. Civ. P. 9(b) ...................................................................................7, 8

Fed. R. Evid. 201(b)(2) ..................................................................................3

**Other Authorities**

Lord, Williston on Contracts § 57:19 (4th ed. 2001) ........................................17

-iv-

1346077.10

PLAINTIFFS' OPPOSITION TO HCC LIFE INSURANCE COMPANY AND HCC
MEDICAL INSURANCE SERVICES, LLC'S MOTION TO STRIKE
CASE NO. 4:17-cv-618

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES TO BE DECIDED

1.     Whether the facts alleged in Plaintiffs' Complaint provide sufficient notice of the specific behavior of Defendant Health Insurance Innovations, Inc. ("HII") giving rise to Plaintiffs' claims.

2.     Whether allegations detailing regulatory scrutiny of Defendant HII—in connection with its marketing and sale of insurance policies like those at issue in this litigation—are properly included with the Complaint.

### INTRODUCTION

Defendant HII's Motion to Dismiss and to Strike[1] rests on a single, faulty premise: that the allegations in Plaintiffs' Complaint do not sufficiently distinguish HII's culpability from that of its co-defendants.  However, the allegations in the Complaint demonstrate that HII is actively involved in the marketing of the fraudulent Short-Term Medical ("STM") insurance policies that are challenged  in this litigation, and that HII developed and offers these plans *jointly* with HCC. These plans, which Plaintiffs purchased, are the heart of the Complaint:  the STMs contain a series of hidden exclusions and conditions precedent, such that Class members do not have their timely and proper claims honored under their policies. In light of these hidden, unlawful, and unconscionable obstacles and Defendants' post-claims underwriting, the marketing of the STMs is deceptive.  The facts alleged in the Complaint—including many taken verbatim from HII's own statements and from public records, and as fully corroborated by HCC's improperly-submitted and premature declarations in support of its Motion to Dismiss—demonstrate HII's culpability for its role in the marketing and administration of STMs in California.

HII's other argument is to strike  the references to regulatory actions against HII for its illegal and deceptive marketing of its STMs, as detailed in paragraphs 51-52 of the Complaint. Mot. at 10-11.  This is without basis, especially in light of HII's argument effectively disavowing

---

[1] Defendant on this motion is Health Insurance Innovations, Inc. ("HII").  HCC Life Insurance Company and HCC Medical Insurance Services LLC ("HCC") and Consumer Benefits of America ("CBA") are also Defendants in this action, and are included within the term "Defendants" where no specific Defendant is indicated.

1   its threshold involvement with the practices at issue, even apart from the question of these

2   common practices' legality.  As the Complaint specifically states, these data points "underscore[]

3   the systematic nature of the practices" complained of, with regard to HII's marketing and sales.

4   Compl. ¶ 51.  Further, these paragraphs specify that the STM policies HII fraudulently

5   marketed—which were at the heart of the regulatory investigations—were policies jointly

6   developed with HCC.  *Id.* ¶ 52.  Far from being "immaterial and impertinent," these allegations

7   put HII on notice of the precise activity, conducted either jointly with or on behalf of HCC, from

8   which Plaintiffs' claims arise.

9          HII's motion should be denied it its entirety.

10                          **FACTUAL BACKGROUND**

11          As a threshold matter, Defendant's Motion does not and cannot challenge the accuracy of

12   the facts stated in Plaintiffs' Complaint, and in fact barely addresses the allegations contained

13   therein.  As described below, Defendant HII has developed the STMs at issue in conjunction with

14   Defendant HCC and, along with Defendant CBA, provides the STMs to Class members, in

15   violation of California law.

16          **A.**     **Defendants' Sale and Administration of Short-Term Medical Insurance**
17                     **Policies**

18          Defendants HCC, HII, and CBA collectively market and administer STMs to California

19   consumers.  Compl. ¶¶ 17-18, 22, 22 n.5, 23, 51-53, 55, 57.   Defendants HCC and HII have

20   jointly developed—and market and provide—their STM in 45 states, including California.  *Id.* ¶¶

21   17, 22, 22 n.5, 23, 51-53, 55.  As referenced in Plaintiffs' Complaint, HII "partners with HCC . . .

22   to expand [its] short-term medical portfolio" and provide STMs to consumers.  *Id.* at n.5.  The

23   document referenced in the Complaint—a June 3, 2013 press release from HII—further clarifies

24   that HII "creates customizable and affordable, high-quality health insurance products and

25   supplemental services through partnerships with best-in-class carriers."  *See* HII Press Release,

26   *Health Insurance Innovations Partners with HCC Like Insurance Company to Expand Short-*

27   *Term Medical Portfolio*, (Jun. 3, 2013), available at

28

1   http://investor.hiiquote.com/releasedetail.cfm?ReleaseID=775244; *see also* Compl. at n.5.[2]

2      Defendant CBA colludes with HCC and HII by acting as the group administrator for the

3   STMs, thereby allowing HCC and HII to avoid more stringent regulatory requirements governing

4   individually-issued health insurance policies.  Compl. ¶¶ 18, 57.

