PAGES 1 - 56

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE**

MOHAMMED AZAD, ET AL.,           )
                                 )
           PLAINTIFFS,           )    NO. C-17-0618 PJH
                                 )
 VS.                             )    WEDNESDAY, JUNE 28, 2017
                                 )
TOKIO MARINE HCC-MEDICAL         )    OAKLAND, CALIFORNIA
INSURANCE SERVICES GROUP,        )
ET AL.,                          )
                                 )    MOTION TO DISMISS
                                 )    MOTION TO STRIKE
           DEFENDANTS.           )
_____  )

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**FOR PLAINTIFFS:**            LIEFF CABRASER HEIMANN & BERNSTEIN
                              250 HUDSON STREET, 8TH FLOOR
                              NEW YORK, NEW YORK 10013
                         BY:  RACHEL GEMAN, ESQUIRE

                              MEHRI & SKALET
                              1250 CONNECTICUT AVENUE NW, SUITE 300
                              WASHINGTON, DC 20036
                         BY:  JAY ANGOFF, ESQUIRE

                              CUNEO, GILBERT & LADUCA, LLP
                              7733 FORSYTH BLVD., SUITE 1675
                              ST. LOUIS, MISSOURI 63105
                         BY:  MICHAEL J. FLANNERY, ESQUIRE

                              (APPEARANCES CONTINUED)

**REPORTED BY:**              DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                              OFFICIAL COURT REPORTER

        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
 1    FOR PLAINTIFFS:          CARNEY BATES & PULLIAM
                               519 WEST 7TH STREET
 2                             LITTLE ROCK, ARKANSAS
                         BY:  DAVID SLADE, ESQUIRE
 3

 4

 5    FOR DEFENDANT            NORTON ROSE FULBRIGHT
      TOKIO MARINE HCC:        1301 MCKINNEY, SUITE 5100
 6                             HOUSTON, TEXAS 77010
                         BY:  GERARD G. PECHT, ESQUIRE
 7

 8                             NORTON ROSE FULBRIGHT
                               98 SAN JACINTO BLVD., SUITE 1100
 9                             AUSTIN, TEXAS 78701
                         BY:  M. SCOTT INCERTO, ESQUIRE
10

11    FOR DEFENDANT            GREENSPOON MARDER, P.A.
      HII:                     2255 GLADES ROAD, SUITE 400-E
12                             BOCA RATON, FLORIDA 33431
                         BY:  GARRY W. O'DONNELL, ESQUIRE
13

14                             MINTZ, LEVIN, COHN, FERRIS,
                               GLOVSKY AND POPEO
15                             44 MONTGOMERY STREET, 36TH FLOOR
                               SAN FRANCISCO, CALIFORNIA 94104
16                       BY:  DANIEL J. HERLING, ESQUIRE

17

18    FOR DEFENDANT            HAIGHT, BROWN & BONESTEEL
      CONSUMER BENEFITS        THREE EMBARCADERO CENTER, SUITE 200
19    OF AMERICA:              SAN FRANCISCO, CALIFORNIA 94111
                         BY:  RENATA L. HODDINOTT, ESQUIRE
20

21

22

23

24

25
```

```
1    WEDNESDAY, JUNE 28, 2017                    9:03 A.M.

2                    P R O C E E D I N G S

3         THE CLERK:  CALLING CIVIL CASE 17-00618 AZAD, ET AL.

4    VERSUS TOKIO MARINE HCC MEDICAL INSURANCE SERVICES GROUP, ET

5    AL.

6        COUNSEL, PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.

7         THE CLERK:  DEFENDANTS HERE AND PLAINTIFFS ON THIS

8    SIDE.

9         THE COURT:  PLAINTIFFS CLOSEST TO THE JURY BOX.

10   DEFENSE ON THE OTHER SIDE.

11       AND WHOEVER IS GOING TO ARGUE, IF YOU WOULD COME FORWARD

12   PLEASE, STATE YOUR APPEARANCES, COME TO THE PODIUM.

13       ALL RIGHT.  PLAINTIFFS' COUNSEL.

14        MS. GEMAN:  GOOD MORNING, YOUR HONOR.  RACHEL GEMAN

15   REPRESENTING PLAINTIFFS AZAD AND BUCKLEY.

16       I'LL BE ARGUING, WITH YOUR HONOR'S PERMISSION, IN RESPONSE

17   TO THE HCC DEFENDANT'S MOTIONS.

18         THE COURT:  ALL RIGHT.

19        MR. FLANNERY:  GOOD MORNING, YOUR HONOR.  MICHAEL

20   FLANNERY WITH CUNEO GILBERT & LADUCA FOR THE PLAINTIFFS.  AND

21   I WILL BE ARGUING ON THE HII MOTION.

22         THE COURT:  ALL RIGHT.  GOOD MORNING.

23        MR. SLADE:  GOOD MORNING, YOUR HONOR.  DAVID SLADE

24   FROM CARNEY, BATES & PULLIAM ON BEHALF OF AZAD AND BUCKLEY AND

25   I WILL BE ARGUING THE CBA MOTION.
```

1          **THE COURT:**  ALL RIGHT.  GOOD MORNING.

2     DEFENSE?

3          **MR. PECHT:**  GOOD MORNING, YOUR HONOR.  GERRY PECHT

4  HERE ON BEHALF OF THE HCC DEFENDANTS.  I'LL BE ARGUING THE HCC

5  MOTION TO DISMISS AND MOTION TO STRIKE.  AND WITH ME IS MY

6  COLLEAGUE SCOTT INCERTO.

7          **THE COURT:**  GOOD MORNING.

8          **MR. INCERTO:**  GOOD MORNING, YOUR HONOR.

9          **MS. HODDINOTT:**  GOOD MORNING, YOUR HONOR.  RENATA

10  HODDINOTT APPEARING ON BEHALF OF CONSUMER BENEFITS OF AMERICA.

11          **THE COURT:**  ALL RIGHT.  GOOD MORNING.

12          **MR. HERLING:**  GOOD MORNING, YOUR HONOR.  DANIEL

13  HERLING ON BEHALF OF HEALTH INSURANCE INNOVATIONS, INC.

14     I'D LIKE TO INTRODUCE YOU TO MY COLLEAGUE GARRY O'DONNELL

15  FROM BOCA RATON, FLORIDA, AND MR. O'DONNELL WILL BE ARGUING ON

16  BEHALF OF HII.

17          **THE COURT:**  ALL RIGHT.  I THINK THAT TAKES CARE OF

18  EVERYONE.  YOU CAN BE SEATED.

19     WE ARE GOING TO START FIRST WITH HCC'S MOTIONS BECAUSE I

20  BELIEVE THEY FILED BOTH THE MOTION TO DISMISS AND MOTION TO

21  STRIKE, CORRECT?

22          **MR. PECHT:**  YES, YOUR HONOR.

23          **THE COURT:**  LET'S START FIRST WITH THE MOTION TO

24  DISMISS.

25     I'VE READ THE PAPERS.  YOU MAY CERTAINLY ADD ANYTHING THAT

1    YOU THINK IS APPROPRIATE OR EMPHASIZE ANY PARTICULAR POINTS OR

2    DRAW ME A ROADMAP.

3            **MR. PECHT:**  LET ME TRY TO DO THAT, YOUR HONOR.

4        OUR POSITION ON THIS IS SIMPLE.  BASED ON THE ALLEGATIONS

5    AND THE DOCUMENTS THAT ARE REFERRED TO IN THE COMPLAINT, THERE

6    IS NO VIABLE CASE HERE AT ALL, LET ALONE A VIABLE FEDERAL

7    CLASS ACTION CASE.

8            **THE COURT:**  OKAY.  LET'S START WITH THAT ONE ISSUE,

9    THAT PRELIMINARY ISSUE ABOUT THE DOCUMENTS THAT YOU WISH THE

10   COURT TO CONSIDER.

11       YOU'VE CERTAINLY EXPANDED IT BEYOND WHAT I AM ACCUSTOMED

12   TO SEEING.  WE HAVE ESSENTIALLY THREE CATEGORIES OF DOCUMENTS

13   OUTSIDE OF THE PLEADINGS THAT YOU REFER TO AND WANT THE COURT

14   TO CONSIDER BECAUSE THEY ARE INCORPORATED BY REFERENCE.  I

15   THINK THAT'S YOUR POSITION, THEY ARE INCORPORATED BY REFERENCE

16   BY THE COMPLAINT.

17       NO PROBLEM WITH REGARD TO THE BROCHURE, THE POLICY, THE

18   APPLICATION FORM.  THE CLAIM FILES ARE A LITTLE MORE

19   PROBLEMATIC.  THERE SEEMS TO ME THERE MIGHT BE SOME DISPUTE OR

20   EXPLANATIONS NEEDED, ET CETERA, AND NOT I'M NOT CLEAR ABOUT

21   THE WEBSITE DISCLOSURES.

22           **MR. PECHT:**  WELL, THEY REFERENCE THESE IN THE

23   COMPLAINT, YOUR HONOR.  AND THEY SAY, FOR INSTANCE, FOR THE

24   WEBSITE DISCLOSURES, THE PLAINTIFFS SAY THAT THIS INFORMATION

25   WAS AVAILABLE ON THE WEBSITE, THAT THE BROCHURE WAS THERE.

1    NOW, AS IT TURNED OUT, AZAD AND BUCKLEY NEVER READ OR

2  REFERRED TO THE BROCHURE.  SO THE WHOLE POINT ABOUT THE

3  BROCHURE IS REALLY A SIDE ISSUE.  IN FACT, I THINK WHEN WE

4  KIND OF GO THROUGH THESE ISSUES, WE ARE GOING TO SEE THAT

5  THERE'S A VERY LIMITED ISSUE HERE, AND I'VE GOT A WAY TO, I

6  THINK, ADDRESS THAT VERY LIMITED ISSUE THAT WE HAVE IN THIS

7  CASE.

8        **THE COURT:**  OKAY.  WELL, I JUST WANT TO LET YOU KNOW

9  THAT YOUR MOTION READS MORE LIKE A MOTION FOR SUMMARY JUDGMENT

10  TO THE EXTENT THAT IT WANTS ME TO TAKE INTO ACCOUNT ALL THESE

11  VARIOUS DIFFERENT THINGS, ALBEIT THEY WERE REFERENCED IN THE

12  COMPLAINT, NONETHELESS I THINK YOU HAVE EXPANDED BEYOND THE

13  NOTION OF INCORPORATION BY REFERENCE OF MATTERS THAT ARE NOT

14  SUBJECT TO DISPUTE.

15    SO I WILL DETERMINE WHETHER OR NOT THERE REALLY IS ANY

16  DISPUTE ABOUT THE CONTENTS OF ANY OF THESE DOCUMENTS.

17        **MR. PECHT:**  AND I APPRECIATE THAT.

18    I THINK YOU WILL SEE THAT THERE IS REALLY NO CONTEST ABOUT

19  THE RELIABILITY OF IT.  AND IF YOU LOOK AT THE PLAINTIFFS'

20  BRIEF, THEY REALLY DON'T CHALLENGE THE INCORPORATED BY

21  REFERENCE ISSUES.  THEY DON'T DISPUTE ANY OF THESE DOCUMENTS

22  AS BEING RELIABLE OR PART OF THE RECORD OR REFERENCED IN THE

23  COMPLAINT.

24        **THE COURT:**  OKAY.  WELL, I'LL DETERMINE WHICH ONES

25  ARE NECESSARY.

1          **MR. PECHT:**  ALL RIGHT.

2          **THE COURT:**  FOR THE COURT TO CONSIDER.

3          **MR. PECHT:**  INITIALLY, YOUR HONOR, IF YOU LOOK AT THE

4  THRUST OF THE COMPLAINT INITIALLY, IT WAS REALLY THE THRUST OF

5  IT WAS WAS THAT THERE WAS CONFUSION WITH REGARD TO THE

6  PRE-EXISTING CONDITION EXCLUSION, AND THAT THAT CONFUSION

7  RESULTED FROM THIS BROCHURE THAT EXISTED AND FROM LOOKING --

8  COMPARING THE APPLICATION WITH THE INSURANCE POLICY.

9          AND WE, YOU KNOW, POINTED OUT AND ESTABLISHED BY THE

10  COMPLAINT THAT THESE TWO PLAINTIFFS -- AND WE ARE FOCUSED ON

11  THESE TWO PLAINTIFFS, AZAD AND BUCKLEY -- THEY DIDN'T READ OR

12  RELY UPON THE BROCHURE.  THEY DON'T CLAIM THAT THEY DID.  THEY

13  DON'T CLAIM THAT THEY SAW IT.

14          AND IF THEY DID ACCESS THE WEBSITE AND HAD ACCESS TO THIS

15  INFORMATION, THEY WOULD HAVE SEEN THAT ON THE WEBSITE IN MANY,

16  MANY PLACES THERE'S A REFERENCE TO THE PRE-EXISTING CONDITION

17  EXCLUSION AND IT'S IN THE APPLICATION THAT THEY SIGNED RIGHT

18  NEXT TO THEIR SIGNATURE THAT THERE IS A PRE-EXISTING CONDITION

19  EXCLUSION.  AND IT'S IN THE INSURANCE POLICY, AND IT IS QUITE

20  CLEAR THAT IT APPLIES THAT THE INSURED HAD TREATMENT --

21  MEDICAL TREATMENT, DIAGNOSIS, CARE, OR ADVICE WITHIN THE LAST

22  SIX MONTHS PRIOR TO THE EFFECTIVE DATE OF THE POLICY.

23          AND THAT'S -- THERE'S NO AMBIGUITY ABOUT IT.  THERE'S NO

24  DIFFICULTY REALLY IN UNDERSTANDING THAT BASIC CONCEPT.

25          IF YOU LOOK AT THE PLAINTIFFS' RESPONSE THEN TO OUR MOTION

1    TO DISMISS OUR OPPOSITION, THEY THEN PIVOT REALLY TO A

2    DIFFERENT ISSUE.  AND THE ISSUE THAT THEY PIVOT TO IS ONE THAT

3    THERE IS UNREASONABLE AND IMPOSSIBLE TO FULFILL MEDICAL RECORD

4    REQUESTS.

5         AND -- BUT IF YOU LOOK AT THE ACTUAL REQUEST, THE ACTUAL

6    ISSUES BEFORE YOU, YOU WILL SEE WITH REGARD TO AZAD, THAT HE

7    WENT TO -- BY THE WAY, HE TAKES OUT A POLICY.  AND IN HIS

8    POLICY APPLICATION HE SAYS HE HAD NO HISTORY OF CHEST PAINS,

9    AMONG OTHER THINGS.  AND THEN SHORTLY AFTER HE TAKES OUT THE

10   POLICY, HE IMMEDIATELY GOES TO THE EMERGENCY HOSPITAL THREE

11   TIMES FOR CHEST PAIN ISSUES.

12        AND SO HE GOES TO THE EMERGENCY ROOM AT THIS FACILITY, AND

13   HE SEES A SINGLE DOCTOR, DR. BOTSWANI (PHONETIC).  AND SO WHAT

14   HAPPENED IS THAT THERE WAS A RECORD REQUEST FOR THE EMERGENCY

15   ROOM RECORDS, WHICH WERE PROVIDED -- AND WE ARE NOT ASKING FOR

16   ANY MORE RECORDS FROM THE EMERGENCY ROOM -- AND THERE WAS A

17   REQUEST FOR DR. BOTSWANI'S RECORD, AND HE PRODUCED A RECORD

18   FOR THE DAY IN WHICH SHE CAME TO VISIT -- OR HE CAME TO VISIT

19   RATHER, BUT THERE WAS AN INDICATION THERE MIGHT BE ADDITIONAL

20   RECORDS, AND WE ASKED FOR THE ADDITIONAL RECORDS.

21        NOW, IT MAY BE WITH DR. BOTSWANI THAT THE RECORD THAT WE

22   ARE MISSING IS A SINGLE PIECE OF PAPER WITH A SINGLE SENTENCE

23   ON IT THAT SAYS, I HAVE NO OTHER DOCUMENTS, NO OTHER RECORDS

24   OTHER THAN THE RECORDS THAT I PROVIDED.  SO THE RECORD

25   REQUEST, THE IDEA THAT IT'S UNLIMITED, UNREASONABLE,

1    IMPOSSIBLE TO FULFILL FOR MR. AZAD, COULD BE A SINGLE

2    DOCUMENT, A SINGLE PAGE, WITH A SINGLE SENTENCE.

3        WITH REGARD TO BUCKLEY, SAME THING.  SHE WENT TO A

4    FACILITY.  SHE HAD FACIAL SWELLING.  THERE WAS AN INDICATION

5    IN THE RECORD THAT SHE HAD A HISTORY OF FACIAL SWELLING.

6    WE'VE ASKED FOR THE TREATMENT FACILITY THAT TREATED HER, THE

7    MEDICAL RECORDS, WHICH WERE PROVIDED, AND WE ARE NOT ASKING

8    FOR THOSE, HCC IS NOT ASKING FOR THESE.

9        SHE WENT TO A TREATING PHYSICIAN WHO THEY IN THEIR

10   COMPLAINT SAYS IS READY, WILLING, AND ABLE TO PROVIDE THE

11   DOCUMENTS.  READY, WILLING AND ABLE -- THEY ALLEGE THAT IN THE

12   COMPLAINT.  BUT HE HASN'T DONE IT YET.  SO HE HASN'T DONE IT

13   YET.

14       SO WHAT HAPPENED IS, WAITING ON WHAT COULD BE A SINGLE

15   PIECE OF PAPER FROM AZAD, AND A DOCTOR WHO IS READY, WILLING,

16   AND ABLE TO PRODUCE THE MEDICAL RECORDS, HCC SAID WE CAN'T

17   FORCE THEM TO DO IT.  WE CANNOT MAKE THE DOCTORS GIVE US THE

18   RECORDS.  HCC CAN'T DO THAT, BUT THE PATIENT CAN.  THE PATIENT

19   CAN.

20       THE PATIENT CAN GO TO DR. BOTSWANI AND SAY, IF YOU HAVE NO

21   OTHER RECORDS, JUST SEND THEM A LETTER SAYING YOU HAVE NO

22   OTHER RECORD.  AND THEY CAN GO TO THE TREATING PHYSICIAN FOR

23   DR. BUCKLEY (SIC) AND SAY, YOU ARE READY, WILLING, AND ABLE TO

24   PRODUCE THEM, WOULD YOU PLEASE JUST PRODUCE THE DOCUMENTS TO

25   HCC, AT WHICH POINT IN TIME HCC CAN PROCESS THIS CLAIM, CAN

1   PROCESS THE CLAIM.  AND IT CAN DETERMINE WHETHER OR NOT

2   THERE'S ANY -- WHETHER IT'S GOING TO PAY THE CLAIM OR NOT PAY

3   THE CLAIM.

4       YOU ASKED FOR A ROADMAP.  OUR ROADMAP FOR THIS IS, LET'S

5   DO THAT.  LET'S GET THIS, WHAT COULD BE A SINGLE PIECE OF

6   PAPER FROM DR. BOTSWANI AND THESE RECORDS THAT DOCTOR -- THAT

7   BUCKLEY SAYS IN HER COMPLAINT HER DOCTOR IS READY, WILLING,

8   AND ABLE TO PROVIDE.  LET'S GET THOSE DOCUMENTS.  LET'S ASSESS

9   THAT CLAIM.  LET'S MAKE A DETERMINATION AS TO WHETHER IT IS

10  PAYABLE OR NOT PAYABLE.  AND THEN WE WILL HAVE A CASE OR

11  CONTROVERSY TO DISCUSS.  WE CAN THEN DISCUSS ALL THESE THINGS

12  ABOUT PRE-EXISTING CONDITIONS OR IF THE CLAIM WAS DENIED.

13      BUT THE CLAIM HASN'T BEEN DENIED.  THE INFORMATION HAS

14  BEEN REQUESTED AND WE HAVEN'T GOTTEN THE INFORMATION YET.  IT

15  IS NOT UNLIMITED.  IT IS NOT MASSIVE.  THESE ARE REALLY VERY

16  LIMITED REQUESTS FOR DOCUMENTS.

17      AND SO WHEN YOU ASKED FOR SORT OF A ROADMAP OR APPROACH OR

18  COMMON SENSE WAY OF DEALING WITH THIS, WE THINK THAT'S A WAY

19  TO DEAL WITH IT.  WE CAN ABATE THIS CASE.  WE CAN HAVE THIS

20  WHOLE CASE -- THE DETERMINATION MADE WITHIN A COUPLE OF WEEKS

21  ONCE WE GET THE RECORDS.

22      HCC COULD ASSESS THIS CLAIM WITHIN A WEEK AFTER GETTING

23  THE MEDICAL RECORDS THAT HAVE BEEN REQUESTED.  SO WITHIN TWO

24  WEEKS FROM NOW, WE COULD HAVE A DETERMINATION, IF THEY GOT THE

25  RECORDS WITHIN A WEEK, A DETERMINATION ON TO WHETHER OR NOT

1    THESE CLAIMS NEED TO BE PAID OR NOT.  BUT WE HAVEN'T GOTTEN

2    THOSE RECORDS.

3        SO THAT'S, YOU KNOW, IF YOU DON'T DISMISS THESE CLAIMS,

4    WHICH WE THINK IS THE OTHER OPTION, DISMISSING THEM BECAUSE WE

5    DON'T BELIEVE THERE'S ANY CONFUSION WITH REGARD TO THE

6    PRE-EXISTING CONDITION AND WE DON'T BELIEVE THERE'S ANY --

7            **THE COURT:**  SO WHAT'S -- THE FIRST OPTION IS?

8            **MR. PECHT:**  FIRST OPTION IS LET'S ABATE IT AND HAVE

9    THEM PRODUCE THE DOCUMENTS.  ABATE THE CLAIM AND HAVE THEM

10   PRODUCE THE DOCUMENTS, AND THEN HAVE HCC MAKE A DETERMINATION

11   AS TO THE COVERAGE UNDER THE POLICY.

12       IT'S NOT SORT OF A DIFFICULT THING TO DO, AND IT DOES SORT

13   OF RESOLVE THIS CASE.  IT GETS US PASSED THIS PROBLEM THAT WE

14   HAVE WHICH IS THERE HAS BEEN NO DETERMINATION OF A

15   PRE-EXISTING CONDITION.  THERE'S BEEN NO DETERMINATION OF A

16   LACK OF ELIGIBILITY.

17       BECAUSE WE'VE REQUESTED DOCUMENTS AND THEY HAVEN'T BEEN

18   PROVIDED.  AND THEY ARE LIMITED DOCUMENTS.  THEY ARE NOT

19   UNREASONABLE.  THERE'S NOT AN EVER INCREASING REQUEST FOR

20   DOCUMENTS FOR AZAD OR BUCKLEY.

21       SO THAT'S OUR SIMPLE APPROACH TO ALL OF THIS.  AND WE

22   RESPECTFULLY SUBMIT THAT THAT'S ONE WAY OF ADDRESSING THESE

23   ISSUES.

24       YOU KNOW, A COUPLE OF OTHER POINTS.

25           **THE COURT:**  BUT YOU'VE FILED A MOTION TO DISMISS THE

1    CLAIMS.

2              **MR. PECHT:**  WE DID.  WE DID FILE A MOTION TO DISMISS

3    BECAUSE WE THINK THEY ARE DISMISSIBLE CLAIMS --

4              **THE COURT:**  FOR FAILURE TO STATE A CLAIM.

5              **MR. PECHT:**  YEAH.  WE THINK THEY HAVE FAILED TO STATE

6    A CLAIM BECAUSE THEY HAVE NOT DEMONSTRATED THAT THERE'S

7    ANYTHING THAT IS CONFUSING ABOUT THE PRE-EXISTING CLAIM (SIC)

8    EXCLUSION, AND THEY HAVE NOT DEMONSTRATED THAT THERE'S BEEN --

9    THE DOCUMENTS THAT ARE REFERENCED IN THE COMPLAINT DEMONSTRATE

10   IT'S NOT AN UNREASONABLE REQUEST FOR MEDICAL RECORDS.

11      I'M JUST GIVING THE COURT ANOTHER OPTION.  I AM

12   SUGGESTING, RESPECTFULLY, ANOTHER OPTION, A COMMON SENSE

13   APPROACH TO QUICKLY RESOLVING THIS ISSUE.

14      THE COURT COULD SAY, WELL, WE'LL LET THEM REPLEAD, GO

15   THROUGH ANOTHER ROUND OF MOTION PRACTICE.  WE CAN DO THAT.  I

16   MEAN THAT'S -- THAT COSTS A LOT OF MONEY, A LOT OF TIME AND

17   EFFORT, OR WE CAN HAVE A COMMON SENSE APPROACH IN WHICH THIS

18   THING CAN BE RESOLVED TWO WEEKS FROM NOW IF ONCE WE GOT THE

19   RECORDS, THEY CAN DECIDE THESE ARE VALID CLAIMS THAT SHOULD BE

20   PAID.

21      AND BY THE WAY, THAT COULD HAVE HAPPENED MONTHS AGO.  THEY

22   COULD HAVE PROVIDED THESE LIMITED RECORDS.  IT COULD HAVE

23   HAPPENED MONTHS -- BEFORE THE LAWSUIT WAS EVER FILED.  IT

24   COULD HAVE HAPPENED.  BUT THEY DIDN'T DO THAT.  THEY CHOSE

25   INSTEAD TO BRING A -- YOU KNOW, THIS LARGE CLASS ACTION CASE

