UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOHAMMED AZAD, et al.,

    Plaintiffs,

    v.

TOKIO MARINE HCC - MEDICAL INSURANCE SERVICES LLC, et al.,

    Defendants.

Case No. 17-cv-00618-PJH

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND; DENYING HCC'S AND HII'S MOTIONS TO STRIKE**

Re: Dkt. Nos. 48, 49, 58, 60

Defendants' motions to dismiss and strike came on for hearing before this court on June 28, 2017. Plaintiffs appeared through their counsel, Rachel Geman, Jay Angoff, Michael Flannery, and David Slade. Defendants Tokio Marine HCC – Medical Insurance Services, LLC ("HCC") and HCC Life Insurance Company ("HCC Life Insurance") appeared through their counsel, M. Scott Incerto and Gerard Pecht. Defendant Health Insurance Innovation, Inc. ("HII") appeared through its counsel, Garry O'Donnell and Daniel Herling. Defendant Consumer Benefits of America ("CBA") appeared through its counsel, Renata Hoddinott. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS each of the defendants' motions to dismiss with leave to amend, and DENIES HCC's and HII's motions to strike, for the following reasons.

## BACKGROUND

**A.  The Complaint**

This case was filed on February 7, 2017 by plaintiffs Mohammed Azad and Danielle Buckley. Dkt. 1 ("Compl."). Federal jurisdiction is premised on diversity. Plaintiffs bring a putative class action against HCC, a seller of short-term medical insurance, and three other entities who allegedly worked with HCC: HCC Life Insurance, HII, and CBA. Compl. ¶¶ 5–7.

HCC contracted with plaintiffs to provide them short-term medical insurance policies ("STMs" or "STM policies"). Compl. ¶¶ 8–9. HCC Life Insurance was the underwriter on plaintiffs' polices. Compl. ¶ 16.

Plaintiffs allege that defendants falsely represented that the STM policies provided reasonable coverage and fair claim processing. In reality, HCC misled policyholders about the scope of the coverage and made it unreasonably difficult to make a claim. Plaintiffs allege that HCC had a common policy and practice of marketing their polices in a misleading manner, delaying and refusing to pay claims, providing deliberately unhelpful customer service, and obstructing policyholders' claims. Specifically, the named plaintiffs allege that they were told to submit burdensome medical records, and had the payment of their claims delayed and denied in bad faith.

### 1. Allegations Relating to Plaintiffs Azad and Buckley

Azad purchased an STM policy "marketed and offered jointly between HCC and HII" on December 8, 2015. Compl. ¶¶ 19, 22. In December 2015, Azad suffered three health incidents that required visits to the emergency room. Compl. ¶ 25. HCC refused to pay the claims until Azad provided "all medical records, provider notes, and labs" from the past five years. Compl. ¶ 26. When Azad contacted HCC customer service to attempt to provide sufficient information to process his claims, he found that "[n]o matter how much information he provided, he was always told to provide more." Compl. ¶ 27. Frustrated with HCC's refusal to pay, Azad cancelled his policy in March 2016 and ended up paying his medical bills himself. Compl. ¶ 28.

Buckley's husband purchased an HCC STM policy for his family on April 1, 2016. Compl. ¶ 29. In June 2016, Danielle Buckley was diagnosed with a staph infection and received treatment at an Accelerated Urgent Care clinic. Compl. ¶ 31. HCC refused to pay the claim, demanding Buckley's medical records from the past five years. Compl. ¶ 33. HCC then informed Buckley that it only needed records from her family doctor, and said that it would contact the doctor. Id. However, Buckley continued to receive bills, and on July 27, 2016, she received a letter demanding that "all requested information

must be submitted" before her claim would be processed, without specifying the information HCC sought. Compl. ¶ 35. Buckley subsequently received notification that her claims had been closed "due to a lack of requested information." Compl. ¶ 36. Buckley ultimately paid her medical bills herself, and cancelled her HCC policy in September 2016. Compl. ¶¶ 37–38.

### 2. The Allegedly Deceptive Brochure and Application Form

The complaint alleges that HCC's marketing materials, application forms, and policies are misleading. Compl. ¶¶ 39–57. HCC's STM policies contain a "host of exceptions to coverage that are not articulated to consumers prior to or during the application process." Compl. ¶ 40. The "most unconscionable" of the exceptions is the "carveout" for preexisting conditions, which is "applied with absurd results." Compl. ¶ 41.