5      **B.**   **Defendants' Common Alleged Practices Cause Common Injuries**

6      In conjunction with Defendants HCC and CBA, HII's claim processing procedures for

7   their STMs—and the requirements placed upon the insureds—are purposely engineered and

8   uniformly applied to cause the delay and denial of the claims of policyholders.  *Id.* ¶¶ 3, 54, 56,

9   58-73.  Upon submitting claims, insureds are required to provide every identifiable medical

10  record in the last five years of their history, regardless of whether such record relates to the claim

11  at issue, and notwithstanding that this requirement is not disclosed in advance.  *Id.* ¶¶ 3, 26-27,

12  33-37, 39-73.  This requirement, common to all Class members, gives Defendants three common

13  avenues for denying valid claims, effectively and improperly guaranteeing that Class members'

14  often large bills go unpaid.

15     The *first* step in the strategy is to  comb through all records provided by the insured in an

16  effort to characterize the claim at issue as a "pre-existing condition."  *Id.* ¶¶ 3, 26-27, 33-37, 39-

17  57, 62-73.  Defendants uniformly omit any appropriate explanation of the scope of this exclusion

18  from their public-facing marketing materials.  *Id.* ¶¶ 3, 39-57, 63-73.  However, once a claim is

19  submitted, the term is interpreted so broadly and incorrectly, and in such bad faith, as to

20  encompass virtually any medical condition, regardless of when—or even whether—it was

21  diagnosed or treated.  *Id.*  If the insured's presented claim can be linked to *anything* in the

---

22
23  [2] The Court may take judicial notice of HII's press release, Compl. ¶ 22, n.5, as well as the
    Montana Notice of Proposed Agency Action issued to HII, *id.* ¶ 52, as both "can be accurately
24  and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.
    Evid. 201(b)(2).  *See, e.g., Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir.
    2010) (taking judicial notice of information "made publicly available by government entities" and
25  websites where "neither party disputes the authenticity of the web sites or the accuracy of the
    information displayed therein"); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 970
26  (E.D. Cal. 2004) ("[M]atters of public record may be considered, including pleadings, orders, and
    other papers filed with the court or records of administrative bodies.").  The press release is
27  identified in the Complaint by a URL that resolves to a page on HII's own website, while the
    Notice of Proposed Agency Action is a document produced as the result of an administrative
28  proceeding in the public record.

1   insured's past, *from any point in time*, the claim is denied.  *Id.*

2       ***Second***, when there is no plausible way to link an insured's claim to a prior medical

3   condition, Defendants again demand to search through all available records—regardless of their

4   relation to the claim—seeking evidence of a condition that would have rendered the claimant

5   ineligible for coverage under the STM, thereby allowing Defendants to void the policy and not

6   pay the claim.  *Id.* ¶¶ 3, 26-27, 33-37, 56-73.  This practice is also uniform to all Class members.

7   *Id.*

8       ***Third***, Defendants' policy and practice is to premise refusals to pay on common and

9   incorrect assertions that there is insufficient information to process claims.  *Id.*  ¶¶ 3, 26-27, 33-

10  37, 54, 58-73.  This allows Defendants to sidestep paying proper claims because it would be

11  impossible for the insured to provide the level of detail purportedly needed.  *Id.*

12      In light of the above, common conduct, Defendants have also engaged in serial and

13  uniform misrepresentations and omissions to Class members.  Namely, they have marketed health

14  insurance policies that, because of the unconscionable claims-handling processes described

15  above, improperly and unlawfully exclude material numbers of claims, making the insurance

16  nearly worthless.  *Id.* ¶¶ 3, 39-57; 104-114.  Through various declarations, HCC has introduced

17  copious pages of website screen shots and welcome kits.  *See, generally*, Dkt. Nos. 50-52.

18  However, none of these documents, nor any documents referenced in Plaintiffs' Complaint, alert

19  an insured or a prospective insured to the virtually limitless exclusions (or burdensome record

20  requests) applied by Defendants in their claims-handling practices.  *Id.*; *see also* Compl. ¶¶ 3, 39-

21  72; 104-114.  This constitutes false advertising.  *Id.* ¶¶ 104-14. Indeed, Defendant HII's poor

22  behavior in the course of marketing its policies was the subject of intense regulatory scrutiny over

23  the last several years, in several states.  *Id.* ¶¶ 50-52.

24      Defendants' internal policies and procedures, public-facing representations, and customer

25  service scripts reveal that the above-described practices are uniform to the Class.  A

26  whistleblower contractor in HCC's customer service department confirmed that these policies and

27  procedures are designed to frustrate Class members' attempts to appeal a claim's denial or to

28  provide the information purportedly sought by Defendants, and further confirmed that Defendants

1   have created a rigid script for dealing with insureds, from which their employees cannot deviate.

2   *Id.* ¶¶ 58-72.  As the whistleblower states:  "[T]he name of the game is runaround. . . .  It really

3   felt like everything was designed to be so cumbersome that the customer would either get

4   frustrated and give up or they could stall long enough to not have to pay out on the claim. . . .

5   The whole idea here is that we're a legal buffer between HCC and [the insured] as was made

6   crystal clear in training when they said outright that we'd be thrown under the bus if we ever

7   deviated from the script."  *Id.* ¶ 67.

8           As discussed in Plaintiffs' Opposition to Defendants' Motion to Stay (Dkt. No 66),

9   Defendants minimize and misconstrue the Complaint, asserting that 'Plaintiffs say X is non-

10  disclosed but it is disclosed.'  This misses the point.  Defendants engage in a common and

11  fraudulent scheme whereby they take Class members' premium payments, only to subject those

12  insureds to a claims process that is designed to uniformly and unconscionably deny the payment

13  of valid claims.  Plaintiffs' well-pleaded claims of complex fraud are cognizable under statutory

14  and common law.  Compl. ¶¶ 90-146.  Further, HII's role in the matter is clearly laid out, as it is

15  indisputable that the company (1) markets the STMs to Class members and (2) jointly developed

16  those STMs with HCC, with their unconscionable exclusions and conditions precedent.