```
1    WHEN ALL WE WERE LOOKING FOR IS SOME VERY LIMITED RECORDS.

2        AND AZAD SAYS IN HIS OWN -- IN THE COMPLAINT, HIS OWN

3    ALLEGATION, THEY TOLD ME TO PROVIDE ADDITIONAL RECORDS.  SO HE

4    IS NOT DISPUTING THIS.  HE ALLEGES IT IN THE COMPLAINT.

5        SO THE OTHER THINGS, YOUR HONOR, IS WHEN YOU LOOK AT

6    BUCKLEY'S CLAIM, YOU KNOW, AS WE POINTED OUT IN THE COMPLAINT,

7    SHE ALSO FAILS TO MEET EVEN THE DEDUCTIBLE.  SHE SAYS IN THE

8    COMPLAINT THAT HER CLAIM IS BELOW THE DEDUCTIBLE BY SEVERAL

9    THOUSAND DOLLARS.

10       SO -- AND SHE HAD THE POLICY UNTIL THE LAST DAY OF THE

11   POLICY AND THEN SHE SWITCHED OVER TO ANOTHER POLICY.  SHE

12   CLOSED IT OUT RIGHT BEFORE THE LAST DAY OF THE POLICY.  HER

13   CLAIM DOESN'T EVEN MEET THE DEDUCTIBLE.  SO SHE'S NOT BEEN

14   DAMAGED.  AND SHE DOESN'T CLAIM THAT SHE HAD ANY OTHER

15   INJURIES OR ANY OTHER PROBLEMS OR ANYTHING ELSE THAT WOULD

16   HAVE GOTTEN HER ABOVE THE DEDUCTIBLE.  THAT'S NOT A PART OF

17   THE ALLEGATION.  SO SHE DOESN'T EVEN HAVE A CLAIM THAT

18   SATISFIES THE DEDUCTIBLE.

19       SO -- AND THEN I'LL SAY THIS BECAUSE I THINK THIS IS

20   IMPORTANT.  I SUSPECT YOU ARE GOING TO HEAR A LOT ABOUT THIS,

21   WHICH IS THAT THERE ARE THESE ANONYMOUS INTERNET POSTINGS.

22   AND MUCH OF THE COMPLAINT IN THIS CASE IS BASED ON ANONYMOUS

23   INTERNET POSTINGS.

24       WE HAVE CITED CASES, A NUMBER OF CASES WITH REGARD TO THE

25   LACK OF RELIABILITY OF ANONYMOUS INTERNET POSTINGS AND CASES
```

THAT SAY THEY DON'T EVEN SATISFY THE MOST RUDIMENTARY ELEMENTS

OF RULE 11.

AND SO THAT IS WHAT THEY -- THEY CITE ALL THIS STUFF.  YOU

CAN'T TELL WHO THE PERSON IS WHO POSTED IT.  YOU DON'T KNOW

WHETHER THEY HAVE EVER HAD ANYTHING TO DO WITH HCC OR NOT,

WHETHER THEY WERE IN CALIFORNIA OR SOME OTHER STATE.  YOU

CAN'T TELL ANYTHING BECAUSE THEY ARE ANONYMOUS.

AND, YOU KNOW, WE RESPECTFULLY SUBMIT THOSE SHOULD NOT BE

CONSIDERED, THESE ANONYMOUS INTERNET POSTINGS THAT THEY REFER

TO SO EXTENSIVELY IN THEIR COMPLAINT.  THEY TRY TO FILL IN THE

GAPS IN A CASE THAT HAS, WE BELIEVE, NO MERIT.  THEY TRY TO

FILL IN THESE GAPS WITH ALL OF THIS INTERNET STUFF THAT

DOESN'T AMOUNT TO -- AND, BY THE WAY, IS INCONSISTENT WITH THE

PLAINTIFFS' OWN EXPERIENCE AS DEMONSTRATED BY THE DOCUMENTS

REFERENCED IN THE COMPLAINT.  INCONSISTENT WITH IT.

AND THEN WITH REGARD, YOUR HONOR, TO THE MOTION TO STRIKE,

YOU KNOW, THIS IS TO STRIKE THE CLASS ALLEGATIONS.  AND THE

REASON WHY WE ARE ASKING TO STRIKE THE CLASS ALLEGATIONS IN

THIS PARTICULAR CASE AND WHY IN THIS CASE A MOTION TO STRIKE

IS APPROPRIATE IS BECAUSE NEITHER OF THESE PLAINTIFFS CAN

REPRESENT A CLASS THAT WAS ALLEGEDLY DECEIVED BY THIS

BROCHURE, TO THE EXTENT ANYONE COULD HAVE BEEN DECEIVED BY A

BROCHURE IN WHICH EVERYTHING ELSE ON THE WEB DEMONSTRATES

CONCLUSIVELY THAT THERE'S A PRE-EXISTING CONDITION EXCLUSION.

BUT TO THE EXTENT THAT'S WHAT THEY CLAIM, AND THAT IS WHAT

1    THEY CLAIM, THAT THIS BROCHURE SOMEHOW MISLED SOMEBODY

2    SOMEHOW, SOME WAY, OR THEY WERE CONFUSED, THEY CAN'T REPRESENT

3    A CLASS OF THOSE PEOPLE BECAUSE THEY DIDN'T READ OR RELY UPON

4    THE BROCHURE.  THEY DON'T CLAIM THAT THEY DID.  SO THEY ARE

5    NOT IN THE CLASS THAT THEY ARE PURPORTING TO REPRESENT HERE.

6         AND SIMILARLY, THEY CAN'T REPRESENT A CLASS OF INSUREDS ON

7    WHOM EVER INCREASING DEMANDS FOR MEDICAL RECORDS IMPOSSIBLE TO

8    FULFILL WERE MADE BECAUSE THERE WEREN'T EVER INCREASING

9    DEMANDS FOR MEDICAL RECORDS IMPOSSIBLE TO FULFILL ON EITHER

10   ONE OF THESE PLAINTIFFS.  THE REQUEST FOR MEDICAL RECORDS ARE

11   VERY LIMITED.  THEY ARE EASY TO FULFILL.

12        DR. BUCKLEY'S DOCTOR SAID HE'S READY WILLING AND ABLE TO

13   PROVIDE THE RECORDS, HE JUST HASN'T DONE IT.

14        AS I SAID, DOCTOR -- MR. AZAD'S DOCTOR COULD VERY WELL --

15   IT COULD BE SOME LIMITED RECORDS FROM HIM, BUT IT COULD ALSO

16   BE A SINGLE PIECE OF PAPER WITH A SINGLE SENTENCE ON IT THAT

17   SAYS I HAVE NO OTHER RECORDS BECAUSE I SAW HIM ONE TIME IN THE

18   HOSPITAL FOR THIS ONE TREATMENT, AND THAT'S ALL I DID.

19        AND NONE OF THE PROVIDERS OF THE MEDICAL SERVICES ARE --

20   HAVE A PROBLEM WITH THIS.  THE TWO FACILITIES FOR WHOM THE

21   RECORDS WERE REQUEST (SIC) THEY PROVIDED THEM.  SO THEY ARE

22   NOT SAYING THESE ARE UNREASONABLE OR UNLIMITED OR IMPOSSIBLE

23   TO SATISFY.  AND HCC ISN'T CLAIMING THAT.

24        SO, IN CONCLUSION, YOUR HONOR, OUR MOTION TO DISMISS OR, I

25   WOULD SUBMIT, YOU KNOW, ANOTHER APPROACH, COMMON SENSE

1    APPROACH OF ABATEMENT UNTIL WE HAVE THIS AND THEN WE CAN HAVE

2    A CASE OR CONTROVERSY THAT'S NOT PREMATURE LIKE THIS ONE WE

3    BELIEVE IS BECAUSE WE HAVEN'T GOTTEN TO THE POINT YET OF

4    DETERMINING -- HCC HAS NOT GOTTEN TO THE POINT YET OF

5    DETERMINING WHETHER OR NOT THERE IS A VALID CLAIM HERE THAT

6    SHOULD BE PAID FOR EITHER OF THESE TWO BECAUSE WE ARE WAITING

7    ON THESE VERY LIMITED RECORDS THAT COULD BE VERY QUICKLY AND

8    EASILY PRODUCED.

9         AND I'M HERE TO ANSWER ANY MORE QUESTIONS, YOUR HONOR.

10            **THE COURT:**  ALL RIGHT.  THANK YOU.  I DON'T HAVE ANY.

11    COUNSEL?

12            **MS. GEMAN:**  THANK YOU, YOUR HONOR.

13         I THINK YOUR HONOR PUT YOUR FINGER ON IT WHEN YOU SAID

14    THAT THIS READS A BIT LIKE SUMMARY JUDGMENT.  AND EVEN INDEED

15    MR. PECHT'S COMMENTS GO -- TALKING ABOUT SPECIFIC DOCTORS,

16    INTERACTIONS, PROVISIONS OF REQUEST, BUT NOWHERE HAS DEFENDANT

17    HCC ACTUALLY ACKNOWLEDGED OR SHOWN A BASIS TO DISMISS WHAT

18    THIS CASE IS ACTUALLY ABOUT.

19         THIS CASE IS NOT ABOUT THE EXISTENCE OF A -- WHAT HCC

20    ACKNOWLEDGES IS ONLY A SIX-MONTH PRE-EXISTING CARVE-OUT.  WHAT

21    THIS CASE IS ABOUT IS THAT HCC SELLS INSURANCE UNDER FALSE

22    PRETENSES, AND THEIR FRAUDULENT SCHEME IS NOT A SIX-MONTH

23    INVESTIGATION, BUT AN UNLAWFUL FIVE YEAR LOOK-BACK WHICH

24    ITSELF SHOWS BOTH THE DELAY AND THE VIOLATION OF THE LAW AND

25    OF THE CONTRACT IN NOT USING A SIX-MONTH LOOK-BACK FOR

1    PRE-EXISTING CONDITIONS.

2         **THE COURT:**  DOES THE CONTRACT LIMIT THEM TO A

3    SIX-MONTH LOOK-BACK?

4         **MS. GEMAN:**  YES, MA'AM.

5     DEFENDANTS MOVED TO DISMISS THE CONTRACT CLAIMS SAYING WE

6    HAVEN'T CITED THE CONTRACT.  AS YOUR HONOR NOTED, THERE'S NO

7    REAL QUESTION ABOUT THE POLICY.  WE EVEN CITED SECTION 8 WHICH

8    IS THE CLAIMS PROCESSING SECTION.  AND THE PREVIOUS SECTION --

9    THE TWO PREVIOUS EXPRESSLY TALKS ABOUT SIX MONTHS.  AND

10   MR. PECHT HIMSELF MENTIONED SIX MONTHS IN HIS PRESENTATION.

11   BUT INDEED ALL THE RECORDS --

12        **THE COURT:**  AND IS THAT PROVISION IN THE COMPLAINT?

13   YOU CITE PROVISION 8 BUT ONLY AS TO THE 30-DAY CLAIMS

14   PROCESSING LIMITATION.  I DON'T RECALL SEEING ANYTHING ABOUT

15   THE SIX-MONTH PROVISION.

16        **MS. GEMAN:**  NO, NO, YOU'RE RIGHT, YOUR HONOR.  AND WE

17   DO CITE IN PARAGRAPH 41 HOW THERE IS A -- HOW THE PRE-EXISTING

18   LIMITATION PROVISION IS MISAPPLIED.  WE DO ACKNOWLEDGE, OF

19   COURSE, THAT THERE IS A PRE-EXISTING CONDITION LIMITATION.  WE

20   DON'T SAY THAT AMONG THE MANY WAYS IN WHICH IT'S ACTUALLY A

21   CABINED LIMITATION THAT DEFENDANTS DON'T HONOR IS THAT THEY GO

22   BACK FIVE YEARS VERSUS THE SIX MONTHS, BUT THEY THEMSELVES

23   HAVE SOUGHT TO INTRODUCE ALL THESE DOCUMENTS IN THE RECORD

24   THAT INDEED CORROBORATE WHAT WE ARE SAYING.

25    THE BASIC ALLEGATION IS THAT DEFENDANTS DON'T -- THEY SAY

```
 1    THEY ARE DOING ONE THING BUT THEY DO ANOTHER.

 2           THE COURT:  I'M NOT SURE I UNDERSTOOD.

 3           MS. GEMAN:  SURE.

 4           THE COURT:  DOES THE COMPLAINT REFERENCE SECTION 8

 5    INSOFAR AS IT CONTAINS A SIX-MONTH AS OPPOSED TO A FIVE-YEAR

 6    LOOK-BACK?

 7           MS. GEMAN:  YOUR HONOR, THE COMPLAINT DOES NOT

 8    REFERENCE THE EXACT -- THAT SECTION.  I CAN POINT YOUR HONOR

 9    TO DOCUMENT 52 WHICH IS THE DECLARATION OF JOHN PADGETT AND

10    THAT IS SECTION 6 OF THE COMPLAINT.  AS YOUR HONOR NOTED, WE

11    DID CITE EXPRESSLY SECTION 8 INCLUDING ITS PROMPT PAY

12    GUARANTEE.