As an example of HCC's misleading marketing, plaintiffs describe an "exemplar brochure" (the "Brochure"). The Brochure lists a variety of events—such as inpatient or outpatient treatment at a hospital—that are "purportedly covered" by the policies. Compl. ¶ 43. The Brochure indicates that an applicant is "eligible" if she answers no to a series of medical questions. Compl. ¶¶ 44–45. Plaintiffs allege that "an applicant would reasonably conclude that any exclusions [for preexisting conditions] would be cabined to the subject matter" of the specific medical conditions that the Brochure and application form ask about. Compl. ¶¶ 45–46. Moreover, plaintiffs allege that "when read together, each of HCC's customer-facing representations (the Brochure and the application form) limit exclusions to those enumerated." Compl. ¶ 49. Because HCC does not limit its claim denials to these specific enumerated conditions, plaintiffs allege that the Brochure and application form are misleading, "amount[ing] to fraud." Compl. ¶ 49.

To support their fraud accusations, plaintiffs note that HII has received cease-and-desist letters from three states, which have accused HII of selling STM insurance "through unlicensed brokers and/or through misinformation and deception." Compl. ¶ 51. HCC and HII refer to their brokers as "Producers." Compl. ¶ 39. Plaintiffs allege that defendants' deceptive practices consist of the following: "(i) Producers issue policies

without requiring policyholders to sign the policies; (ii) Producers represent to prospective policyholders that the policies will meet their needs, and fail to disclose that Defendants routinely attempt to deny most claims on the basis of pre-existing conditions or other grounds; (iii) Defendants make the policies difficult to locate on the HCC website, thereby preventing current and potential policyholders from conducting any meaningful review of their policies; and (iv) Defendants use intentionally vague language, as to further hinder any efforts by policyholders to understand the scope of their coverage; for example, neither the plan brochures nor application forms explain the scope of the policies' exclusion for pre-existing conditions." Compl. ¶ 54.

### 3. Allegations Regarding HCC's Customer Service

Plaintiffs further allege that HCC trains its customer service representatives to obstruct policyholders by giving them the "runaround," refusing to help, and referring claimants to HCC's "highly confusing" website. Compl. ¶¶ 58–72. The "majority (if not all) customer service calls to HCC are transferred to Global Response ('Global'), a third party contractor." Compl. ¶ 59. Plaintiffs allege that HCC and/or HII are vicariously or directly liable for the acts of Global. Compl. ¶ 72.

HCC's customer service representatives are allegedly trained to "deceive, delay and obstruct policyholders" with the goal of frustrating them and discouraging them from seeking payment on their claims. Compl. ¶¶ 60–62. The representatives are "forced" to follow a "script provided by HCC" which is designed to "tell policyholders that their claims relate to pre-existing conditions, and to discourage them . . . without determining whether the claim is likely to be excluded." Compl. ¶ 62.

As evidence of the alleged policy of obstruction, plaintiffs rely on a "whistleblower" statement from a former representative, who states that "we had no way to contact HCC directly . . . so we had no way to get [customer] issues addressed beyond what you could find out for yourself." Compl. ¶ 63. The representatives were trained to "aggressively refer callers to the HCC website instead of helping them." Compl. ¶ 65. However, the HCC website is "unreasonably difficult to navigate" and "highly confusing." Compl. ¶ 67.

As the former representative explained, "internally it was obvious that the name of the game is runaround. . . .  It really felt like everything was designed to be so cumbersome that the customer would either get frustrated and give up or they could stall long enough to not have to pay out on the claim.  I even think the idea was to get us so frustrated that we'd blow the customers off or just tell them we had received documents just to get them to go away.  The whole idea here is that we're a legal buffer between HCC and [policyholders]."  Compl. ¶ 67.

### 4. Allegations Against HII and CBA

The complaint alleges that HII is a "close affiliate of HCC, cooperating in the sale, administration, and/or servicing of HCC policies, with knowledge of HCC's practices."  Compl. ¶ 17.  Azad's plan was "offered and marketed jointly between HCC and HII," and HII once described itself as a "partner" of HCC.  Compl. ¶¶ 22, 55.  However, "[t]he full nature and extent of cooperation and interaction between HII and HCC is unknown to Plaintiffs and can only be determined through discovery."  Compl ¶ 17.