17          **C.**     **Plaintiffs' Experiences and the Underlying Litigation**

18          Plaintiffs Azad and Buckley were, respectively, insured under Defendants' STMs.  *Id.* ¶¶

19  19-38.  Plaintiff Azad purchased his STM through HII.  Compl. ¶ 22; Declaration of Dan

20  Garavuso ("Garavuso Decl.") (Dkt. No. 51) ¶¶ 1-4; *id.* at Exs. A-B.  Each Plaintiff purchased

21  their STM policies in the belief that such policies would cover unexpected medical conditions.

22  Compl. ¶¶ 19-38.  Each Plaintiff *did* suffer an unexpected and major health incident and, in

23  reliance upon the language of the policies, properly submitted claims.  *Id.*  Upon submitting

24  claims to Defendants, however, each Plaintiff was asked for an ever-increasing number of

25  medical records.  *Id.*  Specifically, as pled in the Complaint and supported with explicit references

26  to Defendants' records, Plaintiffs' were not merely required to provide medical records relevant

27  to their claims; rather, they were required to provide *all* medical records, provider notes, and labs

28  for the five years preceding their claims.  *Id.* ¶¶ 26, 33; *see also* Declaration of John Padgett in

Support of HCC Life Insurance Company and HCC Medical Insurance Services, LLC's Motion to Dismiss and Their Alternative Motion to Strike Class Allegations ("Padgett Decl.") at Exs. 16-19.

After months of complying with Defendants' requests for more information, both Azad and Buckley were again told that their claims could not be processed. Compl. ¶¶ 26-28, 33-38; Padgett Decl. at Exs. 16-19. Plaintiff Azad's bills totaled roughly $12,000, and Plaintiff Buckley's roughly $3,500. Motion to Stay (Dkt. No 63) at n.4. Plaintiffs each made continual efforts to provide sufficient information to Defendants, and were continually asked for more. Compl. ¶¶ 26-38. Discouraged and convinced that Defendants were not acting in good faith, Plaintiffs gave up and realized they would have to pay their medical bills directly. *Id.*

Thus, like all Class members, Plaintiffs were: (1) misled into purchasing insurance policies that they believed would cover unforeseen medical events; (2) subjected to Defendants' unconscionable claims-handling practices, despite complying in good faith with Defendants' increasingly-unreasonable (and impossible to fulfill) requests; and (3) ultimately had their claims files closed by Defendants, in bad faith, which left Plaintiffs (like all Class members) on their own to resolve their unpaid, substantial medical bills.

### D.   Procedural History

Plaintiffs filed their Complaint on February 7, 2017, alleging five claims for relief: (1) violations of Cal. Bus. & Prof. Code § 17200, *et seq*.; (2) violations of Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) unjust enrichment. Defendant HII then filed the instant Motion to Dismiss and to Strike. Dkt. No. 60 ("Mot.").[3]

### LEGAL STANDARDS

### A.   Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks "a cognizable legal theory" or "sufficient facts to support a cognizable legal theory." *Shroyer v. New*

---

[3] Each Defendant filed a separate Motions to Dismiss (Dkt. Nos. 48, 58, 60) and, in the case of HCC and HII, Motions to Strike (Dkt. Nos. 49, 60), as well as a Motion to Stay (Dkt. No. 63).

1  *Cingular Wireless Servs., Inc.*, 606 F.3d 658, 664 (9th Cir. 2010). The issue is not whether the

2  non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the

3  claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Moreover, the

4  Court must draw "all reasonable inferences from the complaint in [plaintiffs'] favor," *Mohamed v.*

5  *Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (en banc), and "must accept as true

6  all of the factual allegations contained in the complaint" and "construe them in the light most

7  favorable to the plaintiffs." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Siracusano v. Matrixx*

8  *Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).

9      **B.**    <u>**Rule 9(b)**</u>

10      Plaintiffs' claims under the deceptive prong of the UCL and FAL must satisfy 9(b).[4]  The

11  Ninth Circuit has long construed 9(b) to require only that "'allegations of fraud are specific

12  enough to give defendants notice of the particular misconduct which is alleged to constitute the

13  fraud charged so that they can defend against the charge and not just deny that they have done

14  anything wrong.'"  *United States for Use and Benefit of HCI Sys., Inc. v. Agbayani Construction*

15  *Co.*, No. 14-cv-02503-MEJ, 2014 WL 4979336, at *3 (N.D. Cal. Oct. 6, 2014) (quoting *Swartz v.*

16  *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)).

17      Thus, while 9(b) imposes a heightened standard, it does not require a plaintiff to allege

18  each and every detail about the alleged conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

19  1997) ("[W]e cannot make Rule 9(b) carry more weight than it was meant to bear."); *Walling v.*

20  *Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973); *see also Schlagal v. Learning Tree Int'l*, No.