13       BUT SECTION 6 DOES PROVIDE THAT PRE-EXISTING CONDITIONS

14    ARE THOSE RESULTING FROM CHARGES RESULTING DIRECTLY OR

15    INDIRECTLY FROM A CONDITION FOR WHICH A COVERED PERSON

16    RECEIVED MEDICAL TREATMENT, DIAGNOSIS, CARE, OR ADVICE WITHIN

17    THE SIX-MONTH PERIOD IMMEDIATELY PRECEDING SUCH PERSON'S

18    EFFECTIVE DATE, AND THAT THOSE ARE EXCLUDED FOR THE FIRST SIX

19    MONTHS.

20       THERE IS NO DISPUTE THAT THE PRE-EXISTING LIMITATION IS

21    SIX MONTHS.  AND, IN FACT, THERE'S NO DISPUTE THAT DEFENDANTS,

22    CONTRARY TO THE CONTRACT, CONTRARY TO WHAT THEY COMMIT TO DO

23    HAVE THIS UNLAWFUL POLICY OF THIS FIVE-YEAR LOOK-BACK.

24    ALTHOUGH DEFENDANT MADE MUCH ABOUT THE FACT THAT THEIR RECORD

25    REQUESTS WERE REASONABLE --
```

1          **THE COURT:**  YOU SAY THE UNLAWFUL POLICY.  DO YOU MEAN

2     THAT IT'S IN VIOLATION OF THE CONTRACTUAL PROVISION?

3          **MS. GEMAN:**  I MEAN BOTH THAT IT IS IN VIOLATION OF

4     THE CONTRACT BECAUSE THE CONTRACT HAS A -- PARAMETERS ON THE

5     PRE-EXISTING LIMITATION AND THE CONTRACT ALSO PROVIDES FOR

6     ESSENTIALLY A PROMPT PAYMENT.

7       WE ALSO ALLEGE THAT THE POLICY OF USING THIS UNLAWFUL

8     LOOK-BACK AS A WAY TO --

9          **THE COURT:**  WAIT.  I'M STILL TRYING TO UNDERSTAND.

10          **MS. GEMAN:**  SORRY.

11          **THE COURT:**  WHAT MAKES IT UNLAWFUL?

12          **MS. GEMAN:**  WHAT MAKES IT UNLAWFUL TO GO BACK FIVE

13     YEARS RATHER THAN SIX MONTHS WHICH IS I THINK YOUR HONOR'S

14     QUESTION --

15          **THE COURT:**  YOU EXPLAINED THAT IT VIOLATES THE

16     CONTRACT BY DOING SO.  BUT THAT DOESN'T IN AND OF ITSELF MAKE

17     IT UNLAWFUL.

18          **MS. GEMAN:**  I UNDERSTAND, YOUR HONOR.

19       OUR ALLEGATION IS IT IS UNLAWFUL IN THAT IT IS IN

20     VIOLATION OF THE UCL TO TELL PEOPLE THAT THERE'S ONE SET OF

21     POLICIES ONLY TO HAVE PEOPLE SUBMIT CLAIMS AND BE TOLD, LIKE

22     IN THE CASE OF MR. AZAD, GET ALL YOUR MEDICAL RECORDS FOR FIVE

23     YEARS.

24       THAT IS AN UNFAIR AND IN OUR VIEW UNLAWFUL PRACTICE.

25     DEFENDANTS THEMSELVES --

1          **THE COURT:**  UNLAWFUL AS USED IN THE UCL TYPICALLY

2     REFERS TO VIOLATION OF SOME STATUTORY OR REGULATORY PROVISION.

3          **MS. GEMAN:**  CORRECT, YOUR HONOR.

4          AND WE DO CITE SECTION -- IN PARAGRAPHS 94 AND 95 -- I AM

5     SORRY, 93 AND 94, INSURANCE CODE 332 WHICH IS THAT AN INSURER

6     MUST COMMUNICATE FACTS MATERIAL TO A CONTRACT.

7          WE THINK THAT -- WE ALLEGE THAT THIS BYZANTINE PROBLEM OF

8     THIS UNDISCLOSED FIVE-YEAR LOOK-BACK WHICH IS A WAY TO

9     UNLAWFULLY EXPAND PRE-EXISTING CONDITIONS AND CREATE DELAY

10    VIOLATES 332.

11         WE ALSO NOTE, YOUR HONOR --

12         **THE COURT:**  AND IS THE -- DOES THE CLASS DEFINITION

13    DEPEND UPON POLICY HOLDERS HAVING BEEN REQUESTED FOR FIVE

14    YEARS OF DOCUMENTS?

15         **MS. GEMAN:**  THE CLASS -- NO.  THE CLASS DEFINITION AS

16    WRITTEN -- IT'S AN OBJECTIVE DEFINITION.  IT'S INDIVIDUALS WHO

17    HAVE -- I SHOULD SAY, YOUR HONOR, THAT OUR UNDERSTANDING IS

18    THAT THE FIVE YEARS IS REQUESTED AS A MATTER OF COURSE.

19         AND, INDEED, THE DOCUMENTS SUBMITTED IN THE COMPLAINT SHOW

20    THAT.  SO IT'S NOT THE CASE THAT ONE PERSON WAS ASKED FOR FIVE

21    YEARS AND ONE PERSON WAS ASKED FOR SIX MONTHS.  THEY GO BACK

22    FIVE YEARS.  THAT'S WHAT THEY DO.

23         **THE COURT:**  SO IS THE ALLEGATION THEN THAT CLASS

24    MEMBERS, TO THE EXTENT THAT A PARTICULAR CLASS MEMBER IS

25    CLAIMING A VIOLATION OF THE UCL UNLAWFUL PRONG, THAT PERSON

1    WOULD HAVE REQUESTED -- WOULD HAVE BEEN REQUESTED TO PROVIDE

2    FIVE YEARS OF MEDICAL RECORDS?

3          **MS. GEMAN:**  I UNDERSTAND, YOUR HONOR.

4       THE WAY THE CLASS DEFINITION IS PHRASED IS NOT TIED TO A

5    PARTICULAR FIVE-YEAR REQUEST.  IT'S A BROADER OR PERHAPS

6    SIMPLER DEFINITION THAT SAYS IT'S INDIVIDUALS WHO PURCHASED

7    THE POLICIES OR CALIFORNIA RESIDENTS FOR WHOM HCC DENIED THE

8    CLAIM.

9          **THE COURT:**  ALL RIGHT.  BUT THERE IS A DIFFERENCE

10   THOUGH, WOULDN'T YOU SAY, BETWEEN SOMEONE WHO WAS REQUESTED TO

11   PROVIDE ONLY SIX MONTHS' WORTH OF MEDICAL RECORDS AS OPPOSED

12   TO FIVE YEARS?

13         **MS. GEMAN:**  BUT, YOUR HONOR, RESPECTFULLY, OUR

14   ALLEGATION IS THAT THEY DON'T ASK FOR SIX -- THAT'S -- YOUR

15   HONOR HAS EXACTLY PUT YOUR FINGER ON IT.

16      WHAT THEY TELL PEOPLE THEY ARE GOING TO DO IS THAT IT IS A

17   SIX-MONTH PRE-EXISTING PRE-X LIMITATION.  WHAT THEY ACTUALLY

18   DO, AS ILLUSTRATED BY BOTH OUR PLAINTIFFS AND AS CORROBORATED

19   BY THE OTHER INFORMATION IN THE COMPLAINT IS SOMETHING TOTALLY

20   DIFFERENT BUT COMMON.

21      AND WHAT THEY DO THAT'S TOTALLY DIFFERENT FROM WHAT THEY

22   SAY THEY ARE GOING TO DO IS REQUEST FIVE YEARS OF RECORDS.

23   IT'S A DELAY TACTIC.  IT WORKS.  IT'S A WAY TO FIND

24   PRE-EXISTING CONDITIONS THAT ARE OUTSIDE THE PARAMETERS.

25      YOUR HONOR HAD ASKED A MINUTE AGO ABOUT THE UNLAWFUL PRONG

1    OF THE UCL, AND I HAD NOTED THAT WE PREDICATED THE COMPLAINT

2    ON INSURANCE CODE 332, THAT PORTION OF IT.  YOUR HONOR ALSO

3    NOTICED FROM THE PAPERS THAT THE PARTIES BRIEFED THE -- AT

4    LEAST REFERENCED THE FACT THAT THE SORT OF WHAT'S CALLED

5    POST-CLAIMS UNDERWRITING THAT HCC IS DOING HERE IS NOT LAWFUL.

6    AND THE PAPERS DISCUSS INSURANCE CODE SECTION 10384.

7        IN OTHER WORDS, WE SAY THAT THE FIVE-YEAR LOOK-BACK, WHICH

8    IS JUST A VEHICLE TO DELAY AND DENY, WE SAY THAT IT NOT ONLY

9    VIOLATES THE CONTRACT AND NOT ONLY IS IT UNFAIR AND DECEPTIVE

10   BECAUSE THAT'S AN EXTREMELY ONEROUS REQUEST.  SOMEBODY WOULD

11   WANT TO KNOW THEY ARE IN THIS SITUATION, NOT ONLY IS IT UNFAIR

12   AND DECEPTIVE, BUT IT IS UNLAWFUL NOT ONLY AS A VIOLATION OF

13   THE CODE THAT WE CITED IN THE COMPLAINT, BUT INDEED OTHER

14   STATUTORY PROVISIONS AS CITED IN THE PARTIES' PAPERS.

15       AND, YOU KNOW, THE DEFENDANTS DID NOT ADDRESS THIS ISSUE

16   AT ALL.  WHAT THEY SAID IN THE BRIEFING ON THIS SUBJECT WAS,

17   WELL, YOU KNOW, WE HAVE TO BE IN COMPLIANCE BECAUSE IF WE

18   NEVER FORMALLY DENIED THE CLAIM, THEN, YOU KNOW, THEN THIS IS

19   NOT AN ISSUE.

20       BUT THAT'S JUST NOT CORRECT.  THEY SAY WE DIDN'T CANCEL

21   THE INSURANCE POLICIES SO POST-CLAIMS UNDERWRITING DOES NOT

22   APPLY.  WE SAY, NO, THAT IS NOT CORRECT.  THIS IS EXACTLY --

23   AND THE CASES WE CITED DISCUSS THIS.  THE PROBLEM WITH AN

24   INSURANCE COMPANY ACCEPTING PEOPLE'S PREMIUMS -- THESE ARE NOT

25   SO CHEAP DESPITE HOW MODEST THESE BENEFITS ARE -- MONTH AFTER

1   MONTH COLLECTING PAYMENTS, HAVING PEOPLE FACE THESE

2   CATASTROPHIC MEDICAL BILLS, AND IN THAT INSTANCE WHEN THERE IS

3   A MEDICAL EMERGENCY OR SITUATION WARRANTING PAYMENT, INSTEAD

4   OF PAYING THE BILLS OR ACTING PROMPTLY TO GO BACK TO THE SIX

5   MONTHS THAT THEY PROMISE, THEY TRY TO GO BACK FIVE YEARS.

6   IT'S ESSENTIALLY A WAY TO REDO THE WHOLE INSURANCE TO SAY,

7   WELL, MAYBE THERE IS SOMETHING FIVE YEARS AGO THAT WE CAN USE

8   AS AN EXCUSE.  THAT IS NOT LAWFUL AND IT IS DECEPTIVE TO THE

9   EXTENT THEY DON'T TELL PEOPLE THAT IS GOING TO HAPPEN.

10       THE DEFENDANTS HAVE SAID, OH, WE CAN ESSENTIALLY MOOT THIS

11   CLASS ACTION BY ESSENTIALLY PAYING YOUR TWO CLIENTS IF THEY

12   GIVE US JUST ONE PIECE OF PAPER.  BUT THAT'S NOT WHAT THE

13   RECORD REFLECTS.  THE RECORD REFLECTS A LETTER TO MR. AZAD

14   SAYING WE WANT ALL YOUR MEDICAL RECORDS FOR FIVE YEARS.

15       THE RECORD REFLECTS, IN FACT, EVEN THE SCRIPT THAT THEY

16   CITE -- THERE'S A REAL QUESTION AS TO WHETHER ONE OF THE

17   PRESUMABLY MANY RECORDED DISCUSSIONS BETWEEN MR. AZAD AND THE

18   DEFENDANTS, THEY ONLY PUT IN ONE, BUT EVEN IN THAT ONE THERE'S

19   THIS CONFUSING LANGUAGE ABOUT FIVE YEARS.  AND THEY DON'T

20   QUITE STAND BEHIND THAT BECAUSE THEN THE CONTRACT ITSELF IS

21   CLEAR ABOUT THE SIX MONTHS.

22       BUT I DON'T THINK THERE'S ANY DISPUTE IN THE PAPERS THAT

23   THEY SAY THEY GO BACK SIX MONTHS BUT THEY ACTUALLY GO BACK

24   FIVE YEARS.

25       THAT -- AND IT'S NOT JUST A TECHNICAL DIFFERENCE, SO WHAT,