Plaintiffs allege that CBA "purports to be an organization devoted to 'providing quality discount services and benefits to its members,'" utilizing "group buying power" to negotiate discounted prices for its members.  Compl. ¶ 18.  The sole substantive allegation against CBA is paragraph 57, which states that:  "Defendants work with CBA in providing short-term insurance plans to consumers.  HCC's application form instructs the applicant that the insurance sought is 'issued to the Consumer Benefits of America Association and underwritten by HCC Life Insurance Company.'  This is because HCC wishes to sell its insurance product as a group product, instead of an individual product subject to more stringent consumer protection regulation."  Compl. ¶ 57.

### 5. Class Allegations and the Causes of Action

Plaintiffs seek to represent a Rule 23 class of all "individuals who have purchased HCC health insurance policies from Defendants in the State of California, and/or all California residents for whom HCC denied their insurance claim, since a date to be ascertained through discovery."  Compl. ¶ 82.  As circumstantial evidence that plaintiffs'

experiences were "typical," plaintiffs point to a number of highly negative reviews of HCC posted online.  Compl. ¶ 73.

Plaintiffs assert five claims:  (1) violations of the California Unfair Competition Law (the "UCL claim"); (2) violation of the California False Advertising Law (the "FAL claim"); (3) breach of contract; (4) breach of the implied duty of good faith and fair dealing (the "bad faith" claim); and (5) unjust enrichment.

The UCL claim is made under (i) the unlawful prong, predicated on violations of California Insurance Code section 332 for failure to communicate all material facts about the insurance policies; (ii) the fraudulent prong, for misleading applicants; and (iii) the unfair prong, for training customer service to obstruct policyholders.  The FAL claim is premised on the "deceptive or misleading" marketing and advertising of the polices.  The breach of contract claim alleges that the policy promised timely and reasonable investigation of claims, yet defendants "failed to perform proper investigations, timely process claims, perform customer service obligations in good faith, and make payments required by the policies."  Compl. ¶ 120.  The bad faith claim alleges that defendants breached their implied contractual duties by training customer service representatives to obstruct, unreasonably delay, and deny coverage, as well as by conducting unreasonable claim investigations.  Compl. ¶¶ 129–133.  Finally, the unjust enrichment claim is made "in the alternative to . . . restitution under the UCL," and alleges that defendants enriched themselves through deceptive and unlawful practices.  Compl. ¶ 142

**B.     Procedural History**

On April 13 and 14, 2017, HCC (together with HCC Life Insurance), HII, and CBA filed the instant motions to dismiss the complaint and/or strike its allegations, which are all fully briefed and ripe for decision.  Dkt. 48, 49, 58, 60, 79.  On April 20, 2017, defendants filed a motion to stay discovery pending resolution of the motions to dismiss.  Dkt. 63.  The court denied the motion to stay discovery, but vacated the case management conference in light of the pending dispositive motions.  Dkt. 77.

///

**DISCUSSION**

**A.    Legal Standards**

    **1.    Motions to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level," and a motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679.

When, as here, the allegations involve fraud, heightened pleading standards apply. "[T]he circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be pled with specificity,

including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "[A]llegations of fraud must be specific enough to give [defendants] notice of the particular misconduct which is alleged to constitute the fraud charged 'so that they can defend against the charge and not just deny that they have done anything wrong.'" Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation omitted). In addition, the pleader must explain why the disputed statement was untrue or misleading when made. Yourish v. Cal. Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

**2.      Motions to Strike**

Under Federal Rule of Civil Procedure 12(f), the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). To determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973–74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F .Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most

8

1  favorable to the pleading party." In re 2TheMart.com, Inc. Sec. Litig., 114 F Supp. 2d
2  955, 965 (C.D. Cal. 2000).  A court must deny the motion to strike if there is any doubt
3  whether the allegations in the pleadings might be relevant in the action.  Id.
4        District courts have authority to strike class allegations prior to discovery when "the
5  complaint demonstrates that a class action cannot be maintained on the facts alleged."
6  Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citation omitted).
7  However, class allegations "generally are not tested at the pleadings stage and instead
8  are tested after one party has filed a motion for class certification."  Brown v. Hain
9  Celestial Grp., Inc., 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012).  Thus, striking class
10 allegations "should be done rarely and that the better course is to deny such a motion
11 because 'the shape and form of a class action evolves only through the process of
12 discovery.'"  In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615
13 (N.D. Cal. 2007) (quotation omitted).