21  CV 98-6384 ABC (EX), 1998 WL 1144581, at *8 (C.D. Cal. Dec. 23, 1998) ("The Court must

22  strike a careful balance between insistence on compliance with demanding pleading standards and

23  ensuring that valid grievances survive."); *Davenport v. Seattle Bank*, No. CV 15-04475-BRO

24  (JEMx), 2015 WL 6150296, at *4 (C.D. Cal. Oct. 15, 2015) ( "[Rule 9(b)] must be read in

25  ─────────────────────

26  [4]  Plaintiffs' other claims—namely, the common-law claims and the claims under other prongs of the UCL—need not satisfy 9(b).  Under Ninth Circuit law, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the

27  heightened pleading requirements.  Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

28  1105 (9th Cir. 2003).

1    harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim.").

2         Moreover, "the requirement of specificity is relaxed when the allegations indicate that a

3    defendant must necessarily possess full information concerning the facts of the controversy or

4    when the facts lie more in the knowledge of the opposite party." *Comerica Bank v. McDonald*,

5    No. C-06-03735 RMW, 2006 WL 3365599, at *2 (N.D. Cal. Nov. 17, 2006).

6         Plaintiffs' fraud-based allegations readily satisfy the requirements of Rule 9(b).

7                                          **ARGUMENT**

8         Defendant argues that Plaintiffs fall short of the "plausibility" standard under *Bell Atlantic*

9    *v. Twombly*, 550 U.S. 544, 570 (2007).  However, Plaintiffs have asserted extensive and specific

10   factual allegations regarding HII's involvement in Defendants' unlawful scheme.  These well-

11   pleaded and extensive allegations, coupled with the reasonable inferences to which Plaintiffs are

12   entitled, show that the allegations against HII are the opposite of conclusory:  they are pointed,

13   specific,  and compelling.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("[A]

14   complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

15   the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

16   (citation omitted).  Plaintiffs plausibly allege HII's liability on each claim for relief, and HII's

17   motion should be denied in its entirety.

18        A.    **The Complaint Alleges Sufficient Facts Linking HII to the Conduct**

19        HII contends that Plaintiffs have not done enough to distinguish between the bad acts of

20   HII and the other Defendants.  However, HII's formalistic objection does nothing to rebut the

21   Complaint's plain allegations that HII is specifically liable on Plaintiffs' claims for relief:  HII

22   described itself as a "partner" of HCC (Compl. ¶ 55), jointly marketed and sold the policy in

23   question to Plaintiff Azad (*id.* ¶ 22), and has been the subject of regulatory action for its

24   unscrupulous insurance sales schemes (*id.* ¶¶ 51-57).  HII's vital role in marketing and

25   administrating the plans underwritten by HCC exposes it to statutory or common law liability for

26   the misconduct complained of.  *Id.* ¶ 59.

27        Rule 8 provides that a complaint must contain "a short and plain statement of the claim

28   showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(20).  Nothing in the Complaint

1    forces HII to "speculate as to the wrong Plaintiffs have alleged they committed," and nothing in

2    the Rules prevents the filing of well-pleaded claims against co-defendants who have relationships

3    that are complex and even opague, but that exist all the same and that harm plaintiffs, separately

4    and working in tandem.  *Foth v. BAC Home Loans Servicing, LP*, No. CV 11-00114 DAE-BMK,

5    2011 WL 3439134, at *5 (D. Haw. Aug. 4, 2011); *see, e.g.*, *Fid. Nat. Title Ins. Co. v. Castle*, No.

6    C 11-00896 SI, 2011 WL 6141310, at *3 (N.D. Cal. Dec. 8, 2011) ("By referencing the

7    'Defendant Parties' . . . one is put on notice as to which defendants are alleged to have been

8    involved in the 'Fraudulent Transactions' described [elsewhere in the complaint]."); *In re Fresh

9    & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1164 (D. Idaho 2011) (holding

10   plaintiffs did not need to describe the "who-what-when-where-why" of each defendant in a multi-

11   party scheme where their "basic role in the alleged scheme" was adequately alleged).

12          Here, it cannot be disputed that HII was involved in the marketing and sale of Plaintiff

13   Azad's STM policy.  *See* Garavuso Decl. ¶¶ 1-4; *id.* at Exs. A-B.  Nor is it disputed that HII

14   expressly and publicly stated that it is a "partner" of HCC in the development of the STMs.

15   Compl. ¶ 55.  Although HII's Motion studiously avoids addressing the statement, HII has

16   publicly claimed that, as a "partner[]" of HCC, it "creates customizable and affordable, high-

17   quality health insurance products and supplemental services through partnerships with best-in-

18   class carriers" including, specifically, the STMs at issue in this litigation.  *See* HII Press Release,

19   *Health Insurance Innovations Partners With HCC Like Insurance Company to Expand Short-

20   Term Medical Portfolio*, (Jun. 3, 2013);[5] *see also* Compl. at n.5.  Plaintiffs' claims arise from (1)

21   the development and administration of STMs that contain material, unconscionable, and hidden

22   exclusions and conditions precedent; and (2) the deceptive marketing and sale of those same

23   STMs.  As discussed above, Plaintiffs have sufficiently pled HII's culpability in both of those

24   practices, sufficient to withstand a challenge under Rule 12.

25          Moreover, much of HII's cited precedent is inaccurate or inapposite.  For example, HII

26   cites *Jamison v. Royal Caribbean Cruises, Ltd.*, No. 08-1513 WQH (NLS), 2009 WL 559722, *4

27   (S.D. Cal. Mar. 4, 2009), for the proposition that "references such as 'partner,' 'close affiliate'

28   [5] Available at http://investor.hiiquote.com/releasedetail.cfm?ReleaseID=775244.