```
1    SIX MONTHS, FIVE YEARS.  OUR ALLEGATION IS THAT THIS IS A

2    FRAUDULENT SCHEME THAT THE GOING BACK OF FIVE YEARS IS ITSELF

3    A KIND OF UNLAWFUL SCHEME TO DELAY AND DENY.

4             THE COURT:  YOU HAVEN'T PLED THAT CLEARLY --

5             MS. GEMAN:  I APPRECIATE THAT, YOUR HONOR.

6             THE COURT:  -- IN THE COMPLAINT.  THIS IS THE FIRST

7    EXPLANATION THAT I'M GETTING ON THAT.  THAT SEEMS TO ME TO BE

8    A VERY STRAIGHTFORWARD ALLEGATION.  I DIDN'T SEE IT ANYWHERE.

9             MS. GEMAN:  YOUR HONOR, I UNDERSTAND WHAT YOU'RE

10   SAYING.  I WOULD -- LOOK, I AGREE WITH YOUR HONOR THAT THE

11   COMPLAINT SHOULD HAVE JUST SAID POINT BLANK SIX MONTHS, MAYBE

12   SIX MONTHS, FIVE YEARS, AND THAT'S A REALLY SHORT COMPLAINT.

13   WE DO HAVE A LOT OF INFORMATION IN THE COMPLAINT, AND I THINK

14   THE COMPLAINT AS PLEADED IS SUFFICIENT.

15      WE DO DISCUSS --

16            THE COURT:  IS THAT THE MAIN ASPECT, THAT AND PUTTING

17   ASIDE THE CUSTOMER SERVICE ISSUES, IS IT CORRECT THAT THE

18   INITIAL THEORY, WHICH SEEMS TO BE MORE PROMINENT IN THE

19   COMPLAINT IS THE BROCHURE, IS THE ABSENCE OF CLEAR,

20   UNAMBIGUOUS STATEMENT OF THE PRE-EXISTING CONDITION EXCLUSION

21   IS NOT FOUND IN THE BROCHURE IS INDEED -- THE DEFENSE CORRECT

22   THAT THAT HAS BEEN CONCEDED BY PLAINTIFFS GIVEN THAT NEITHER

23   OF THE TWO NAMED PLAINTIFFS RELIED -- READ OR RELIED UPON THE

24   BROCHURE IN BUYING THE POLICY?

25            MS. GEMAN:  WELL, YOUR HONOR, WE WOULD RESPECTFULLY
```

1    DISAGREE WITH THEIR CHARACTERIZATION OF OUR COMPLAINT.

2        YES, WE UNDERSTAND THAT WE QUOTE THE BROCHURE.  THE IDEA

3    THAT WE'VE HIDDEN OR SOMEHOW PRETENDED NOT TO KNOW ABOUT

4    PRE-EXISTING CONDITIONS IS, OF COURSE, BELIED BY OUR COMPLAINT

5    WHICH TALKS A LOT ABOUT THEM.

6        OUR ALLEGATION, THOUGH, IS NOT THAT THE EXISTENCE OF

7    PRE-EXISTING LIMITATIONS WAS NOT DISCLOSED OR WAS SO

8    DIFFERENTIALLY DISCLOSED JUST TO CREATE AN ISSUE, ALTHOUGH

9    UNDER SOME CIRCUMSTANCES THAT, OF COURSE, COULD BE A CLAIM.

10       OUR ALLEGATION IS THAT THEY TAKE WHAT THEY SAY THEY ARE

11   DOING, WHICH IS A MORE SPECIFIC PRE-EXISTING CONDITIONS

12   LIMITATION AND DO EXACTLY THE OPPOSITE BY GOING MUCH BROADER

13   THAN THAT.  SO I THINK --

14           **THE COURT:**  IT JUST ISN'T CLEAR IN THE COMPLAINT AT

15   ALL.

16           **MS. GEMAN:**  I GUESS I WOULD -- I APPRECIATE WHAT YOU

17   ARE SAYING, YOUR HONOR.  I WOULD SUGGEST THAT PARAGRAPHS, YOU

18   KNOW, THE PARAGRAPHS DISCUSSING OUR PLAINTIFFS' CLAIMS AND

19   THEIR EXPERIENCES OF BEING TOLD TO GO GET FIVE YEARS OF

20   RECORDS, PARAGRAPHS 26 AND 33 TALK ABOUT THAT.  I THINK YOU'RE

21   RIGHT, THAT WE PROBABLY SOMETIMES COULD HAVE USED SIMPLER

22   LANGUAGE AND LESS FLOURISHING LANGUAGE, BUT --

23           **THE COURT:**  THIS COMPLAINT IS SIMPLY NOT A MODEL OF

24   CLARITY.  THIS SEEMS TO ME TO BE A FAIRLY STRAIGHTFORWARD

25   ISSUE THAT YOU DESCRIBED HERE.

1        IF THIS IS THE MAIN ISSUE, THE MAIN THRUST OF THE

2   COMPLAINT IS THAT IT'S -- IT VIOLATES -- THEIR PRACTICE

3   VIOLATES THE UCL IN THREE DIFFERENT WAYS, ALL CENTERED AROUND

4   THE FACT THAT THEY ASKED FOR FIVE YEARS OF MEDICAL RECORDS

5   INSTEAD OF THE SIX THAT THE CONTRACT PERMITS.  THAT IS SO

6   STRAIGHTFORWARD AND SO SIMPLE.

7        AND I WOULD HAVE TO PUT TOGETHER ALL THESE VARIOUS

8   DIFFERENT FACTUAL ALLEGATIONS.  AND YOU NEVER REFER TO SECTION

9   8, I BELIEVE IT'S SECTION 8 OF THE CONTRACT EXCEPT WITH REGARD

10  TO THE 30-DAY PROCESSING LIMITATION IN YOUR DISCUSSION OF THE

11  PRE-EXISTING CONDITION EXCLUSION.  IT'S BURIED IN HERE, IF

12  IT'S HERE AT ALL, AND I SHOULDN'T HAVE TO TRY TO FIGURE THIS

13  OUT.

14        **MS. GEMAN:**  I APPRECIATE THAT, YOUR HONOR.  I THINK

15  THAT YOUR HONOR IS CORRECT THAT THIS -- IN YOUR

16  CHARACTERIZATION OF WHAT OUR ALLEGATIONS ARE.  THEY SAY THEY

17  DO ONE THING, THEY DO ANOTHER.  AND WHAT THEY DO IS UNLAWFUL

18  AND FRAUDULENT AND UNFAIR AND IN BAD FAITH.

19        I THINK THAT YOUR HONOR'S ALSO CORRECT THAT CERTAIN THINGS

20  ARE SORT OF ILLUSTRATED THROUGH THE NAMED PLAINTIFFS, AND SO

21  I'M NOT GOING TO, YOU KNOW, I'M NOT GOING TO DISAGREE WITH

22  YOUR HONOR THAT THERE'S CERTAIN THINGS THAT SHOULD BE IN THIS

23  COMPLAINT THAT JUST ARE -- THAT ARE INFERRED OR IMPLIED, BUT

24  THEY SHOULD JUST BE SAID SIMPLE.

25        **THE COURT:**  THEY SHOULD BE SAID SIMPLY, AND YOU'VE