**B.    Analysis**

Following the organization used by the parties, the court will analyze the complaint's allegations as resting on two essential theories of liability: (1) a misrepresentation theory, in which plaintiffs allege that HCC failed to disclose or misleadingly disclosed the scope of coverage, particularly the pre-existing conditions exclusion; and (2) an improper claims-handling theory, in which plaintiffs allege that their claims were unreasonably processed through, e.g., obstructionist customer service or unreasonable medical records demands.  The misrepresentation theory appears to be the basis for the "fraudulent" and "unlawful" UCL claims, as well as the FAL claim.  The claim-handling theory appears to be the basis for the breach of contract and bad faith claims.  The UCL "unfair" claim relies on both theories.

**1.    Whether HCC's Evidence Should be Considered Incorporated by Reference**

As a preliminary matter, the court must decide whether to consider evidence outside of the pleadings with respect to HCC's motion to dismiss.  HCC seeks to bring in

1  substantial evidence on its motion through the "incorporation by reference" doctrine.
2  HCC's supporting declarations attach (i) information from HCC's website, including the
3  Brochure, various other online disclosures to customers, and the STM policy, see Dkt.
4  52, Decl. of Jon Padgett Exs. 1–11; (ii) materials from Azad's claim file, including Azad's
5  application form and the letters HCC sent to Azad and his medical providers, id. Exs. 12–
6  13, 16–18; (iii) materials from Buckley's claim file, including copies of her husband's
7  application form and the Explanation of Benefits letters sent from HCC to the Buckleys,
8  see id. Exs. 15, 19; (iv) materials from the Insurance Care Direct website, through which
9  Azad purchased his STM policy, see Dkt. 50, Decl. of Sumera Khan Ex. A; and (v) a
10  recording of Azad's telephone call regarding his insurance application and the email
11  confirming his coverage, see Dkt. 51, Decl. of Dan Garavuso Exs. A–B.
12       Under the incorporation by reference doctrine, this court has discretion to consider
13  non-pleading evidence on a motion to dismiss if the complaint "refers extensively to the
14  document or the document forms the basis of the plaintiff's claim." United States v.
15  Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). In such a case, the document may be
16  considered to be "part of the complaint," and the court "thus may assume that its contents
17  are true for purposes of a motion to dismiss." Id.
18       The court will exercise its discretion to consider the terms of the Brochure, the
19  online disclosures, the policy contracts, and plaintiffs' application forms, all of which are
20  referenced extensively in the complaint. These documents show the specific disclosures
21  made by HCC in the marketing of the policies—via the Brochure, HCC's website, or
22  otherwise—and what the actual contractual terms of the policies were.
23       The materials regarding the processing of Azad and Buckley's claims are another
24  matter. HCC attempts to use these documents—such as HCC's letters requesting
25  medical records and its Explanations of Benefits—to show that its nonpayment of
26  plaintiffs' claims was made in good faith and for a legitimate reason, to wit, that HCC
27  never received the necessary medical records. The court finds that it is improper to
28  consider this evidence for its truth at the pleading stage. This is not a summary judgment

motion. HCC is not permitted obtain a premature ruling on the ultimate merits of a disputed issue—whether its claim denials were in good faith—by relying on a one-sided factual record, without any opportunity for discovery by plaintiffs. Contrary to the evidence submitted by HCC, plaintiffs allege that the claim denials were in bad faith, based on unreasonable medical records requests. The court must accept these allegations as true for purposes of HCC's motion.

For these reasons, in resolving HCC's motion, the court will only consider the terms of the Brochure, the policy certificates, the disclosures on HCC's website, and the application forms.

### 2. HCC's Motion to Dismiss

HCC's motion to dismiss argues that the misrepresentation theory fails because neither Azad nor Buckley identify a specific misrepresentation that they relied on. Although plaintiffs allege that the Brochure is misleading when "read together" with the application form, the complaint does not allege that either of the named plaintiffs saw or relied on the Brochure when they decided to purchase the STM policies. HCC further maintains that the claims-handling theory also suffers from a mismatch between the general allegations in the complaint and the specific experiences of the plaintiffs, because neither Azad nor Buckley alleges that HCC customer service obstructed them. The court finds that these arguments have merit and therefore GRANTS HCC's motion to dismiss, with leave to amend.