1    and 'offered and marketed jointly' are insufficient to survive a motion to dismiss."  Mot. at 5.

2    That opinion, on examination, contains no such language.  Instead, this case and HII's other cases

3    stand only for the proposition that a bare recitation of the elements of alter ego liability is

4    insufficient to link multiple defendants' conduct.  *Id.* at *4 (involving vague allegations by a *pro*

5    *se* plaintiff); *see also Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D.

6    Cal. 2006) (same); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D.

7    Cal. 2003) (faulting a plaintiff's failure to apportion bad acts between individual defendants

8    where, among other defects, the acts were taken at a certain corporation during time periods in

9    which certain defendants were not employed there).

10        Here, HII and/or its agents were responsible for false and deceptive practices causing the

11   purchase of the policies by Plaintiffs and innumerable Class members.  Compl. ¶ 39.  HII,

12   furthermore, admits that it works in close partnership with HCC on a range of functions.  Indeed,

13   HII's press release for the release of the Health*e*Med STM plan that Plaintiffs purchased, Compl.

14   ¶¶ 22, 55, "announces the launch of Health*e*Med STM through its partnership with HCC Life

15   Insurance Company," and states that it "creates customizable and affordable, high quality

16   insurance products and supplemental services through partnerships."  This cooperative joint

17   venture, upon information and belief, gives rise to HII's vicarious or direct liability for the

18   obstructive and bad-faith conduct of, among others, the customer service representatives who

19   wrongly obstructed Plaintiffs and Class Members from obtaining claims payments.  Compl. ¶ 72.

20   And there can be no dispute that HII is responsible for the deceptive or misleading statements it

21   made in marketing and selling the policies, as set forth below.

22        **B.    The Complaint Alleges Facts Supporting a UCL Claim Against HII**

23        HII argues that it cannot possibly violate § 332 of the Insurance Code "because it is

24   neither the insurer nor the insured."  Mot. at 7.[6]  HII is incorrect for two primary reasons.

25        First, the allegations of the complaint combined with the official and public records it

26   references compel the conclusion that HII and HCC are partners or joint venturers, who under

---

[6] HII only briefly challenges Plaintiffs' satisfaction of the UCL's fraud prong, and its arguments
fail for the reasons discussed in this section, as well as in Plaintiffs' discussion of how the
specificity requirements of 9(b) are satisfied.

27

28

California law are generally liable for the acts of the other.[7]  *See, e.g.*, *Orosco v. Sun-Diamond Corp.*, 51 Cal. App. 4th 1659, 1670 (Cal. App. 5th Dist. 1997); *Rickless v. Temple*, 4 Cal. App. 3d 869, 894 (Cal. App. 2d Dist. Feb. 25, 1970).  For example, the complaint alleges that HII is a "developer and administrator of" health insurance policies, Compl. ¶ 17, and that in a July 2013 press release HII announced the launch of its new short-term medical insurance product and described itself as a "partner" of HCC, Compl. ¶ 55.  Further, that release characterizes the new health policy as "HII's new short-term medical plan with HCC," rather than the other way around; it conveys the impression that HII is not only HCC's partner but that it is the managing partner, with HCC merely helping HII to provide "HII's new short-term medical plan."

Bolstering that impression, the Montana Notice of Proposed Agency Action against HII, HCC and others referenced in ¶ 52 of the Complaint states that "[o]n information and belief, the HHI entities and the individuals behind these entities ***are the masterminds*** behind the short term medical policies at issue."  *In the Matter of Health Insurance Innovations, Inc., et al.*, Case No. INS-2015-348, Notice of Proposed Agency Action at 8 (May 9, 2016) (emphasis supplied).  The Notice states that those policies "are routinely sold through misinformation and deception," and makes clear, both in the text and in two charts, that it views HII as the hub and HCC as one of the spokes of the operation.  *Id.* at 3-5.  The Notice further alleges that the "Respondent HII entities violated [Montana law] by acting as, and holding themselves out as, administrators for each Respondent insurer," including HCC.  *Id.* at 19.  In addition, it specifically alleges that HII created, operated, or knowingly profited from:

- "Misreprent[ing] pertinent facts or insurance policy provisions relating to coverages at issue";

- "Fail[ing] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies";

---

[7] A joint venture "is an undertaking by two or more persons jointly to carry out a single business enterprise for profit," and is "virtually the same as" a partnership.  *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (Cal. 1991) (internal citation omitted).  Accordingly, "the courts freely apply partnership law to joint ventures when appropriate."  *Id.*

1    •  "Refus[ing] to pay claims without conducting a reasonable investigation based upon

2       all available information"; and

3    •  "Neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable

4       settlements of claims in which liability has become reasonably clear."

5  *Id*. at 19-21.

6      The above-described allegations demonstrate that HCC and HII are partners or joint

7 venturers in connection with marketing the short-term insurance policies at issue in this case.  As

8 such they are each liable for both their own acts and the acts of the other.

9      Second, even if HII is viewed as HCC's agent, it would still be liable for violating Ins.

10 Code § 332, and therefore the UCL.[8]  Notably, in *Dias v. Nationwide Life Ins. Co*., 700 F. Supp.

11 2d 1204 (E.D. Cal. 2010), the court found that even an agent of an insurer who could not make a

12 binding contract on behalf of the insurer "could fraudulently induce the purchase of a policy

13 through his solicitation activities by misrepresenting the nature of a product or policy term." *Id*.