```
1    GOT A LOT OF STUFF IN HERE THAT DOESN'T NEED TO BE IN HERE, IN

2    MY VIEW.  IT'S JUST SORT OF CONVOLUTED.

3         MS. GEMAN:  YOUR HONOR --

4         THE COURT:  IS IT CORRECT, THOUGH, THAT THE

5    ALLEGATION IS NOT AS IT APPEARED FROM MY FIRST READ OF THE

6    COMPLAINT THAT THE BROCHURE WAS DECEPTIVELY MISLEADING?

7       BECAUSE YOUR CLIENTS, AND COUNSEL IS ABSOLUTELY CORRECT,

8    IF THAT'S WHAT THIS IS BASED UPON AND YOUR CLIENTS DIDN'T READ

9    OR RELY UPON IT, THEY CERTAINLY WOULDN'T BE -- THEIR CLAIMS

10   ARE NOT TYPICAL OF THE REST OF THE CLASS AND I'M NOT SURE THEY

11   WOULD BE ADEQUATE CLASS REPRESENTATIVES.  BUT THE PAPERS SEEM

12   TO ARGUE MORE THE FAILURE OF THE DEFENDANTS TO PROVIDE

13   INFORMATION --

14        MS. GEMAN:  MATERIAL.

15        THE COURT:  -- MORE SO THAN THE DECEPTION OF THE

16   ACTUAL BROCHURES.  YOU SEEM TO BE WALKING BACK FROM THAT AND

17   TAKING THE POSITION THAT THE INFORMATION THAT WAS PROVIDED IS

18   SOMEHOW MISLEADING.

19        MS. GEMAN:  IT'S -- YOUR HONOR, WE --

20        THE COURT:  IT IS MORE OF AN OMISSIONS SORT OF

21   THEORY.

22        MS. GEMAN:  WELL, YES.  YOUR HONOR, WE DO ALLEGE

23   OMISSIONS IN OUR COMPLAINT IN MULTIPLE PLACES THAT, IN FACT,

24   THEY DON'T -- WE ALLEGE IT IN PARAGRAPH 53, PARAGRAPH 85,

25   PARAGRAPH 96.
```

1          I WOULD -- BUT I DON'T WANT TO QUIBBLE WITH YOUR HONOR.  I

2     WOULD SAY THIS:  THAT IT'S NOT JUST ABOUT IS THE BROCHURE

3     DIFFERENT FROM THE OTHER DOCUMENTS.

4          THE COMMON -- WHETHER IT'S THROUGH THE BROCHURE OR ANY

5     OTHER CHANNEL, THE COMMON DECEPTION IS THAT IN NONE OF THE

6     MATERIALS THAT HCC PROVIDES TO ALL PROSPECTIVE INSUREDS IS

7     THEIR SCHEME DISCLOSED, IS THE MATERIAL INFORMATION THAT A

8     REASONABLE CONSUMER WOULD WANT TO KNOW DISCLOSED.  AND WHAT

9     THEY DO SAY IS MISLEADING IN LIGHT OF THOSE OMISSIONS.

10          **THE COURT:**  OKAY.  WHAT, EXCEPT THE PRE-EXISTING

11     EXCLUSION THOUGH WOULD FALL INTO THAT CATEGORY?

12          **MS. GEMAN:**  THE CATEGORY OF MISLEADING?

13          **THE COURT:**  OR OF INFORMATION THEY DON'T PROVIDE.

14          **MS. GEMAN:**  SO THEY DON'T -- RIGHT.

15          SO IN ADDITION TO WHAT WE THINK IS A HUGE ISSUE, THE

16     FIVE-YEAR LOOK-BACK BECAUSE IT'S UNLAWFUL AND DECEPTIVE.

17          **THE COURT:**  WHAT, IN ADDITION TO THAT, IS AT ISSUE?

18          **MS. GEMAN:**  THE SCOPE OF THE REQUEST AND THE FACT

19     THAT THEY DON'T -- THEY DON'T ENGAGE IN REASONABLE GOOD FAITH

20     CLAIMS PROCESSING.  SOMEBODY WOULD WANT TO KNOW THAT.

21          NOW, MISREPRESENTATION OMISSION, I MEAN, OBVIOUSLY IT

22     WOULD BE A SURPRISE IF THEY PUT ON THEIR WEBSITE, YOU KNOW, WE

23     ENGAGE IN BAD FAITH DELAY.  WE ARE NOT SAYING THAT THAT'S WHAT

24     WE WOULD HAVE EXPECTED TO SEE.  BUT WHAT THE CLIENTS AND WHAT

25     ANY CUSTOMER WOULD EXPECT WOULD BE THAT THE DUTIES OF GOOD

1    FAITH WOULD BE APPLIED TO THEM.

2        WHEN THEY TAKE OUT AN INSURANCE POLICY AND PAY PREMIUMS,

3    KNOWING THAT THERE'S A SIX-MONTH PRE-EXISTING CONDITION

4    LIMITATION, THAT IN THE EVENT THAT SOMETHING CATASTROPHIC

5    HAPPENS, THEY'RE FACING A LOT OF MEDICAL PRESSURE -- I'M

6    SORRY, FINANCIAL AND MEDICAL PRESSURE, THAT WHAT THEY GET HIT

7    WITH IS, GET ALL YOUR MEDICAL RECORDS FOR FIVE YEARS, DELAY,

8    OBSTRUCTION, YOU KNOW, USE OF PRE-EXISTING CONDITIONS THAT ARE

9    BEYOND WHAT'S AGREED TO IN THE CONTRACT.  THAT IS BAD FAITH.

10       AND SO IT'S NOT EVEN SO MUCH ABOUT THE -- WE DO CITE THE

11   BROCHURE, THAT'S CORRECT, BUT THERE'S NOTHING -- IT'S NOT

12   THAT, AGAIN, THAT THE BROCHURE SAYS ONE THING AND THERE'S

13   ANOTHER BROCHURE THAT SAYS ANOTHER THING.  ALL OF THEIR

14   MATERIALS ARE CONSISTENTLY MISLEADING BASED ON THE OMISSIONS

15   THAT WE DISCUSSED, BASED ON THE REPRESENTATION OF THE

16   SIX-MONTH PRE-EXISTING CONDITION.

17           **THE COURT:**  AND WHAT SPECIFICALLY MISLED THE TWO

18   NAMED PLAINTIFFS SINCE THEY DIDN'T READ OR RELY UPON THE

19   BROCHURE?

20           **MS. GEMAN:**  WELL, I MEAN, THEY DID LEARN ABOUT THE

21   POLICY THROUGH SIMILAR CHANNELS.  THEY, YOU KNOW, THERE'S AN

22   ENTIRE -- THERE'S AN ENTIRE TRANSCRIPT THAT DEFENDANTS

23   INTRODUCED THAT SHOWS MR. AZAD'S PRE-PURCHASE DISCUSSION WITH

24   THE COMPANY.  WE ALLEGE THAT THEY BELIEVE -- CERTAINLY THEY

25   DIDN'T KNOW --

 1          **THE COURT:**  I'M JUST TRYING TO GET --

 2          **MS. GEMAN:**  A FLAVOR FOR WHAT WAS HAPPENING.

 3          **THE COURT:**  WHAT DID THEY RELY ON?

 4          **MS. GEMAN:**  THEY RELIED ON THE FACT THAT THIS WAS --

 5  THAT THIS IS SHORT-TERM INSURANCE, IT'S SOMEWHAT LIMITED IN

 6  COVERAGE, BUT THAT IT COVERS WHAT IT IS SUPPOSED TO COVER.

 7          **THE COURT:**  WHERE DID THEY LEARN THAT INFORMATION?

 8          **MS. GEMAN:**  SO IN THE CASE, YOUR HONOR, OF

 9  MR. BUCKLEY, HE DID SOME RESEARCH.  I JUST WANT TO LOOK FOR

10  THE COMPLAINT -- LOOK FOR THIS PARAGRAPH TO MAKE SURE I STATE

11  IT CORRECTLY.

12      YOUR HONOR, MR. AZAD CONDUCTED AN ONLINE SEARCH FOR HEALTH

13  INSURANCE, AND HE WAS DIRECTED TO THE WEBSITE FOR DEFENDANTS.

14  I'M LOOKING AT PARAGRAPHS 19 AND FOLLOWS IN THE COMPLAINT.

15      HE COMMUNICATED WITH THE BROKER AND RECEIVED, AGAIN,

16  CONSISTENT ORAL AND WRITTEN INFORMATION, AND THAT'S HOW HE

17  CAME TO HAVE THIS SHORT-TERM INSURANCE POLICY.

18      IN THE CASE OF --

19          **THE COURT:**  HE WAS GIVEN INFORMATION BY A BROKER

20  VERBALLY?

21          **MS. GEMAN:**  HE WAS.  AND THAT INFORMATION IS IN THE

22  RECORD THAT DEFENDANTS INTRODUCED.  AND IT'S -- AND, AGAIN,

23  NOWHERE --

24          **THE COURT:**  WAS HE DIRECTED TO THE DEFENDANT'S

25  WEBSITE?

1          **MS. GEMAN:**  HE WAS, I THINK, FREQUENTLY DIRECTED TO

2     THEIR WEBSITE.  ESPECIALLY WHEN HE WAS TRYING TO GET HIS

3     CLAIMS FULFILLED AND THEY JUST KEPT PUTTING HIM IN THE CIRCLE

4     SAYING, GO TO THE WEBSITE, GO TO THE WEBSITE.

5          WE'RE NOT SAYING THAT THE WEBSITE WAS SOMEHOW HIDDEN.

6     WE'RE SAYING IT'S FRAUDULENT BECAUSE THEY DON'T SAY WHAT THEY

7     ARE ACTUALLY DOING.  AND ANYONE WHO LOOKS AT THE WEBSITE WOULD

8     THINK THERE'S A SIX-MONTH LIMITATION, OR WHAT HAVE YOU, AND

9     THEY WOULD THINK THIS IS INSURANCE.  AND WHAT INSURANCE MEANS

10    IS THAT WHEN YOU HAVE AN EVENT THAT REQUIRES YOU TO NEED

11    INSURANCE, THAT THE CLAIM IS PAID.  YOU DON'T THINK YOU GET

12    INSURANCE JUST TO GO INTO THIS CYCLE OF DELAY.

13         SO I DON'T, YOU KNOW -- I THINK THAT -- I THINK THAT THE

14    RELIANCE THAT I THINK YOUR HONOR IS ASKING ABOUT, WHICH IS OF

15    COURSE RELEVANT FOR SOME, NOT ALL OF THE CLAIMS, IS THAT

16    THEY -- YOU KNOW, HE UNDERSTOOD THAT THIS WAS SORT OF LIMITED

17    SHORT-TERM INSURANCE.  HE DIDN'T UNDERSTAND AND COULDN'T

18    THROUGH REASONABLE DILIGENCE HAVE UNDERSTOOD THAT INSTEAD OF

19    GOING BACK SIX MONTHS THEY GO BACK FIVE YEARS.

20         **THE COURT:**  THAT'S THE ONLY REAL CONCRETE THING THAT

21    I CAN REALLY SORT OF PUT MY HANDS AROUND IN THIS CASE.  I

22    MEAN, YOU'VE EXPLAINED IT TODAY.  I DIDN'T UNDERSTAND IT

23    BEFORE I CAME OUT HERE.  AND THAT SEEMS TO ME TO STATE A

24    PLAUSIBLE CAUSE OF ACTION BECAUSE IT'S CONCRETE.

25         A LOT OF WHAT YOU'VE ASSERTED ARE SUBJECTIVE BELIEFS ABOUT

```
1    HOW COMPANIES SHOULD DO THEIR BUSINESS.  MOST CONSUMERS ARE

2    NOT TERRIBLY HAPPY WITH THE WAY BUSINESS DOES -- HANDLES ITS

3    CUSTOMER SERVICE.  THAT'S THE HARDEST ASPECT I THINK OF THE

4    INTERFACE BETWEEN BUSINESS AND CONSUMERS.

5        BUT THAT ONE THING IS BURIED IN HERE AND EVERYTHING ELSE

6    SEEMS TO BE TOTALLY SUBJECTIVE.  MOST OF THE CUSTOMER SERVICE

7    ASPECTS OF THE, IF I'M UNDERSTANDING IT, THERE ARE ESSENTIALLY

8    THESE TWO CATEGORIES OF COMPLAINTS.  ONE HAVING TO DO WITH THE

9    PRE-EXISTING CONDITIONS AND HOW THAT'S CONVEYED AND HOW IT'S

10   PROCESSED, AND THEN THE OTHER WITH THE ACTUAL CLAIMS HANDLING

11   PROCEDURES.

12       I'M VERY INCLINED, BASED UPON WHAT I HAVE HEARD SO FAR, TO

13   DISMISS THE CLAIMS, ALL OF THEM, WITH LEAVE TO AMEND SO YOU

14   CAN STATE IT FAR MORE CLEARLY.

15       BUT -- WELL, I MEAN THAT'S ESSENTIALLY --

16           MS. GEMAN:  I UNDERSTAND.

17           THE COURT:  -- WHERE I AM.

18           MS. GEMAN:  I UNDERSTAND, YOUR HONOR.  IF I COULD SAY

19   A COUPLE OF THINGS.

20       THE -- AND, YOU KNOW, OBVIOUSLY IF WE ARE DIRECTED TO

21   AMEND, WE CAN EXPLAIN HOW THE SCHEME WE ARE TALKING ABOUT

22   REALLY HAS THE -- YOUR HONOR TALKED ABOUT IT AS SORT OF TWO

23   PRONGS, PERHAPS TWO FLAVORS, BUT IT'S REALLY THE SAME THING;

24   YOU'RE GOING BACK FIVE YEARS TO LOOK FOR ANYTHING THAT -- THAT

25   IS WRONG.
```

1     I DO THINK YOU'RE RIGHT, YOUR HONOR.  AMONG THE THINGS

2     THAT I DO IS CONSUMER CLASS ACTION LAW, AND WE GET A LOT OF

3     COMPLAINTS OF PEOPLE, YOU KNOW, SAY THINGS THAT IT'S LIKE,

4     COME ON, JUST DO ANOTHER PHONE CALL, READ A LITTLE MORE

5     CAREFULLY.  OBVIOUSLY THERE IS A COMMON SENSE COMPONENT TO

6     THIS.

7     WE SUBMIT THAT THE GENERAL FRUSTRATION WITH CUSTOMER

8     SERVICE IS A DIFFERENT ANIMAL THAN WHAT WE ARE TALKING ABOUT

9     HERE.  WE EVALUATE A LOT OF CASES.  AND IN THIS CASE, BASED ON

10    OUR INVESTIGATION, THERE IS A REALLY EGREGIOUS ABNEGATION OF

11    BASIC GOOD FAITH IN HANDLING INSURANCE CLAIMS.  THERE HAVE

12    BEEN OTHER CASES OUT THERE THAT HAVE TREATED INSURANCE CLAIMS

13    NOT ONLY ALLOWING DISCOVERY TO GO FORWARD, BUT EVEN CERTIFYING

14    CLASSES WHERE APPROPRIATE.  AND WE THINK THIS IS SUCH A CASE.

15    WE APOLOGIZE THAT THE COMPLAINT IS, WE UNDERSTAND, NOT AS

16    CLEAR AS IT COULD BE, BUT THIS ISN'T A CASE OF SOMEBODY, YOU

17    KNOW, BEING SORT OF LAZY AND OVERWHELMED AND NOT DOING THE

18    MINIMUM OF WHAT THEY ARE SUPPOSED TO.  THIS IS A CASE OF A

19    SCHEME TO DELAY AND DENY.

20    AND, YOU KNOW, WE WOULD BE HAPPY TO CLARIFY SOME OF THIS

21    IN AN AMENDED PLEADING.  WE SUBMIT THAT SOME OF THIS IS HERE,

22    BUT YOU'RE RIGHT, YOUR HONOR SHOULD NOT HAVE TO SORT OF

23    CONNECT THE DOTS.

24    SO THAT WOULD BE OUR -- WE DO WANT TO STRESS, WE ARE WELL

25    AWARE OF THE DIFFERENCE BETWEEN SORT OF GRUMBLING AND FRAUD,

1    AND WE THINK THIS IS ON THE SIDE OF THE FRAUD, IF THAT MAKES

2    SENSE, YOUR HONOR.

3           **THE COURT:**  AND THAT IS ANOTHER POINT.  I MEAN,

4    BECAUSE ALL OF YOUR ALLEGATIONS -- WELL, MOST OF THEM SOUND IN

5    FRAUD, RULE 9 REQUIRES PLEADING WITH PARTICULARITY, AND YOU

6    JUST HAVEN'T MET THAT STANDARD.

7           **MS. GEMAN:**  YOUR HONOR, CERTAINLY WE AGREE THAT

8    FRAUD-BASED CLAIMS ARE PLEADED WITH PARTICULARITY.  THERE IS

9    SOME --

10          **THE COURT:**  YOU PROBABLY DISAGREE THAT YOU MET THE

11   STANDARD, BUT YOU HAVE NOT MET IT IN MY BOOK.

12          **MS. GEMAN:**  I UNDERSTAND, YOUR HONOR.

13      AND THEN, YOUR HONOR, WITH RESPECT TO THE MOTION TO STRIKE

14   ALLEGATIONS, YOUR HONOR'S OWN JURISPRUDENCE ON THIS MAKES

15   PRETTY CLEAR THAT IT'S NOT -- IT'S PREMATURE, IT'S NOT

16   APPROPRIATE AT A MOTION TO DISMISS PHASE.

17      THERE ARE SOME EXAMPLES.  THOSE EXAMPLES ARE IN NO WAY

18   SATISFIED HERE.  DEFENDANTS SORT OF CITED A COUPLE OF CASES,

19   OF COURSE, WHERE MOTIONS TO STRIKE WERE GRANTED ON THE

20   PLEADINGS.  THOSE ARE DISTINGUISHABLE, AND WE THINK HAVE NO

21   BEARING HERE.

22      WE THINK WE HAVE ALLEGED OR DESCRIBED THE SORT OF

23   COMMONALITIES THAT WILL BE APPROPRIATE FOR CLASS CERT, BUT WE

24   THINK IT'S -- YOU KNOW, IN THE SAME WAY THAT IT'S SORT OF

25   PERHAPS INAPPROPRIATE TO COMB THROUGH SELECTED PORTIONS OF THE