The UCL fraud claim, the FAL claim, and the UCL unlawful claim all must be dismissed for a simple reason: plaintiffs have abandoned the primary misrepresentation theory alleged in the complaint. As these claims are pleaded in the complaint, they rely primarily on the language of the Brochure, when "read together" with the application forms. The gist of the claims is that these disclosures created a misleading impression that the polices' preexisting condition exclusion reached only certain specific, enumerated medical conditions.

11

Whatever the merit of this theory as to other putative class members, neither named plaintiff is alleged to have seen or relied on the Brochure. Thus, neither Azad nor Buckley has alleged the reliance element of the UCL fraud and FAL claims. In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009) (plaintiff "must plead and prove actual reliance" for UCL fraud claim); Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326 (2011) (actual reliance required for FAL claim).

Similarly, neither Azad nor Buckley has stated a claim under California Insurance Code section 332, which is the sole predicate for the UCL unlawful claim specified in the complaint. This statute requires an insurer to communicate "in good faith, all facts within his knowledge which are or which he believes to be material" to the insurance contract. Cal. Ins. Code § 332. To the extent that this claim is based on the theory that the Brochure failed to communicate or misleadingly communicated the scope of the preexisting conditions exclusion, it fails because Azad and Buckley did not actually rely on the Brochure. Although plaintiffs' opposition raises two new predicates for the UCL unlawful claim—Cal. Ins. Code § 10123.13(c) and Cal. Ins. Code § 10384—the court will not consider these arguments unless and until the statutes are asserted in an amended complaint.

Having abandoned the Brochure-based misrepresentation theory, plaintiffs' opposition brief alleges a new theory based on the alleged omission of material facts. Specifically, plaintiffs allege that HCC did not disclose that (i) its policies provided only "illusory" coverage; (ii) the preexisting conditions exclusion would be interpreted "with absurd results"; (iii) HCC would make unreasonable medical records demands; (iv) HCC's claim processing procedures would be unfair; and (v) HCC's customer service was designed to obstruct. The court declines to consider this new theory because it was not clearly pleaded in the complaint; instead, the bulk of the misrepresentation allegations are directed to the Brochure. See Compl. ¶¶ 39–57. Although plaintiffs may ultimately be able to state a claim under the UCL and/or FAL based on an omissions theory, the court finds that as currently pleaded the omissions theory is not alleged with the requisite

12

particularity required to state a claim sounding in fraud. See Fed. R. Civ. P. 9(b). However, the court will permit plaintiffs leave to amend to plead facts supporting their omissions theory.

Plaintiffs' claim-processing theory has also shifted away from the allegations actually pleaded in the complaint. In the complaint, the claims-processing theory relies on several alleged practices and policies of HCC, including that HCC (i) trained its customer service representatives to obstruct policyholders; (ii) denied coverage based on an unreasonably broad interpretation of the preexisting conditions exclusion; (iii) unreasonably delayed its claim investigations; and (iv) made "impracticable" and unnecessary medical record demands. See Compl. ¶¶ 3, 41, 120–121, 129–134.

HCC's motion to dismiss attacks the fit between the complaint's claims-processing allegations and the specific experiences of the named plaintiffs. For example, HCC argues that although the complaint alleges that customer service representatives were obstructionist, neither plaintiff alleges that they were obstructed by customer service. Moreover, precisely how the alleged practices constitute a breach of contract is not clearly explained in the complaint. The complaint only cites to one specific contractual provision, Part VIII of the policies, which promises to pay covered losses "within 30 days" after receipt of a proof of loss. See Compl. ¶ 123.[1]

At the hearing, however, plaintiffs proposed a new claims-processing theory, which is more firmly grounded in the language of the contract. Plaintiffs assert that the policies' pre-existing conditions exclusion is limited to conditions for which the insured "received medical treatment, diagnosis, care, or advice within the six (6) month period" prior to the effective date of coverage. Dkt. 52 at 18. However, plaintiffs argue that

---

[1] HCC also argues that the contract claim against Buckley fails because the value of her claim is less than the deductible, relying on a case that holds, on summary judgment, that a plaintiff was "not entitled to benefits" when the claim was less than the deductible. See Cheviot Vista Homeowners Ass'n v. State Farm Fire & Cas. Co., 143 Cal. App. 4th 1486, 1492, (2006). However, the complaint alleges other damages, including "costs incurred to force Defendants to perform their contractual obligations" and "lost time from work as a result of repeated calls to Defendants." Compl. ¶ 125. Even if Buckley cannot prove she was owed payment, she may be able to prove other contractual damages.