14 at 1221.  *See also Boggio v. California-Western States Life Ins. Co*., 108 Cal. App. 2d 597, 599

15 (Cal. App. 1952) (noting circumstances in which applicant properly relied on representations of

16 insurance agent); *Bass v. Farmers Mut. Protective Fire Ins. Co*., 21 Cal. App. 2d 21, 26, 68  (Cal.

17 App. 1937).  Here, the Complaint alleges that HII "cooperat[es] in the sale" of HCC policies,

18 "with knowledge of HCC's practices." Compl. ¶ 17.  It also alleges that the Montana

19 Commissioner of Securities and Insurance has "detailed how unlicensed Producers worked with

20 HII to sell HCC health insurance policies to unsuspecting Montana consumers."  *Id*. ¶ 52.  Those

21 allegations are sufficient to raise a reasonable inference, at the pleading stage, that HII is an agent

22 of HCC.  *See* Cal. Ins. Code § 1621; Rest. 3d of Agency, §§ 2.01, 2.03, 3.03 (3rd 2006); *see also*

23 *Zander v. Texaco, Inc*., 259 Cal. App. 2d 793, 800 (Cal. App. 3d Dist. 1968) ("A contract of

24

25 [8] HII's unscrupulous conduct is thus in derogation of important legislative policies and unfair
within the meaning of the UCL's unfairness prong (which HII barely mentions).  The alleged
conduct is also unfair because there is no benefit to consumers to not having insurance,

26 effectively, at the moment they need it most: when there are claims to pay.  *See Ferrington v.
McAfee, Inc*., No. 10-1455, 2010 WL 3910169, at *12-13 (N.D. Cal. Oct. 5, 2010) (describing

27 both the "balancing" test (which compares the gravity of the plaintiff's harm to the utility of the
defendant's conduct) and "tethering" test (which examines whether the alleged misconduct is

28 tethered to a legislatively declared policy) that are both applied by California courts).

1   agency may be implied from the circumstances and conduct of the parties.  The existence of an

2   agency is a question of fact.").

3       In short, the Complaint contains sufficient allegations to support both HII as a partner or

4   joint-venturer with HCC and HII as an agent of HCC.  It thus states a UCL claim against HII as

5   well as against HCC.

6       **C.       The Complaint Alleges Facts Supporting an FAL Claim Against HII.**

7       Plaintiffs have also stated a claim against HII under Cal. Bus & Prof. Code § 17500

8   ("FAL" or "Section 17500").  Section 17500 applies to "any person, firm, corporation, or

9   association," and prohibits, among other things, any entity to "cause to be made or disseminated

10  . . . in any [] manner or means whatsoever . . . which is untrue or misleading, and which . . .

11  should be known, to be untrue or misleading." *Id*.  As noted above, the Complaint alleges that HII

12  cooperates in selling and servicing HCC policies, that the two companies are in a self-described

13  "strong and long-lasting partnership," and that they launched a short-term medical plan together.

14  Compl. ¶ 17, 52, 55, 55 n.11.  By cooperating in the sale of HCC policies, HII made or caused to

15  be made the untrue and misleading statements and material omissions about HCC's policies,

16  practices, and customer service.  In servicing those policies, HII did the same.  *See Brewer v.*

17  *Indymac Bank*, 609 F. Supp. 2d 1104, 1124 (E.D. Cal. 2009) (plaintiffs stated claim under FAL

18  by asserting that defendants' explanation of mortgage was misleading, deceptive, or ambiguous).

19      Lastly, HII is incorrect that Plaintiffs need to plead reliance upon specific statements.  In

20  fact, "reading reliance into the UCL and FAL would subvert the public protection aspects of those

21  statutes." *Annunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005).  This is

22  because "the goal of both the UCL and FAL is the protection of consumers" and there may be

23  "numerous situations in which the addition of a reliance requirement would foreclose the

24  opportunity of many consumers to sue under the UCL and the FAL." *Id*.  Claims for false

25  advertising are evaluated from the vantage point of a reasonable consumer, and "whether

26  consumers have been or will be misled is a factual question that cannot be resolved on a motion

27  to dismiss." *Brewer*, 609 F. Supp. 2d at 1124.  As discussed in greater detail in Plaintiffs'

28  concurrently-filed Opposition to HCC's Motion to Dismiss, the Complaint alleges that both

-13-

1    Plaintiffs Azad and Buckley, as well as many other individuals, had numerous communications

2    regarding their insurance policies. They spoke with customer service representatives, agents, and

3    brokers; they received emails and letters; and they reviewed website content.  Via these common

4    and uniform communications, Plaintiffs and others were exposed to false, misleading, and

5    misrepresentative statements as well as material omissions.  Compl. ¶¶ 19-38, 42-48, 56, 63, 67,

6    73.  Plaintiffs have stated a claim against HII under both the UCL and FAL.

7          **D.      The Complaint Alleges Facts Supporting Breach of Contract and Bad Faith**

8                   **Against HII**

9          HII contends that Plaintiffs have not alleged facts to support a claim for its liability under

10   contract or bad faith.  HII is wrong.