```
1    RECORD THAT DEFENDANTS HAVEN'T INTRODUCED ON MOTION TO

2    DISMISS, WE THINK IT WOULD BE EXTREMELY PREMATURE FOR US TO

3    HAVE TO SATISFY RULE 23 AT THIS STAGE PREDISCOVERY.

4              THE COURT:  THANK YOU.

5              MS. GEMAN:  THANK YOU, YOUR HONOR.

6              THE COURT:  BRIEF RESPONSE?

7              MR. PECHT:  YES, YOUR HONOR.  VERY BRIEFLY.

8         THERE'S NO CONTRACTUAL PROVISION THAT'S BEEN CITED OR THAT

9    EXISTS THAT SAYS THAT WE WILL NOT LOOK FOR MEDICAL RECORDS

10   THAT GO BACK FOR A PERIOD OF TIME.  IT IS NOT IN THE CONTRACT

11   THAT SAYS THAT.

12        SHE CONFLATES TWO THINGS, WHICH IS THE ELIGIBILITY.  TO BE

13   ELIGIBLE FOR THIS POLICY, YOU HAVE TO FILL OUT AN APPLICATION

14   THAT SAYS THAT YOU DON'T HAVE ANY OF THESE CONDITIONS IN THE

15   LAST FIVE YEARS.  THAT'S PART OF THE ELIGIBILITY.  AND THEN --

16   YOU DON'T GET THE POLICY AT ALL IF YOU ARE NOT ELIGIBLE FOR

17   IT.  THEN WITHIN THE POLICY THERE'S PRE-EXISTING CONDITION

18   EXCLUSIONS.

19        SO THOSE ARE TWO VERY DIFFERENT THINGS.  THE PRE-EXISTING

20   CONDITION EXCLUSION APPLIES FOR SIX MONTHS PRIOR TO THE

21   EFFECTIVE DATE OF THE POLICY.  YOU HAVE A PRE-EXISTING

22   CONDITION IN THAT SIX-MONTH PERIOD OF TIME PRIOR TO THE

23   POLICY, THEN YOU ARE EXCLUDED.  AND SO THERE'S NO CONTRACTUAL

24   PROVISION THAT PROVIDES FOR ANY OF THIS.

25             AS A PRACTICAL --
```

1          **THE COURT:**  SECTION 8 DOESN'T?

2          **MR. PECHT:**  SECTION 8 DOES NOT LIMIT THE -- DOES NOT

3     LIMIT THE REQUEST FOR MEDICAL RECORDS HERE TO DETERMINE

4     WHETHER OR NOT THERE IS ANY FRAUD IN CONNECTION WITH THE

5     APPLICATION OR THE PROCESSING, OR THE CLAIM, THE APPLICATION

6     OF THE CLAIM.  SO --

7          **THE COURT:**  SO YOU SAY THERE'S A DISCONNECT THEN

8     BETWEEN THE REQUEST FOR RECORDS GOING BACK FIVE YEARS AND THE

9     SIX-MONTH PRE-EXISTING CONDITIONS --

10         **MR. PECHT:**  THEY ARE NOT -- THEY CAN BE RELATED

11    BECAUSE IN SOME INSTANCES -- LET'S SAY YOU HAD A PRE-EXISTING

12    CONDITION IN THE PAST SIX MONTHS.  YOU MAY WANT TO HAVE MORE

13    OF A HISTORY OF THAT PARTICULAR PATIENT IN ORDER TO UNDERSTAND

14    WHETHER IT REALLY IS A PRE-EXISTING CONDITION OR NOT.  WHAT'S

15    THE NATURE OF THAT CONDITION?  SO YOU MIGHT WANT TO HAVE

16    RECORDS THAT GO BACK FOR A FURTHER PERIOD OF TIME.

17       BUT AS A PRACTICAL MATTER, IN THIS CASE, WE DON'T REALLY

18    HAVE ANY DOCTORS THAT ARE SAYING OR ANYBODY THAT'S SAYING THAT

19    THERE IS -- THAT THE RECORDS ARE, YOU KNOW, UNREASONABLE OR

20    INAPPROPRIATE WITH REGARD TO EITHER OF THESE TWO PLAINTIFFS.

21       WE HAVE ONE SET OF DOCTORS WHO ARE SAYING, I AM READY,

22    WILLING, AND ABLE TO PRODUCE THEM.

23         **THE COURT:**  SO IS THERE, INDEED, A GENERAL ROUTINE

24    PRACTICE OF GETTING MEDICAL RECORDS FOR FIVE YEARS?

25         **MR. PECHT:**  I THINK ALL THE INSURANCE COMPANIES DO

1   THAT FOR FIVE YEARS.

2       SO IT'S -- NOW, WE DON'T ALWAYS ASK FOR FIVE YEARS OF

3   MEDICAL RECORDS.  IN SOME INSTANCES -- LET'S SAY YOU HAVE A

4   BROKEN ARM, OR CERTAIN KIND OF SURGERIES, OR YOU'RE NOT GOING

5   TO HAVE FIVE YEARS OF MEDICAL RECORDS BECAUSE YOU ARE YOUNG,

6   OR REALLY YOUNG, THERE'S A LOT OF REASONS WHY YOU MIGHT NOT

7   ASK FOR -- OR YOU MIGHT NOT ASK FOR ANY MEDICAL RECORDS UNDER

8   CERTAIN -- EXCEPT FOR THOSE THAT RELATE TO THE EXACT -- SO

9   THERE'S A LOT -- THERE CAN BE A LOT OF VARIABILITY WITH REGARD

10  TO IT.

11      BUT IF YOU'RE LOOKING AT -- WHEN PEOPLE GO BACK AND LOOK

12  AT, YOU KNOW, ELIGIBILITY ISSUES, TO DETERMINE WHETHER OR NOT

13  THERE'S FRAUD IN CONNECTION WITH THE APPLICATION PROCESS, YOU

14  MIGHT LOOK BACK FOR A PERIOD OF TIME.  FIVE YEARS IS ONE THAT

15  IS USED OFTEN IN THE INDUSTRY.

16      BY THE WAY, THE APPLICATIONS, THESE -- THIS POLICY HAS

17  BEEN IN EFFECT SINCE 1997 IN CALIFORNIA.  SO THIS IS PART OF

18  THE PRACTICE, AND THE CALIFORNIA INSURANCE COMMISSION'S

19  LOOKING AT THESE, LOOKS AT THE APPLICATION, LOOKS AT THE

20  POLICIES.

21      AND THEN TO TALK ABOUT POST-CLAIMS UNDERWRITING, WHICH WAS

22  THE OTHER POINT THAT SHE MADE, THAT, UNDER THE STATUTE, IT

23  SAYS, HAVE YOU CANCELED, RESCINDED, OR LIMITED THE POLICY,

24  THERE'S BEEN NO DETERMINATION HERE YET.

25      THAT'S WHAT I COME BACK TO, WE ARE PUTTING THE CART BEFORE

```
 1    THE HORSE.  LET'S FIRST DETERMINE WHETHER OR NOT THERE HAS
 2    BEEN A DENIAL OF THE CLAIM.  LET'S GET THESE LIMITED RECORDS
 3    THAT ARE SO LIMITED THAT THEY CAN BE PRODUCED SO QUICKLY AND
 4    ARE READY TO BE PRODUCED, LET'S GET THAT DONE, AND THEN -- AND
 5    THEN DETERMINE WHETHER WE HAVE A CASE OR A CONTROVERSY TO
 6    PURSUE, RATHER THAN GO THROUGH WHAT, A WHOLE 'NOTHER ROUND OF
 7    PLEADING, ANOTHER ROUND OF MOTIONS, AND ANOTHER ROUND OF ALL
 8    THIS STUFF THAT DOESN'T APPLY TO THESE NAMED PLAINTIFFS.
 9        AND ONE OF THE THINGS SHE MENTIONED --
10            THE COURT:  NOW, I GUESS I SHOULD CLARIFY WITH
11    PLAINTIFFS' COUNSEL, IT DOESN'T APPEAR TO ME THAT THEIR CLAIM
12    IS AS TO THE WRONGFUL DENIAL OF CLAIMS SO MUCH AS THE
13    MISHANDLING OF CLAIMS THAT ARE FILED.
14        AM I INCORRECT ABOUT THAT?  IS WRONGFUL DENIAL AN ISSUE?
15            MS. GEMAN:  YOUR HONOR, OUR CLIENTS -- THEIR FILES
16    WERE CLOSED AND THEY ULTIMATELY HAD TO EITHER PAY OR DETERMINE
17    NOT TO PAY THE CLAIMS.
18        SO YOUR HONOR IS CORRECT THAT IT IS LARGELY ABOUT WRONGFUL
19    PROCESSING, BUT EFFECTIVELY THIS IS WHY PROMPT PAY LAWS EXIST.
20    IF YOU DELAY, DELAY, DELAY, AT SOME POINT THAT IS ESSENTIALLY
21    A DENIAL.  AND THAT'S ESSENTIALLY WHAT'S HAPPENED HERE.
22    THAT'S WHAT HAPPENS TO PEOPLE, THEY GO THROUGH MONTHS AND
23    MONTHS AND MONTHS, AND ULTIMATELY THEY PAY THEMSELVES.
24            THE COURT:  SO IT'S SORT OF A CONSTRUCTIVE DENIAL
25    SITUATION?
```

1          **MS. GEMAN:**  I GUESS YOU COULD SAY THAT, YOUR HONOR.

2          **THE COURT:**  OKAY.  ALL RIGHT.

3          **MR. PECHT:**  THERE HASN'T BEEN ANY CONSTRUCTIVE

4  DENIAL.  WE ARE WAITING FOR VERY LIMITED DOCUMENTS THAT

5  EVERYBODY KNOWS WE ARE WAITING FOR.  AND WE CAN'T FORCE THE

6  PHYSICIANS TO PRODUCE THEM.  IF THEY PRODUCE THEM, THEN WE CAN

7  RESOLVE THIS ISSUE.  AND TO SAY THAT WE ARE ASKING THEM FOR

8  ALL OF THE MEDICAL RECORDS --

9          **THE COURT:**  OKAY.  YOU ARE REPEATING YOURSELF NOW.

10          **MR. PECHT:**  ALL RIGHT.  BUT I JUST WANT TO MAKE THIS

11  POINT.

12      WHAT HAPPENS IS, THE REQUEST FOR MEDICAL RECORDS GOES TO

13  THE TWO INSTITUTIONS.  IN THIS CASE, IT WAS ST. ROSE AND

14  BOTSWANI FOR AZAD, AND IT WAS THE URGENT CARE AND THE TREATING

15  PHYSICIAN FOR BUCKLEY, AND COPIES OF THOSE REQUESTS GO TO THE

16  INSURED TO SHOW THAT THEY WERE BEING REQUESTED FROM THOSE

17  FACILITIES.  WE ARE NOT ASKING THE INSURED TO PRODUCE THOSE

18  DOCUMENTS.  THAT'S NOT WHAT'S HAPPENING AT ALL.

19          **THE COURT:**  OKAY.

20          **MR. PECHT:**  THANK YOU, YOUR HONOR.

21          **THE COURT:**  ALL RIGHT.  HII HAS ALSO FILED A MOTION

22  TO DISMISS.

23          **MR. O'DONNELL:**  WE HAVE, YOUR HONOR.  GOOD MORNING.

24          **THE COURT:**  GOOD MORNING.

25          **MR. O'DONNELL:**  SO IF WE DISTILL DOWN THE COMPLAINT,

1  THE PLAINTIFFS ARE FOCUSING ON POLICY LANGUAGE AND CLAIMS

2  PROCESSING.  HII IS NOT AN INSURER, AND SO IT'S DOUBTFUL THAT

3  ANY AMENDMENT COULD CURE COUNT ONE UNDER THE UCL BECAUSE THE

4  PLAINTIFFS ARE RELYING ON THE INSURANCE CODE SECTION332, WHICH

5  APPLIES TO INSURERS.  AND BECAUSE WE ARE NOT A PARTY TO THE

6  CONTRACTS AT ISSUE IN THE CASE, THE OTHER COUNTS FOR BREACH OF

7  CONTRACT AND QUASI CONTRACTUAL RELIEF MUST FAIL ALSO.  THOSE

8  FACTS ARE NEVER GOING TO CHANGE NO MATTER HOW THE PLEADING IS

9  AMENDED.

10  NOW, WITH RESPECT TO THE PLAINTIFFS AND THE LACK OF

11  SUBSTANTIVE ALLEGATIONS TO SATISFY THE PLAUSIBILITY STANDARD,

12  MR. AZAD, HIS SOLE REFERENCE TO HII IS A POST-PURCHASE EMAIL

13  THAT HE SUGGESTS HE RECEIVED FROM HII WITHOUT REALLY ANYTHING

14  MORE ABOUT IT.  AS FAR AS MS. BUCKLEY, HER HUSBAND PURCHASED

15  THE POLICY AND THERE ARE NO ALLEGATIONS AT ALL DIRECTED TO

16  HII.

17  AND HII IS NOT INVOLVED IN THE CLAIMS PROCESSING, AND

18  THAT'S THE SECOND PRONG OF WHAT THE COMPLAINT FOCUSES IN ON.

19  WE ALSO MOVED TO STRIKE THE MONTANA ACTION, STATE

20  REGULATORY ACTIONS LIKE FDA WARNING LETTERS AREN'T FINAL.

21  THEY DON'T REALLY HAVE ANY RELIABILITY, AND IT'S IMMATERIAL

22  ALLEGATIONS THAT REALLY CONFUSE WHATEVER OPERATIVE CLAIMS AND

23  ALLEGATIONS THERE MAY BE IN AN AMENDED COMPLAINT.

24  AND AS FAR AS THE LUMPING IN, I'LL CALL IT, OF HII AND THE

25  OTHER DEFENDANTS, THEY CITE A PRESS RELEASE THAT WE ARE

1    PARTNERS WITH HCC IN AN INSURANCE PRODUCT.  WE CITED REFERENCE

2    TO THE ABA WEBSITE THAT ANNOUNCES ITS VENDOR PARTNERSHIPS WITH

3    VARIOUS COMPANIES, AND RELYING ON A PRESS RELEASE IS NOT A

4    SHORTCUT TO SATISFYING THE *TWOMBLY*, *IQBAL* PLAUSIBILITY

5    STANDARD.

6         THERE SIMPLY AREN'T ANY ALLEGATIONS TO SUPPORT SOME TYPE

7    OF ENTERPRISE OR PARTNERSHIP THEORY AGAINST HII IN THE

8    COMPLAINT, AND SO WE ARE ASKING THE COURT TO STRIKE THE

9    REFERENCES WITH RESPECT TO STATE AGENCY ACTIONS AND THE PRESS

10   RELEASE THAT WAS PUT OUT.

11        UNLESS THE COURT HAS ANY OTHER QUESTIONS OF ME, THE

12   ALLEGATIONS ARE VERY FEW IN THE COMPLAINT DIRECTED TO HII, SO

13   MY PRESENTATION IS VERY BRIEF.

14             **THE COURT:**  THANK YOU.

15        RESPONSE?

16             **MR. FLANNERY:**  GOOD MORNING, YOUR HONOR.  MICHAEL

17   FLANNERY, CUNEO GILBERT & LADUCA FOR THE PLAINTIFFS.

18        I GUESS I'LL JUST START WITH THAT LAST POINT FIRST ABOUT

19   THE MOTION TO STRIKE AND THE PRESS RELEASE.

20        I THINK WHAT I WOULD SUGGEST TO YOUR HONOR IS THAT THE

21   ACTUAL LOOKING AT THE DETAILS OF WHAT'S SAID IN THE PRESS

22   RELEASE CLEARLY SHOWS THAT IT WOULDN'T BE A DOCUMENT THAT

23   WOULD BE EXCLUDED AS A -- HAVING A -- BEING STRICKEN FOR NO

24   POSSIBLE BEARING ON THE SUBJECT MATTER OF THE LITIGATION.

25        THE PRESS RELEASE AT ISSUE LITERALLY HAS A STATEMENT FROM