13

despite this six-month limitation, defendants engaged in an "unlawful five-year look back" for medical records relating to the pre-existing conditions exclusion. Both Azad and Buckley allege that HCC demanded five years' worth of their medical records, delayed payment of their claims, and ultimately denied their claims based on the failure to submit all of the requested information. Compl. ¶¶ 26–28, 33–36.

The court finds that the new claims-processing theory could, at least potentially, state a claim for breach of contract and the implied duty of good faith and fair dealing. It may also provide a basis for a claim under the UCL unlawful or unfair prongs. However, the court is not in a position to evaluate whether these new allegations state a claim because the six-month limitation theory was articulated only at the hearing; it was not actually alleged in the complaint. Indeed, the new theory relies on Part VI of the STM policies, a contractual provision that is not even cited in the complaint.

In light of plaintiffs' newly asserted claims-handling theory, the court will GRANT HCC's motion to dismiss the contact, bad faith, and UCL unfair claims, but will provide plaintiffs leave to amend to assert their new allegations.

Finally, the court DISMISSES the unjust enrichment claim WITH PREJUDICE. Unjust enrichment is not an independent cause of action in California. Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003) ("There is no cause of action in California for unjust enrichment."); Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"). At best, the court could construe the unjust enrichment claim "as a quasi-contract claim seeking restitution." Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221, 231 (2014). However, since plaintiffs have alleged both a contract claim and a UCL claim for restitution, the unjust enrichment claim is duplicative. See In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("Plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims.").

14

In summary, HCC's motion to dismiss is GRANTED WITH LEAVE TO AMEND with respect to the UCL, FAL, contract, and bad faith claims. HCC's motion is GRANTED WITHOUT LEAVE TO AMEND with respect to the unjust enrichment claim.

### 3. HCC's Motion to Strike Class Allegations

HCC has also filed a separate motion to strike all of the complaint's class allegations. HCC argues that neither plaintiffs' misrepresentation theory nor the claims-handling theory can be pursued as a class action. In particular, the predominance requirement is not met for either theory because individual issues of liability and damages will necessarily require individual proof. See, e.g., Newell v. State Farm Gen. Ins. Co., 118 Cal. App. 4th 1094, 1103 (2004); Bates v. Bankers Life & Casualty Company, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014).

Although the court has doubts as to whether this case can be maintained as a class action, the propriety of the class allegations are better addressed at the class certification stage. Motions to strike class allegations at the pleading stage are highly disfavored, and for good reason. As this court has explained:

> Determining whether to certify the class is normally done through a motion for class certification under Rule 23. While it is true that a few courts have held that Rule 12(f) provides a means of striking class allegations, such a motion appears to allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification. . . .
>
> In this court's view, the questions of whether the class is ascertainable and whether a class action is superior should be resolved in connection with a class certification motion. Moreover, under Whittlestone, a party seeking an order under Rule 12(f) must show that the allegations they seek to have stricken are either part of an insufficient defense, or are redundant, immaterial, impertinent, or scandalous. 618 F.3d at 973–74. Defendants have not met this standard.

Astiana v. Ben & Jerry's Homemade, Inc., No. C 10-4387 PJH, 2011 WL 2111796, at *14–15 (N.D. Cal. May 26, 2011); accord In re Wal-Mart Stores Wage & Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'")

15

Given that plaintiffs have not been afforded discovery into the alleged "common fraudulent scheme" of defendants, the court DENIES HCC's motion to strike. The proprietary of class adjudication can be addressed later in the usual fashion, on a fully-briefed motion for class certification.

### 4. CBA's Motion to Dismiss

The court GRANTS CBA's motion to dismiss as to all claims, with leave to amend except as to the unjust enrichment claim. The complaint says almost nothing about CBA. In particular, the complaint contains no explanation as to why CBA would be liable for the actions of other defendants in the marketing of the HCC STM policies, or what specific contractual duties were owed by CBA to plaintiffs.

Paragraph 57, the sole substantive allegation specific to CBA, alleges that "Defendants work with CBA in providing short term insurance plans to consumers. HCC's application form instructs the applicant that the insurance sought is 'issued to the Consumer Benefits of America Association and underwritten by HCC Life Insurance Company.'" Compl. ¶ 57.