11         Plaintiffs have alleged that HII sold, developed, and performed vital services under the

12   insurance contracts Plaintiffs purchased.  Compl. ¶¶ 22, 39, 55, 72.  HII urges that because HCC

13   was the underwriter of Plaintiffs' insurance contracts, it cannot be liable for the contractual

14   wrongs.  Mot. at 9.  However, it is well-settled that "traditional principles of state law allow a

15   contract to be enforced by or against nonparties to the contract through assumption, piercing the

16   corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and

17   estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009)

18   (citing 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)).  Here, at a minimum,

19   HII's behind-the-scenes knowledge and close cooperation in the sale and administration of

20   Plaintiffs' worthless insurance contracts, as described above and in the Complaint, render it

21   equitably estopped from denying liability under a contract theory.

22         Plaintiffs have also stated a claim against HII for breach of the implied covent of good

23   faith and fair dealing.  Under California law, "a covenant of good faith and fair dealing is implied

24   in every insurance contract." *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 214 (1986); *see*

25   *also Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (Ct. App. 1990); *Egan v. Mut. of*

26   *Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (1979).  Here, HII breached the covenant.  Plaintiffs

27   allege Defendants, including HII, systematically frustrate expectations by erecting common and

28   insurmountable roadblocks (including via unlawful post-claims underwriting) to paying claims,

1  without acknowledging they are doing so and even denying that they will never pay.  Defendants

2  hinder insureds' ability to perform by their claims.  This is classic bad faith.

3  **E.      The Complaint Alleges Facts Supporting Unjust Enrichment Against HII**

4          In stating that there is no claim for unjust enrichment, HII ignores recent Ninth Circuit

5  authority holding that unjust enrichment is a claim for relief in and of itself.  *See, e.g.*, *Berger v.*

6  *Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014).  While Plaintiffs recognize the case law

7  providing that an unjust enrichment claim should not be brought alongside a UCL claim for

8  restitution when it is duplicative, they respectfully submit that this is not a basis to dismiss

9  Plaintiffs' claim, for various reasons.

10         First, in light of this recent Ninth Circuit authority, those holdings dismissing unjust

11  enrichment claims at the pleading stage are hard to reconcile with the entitlement of alternative

12  pleading under Rule 8 of the Federal Rules of Civil Procedure.  Rule 8(d) establishes that unjust

13  enrichment may be pled in the alternative to contract or statutory claims, as Plaintiffs have done

14  here.  Compl. ¶¶ 141-46.

15         Second, and relatedly, HII challenges the UCL claim.  Although HII's arguments lack

16  merit—for the reasons set forth in Section B above—HII cannot seriously dispute Plaintiffs' right

17  to restitution in some form.

18         Third, Plaintiffs expressly seek both restitutionary *and* non-restitutionary disgorgement,

19  making their claim non-duplicative on its face.  Compl. at 30 (¶¶ C and D).  And, as a substantive

20  matter, Plaintiffs have alleged not only that Class members spent money they would not have had

21  to spend, but that Defendants have been unjustly enriched in the form of "higher premiums *and*

22  greater revenues than they would have enjoyed had they acted lawfully."  Compl. ¶ 143.  The

23  type of recoupment enjoyed by all Defendants was expressly noted as not being limited to the

24  nominal insurer, but included other economic gains beyond premiums.  At the pleading stage,

25  Plaintiffs have more than adequately alleged that all Defendants have been unjustly enriched.

26         Fourth, HII cites cases where courts had already made findings on other allegations that

27  precluded the survival of an unjust enrichment claim.  *See, e.g.*, *Samet v. Procter & Gamble Co.*,

28  No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *10 (N.D. Cal. June 18, 2013); *Brazil v. Dole*

1   *Food Co., Inc.*, 935 F.Supp.2d 947, 967 (N.D. Cal. 2013).  Unjust enrichment, which is

2   synonymous with restitution in California law, has its own elements—and these elements do not

3   track Plaintiffs' other claims: "The elements of an unjust enrichment claim are the receipt of a

4   benefit and [the] unjust retention of the benefit at the expense of another."  *Peterson v. Cellco*

5   *P'ship*, 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316, 323 (2008).

6
7   **F.      The Court Should Reject HII's Motion to Strike as Disfavored and**
    **Unsupported**

8           Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or

9   any redundant, immaterial, impertinent, or scandalous matter."  "The function of a [Rule] 12(f)

10  motion to strike is to avoid the expenditure of time and money that must arise from litigating

11  spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft*

12  *Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).  Motions to strike are "generally

13  disfavored because [they] may be used as delaying tactics and because of the strong policy

14  favoring resolution of the merits."  *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013

15  WL 5781476, at *3 (N.D. Cal. Oct. 25, 2013) (citation and internal quotation marks omitted).

16          A motion to strike should be denied "unless it is clear that the matter to be stricken could

17  have no possible bearing on the subject matter of the litigation."  *Coolsystems, Inc. v. Nice*

18  *Recovery Sys. LLC*, No. 16-CV-02958-PJH, 2016 WL 6091577, at *2 (N.D. Cal. Oct. 19, 2016)

19  (Hamilton, J.) (citation and internal quotation marks omitted).  "Any doubt concerning the

20  import of the allegations to be stricken weighs in favor of denying the motion to strike."  *In re*

21  *Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007).

22          "Given the disfavored status of Rule 12(f) motions, courts often require a showing of

23  prejudice by the moving party before granting the requested relief."  *Meyer v. Bebe Stores, Inc.*,

24  No. 14-CV-00267-YGR, 2015 WL 431148, at *5 (N.D. Cal. Feb. 2, 2015) (internal quotation

25  marks omitted).

26
27              **1.      Plaintiffs' Allegations Concerning Prior Cease and Desist Letters and**
                **Agency Action Are Anything but Immaterial**

28          HII seeks to strike allegations that: (1) it received cease and desist letters from, at least,

                                                -16-

1  the states of Michigan (on May 1, 2014), Arkansas (on March 28, 2016), and Montana (on May 9,

2  2016), all noting that it was selling short-term insurance plans through unlicensed brokers and/or

3  through misinformation and deception; and (2) it was issued a Notice of Proposed Agency Action

4  on May 9 by the Montana Commissioner of Securities and Insurance, detailing how unlicensed

5  Producers worked with Defendant to sell HCC health insurance policies to unsuspecting Montana

6  consumers.  Compl. ¶¶ 51-52.

7      HII offers only one argument in favor of striking these allegations: that they are

8  immaterial because Plaintiffs represent a California class and the cease and desist letters and

9  agency actions stem from other states.  Mot. at 11.  This one sentence argument falls far short of

10  making it "clear that the matter to be stricken could have no possible bearing on the subject

11  matter of the litigation."  *Coolsystems*, 2016 WL 6091577, at *2.  Moreover, the cases cited by

12  HII fair no better in terms of supporting its argument.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d

13  1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994) (affirming striking of

14  allegations that were barred by the statute of limitations and by res judicata); *Davidson v.*

15  *Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL 3919857, at *11-12 (N.D. Cal. Aug. 8,

16  2014) (striking allegations of on-line articles/reports and websites because plaintiff did not allege

17  that she read or relied on them).  Here, neither a statute of limitations nor a res judicata concern is

18  in play.  In addition, the salience of the cease and desist letters and agency actions do not turn on

19  whether Plaintiffs relied on them; rather, as discussed above, the import of these allegations is

20  that they underscore the systematic nature of Defendant's practices, and in particular, Defendant's

21  cooperation with HCC in selling practically worthless health insurance *all over the country*,

22  including in California.  *See supra* at Section B.

23      In light of the fact that "[a]ny doubt concerning the import of the allegations to be stricken

24  weighs in favor of denying the motion to strike," *In re Wal-Mart Stores*, 505 F. Supp. 2d at 614,

25  HII's motion should be denied.

26                 **2.  HII Fails to Articulate that It Is Prejudiced by Inclusion of Allegations**

27                 **Concerning the Cease and Desist Letters**

28  HII also fails to make the threshold showing that it is prejudiced by Plaintiffs' allegations

1    regarding prior cease and desist letters and agency action.  *Meyer*, 2015 WL 431148, at *5.  In

2    fact, HII does not even argue that it faces any prejudice as a result of these allegations.  In the

3    absence of any other conceivable prejudice, the Court should deny HII's motion to strike

4    Plaintiffs' allegations.

5         **G.      Plaintiffs Should Be Permitted to Amend the Complaint if the Court**

6         **Identifies Any Pleading Infirmities**

7         "Dismissal without leave to amend is improper unless it is clear . . . the complaint could

8    not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009);

9    Fed. R. Civ. P. 15(a)(2).  "[R]equests for leave to amend should be granted with "extreme

10   liberality."  *Moss*, 572 F.3d at 972.

11        Plaintiffs have articulated viable legal theories for each of the claims discussed in this

12   brief, and should be afforded an opportunity to allege more facts should the Court require it.

13                              **CONCLUSION**

14        For the reasons set forth above, HII's motion dismiss and to strike should be denied in its

15   entirety.

16

17   Dated: May 12, 2017                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

18                                          By:  */s/ Rachel Geman*

19                                          Rachel Geman (admitted *pro hac vice*)
                                            rgeman@lchb.com
20                                          250 Hudson Street, 8th Floor
                                            New York, NY  10013-1413
21                                          (212) 355-9500

22                                          Kelly M. Dermody (State Bar No. 171716)
                                            kdermody@lchb.com
23                                          Michelle A. Lamy (State Bar No. 308174)
                                            mlamy@lchb.com
24                                          275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339
25                                          (415) 956-1000

26
                                            CARNEY BATES & PULLIAM, PLLC
27                                          Allen Carney (admitted *pro hac vice*)
                                            acarney@cbplaw.com
28                                          David Slade (admitted *pro hac vice*)

1346077.10

1  dslade@cbplaw.com
   519 W. 7th Street
2  Little Rock, AR  72201
   (501) 312-8500
3

4  CUNEO GILBERT & LADUCA, LLP
   Michael J. Flannery (State Bar No. 196266)
5  mflannery@cuneolaw.com
   7733 Forsyth Boulevard, Suite 1675
6  Clayton, MO 63105
    (314) 226-1015
7

8  Matthew Prewitt (State Bar No. 291593)
   mprewitt@cuneolaw.com
9  16 Court Street, Suite 1012
   Brooklyn, NY 11241
10 (202) 789-3960

11 MEHRI & SKALET
   Jay Angoff (admitted *pro hac vice*)
12 jay.angoff@findjustice.com
   1250 Connecticut Avenue, NW, Suite 300
13 Washington, D.C. 20036
   (202) 822-5100
14

15 *Attorneys for Plaintiffs and the Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

1346077.10