```
 1    THE HII CEO, PRESIDENT AND CEO, AND SAYS, HII'S NEW SHORT-TERM
 2    MEDICAL PLAN WITH HCC HAS BEEN LAUNCHED IN 45 STATES.  IT SAYS
 3    THAT HEALTH INNOVATION -- HEALTH INSURANCE INNOVATIONS, HII,
 4    CREATES CUSTOMIZABLE AND AFFORDABLE HIGH QUALITY HEALTH
 5    INSURANCE PRODUCTS AND SUPPLEMENTAL SERVICES THROUGH
 6    PARTNERSHIPS WITH BEST IN CLASS CARRIERS.  INDEED, THE VERY
 7    TITLE OF THE PRESS RELEASE SAYS THAT HII IS PARTNERED WITH HCC
 8    LIFE INSURANCE.  SO THE NOTION THAT SOMEHOW THIS IS A GENERIC
 9    MILK TOAST PRESS RELEASE IS NOT THE CASE.
10        WHAT I WOULD SUGGEST TO YOUR HONOR IS THAT WE THINK
11    ACTUALLY WE HAVE PLED SUFFICIENT DETAIL IN THE COMPLAINT TO
12    LINK HII TO THE CONDUCT AT ISSUE.  I WON'T GO THROUGH THE --
13    ALL OF THE PARAGRAPHS, BUT WHAT I WOULD ASK YOUR HONOR TO LOOK
14    AT IS PARAGRAPH 17, 22, 51 THROUGH 57.  THESE ARE -- ALL THESE
15    PARAGRAPHS HAVE VERY SPECIFIC, VERY POINTED ALLEGATIONS ABOUT
16    WHAT HII'S RELATIONSHIP IS TO HCC, MAKES IT VERY CLEAR, IN OUR
17    VIEW, THAT THESE TWO ENTITIES ARE JOINT VENTURERS AND
18    PARTNERS.  SO WHAT I WOULD SUGGEST ON THE --
19            THE COURT:  JOINT VENTURES AND PARTNERSHIPS AREN'T
20    NECESSARILY THE SAME.
21            MR. FLANNERY:  CORRECT, YOUR HONOR.  I THINK --
22            THE COURT:  WHAT IS THE ALLEGATION?  THE COMPLAINT
23    ISN'T CLEAR.
24            MR. FLANNERY:  THE ALLEGATION IS THAT HII AND HCC ARE
25    WORKING TOGETHER AS PARTNERS TO PROVIDE THESE INSURANCE
```

1   PRODUCTS TO THE CONSUMERS, AND THAT TOGETHER THEY ARE LIABLE

2   FOR THE MISCONDUCT THAT WE'VE TALKED ABOUT.

3       SO WE'RE SAYING THAT THEY SHOULD BE HELD LIABLE IN THE

4   SAME WAY THAT HCC SHOULD BE HELD LIABLE AS HAVING PARTNERED TO

5   PROVIDE THESE PRODUCTS AND TO HAVE COMMITTED THE MISCONDUCT

6   THAT WE ALLEGE THEY HAVE DONE IN TERMS OF THE DENIAL OF CLAIMS

7   AND CONSTRUCTIVE DENIAL AND THE DELAY IN THE PROCESSING.

8           **THE COURT:**  IS HII RESPONSIBLE FOR PROCESSING THE

9   CLAIMS?

10          **MR. FLANNERY:**  I DON'T BELIEVE THAT HII ITSELF IS

11  RESPONSIBLE FOR ACTUALLY DOING THE PROCESSING ITSELF, BUT --

12          **THE COURT:**  HOW COULD THEY BE LIABLE?

13          **MR. FLANNERY:**  WE BELIEVE THAT THERE ARE ACTUAL

14  PROVISIONS IN CALIFORNIA LAW THAT SAY THAT THEY COULD BE

15  LIABLE FOR THE BAD CONDUCT OF THE OTHER JOINT VENTURERS OR

16  PARTNERS.  WE CITED THOSE TO YOUR HONOR IN THE BRIEFS.

17      I WOULD ALSO POINT OUT, BECAUSE YOU SAID AT THE START OF

18  THIS HEARING, DRAW ME A ROADMAP.  I WOULD POINT YOUR HONOR TO

19  THE MONTANA NOTICE OF PUBLIC AGENCY ACTION.

20      AGAIN, IT'S FAR FROM SAYING THAT THIS DOCUMENT ITSELF HAS

21  NO RELATION TO THE CONDUCT AT ISSUE.  THE PRESS RELEASE ITSELF

22  POINTS TO HAVING SOLD THESE PRODUCTS IN 45 STATES.  MONTANA

23  LITERALLY HAS A MAP -- LITERALLY HAS A DRAWING SHOWING WHAT

24  THE SCHEME LOOKS LIKE FROM THE HII PERSPECTIVE.

25          AND SO WHAT WE WOULD SUGGEST IS THAT THESE ALLEGATIONS

1    ALONG WITH THE OTHER ALLEGATIONS ABOUT HII CLEARLY SHOW THAT

2    THEY ARE INVOLVED IN THE SCHEME, AND THAT WE HAVE MET THE

3    PLEADING STANDARDS UNDER 9(B) AND 8(A).

4            **THE COURT:**  THERE IS NO ALLEGATION OF ANY SORT OF

5    CONTRACTUAL RELATIONSHIP BETWEEN HII AND THE PLAINTIFFS.  SO

6    HOW DOES THE BREACH OF CONTRACT CAUSE OF ACTION SURVIVE?

7            **MR. FLANNERY:**  YOUR HONOR, I THINK THAT THE -- WE

8    HAVE, IN THE SORT OF CONTINUUM OF THE STRENGTH OF OUR CLAIMS,

9    I WOULD ADMIT TO YOUR HONOR THAT THE BREACH OF CONTRACT IS A

10   MORE UPHILL FIGHT FOR US.  BUT WHAT I WOULD SAY TO YOUR HONOR

11   IS THAT THERE ARE CONCEPTS, AND WE'VE CITED THIS IN THE BRIEF,

12   FOR EXAMPLE, AS TO ESTOPPEL, BASIC CONTRACT PRINCIPLES, AND WE

13   SAY THAT WHAT SHOULD HAPPEN HERE IS THAT THERE SHOULD BE AN

14   EQUITABLE ESTOPPEL ARGUMENT BROUGHT IN CONJUNCTION WITH HII ON

15   THE BREACH OF CONTRACT CLAIM.

16       BUT AS YOU SAY, THESE -- THERE IS NO ALLEGATION THAT THEY

17   ARE LITERALLY A SIGNATORY TO THE CONTRACT, BUT WE BELIEVE THAT

18   THERE ARE SUFFICIENT FACTS THAT SHOW THAT THEY SHOULD BE

19   EQUITABLY ESTOPPED FROM DENYING THAT CLAIM.  WE THINK THAT

20   THAT IS SUFFICIENTLY PLED AT THIS STAGE.

21           **THE COURT:**  OKAY.  I'M NOT PERSUADED ON THE CONTRACT

22   CLAIMS ANYWAY.

23           **MR. FLANNERY:**  THANK YOU, YOUR HONOR.

24           **THE COURT:**  ALL RIGHT.  THANK YOU.  IS THERE ANY --

25   DO YOU WANT TO RESPOND AT ALL?

1          **MR. O'DONNELL:**  JUST BRIEFLY, YOUR HONOR.

2      AS FAR AS THE MONTANA REGULATORY PROCEEDING, THIS CASE

3  RIGHT NOW IS ABOUT TWO CALIFORNIA PLAINTIFFS.  AND EVEN THE

4  PUTATIVE CLASS IS DIRECTED TOWARD CALIFORNIA POLICY OWNERS AND

5  NOT WHAT HAS HAPPENED IN SOME OTHER STATE.

6      AND IF THERE IS SOME TYPE OF A PARTNERSHIP OR JOINT

7  VENTURE THAT THE PLAINTIFFS THINK CAN PROPERLY BE ALLEGED,

8  THEN THERE'S A PLEADING STANDARD THAT THEY MUST SATISFY TO GET

9  THAT FAR.  AND SIMPLY REFERRING TO A BUSINESS COLLOQUIALISM OF

10  A PARTNER IN DISTRIBUTING A PRODUCT, IT'S VERY COMMON FOR

11  PEOPLE TO USE THAT WORD, AND THAT DOESN'T GET YOU WHERE YOU

12  NEED TO BE AT THE PLEADING STAGE FOR SOME TYPE OF LIABILITY ON

13  A PARTNERSHIP THEORY.

14          **THE COURT:**  ALL RIGHT.  THANK YOU.

15      ALL RIGHT.  CBA?

16          **MS. HODDINOTT:**  GOOD MORNING, YOUR HONOR.

17          **THE COURT:**  GOOD MORNING.

18          **MS. HODDINOTT:**  CBA'S POSITION, AS SET FORTH IN ITS

19  MOTION TO DISMISS, IS RELATIVELY SIMPLE HERE.

20      CBA IS A MEMBERSHIP ORGANIZATION WHERE AN EXCHANGE FOR A

21  MINIMAL MONTHLY FEE $5 A MONTH CONSUMERS ARE GIVEN ACCESS TO

22  BENEFITS OR DISCOUNTS IN THE MARKETPLACE, SUCH AS DISCOUNTED

23  MOVIE TICKETS, ACCESS TO RESTAURANTS AT A DISCOUNTED RATE, AND

24  IN CERTAIN STATES, SUCH AS CALIFORNIA, ACCESS TO CERTAIN GROUP

25  POLICIES SUCH AS THE ONE AT ISSUE IN THIS LITIGATION.

1          CBA IS NOT AN INSURANCE COMPANY.  IT DOES NOT ADMINISTER

2     OR HANDLE ANY INSURANCE CLAIMS.  IT'S NOT A PARTY TO ANY OF

3     THE INSURANCE CONTRACTS, AND THERE ARE NO ALLEGATIONS THAT IT

4     DOES.

5          CBA DOES NOT ENGAGE IN ANY ADVERTISING, THEREFORE, IT

6     CAN'T BE LIABLE FOR ANY FALSE ADVERTISING, SUCH AS IS ALLEGED

7     IN THE COMPLAINT HERE.  THERE ARE NO ALLEGATIONS REALLY IN THE

8     COMPLAINT AT ALL.

9          CBA IS MENTIONED, I BELIEVE, A TOTAL OF THREE TIMES, WHICH

10    I BELIEVE WE SET FORTH IN THE MOTION TO DISMISS SPECIFICALLY.

11    AND IN NONE OF THOSE SPECIFIC ALLEGATIONS ARE THERE ANY

12    REFERENCES OF WRONGDOING.  THEY'RE REFERENCED, IN MANY WAYS,

13    CBA IS LUMPED IN, FOR LACK OF A BETTER WORD, WITH THE OTHER

14    DEFENDANTS BUT THERE'S NO ALLEGATIONS AS TO ANY SPECIFIC ACT

15    OR OMISSION ON THE PART OF CBA IN PLAINTIFFS' OPPOSITION.

16         THEY REFERENCE THE FACT THAT CBA IS MENTIONED IN HCC'S

17    BROCHURE, BUT, AGAIN, THAT IS NOT A REFERENCE TO ANY

18    ADVERTISING OR ANY AFFIRMATIVE ACT ON THE PART OF CBA.  THAT'S

19    SIMPLY THEY'RE MENTIONED IN HCC'S BROCHURE AS AN ABILITY FOR

20    HOW CONSUMERS CAN GET THIS POLICY IS BY BECOMING A MEMBER OF

21    CBA.

22         AND BASED ON THE LACK OF CBA'S INVOLVEMENT IN ANY OF THE

23    CLAIMS, WE WOULD SUBMIT THAT THE MOTION TO DISMISS SHOULD BE

24    GRANTED AND PLAINTIFFS HAVE NOT STATED ANY CLAIMS AGAINST CBA

25    SPECIFICALLY.

```
 1            THE COURT:  ALL RIGHT.  RESPONSE?

 2            MR. SLADE:  GOOD MORNING, YOUR HONOR.  DAVID SLADE

 3    FOR THE PLAINTIFFS.

 4        YOUR HONOR, I THINK WHAT IS HELPFUL TO ESTABLISH AT THE

 5    OUTSIDE IS THE FACT THAT CBA IS A PARTY TO THE HEALTH

 6    INSURANCE POLICY THAT'S AT ISSUE HERE.  AS WE SET FORTH IN OUR

 7    MOVING PAPERS AND AS WE'VE TALKED ABOUT IN THE COMPLAINT, THE

 8    SHORT-TERM HEALTH POLICIES, THE STM'S, THESE ARE THE CONTRACTS

 9    THAT FORM THE CORE OF THE LITIGATION.  AND THESE ARE CONTRACTS

10    TO WHICH CBA AND HCC ARE INDISPUTABLY PARTIES.

11        YOUR HONOR, IN THE PADGETT DECLARATION THERE ARE THREE

12    SEPARATE INSTANCES IN WHICH THE POLICIES ARE REFERENCED.

13    THERE'S EXHIBIT 7, WHICH IS THE SPECIMEN CALIFORNIA STM

14    CERTIFICATE.  THERE'S EXHIBIT 13 WHICH IS PLAINTIFF AZAD'S

15    CONTRACT, AND THEN EXHIBIT 15 WHICH IS PLAINTIFF BUCKLEY'S.

16        IN EACH OF THOSE, YOU KNOW, ON THE FRONT PAGE IT STATES

17    THAT CBA IS A PARTY TO THIS CONTRACT, AS IS HCC.  CBA IS THE

18    POLICYHOLDER, HCC IS THE INSURER.

19        NOW, WITH REGARD TO THE PLAINTIFFS AND THE PUTATIVE CLASS

20    MEMBERS BECOMING A PART OF THAT CONTRACT, YOU KNOW, THE

21    APPLICATION PROCESS THEN BRINGS THEM IN AS A PARTY TO THE

22    CONTRACT.  AND THIS IS DEMONSTRATED, I THINK, YOU KNOW, JUST

23    UNDER GENERAL CONTRACT PRINCIPLES, THE APPLICATION, YOU KNOW,

24    COVERAGE UNDER HEALTH INSURANCE IS BEING OFFERED, THE PAYMENT

25    OF PREMIUMS IS THE CONSIDERATION, THE CLASS MEMBER OR THE
```

```
1    PUTATIVE INSURED ACCEPTS THAT, AND THEN THEY BECOME A PART OF

2    THE CONTRACT.  BUT IT'S ALSO BORNE OUT IN THE RECORD THAT HCC

3    HAS PUT INTO EVIDENCE.

4         YOUR HONOR, I DON'T KNOW IF IT'S HELPFUL, I HAVE COPIES OF

5    THE PADGETT DECLARATION.  DO YOU CARE TO SEE THOSE?

6              THE COURT:  YES.  I DON'T HAVE IT IN FRONT OF ME.

7              MR. SLADE:  MAY I PROVIDE YOU WITH ONE?

8                   (DOCUMENT HANDED TO COURT.)

9              MR. SLADE:  SO, YOU KNOW, JUST TO KIND OF BEAR OUT

10   WHAT I WAS JUST ARTICULATING, EXHIBIT 7, THE SAMPLE POLICY,

11   THAT'S PAGE 20 OF 166.  AND PAGE 21 IS GOING TO BE THE FRONT

12   COVER.

13        SO THIS IS THE SAMPLE ANY CALIFORNIA INSURED WOULD SEE.

14   ARE YOU THERE, YOUR HONOR?

15             THE COURT:  YES.

16             MR. SLADE:  SO IF YOU LOOK ON THE FRONT PAGE, YOU

17   WILL SEE THE GROUP POLICY NUMBER STN600-1, THE POLICY HAS BEEN

18   ISSUED TO CONSUMER BENEFITS OF AMERICA, WHICH WE WILL REFER TO

19   AS THE POLICYHOLDER.  WE WILL REFER TO HCC LIFE INSURANCE AS

20   THE COMPANY.  AND THEN --

21             THE COURT:  WHAT PAGE ARE YOU ON?

22             MR. SLADE:  I'M SORRY, 21 OF 166.

23             THE COURT:  21 IS JUST THE -- IT'S MARKED "SPECIMEN"?

24             MR. SLADE:  YES, MA'AM.  YES, YOUR HONOR.

25             THE COURT:  OKAY.
```

1          **MR. SLADE:**  THIS IS THE SAMPLE CONTRACT THAT I THINK

2     ANY PUTATIVE CLASS MEMBER WOULD SEE.

3          SO THE VERY FIRST PARAGRAPH STATES THAT CBA IS THE

4     POLICYHOLDER AND HCC INSURANCE COMPANY IS THE COMPANY.

5          DOES YOUR HONOR SEE THAT?

6          **THE COURT:**  NOT ON PAGE 21.

7          ARE YOU LOOKING AT THIS PAGE (INDICATING).

8          **MR. SLADE:**  NO, YOUR HONOR, I AM SORRY.  AT THE TOP.

9     I'M SORRY, PAGE 21 OF 166.  I APOLOGIZE.

10          **THE COURT:**  OKAY.

11          **MR. SLADE:**  SO IT IDENTIFIES -- IT STATES THAT THE

12     POLICY HAS BEEN ISSUED TO CONSUMER BENEFITS OF AMERICA AND

13     IT'S BEING PROVIDED BY HCC LIFE INSURANCE.

14          AND THEN AT THE BOTTOM OF THE PAGE IT STATES IN ALL CAPS,

15     YOUR HONOR, "THIS CERTIFICATE IS EVIDENCE OF A CONTRACT

16     BETWEEN THE POLICYHOLDER AND THE COMPANY."  HERE THE

17     POLICYHOLDER BEING CBA AND THE COMPANY BEING HCC.

18          DOES YOUR HONOR SEE THAT?

19          **THE COURT:**  UH-HUH.

20          **MR. SLADE:**  AND THEN I THINK IT'S WORTH CONFIRMING

21     THAT THE SAME IS TRUE FOR EACH OF THE NAMED PLAINTIFFS.

22          EXHIBIT 13, WHICH IS PAGE 73 OF 166, IT BEGINS ON PAGE 73.

23     74 IS THE FIRST PAGE OF PLAINTIFF AZAD'S SPECIMEN.

24          **THE COURT:**  UH-HUH.

25          **MR. SLADE:**  IT'S THAT SAME LANGUAGE, THAT THE POLICY

```
1    HAS BEEN ISSUED TO CONSUMER BENEFITS OF AMERICA BY HCC LIFE

2    INSURANCE.  IT IS EVIDENCE OF A CONTRACT BETWEEN THE

3    POLICYHOLDER AND THE COMPANY.  SO THAT'S TRUE AS TO PLAINTIFF

4    AZAD.

5         AND THEN EXHIBIT 15 IS THE BUCKLEY FAMILY CONTRACT.  AND

6    THAT BEGINS ON PAGE 107.

7         AND THIS IS A LARGER PART OF A FULFILLMENT PACKAGE.  SO

8    THE ACTUAL CONTRACT IS ON PAGE 117.

9         DOES YOUR HONOR SEE THAT?

10              THE COURT:  YES.

11              MR. SLADE:  OKAY.  SAME THING.

12        SO, AGAIN, WE'VE ESTABLISHED THERE IS A CONTRACT AT LEAST

13   WITH REGARD TO CBA AND HCC AS TO PLAINTIFFS BUCKLEY, AZAD AND

14   GENERIC CALIFORNIA SPECIMEN.

15        THEN GOING BACK TO PAGE 108 OF 166, I THINK IT'S HELPFUL

16   TO LOOK AT SOME OF THE LANGUAGE IN THE WELCOMING PACKAGE THAT

17   HCC PROVIDED TO THE BUCKLEY FAMILY.  IT'S A LITTLE HARDER TO

18   SEE.  BUT IF YOU GO -- IS YOUR HONOR AT PAGE 108?

19              THE COURT:  YES.

20              MR. SLADE:  OKAY.

21        SO THERE'S THE FIRST PARAGRAPH THAT SAYS "THANK YOU" IN

22   ALL CAPS.  AND THEN THE SECOND PARAGRAPH AT THE BOTTOM, THE

23   PENULTIMATE SENTENCE SAYS:

24              "HCC LIFE INSURANCE COMPANY AND NO EVENT WILL PROVIDE

25              BENEFITS IN EXCESS OF THOSE SPECIFIED IN THE
```

1              INSURANCE CONTRACT."

2         **THE COURT:**  UH-HUH.

3         **MR. SLADE:**  AND THEN IF YOUR HONOR LOOKS DOWN A

4    LITTLE FURTHER IN THE FREE LOOK PROVISION IT STATES:

5              "YOUR INSURANCE CONTRACT CREATES A FREE LOOK

6              PROVISION WHICH ALLOWS YOU TO CANCEL THE CONTRACT FOR

7              ANY REASON."

8         YOUR HONOR, I THINK THAT THE DOCUMENTS PROVIDED BY

9    DEFENDANTS MAKE IT INDISPUTABLE THAT THESE POLICIES ARE A

10   CONTRACT TO WHICH THE FOLLOWING ENTITIES ARE PARTY.  CBA, HCC

11   AND ANY INSURED, WHICH IN THIS INSTANCE INCLUDES PLAINTIFFS

12   AZAD AND BUCKLEY AS WELL AS ANY PUTATIVE CLASS MEMBERS.

13        AND I THINK FROM THAT IT BECOMES, YOU KNOW, WITH THAT

14   FOUNDATION, I THINK THAT THE SCOPE OF CBA'S INVOLVEMENT, AND I

15   WOULD SUBMIT CULPABILITY, BECOMES MORE CLEAR WITH REGARD TO

16   PLAINTIFFS' CLAIMS.

17        CBA'S OVERARCHING CLAIM IS IT HAS NOTHING TO DO WITH THE

18   INSURANCE POLICIES AT THE HEART OF THE COMPLAINT, BUT I

19   BELIEVE THAT IS DEMONSTRABLY FALSE.

20        MOREOVER, IT IS AN INDISPENSABLE PARTY TO THE CONTRACT.

21   CBA IS THE CONDUIT THROUGH WHICH ANY OF THE CALIFORNIA

22   INSUREDS MAY ACQUIRE THIS.  THEY CANNOT GET THESE POLICIES

23   WITHOUT FIRST BECOMING MEMBERS OF THE CBA ORGANIZATION.  AND,

24   IN FACT, WHAT THEY ARE BUYING, WHEN THEY PAY FOR THESE

25   POLICIES, WHEN THEY PAY THEIR PREMIUMS AND THEY PAY CBA'S

1    MONTHLY DUES, IS ACCESS TO CBA'S POLICY.  AND THAT IS THE

2    BASIS OF THE CONTRACT.

3        NOW, I THINK FOR THE REASONS THAT MY COLLEAGUES HAVE

4    DISCUSSED, THE PLAINTIFFS AND THE PROSPECTIVE CLASS MEMBERS

5    ARE BEING INJURED WHEN THEY PURCHASE THIS PRODUCT, BUT I THINK

6    THAT IT IS ALSO IMPORTANT WHEN ONE CONTEMPLATES OUR MARKETING

7    CLAIM, FOR INSTANCE, THAT REGARDLESS OF THE STRENGTHS OF THE

8    CLAIM, CBA HAS A CERTAIN AMOUNT OF CULPABILITY IN THIS BECAUSE

9    IT IS CBA'S PRODUCTS AND SERVICES THAT ARE BEING MARKETED IN

10   CONJUNCTION WITH DEFENDANT HCC'S.

11       WHEN HCC OR HII IS MARKETING THESE STM POLICIES, THEY ARE

12   ALSO IMPLICITLY, BECAUSE THIS IS PART OF WHAT AN INSURED WOULD

13   PURCHASE, MARKETING MEMBERSHIP INTO CBA.  SO IN THIS REGARD,

14   ANYBODY MARKETING THESE POLICIES IS ACTING, AT LEAST IN PART,

15   AS CBA'S AGENT.

16       AND NO MATTER WHAT, ONE OF TWO THINGS HAPPENS TO GET TO

17   THE POINT WHERE CBA IS PROVIDING -- OR WHERE CBA, HCC, OR HII

18   IS PROVIDING THESE POLICIES TO INSUREDS IN CALIFORNIA.  EITHER

19   CBA APPROACHED HCC AND SAID WE WILL BE AN ORGANIZATIONAL

20   ENTITY THROUGH WHICH YOU CAN FUNNEL THESE PRODUCTS TO

21   CALIFORNIA INSURERS, OR HCC CAME TO CBA AND SAID WE NEED AN

22   ORGANIZATIONAL ENTITY THROUGH WHICH TO FUNNEL THESE POLICIES

23   TO CALIFORNIA INSUREDS.

24       SO THERE IS AN INDISPUTABLE BUSINESS RELATIONSHIP THAT HAS

25   BEEN CREATED BETWEEN THESE TWO ENTRIES IN ORDER TO PROVIDE

1    THESE PRODUCTS, WHICH WE CONTEND, WE ALLEGE ARE JUNK INSURANCE

2    WITH INCREDIBLY DAMAGING LIMITATIONS THAT INJURE THE PARTIES

3    THAT PURCHASE THEM.

4        BUT WE CERTAINLY BELIEVE THAT THERE IS EVIDENCE, NOT ONLY

5    IN THE COMPLAINT WHERE WE SAY IN PARAGRAPH 57 THAT CBA'S

6    COLLUDING WITH HCC TO PROVIDE THESE POLICIES, BUT ALSO IN THE

7    RECORD THE DEFENDANTS HAVE INTRODUCED.

8        **THE COURT:**  SO WHAT OCCURS -- THIS ESTABLISHES --

9    THESE SAMPLES ESTABLISHES A RELATIONSHIP BETWEEN CBA AND HCC.

10   WHERE DOES THE ACTUAL INSURED COME INTO PLAY?

11       THIS -- THESE DOCUMENTS THAT YOU HAVE BEEN REFERRING TO

12   REFER TO THE CBA AS THE POLICYHOLDER BECAUSE THEY ARE BUYING

13   THESE PRODUCTS FROM HCC.  AT SOME POINT IT'S SOLD TO AN

14   INDIVIDUAL.

15       **MR. SLADE:**  CORRECT.

16       **THE COURT:**  WHERE IS THAT CONNECTION?

17       **MR. SLADE:**  SO THE PRIVITY IS ACTUALLY THROUGH HCC.

18   I THINK THERE'S A -- I'M SORRY, NOT HCC, THROUGH CBA.  THERE'S

19   A, I THINK THREE-PART PRIVITY HERE.

20       ON ITS FACE -- AND ALSO AS REPRESENTED, I BELIEVE, IN THE

21   LANGUAGE -- IN THE WELCOME PACKAGE THAT WE WERE DISCUSSING

22   EARLIER.  WHEN THEY PROVIDE THIS INSURANCE POLICY, WHICH IS,

23   YOU KNOW, WHICH HAS ALREADY BEEN CREATED BETWEEN CBA AND HCC,

24   THEY ARE CREATING A FURTHER CONTRACT WHICH IS REFERRED TO IN

25   THE WELCOME POLICY BETWEEN THE INSURED, AND IT SEEMS BOTH

1    PARTIES BECAUSE HCC IS CERTAINLY REFERRING TO IT AS A

2    CONTRACT, BUT NO MATTER WHAT, THE INSURED IS CONTRACTING WITH

3    CBA FOR ACCESS TO THE POLICY.  THEY HAVE TO BECOME A MEMBER,

4    IT SAYS SO IN THE APPLICATION AS WELL, IN ORDER TO BECOME

5    INSURED UNDER THIS GROUP POLICY THAT CBA HAS.

6        SO AT THAT POINT I THINK ALL THREE PARTIES ARE IN PRIVITY,

7    BUT IT'S INDISPUTABLE THAT CBA AND PLAINTIFFS AZAD AND BUCKLEY

8    AND ANY PUTATIVE CLASS MEMBER WOULD BE IN PRIVITY.  THEY WOULD

9    HAVE BEEN CONTRACTED FOR ACCESS TO THE POLICY.

10       AND I DON'T THINK ANYBODY OTHER THAN CBA --

11            **THE COURT:**  IS THAT IN THIS PACKET AS WELL?

12            **MR. SLADE:**  WHICH IS THAT?

13            **THE COURT:**  THE INSURED'S CONTRACT WITH THE CBA FOR

14   THE POLICY.

15            **MR. SLADE:**  SO, YOUR HONOR, I THINK THAT THE CONTRACT

16   ENDS UP -- THE POLICY IS THE CONTRACT.  AND WHEN YOU LOOK AT

17   THE WELCOME PACKAGE IT STATES IT AS SUCH.  IT SAYS, YOU KNOW,

18   YOUR -- IT REFERS TO YOUR HEALTH INSURANCE CONTRACT.  AND THE

19   ONLY THING THAT IT CAN BE REFERRING TO THERE IS THE POLICY

20   ITSELF.

21       BUT ALSO, IF ONE LOOKS TO THE ENROLLMENT FORM FOR HCC

22   LIFE, I'M JUST LOOKING AT A SAMPLE ONE.  THIS IS MR. AZAD'S.

23   YOUR HONOR, IT IS AT PAGE 68 OF 166.

24            **THE COURT:**  OKAY.

25            **MR. SLADE:**  IF YOU LOOK TO THE NEXT PAGE AT 69, UNDER

1    THE AUTHORIZATIONS, WHAT'S BEING ASKED FOR -- IT SAYS:

2         "I HEREBY REQUEST COVERAGE UNDER THE INSURANCE ISSUED

3         TO THE CONSUMER BENEFITS OF AMERICA ASSOCIATION AND

4         UNDERWRITTEN BY HCC LIFE INSURANCE COMPANY."

5    THIS IS, I BELIEVE, THE FORMATION OF THE CONTRACT; THAT IN

6    GOING THROUGH THIS APPLICATION FORM AND PAYING THE PREMIUMS,

7    AND PAYING DUES TO HCC, WHICH MUST BE PAID ALSO AS A CONDITION

8    PRECEDENT, OR IN CONSIDERATION FOR THE FORMATION OF THE

9    CONTRACT, AT THAT POINT INSUREDS, SUCH AS MR. AZAD OR SUCH AS

10   PLAINTIFF BUCKLEY AND HER FAMILY, THEN BECOME PARTIES TO THIS

11   INSURANCE CONTRACT.

12        **THE COURT:**  ALL RIGHT.

13   AND THE VERY NEXT SENTENCE IS, "I UNDERSTAND THE INSURANCE

14   CONTAINS A PRE-EXISTING CONDITION EXCLUSION."

15        **MR. SLADE:**  YES, YOUR HONOR.  AND, AGAIN, I DON'T

16   THINK THAT, YOU KNOW, ANYBODY IS DISPUTING THAT PRE-EXISTING

17   CONDITION -- EXCLUSION CONDITIONS ARE WITHIN THE AMBIT OF THE

18   POLICY OR ARE IN AND OF THEMSELVES, JUST AS AN INTELLECTUAL

19   CONCEPT, LEGITIMATE TERMS WITHIN AN INSURANCE CONTRACT.

20        HOWEVER, OUR CONTENTION IS THAT THERE IS AN IMPERMISSIBLE,

21   AN UNLAWFUL LOOK-BACK PERIOD THAT ATTEMPTS TO -- SORRY, YOUR

22   HONOR.

23        THANK YOU VERY MUCH.

24        **THE COURT:**  ALL RIGHT.  ANY RESPONSE?

25        **MS. HODDINOTT:**  VERY BRIEFLY, YOUR HONOR.

1      I WOULD SIMPLY REITERATE THE POINT THAT YOUR HONOR RAISED

2    WHICH WAS THAT THE CERTIFICATE OF INSURANCE THAT WE HAVE GONE

3    THROUGH WITH PLAINTIFFS' COUNSEL SET FORTH THE CONTRACTUAL

4    RELATIONSHIP BETWEEN HCC AND CBA.  THERE DOES NOT SEEM TO BE

5    AND DEFINITELY NOT AT LEAST AS PLED IN THE COMPLAINT ANY

6    CONTRACTUAL RELATIONSHIP SPECIFICALLY DELINEATED BETWEEN THE

7    PLAINTIFFS AND CBA, AND NO ALLEGATIONS AGAIN OF ANY WRONGDOING

8    BY CBA WITH REGARD TO THE HANDLING AND ADJUSTMENT OF THE

9    SPECIFIC CLAIM SET FORTH IN THE COMPLAINT.

10         **THE COURT:**  ALL RIGHT.  THANK YOU.

11      ALL RIGHT.  I THINK THAT TAKES CARE OF ALL MATTERS.  I

12    HAVE OTHER MATTERS ON THIS MORNING.  IT IS SUBMITTED.  I WILL

13    ISSUE A WRITTEN OPINION.

14         **MR. PECHT:**  THANK YOU, YOUR HONOR.

15         **MS. GEMAN:**  THANK YOU, YOUR HONOR.

16         (PROCEEDINGS CONCLUDED AT 10:23 A.M.)

17              **CERTIFICATE OF REPORTER**

18      I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

19    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

20    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

21    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

22

23              *Diane E. Skillman*

24         DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

25              THURSDAY, JULY 6, 2017

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**