This single allegation is insufficient to support the misrepresentation claims against CBA. The complaint does not allege that CBA was directly or indirectly involved in the marketing of HCC's polices. Although the plaintiffs' opposition notes that CBA is mentioned in the Brochure, this fact was not alleged in the complaint, and in any event it is not clear why a mention of CBA in the Brochure would establish CBA's legal responsibility for alleged misrepresentations and/or omissions by HCC or HII. Thus, plaintiffs fail to state a claim against CBA based on FAL, or the UCL fraudulent and unlawful prongs. Although it is not clear whether any misrepresentation claim can be stated against CBA, the court will provide leave to amend because the relationships between CBA, HCC, and HII are not clearly alleged in the complaint.

As to the contract and bad faith claims, the complaint does not clearly allege that CBA was a party to plaintiffs' insurance contracts. Based on plaintiffs' presentation at the hearing and the documents submitted by HCC in support of its motion, it appears that

CBA was, in fact, a party to the insurance policies.  See, e.g., Dkt. 52 at 21 (example STM policy "issues to [CBA], which we will refer to as the 'the Policyholder'").  It thus seems possible that plaintiffs may be able to state a contract and/or bad faith claim against CBA.  However, there is no plausible factual basis for the claim as currently pleaded, and plaintiffs' oral representations at the hearing cannot cure their pleading's deficiencies.  Paragraph 57 only vaguely asserts that the polices were "issued to" CBA, but this does not establish that CBA owed plaintiffs' any specific contractual duties or obligations under California Insurance Code section 332.  In the amended complaint, plaintiffs must clarify CBA's contractual relationships with the other parties.

Finally, the unjust enrichment claim is DISMISSED WITH PREJUDICE for the same reasons explained above with respect to HCC's motion to dismiss.

### 4.     HII's Motion to Dismiss and Strike

The complaint's sparse allegations against HII also are insufficient to state a claim.  On the misrepresentation theory, the complaint alleges that HII "cooperat[ed] in the sale, administration, and/or servicing of HCC policies, with knowledge of HCC's practices," and that Azad's plan was "offered and marketed jointly between HCC and HII."  Compl. ¶¶ 17, 22.  Given that "joint marketing" between HCC and HII is alleged, the court finds that the complaint's allegations provide a basis to infer HII was involved in the marketing of the policies, and thus potentially liable for their allegedly misleading advertising.  However, the claims based on the misrepresentation theory must be dismissed with leave to amend for the reasons discussed above with regard to HCC's motion to dismiss.

As to the improper claims-processing theory, the complaint fails to allege that HII was an insurer or a party to the insurance contracts.  Thus, the complaint does not allege that HII owed plaintiffs any express or implied contractual duties, or any obligations as an insurer under California Insurance Code section 332.  Although plaintiffs now assert that HII was either engaged in a joint venture with HCC, or was a common-law agent or partner of HCC, neither these assertions nor their supporting facts are actually alleged in

the complaint. The complaint only asserts that HII once called itself a "partner" in a press release, Compl. ¶ 55, which does not actually allege any specific legal relationship.

Although the court has some difficulty seeing how a breach of contract or bad faith claim could be stated against HII, the court will provide leave to amend these claims as well. If plaintiffs intend to rely on an agency, joint venture, or partnership relationship between HCC and HII, that relationship must be explicitly pleaded in the complaint, along with facts that would show such a relationship.

HII also seeks to strike paragraphs 51 and 52 of the complaint. These paragraphs concern regulatory actions taken against HII in other states. Although HII claims that these allegations are "immaterial," the fact that there is out-of-state regulatory action against HII is relevant to plaintiffs' allegations that defendants have a common policy or practice of fraudulent behavior. These allegations thus relate to and have a possible bearing on plaintiffs' claims. See Whittlestone, 618 F.3d at 973. Accordingly, the court DENIES HII's motion to strike.

## CONCLUSION

For the foregoing reasons, HCC's motion to dismiss, CBA's motion to dismiss, and HII's motion to dismiss are GRANTED, with leave to amend save with respect to the unjust enrichment claim. HCC's motion to strike the class allegations is DENIED. HII's motion to strike is also DENIED.

Plaintiffs shall file an amended complaint by **August 7, 2017**. No additional claims or parties may be added without leave of court or stipulation of defendants. A case management conference will be rescheduled after the pleadings are settled.

**IT IS SO ORDERED.**

Dated: July 14, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge