1  Kelly M. Dermody (State Bar No. 171716)
   kdermody@lchb.com
2  Michelle A. Lamy (State Bar No. 308174)
   mlamy@lchb.com                              Michael J. Flannery (State Bar No.
3  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP     196266)
   275 Battery Street, 29th Floor              mflannery@cuneolaw.com
4  San Francisco, CA  94111-3339               CUNEO GILBERT LADUCA, LLP
   Telephone:  415.956.1000                    7733 Forsyth Boulevard, Suite 1675
5  Facsimile:  415.956.1008                    St. Louis, MO 63105
                                               Telephone:  314.226.1015
6  Rachel Geman (*pro hac vice*)               Facsimile:  202.789.1813
   rgeman@lchb.com
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP     Matthew Prewitt (State Bar No.
   250 Hudson Street, 8th Floor                291593)
8  New York, NY  10013-1413                    mprewitt@cuneolaw.com
   Telephone:  212.355.9500                    CUNEO GILBERT LADUCA, LLP
9  Facsimile:  212.355.9592                    16 Court Street, Suite 1012
                                               Brooklyn, NY 11241
10 Allen Carney (*pro hac vice*)               Telephone:  202.789.3960
   acarney@cbplaw.com                          Facsimile:  202.789.1813
11 David Slade (*pro hac vice*)
   dslade@cbplaw.com                           Jay Angoff (*pro hac vice*)
12 CARNEY BATES & PULLIAM, PLLC                jay.angoff@findjustice.com
   519 W. 7th Street                           MEHRI & SKALET
13 Little Rock, AR  72201                      1250 Connecticut Avenue, NW
   Telephone:  501.312.8500                    Suite 300
14 Facsimile:  501.312.8505                    Washington, D.C. 20036
                                               Telephone:  202.822.5100
15 *Attorneys for Plaintiff and the Proposed Class*

16               UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                    OAKLAND DIVISION

19 LADAN ABDOLLAHI on behalf of          Case No.  4:17-cv-618-PJH
   herself and all others similarly situated,
20                                        **DECLARATION OF RACHEL GEMAN IN**
                                          **SUPPORT OF PLAINTIFF'S NOTICE OF**
21                Plaintiff,              **MOTION AND MOTION TO AMEND**
                                          **COMPLAINT PURSUANT TO FEDERAL**
22 v.                                     **RULE OF CIVIL PROCEDURE 15(a)**

23 HCC MEDICAL INSURANCE
   SERVICES, LLC and HCC LIFE            Date:  September 27, 2017
24 INSURANCE COMPANY,                    Time: 9:00 a.m.
                                         Place: Courtroom 3
25                Defendants.
                                         Complaint Filed:  February 7, 2017

1363198.1

DECLARATION OF RACHEL GEMAN IN SUPPORT OF  MOTION TO AMEND
COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 15(a)
CASE NO.  4:17-CV-618-PJH

1    I, Rachel Geman, hereby declare and say:

2         1.      I am an attorney duly admitted to practice law in the state of New York.  I am a

3    Partner with the law firm of Lieff Cabraser Heimann & Bernstein, LLP, counsel for Plaintiff in

4    this matter.  I have personal knowledge of the matters set forth in this declaration and, if called as

5    a witness, I could and would testify competently thereto.

6         2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of an August 18, 2017

7    email from David Slade, counsel for Plaintiff, to Gerard Pecht, counsel for Defendants HCC

8    Medical Insurance Services, LLC and HCC Life Insurance Company, transmitting Exhibits 2 and

9    3 below.

10        3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the redacted [Proposed]

11   First Amended Complaint, emailed to Gerard Pecht on August 18, 2017.

12        4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the redacted proposed

13   Joint Stipulation to Amend Complaint Under Federal Rule of Civil Procedure 15, emailed to

14   Gerard Pecht on August 18, 2017.

15        5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of an August 21, 2017 letter

16   from Gerard Pecht to David Slade, in response to the August 18, 2017 email contained in Exhibit

17   1.

18        I declare under penalty of perjury that the foregoing is true and correct.  Executed this 21st

19   day of August, 2017, at New York, New York.

20                                                   _____

21                                                   Rachel Geman

22

23

24

25

26

27

28

# EXHIBIT 1

**Lamy, Michelle A.**

| | |
|---|---|
| **From:** | David Slade <dslade@cbplaw.com> |
| **Sent:** | Friday, August 18, 2017 6:03 PM |
| **To:** | Pecht, Gerard; Khan, Sumera; Incerto, M. Scott |
| **Cc:** | Geman, Rachel; Lamy, Michelle A.; Michael Flannery; Matthew Prewitt; Jay Angoff; Allen Carney |
| **Subject:** | Azad v. HCC - first amended complaint and proposed joint stipulation |
| **Attachments:** | 17.08.18 - Amended Complaint - Redacted.pdf; 17.08.18 - Joint Stip - Redacted.pdf |

Good evening, Gerry,

Since we cannot substitute parties without either Defendants' consent or the Court's permission, I'm providing you with a copy of our Amended Complaint in hopes that HCC will agree to its filing.  A proposed stip is also attached for your consideration.  As you will see, I've redacted personally-identifying information about our new client, but of course am happy to represent to you that our client was an HCC insured during the class period.

At your earliest convenience, please let me know whether you are agreeable to the attached stip.

Kind regards and have a good weekend,
David

David Slade
Carney Bates & Pulliam, PLLC
519 W. 7th St.
Little Rock, AR 72201
501.312.8500 (t)
501.312.8505 (f)
www.cbplaw.com

CONFIDENTIALITY NOTICE: This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521,and is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please reply to the sender that you have received the message in error, and then delete it.  Thank you.

# EXHIBIT 2

Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Rachel Geman (*pro hac vice*)
rgeman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Allen Carney (*pro hac vice*)
acarney@cbplaw.com
David Slade (*pro hac vice*)
dslade@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
Clayton, MO 63105
Telephone: 314.226.1015
Facsimile: 202.789.1813

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
CUNEO GILBERT LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202.789.3960
Facsimile: 202.789.1813

Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
MEHRI & SKALET
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
Telephone: 202.822.5100

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

|  |  |
|---|---|
| ▮▮▮▮▮▮▮ on behalf of ▮▮▮▮▮▮ and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HCC MEDICAL INSURANCE SERVICES, LLC and HCC LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No.  4:17-cv-618<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff ███████████ ("Plaintiff"), on behalf of ███ and all others similarly situated, individually and as a class representative, brings this action against defendants HCC Medical Insurance Services, LLC and HCC Life Insurance Company. Plaintiff's allegations are based upon information and belief, except for the allegations concerning Plaintiff's own actions.

## I.   NATURE OF THE ACTION

1.      This is a class action against HCC, seeking declaratory and injunctive relief, equitable relief, and damages.

2.      HCC promised policyholders one thing—that they will provide short-term medical insurance, with a six-month pre-existing condition exclusion, and that they will promptly pay any claims arising during the period of coverage. What HCC actually did is quite another thing. As set forth in detail below, HCC engaged in an unlawful "five-year lookback" at policyholder medical records, in an effort to either: (1) locate a pre-existing condition well beyond the contracted-to period of six months, and use that condition as the basis to deny the claim; or (2) locate a medical condition that would have made the policyholder ineligible for HCC's insurance in the first place, a practice known as "post-claims underwriting." This conduct materially breaches HCC's contracts with policyholders—by which HCC agreed to a six-month pre-existing condition exclusion—and violates California law—which expressly prohibits post-claims underwriting. HCC's five-year lookback is also the vehicle through which they conduct yet another, related scheme: (3) delaying policyholder claims to the point of constructive denial, by claiming that they are constantly in need of difficult to obtain and legally irrelevant medical records.

3.      All California policyholders of HCC's short-term medical insurance are subject to this unlawful conduct, regardless of the channel through which they obtained HCC's insurance. In marketing and advertising their short-term insurance plans, HCC nowhere discloses that they conduct a five-year look-back, engage in unlawful post-claims underwriting, or employ unlawful claims handling practices. These omissions are uniform, material, and contradicted by HCC's repeated misstatements about the quality of their insurance products.

- 2 -

**A.   Short-Term Insurance**

4.   By way of brief background for context, this case concerns Short-Term Medical ("STM" or "short-term") insurance plans.[1]   Short-term insurance provides limited coverage, is targeted to particularly vulnerable buyers, and is exempt from the consumer protections contained in the federal Patient Protection and Affordable Care Act ("ACA"). Those protections include the ACA's prohibition on discrimination based on pre-existing conditions, its prohibition on annual and lifetime limits, its requirement that policies contain certain minimum benefits, and its requirement that insurers return to policyholders, in claims payments, at least 80% of the premiums they collect.  Because short-term insurance provides such limited coverage, those who purchase it, like those who purchase no coverage at all, are subject to a tax penalty under the ACA.

5.   These limitations matter because the fact that short-term insurance provides such limited coverage only makes more pernicious HCC's deliberate failure to do the bare minimum— provide health insurance to the policyholders who require their services, as to prevent the effects of unexpected and sometimes catastrophic medical expenses.

**B.   HCC's Sale and Administration of Short-Term Insurance**

6.   HCC developed, underwrote, marketed, sold, and administered short-term insurance plans.

7.   HCC historically has been the largest short-term insurer in the nation and in California.

8.   Notwithstanding its deficiencies, Plaintiff does not challenge the sale or administration of short-term insurance in ways that comply with the law.  Yet HCC violates the law.  In particular, they administer claims in such a way as to avoid paying claims by uniformly requiring claimants to provide records that they cannot reasonably provide, that HCC knows they cannot reasonably provide, and most importantly that HCC's policies do not require them to provide (or permit them to use).

---

[1] Short-term insurance typically provides for one, three, or six months of coverage.  As of year-end 2016, it could be sold for durations of up to 364 days.  Under regulations promulgated by the U.S. Department of Health and Human Services in 2016 and effective in 2017, however, short-term insurance may be sold for no more than three months, inclusive of renewals.

9.      HCC's practices with regard to its short-term insurance has captured the attention of regulators.  In a recent filing, HCC stated that "[c]urrently, there is a multi-state market conduct examination ongoing related to the Company's practices on short term medical insurance."   HCC Life Insurance Company, Statutory Financial Statements and Supplemental Schedules, December 31, 2016 and 2015.  State insurance departments do routine market conduct examinations of the insurers domiciled in their state every three to five years.  Multi-state market conduct examinations, on the other hand, are not routine: they are conducted only of companies about whose market conduct multiple insurance departments have serious questions, regardless of their state of domicile.

## II.   **PARTIES**

10.      Tokio Marine HCC—the parent company of Defendants HCC Medical Insurance Services, LLC and HCC Life Insurance Company—is a specialty insurance group that underwrites more than 100 classes of specialty insurance.  Tokio Marine HCC has offices in at least the United States, the United Kingdom, Spain, and Ireland and transacts business in approximately 180 countries around the world.

11.      Defendant HCC Medical Insurance Services, LLC ("HCCMIS") is a limited liability company established in 1998, with its headquarters at 251 North Illinois Street, Suite 600, Indianapolis, Indiana 46204.  HCCMIS was acquired by Tokio Marine Holdings, LLC in 2015.  According to its website, HCC is regulated by the State of Indiana as a Third Party Administrator.  HCCMIS writes insurance policies on behalf of HCC Life Insurance Company.

12.      Defendant HCC Life Insurance Company ("HCC Life") is a subsidiary of Tokio Marine Holdings, LLC and has its principal place of business at 225 TownPark Drive, Suite 350 Kennesaw, Georgia 30144.  HCC Life is the underwriter of HCC's short-term insurance policies complained of herein.

13.      The abbreviation "HCC" in this complaint refers to HCCMIS, HCC Life, or both.

14.     Plaintiff ▮▮▮▮▮▮ is a United States citizen, domiciled in ▮▮▮▮▮▮▮▮▮ California. ▮▮▮▮ contracted with HCC for a short-term insurance policy beginning ▮▮▮▮▮▮▮▮ which continued through ▮▮▮▮▮▮▮

## III.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and HCC are of diverse citizenship, and pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs; there are at least one hundred (100) class members; and at least two-thirds of the members of the putative class are citizens of a state other than HCC's.

16.     This Court has personal jurisdiction over HCC because they have conducted systematic and continuous business activities in and throughout the State of California, including in the Northern District, by entering into health insurance agreements with Plaintiff and the members of the Class.

17.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because HCC conducts business in California, and because a substantial portion of the events giving rise to these claims occurred in this District, including the events related to Plaintiff's claims.

## IV.     INTRADISTRICT ASSIGNMENT

18.     This case is properly assigned to the San Francisco/Oakland Division, pursuant to Civil L.R. 3-2(c) and 3-5(b), because a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in the counties identified therein.

## V.     FACTUAL ALLEGATIONS

### A.     Short-Term Insurance and the Regulatory Framework in Which it Operates

19.     STM insurance plans do not meet the minimum requirements of the ACA.  For example, most STM insurance does not cover individuals with pre-existing conditions and offers very limited benefits, often with high deductibles.  As a result, individuals who purchase STM

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:17-CV-618

insurance policies as their sole form of health insurance are still subject to a tax penalty for not

having health insurance—the so-called individual mandate penalty—under the ACA.

20.     STM insurance plans are also exempt from many state legal requirements to which

traditional health insurance is subject.[2]  In light of these numerous exemptions for STM plans, it

is all the more important that STM insurers abide by the few laws to which they are subject.  For

example, California Insurance Code § 10384, which prohibits post-claims underwriting and from

which STM insurance is not exempt, provides as follows:

> No insurer . . . shall engage in the practice of postclaims
> underwriting.    For purposes of this section, "postclaims
> underwriting" means the rescinding, canceling, or limiting of a
> policy or certificate due to the insurer's failure to complete medical
> underwriting and resolve all reasonable questions arising from
> written information submitted on or with an application before
> issuing the policy or certificate.

**B.     HCC's Unlawful Marketing, Sale, and Administration of Short-Term Insurance**

21.     HCC systematically fails to comply with those few legal requirements to which

they are subject, robbing policyholders of even the minimal and paltry services that they are

legally obligated to deliver.  Specifically, HCC violates the law through employing an

undisclosed and unlawful "five-year look-back," through which they: (1) extend their pre-existing

conditions exclusion well beyond the contracted-to period of six months; (2) engage in statutorily

prohibited post-claims underwriting; and (3) delay policyholder claims to the point of

constructive denial, by claiming they are constantly in need of difficult to obtain and legally

irrelevant medical records.

---

[2] For example, STM insurance is exempted from: California Insurance Code § 10112.27 (requiring insurers to include coverage for essential health benefits pursuant to the ACA); § 10113.9(b)(1) (prohibiting insurers from changing premium rates or coverage for individual health insurance policies without providing specified written notice of the change); § 10123.7 (requiring insurers to offer coverage for orthotic and prosthetic devices); § 10123.865-866 (requiring insurers to provide coverage for maternity services); § 10123.81 (requiring insurers to provide coverage for mammograms); § 10123.202 (prohibiting insurers from requiring insureds to receive a referral prior to receiving coverage or services for reproductive and sexual health care); and § 10123.199 (requiring insurers that provide coverage for mental health services to establish a website that provides required related information to insureds).

**1.    HCC's "Five-Year Look-back"**

22.     HCC systematically excludes coverage or delays payment through employing a "five-year look-back" at the medical records of any policyholder who submits a claim.

23.     When a policyholder submits a claim, HCC first requires the policyholder to submit a "proof of loss form" to receive payment on the claim.  HCC then requires policyholders to submit *five or more years* of medical records.

24.     This five-year look-back practice is not disclosed to prospective purchasers of HCC's insurance.  Rather, the first time that many of HCC's policyholders are informed of the five year look-back is at a time when they are especially vulnerable, having just suffered from the distress of a recent hospitalization or other medical incident.

**a.    HCC's Breach of Contract**

25.     HCC's five-year look-back violates the terms of its contract with policyholders.

26.     In Part VI of HCC's California STM, HCC discloses the following limited, six-month pre-existing condition exclusion:

> Charges resulting directly or indirectly from a condition for which a Covered Person received medical treatment, diagnosis, care or advice **within the six (6) month period immediately preceding such person's Effective Date** are excluded for the first six (6) months of coverage hereunder.

(Emphasis supplied.)

27.     In Part VIII of HCC's California STM, HCC further represents that "[b]enefits for loss covered by the policy will be paid as soon as we receive proper written proof of such loss, **but no later than 30 working days after We receive Proof of Loss**." (Emphasis Added.)

28.     In practice, however, HCC fails to abide by these contract provisions.  Instead, HCC searches medical records for evidence of any preexisting condition during a much longer, undisclosed time period—**the previous five years**—and denies policyholder claims based on medical conditions suffered well before the disclosed six-month period.  HCC's request for five years of medical records therefore directly contravenes HCC's contract with policyholders, which excludes coverage only for conditions for which the policyholder received medical treatment, diagnosis, care, or advice within the preceding six months.

29.     Moreover, HCC employs the five-year look-back as the common and unlawful vehicle to engage in a deliberately lengthy and burdensome claims handling process, such that claims are processed—if at all—well after the contracted-to period of 30 days, in further violation of their contract with policyholders.   The delays associated with HCC's obstructionist tactics therefore violate its contractual duty to pay benefits within 30 days of the filing of a proof of loss form.

### b.     HCC's Unlawful Post-Claims Underwriting

30.     HCC's five-year look-back also violates California law.

31.     In the cases in which HCC does obtain medical records from policyholders through its five-year look-back, HCC uses these records to seek out purported medical conditions that would have made the policyholder ineligible for HCC's insurance in the first place.   Once such a condition is found, HCC uses it to justify denial of the policyholder's claim.

32.     This practice, known as "post-claims underwriting," is squarely prohibited by California Insurance Code § 10384.

### c.     HCC's Unlawful Claims Handling

33.     Often, however, HCC's claims handling procedures prevent policyholders from even being able to satisfy HCC's burdensome document requirements, including the unlawful five-year lookback.

34.     Many policyholders who attempt to provide HCC with the documents requested, either directly or through their health care providers, are prevented from doing so by HCC's intentionally dilatory claims processing procedures.

35.     HCC customer service representatives delay the processing of claims by, among other tactics: requesting even more records; ignoring policyholders' attempts to contact HCC; inventing reasons for why the provided documents are inadequate; and falsely informing policyholders that their health care providers have been unable or unwilling to provide the requested records.   In this way, HCC employs the five-year look-back as a vehicle to delay—and constructively deny—valid claims.

36.     HCC also trains its customer service representatives, called Brand Care Specialists,[3] to obstruct policyholders instead of helping them by, among other things: sanctioning HCC customer services representatives' discouragement of policyholders seeking payment; and preventing customer service representatives from being able to seek answers to policyholders' questions from HCC.

37.     Brand Care Specialists are forced by HCC to use a script provided by HCC that walks them through improper denial and obstruction of claims. The script is designed to discourage policyholders from seeking payment on their claims or from successfully providing sufficient information to process existing claims. Instead of helping resolve disputes, Brand Care Specialists are instructed by HCC to tell policyholders that their claims relate to pre-existing conditions, and to discourage them by falsely representing that the policy contains a pre-existing condition exclusion clause which is much more expansive than the pre-existing condition clause set forth in the policy.

38.     A disillusioned Brand Care Specialist explained the process in greater detail on a public consumer protection forum:[4]

> As a "Brand Care Specialist" we were trained to work in HCC's systems and handle their calls but there was almost no support from the company HCC or Global. Not only did we take the most heart breaking calls from customers but also from hospitals and debit collectors looking to get information on claims to pursue the customer. . . . [P]erhaps most tragically if we wanted to help someone out the only real options were to post to an internal Microsoft SharePoint website and hope that someone took it to HCC or to pass it to another team member acting as manager to have an email sent to the same place that yours would go. The only way anything went somewhere was if the caller mentioned a lawsuit and at that point it was passed to the HCC legal team and we were instructed to end the call. I want to emphasize here that we had no way to contact HCC directly, or to interact with them (I'm guessing by design) so we had no way to ever get your issues addressed beyond what you could find out for yourself.
>
> . . .

---

[3] Upon information and belief, the majority of (if not all) customer service calls to HCC are transferred to Global Response, a third-party contractor whose employees are trained by HCC to handle their customer service.

[4] "HCCMIS – A View from the Inside," *available at* https://hccmis.pissedconsumer.com/a-view-from-the-inside-20160424835550.html.

> The only [Brand Care Specialists] that can take it are the ones that can just parrot out the party line "Did you read your policy?", "Did you check the website?", "Did you send in the forms?" and basically convince themselves that it's always the customers fault. That's right it's your fault for not taking a day or so and doing a through [sic] investigation on the company, you had/have no expectation of not being screwed.

> . . . Even trying to help out a customer by using non-legal terms or walking them through the disheartening process of claims was cause for a "Coaching", that is management talk for a dressing down but not on the record. So even the ability to explain things to you in terms you'd understand was tightly controlled.

> It basically comes down to this; When you call in the people that are on the other line have no power, ZERO authority or means to help you out beyond what you can do for yourself on the websites. In my bosses words "We're just telling them what is on the website and what they can find out for themselves".

39.   Policyholders frustrated or confused by Brand Care Specialists' misleading, deceptive and obstructionist tactics have no recourse Brand Care Specialists are not empowered to transfer policyholder calls to HCC.

40.   Brand Care Specialists are further instructed by HCC to deceive policyholders who ask to appeal a denial of a claim, by telling such policyholders that the matter has been escalated, without actually escalating the matter until 60 days after the appeal is requested.  HCC, through its Brand Care Specialists, thus makes false statements to policyholders in order to induce them to stop seeking payment.  As the same individual stated on the consumer protection forum:[5]

> Even internally it was obvious that the name of the game is runaround. . . . [T]here was never any clarity as to what we were supposed to do to help people navigate the bureaucracy. It really felt like everything was designed to be so cumbersome that the customer would either get frustrated and give up or they could stall long enough to not have to pay out on the claim. I even think the idea was to get us so frustrated that we'd blow the customers off or just tell them we had received documents just to get them to go away. The whole idea here is that we're a legal buffer between HCC and you as was made crystal clear in training when they said outright that we'd be thrown under the bus if we ever deviated from the script; that HCC and Global Response would not protect us if legal action was directed at the company. Basically we'd be the bumper.

41.   Brand Care Specialists have reported myriad complaints to HCC.  HCC accordingly knew and knows, among other things, that there is widespread and intense customer

---

[5]   *See supra* n. 4.

dissatisfaction with its services and that attempts to secure payment from HCC are being denied and obstructed in bad faith.

### 2.   HCC's Related Misconduct

42.   Plaintiffs who did not purchase their policies directly from HCC purchased their health insurance policies through brokers who market and sell HCC health insurance policies. These brokers ("Producers") hold themselves out to be licensed insurance brokers. HCC pays its Producers commissions, in some cases 20%, for any premiums received on Producer-attained policies.

43.   Upon information and belief, HCC knowingly worked with unqualified and unlicensed brokers who used common unscrupulous and dishonest tactics to sell policies.

### C.   Plaintiff's Experiences





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:17-CV-618

**D.   Complaints About HCC**

60.     Plaintiff's experiences are typical examples of the experiences of myriad other victims. Publicly-available sources are replete with reviews where consumers complain of the identical sales, service, and claims processing issues concerning HCC's policies that are at issue here. A small sample appears below ([sic] throughout):

      a.     **"S.L."[6]**

      Horrible, bad, disgusting, irresponsible Insurance. I bought the short

_____

[6]  Complaint posted at https://www.bbb.org/indy/business-reviews/insurance-health/hcc-medical-insurance-services-llc-in-indianapolis-in-90005439/reviews-and-complaints (last visited 1/20/2017).

term Medical insurance for my husband on January 2015 while we were waiting for a long term insurance's confirmation. HCC approved my husband and me quickly because we had no major healthy issues in the past our record is clear. We paid our premium and officially under coverage. Unfortunately and unexpectedly, my husband had an heart attack and almost die. He was in the hospital for more than a month. For the next few months, I tried very hard to have HCC pay for our bills but they kept giving us hard time. With a husband who almost die and care for, I ran out of energy. I didn't even have energy to file a complain until now. The total amount HCC paid was $212.40.

b.   **"Rick"[7]**

It is with deep regret that I ever chose HCC health insurance. This was a mistake that has completely turned my life upside down. When I applied for this health coverage through my local insurance agent, I was led to believe that this coverage was good short term insurance and met the minimum Obama Affordable Care Act requirements. Recently I found out that this is not true. When I applied for this insurance I believed that I qualified for this coverage. Now after having a major heart attack in December and bills totaling about $66,000 I have been denied any coverage due to a doctor's note about 4 years ago stating that I have a degenerative disc in my lower back. I was told by my doctor that my discs were showing NORMAL wear from aging. He said that all adults have some form of this. My doctor did NOT call this a Disease. Degenerative disc is not a DISEASE - it is a NORMAL part of aging. When someone applies for coverage through this company it should be required to produce 5 years of medical records at that time so it is clear that patients are eligible for coverage. It is clear that they are more concerned about collecting premiums than doing the right thing. It seems maybe I would have been better off if I had not survived my heart attack. DO NOT EVEN CONSIDER THIS INSURANCE!

c.   **"Ann D." from Washington[8]**

I would NEVER, EVER suggest that anyone purchase insurance from HCC. I have been fighting with them for nearly 10 months to pay medical claims. Bills are now being sent to collections because of HCC excuses such as, "We need more records", "We didn't have your correct address". That's the very short list; other comments were, "We don't have that provider on file" when they had sent a denial notice to the provider. My favorite (NOT) was when speaking with a representative, I told her I had another question. Her response was, "I just closed your account on the computer, are you telling me you want me to open it again?". Um, Yes, I am telling

---

[7]   Complaint posted at https://www.bbb.org/indy/business-reviews/insurance-health/hcc-medical-insurance-services-llc-in-indianapolis-in-90005439/reviews-and-complaints (last visited 1/20/2017).

[8]   Review posted on Yelp at https://www.yelp.com/biz/hcc-medical-insurance-services-indianapolis (last visited 1/24/2017).

*Footnote continued on next page*

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:17-CV-618

1  you I want you to open the account again. Sheesh. I've submitted a
2  complaint to the State Insurance Commission and am considering
   legal action. DO NOT use HCC.

3  **d.** **"Golam"**[9]

4  File a claim on 03/21/2016, did not hear them for long time although
   their email said they will respond within 60 business days. I again
5  contacted on 9/2/2016 and they said they will get back in 30 days
   which they did not. Now today (1/10/2017) contacted and their
6  initial response was I don't have any claim filed. After a long wait,
   they could find my previous notes and now claiming I need to send
7  some some extra information which was not listed in their claim
   form. So basically either they are lying or trying to put me in some
8  of their "fine printing" loophole. I would appreciate their
   requirement if they send me those after my first claim filing. But
9  they did not respond and each time they are trying to tell me a new
   story. So basically its a fraudulent company and govt. should close
10 it down ASAP.

11 **e.** **"Erica M." from Texas**[10]

12 Completely outraged with this company. I was looking for a full
   medical plan and the person on the phone told me that's what I would
13 be getting and signed me up for a short term plan instead. I should
   have read over my policy sooner, however I believe this is an
14 unethical company. Now I will pay 2% of my income at the end of
   the year, plus the $175/month I paid to this company. Didn't even
15 cover my OBGYN. That goes toward the deductible. I feel defeated
   and have spent the morning crying :(
16

17 **VI.    TOLLING**

18     **A.    Discovery Rule Tolling**

19     61.    Class Members had no way of knowing about the HCC practices with respect to

20 the sale of insurance and administration of claims. HCC delayed and thus tried to hide the true

21 facts that they had no intention of paying claims.

22     62.    Within the period of any applicable statutes of limitation, Plaintiff and the other

23 Class Members could not have discovered through the exercise of reasonable diligence that HCC

24 was hiding their true practices.

25

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [9]  Complaint posted at https://www.bbb.org/indy/business-reviews/insurance-health/hcc-medical-
27 insurance-services-llc-in-indianapolis-in-90005439/reviews-and-complaints (last visited
   1/20/2017).
28 [10]  Review posted on Yelp at https://www.yelp.com/biz/hcc-medical-insurance-services-
   indianapolis (last visited 1/24/2017).

63. All applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.   <u>Fraudulent Concealment Tolling</u>**

64. All applicable statutes of limitation have also been tolled by HCC knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

65. Instead of disclosing its true practices, HCC falsely represented that was a reputable insurance company that paid claims.

**C.   <u>Estoppel</u>**

66. HCC were under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of their insurance scam.

67. HCC knowingly, affirmatively, and actively concealed the true facts from policyholders.

68. Based on the foregoing, HCC is estopped from relying on any statutes of limitations in defense of this action.

**VII.   <u>CLASS ACTION ALLEGATIONS</u>**

69. This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action on behalf of herself and others similarly situated. The proposed Class is defined as:

> The Class consists of all individuals who have purchased HCC health insurance policies in the State of California, and/or all California residents for whom HCC denied their insurance claim, since a date to be ascertained through discovery.

> Excluded from the Class are Defendants, any entity in which Defendants has or had a controlling interest or which has or had a controlling interest of any Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

70. Plaintiff reserves the right to amend or modify the Class definition in connection with a motion for class certification or as warranted by discovery.

71.     The Class seeks the injunctive relief of a practice change under Rule 23(b)(2) that requires insurance claims processing to adhere to the law (including, e.g., the cessation of the five-year look-back and any post-claims underwriting).

72.     Class Members whose claims have been denied or "abated" pursuant to HCC's unlawful policies also seek a class under Rule 23(b)(3) for monetary recoveries sustained as a result of HCC's misconduct.

73.     The Class meets the requirements of Rule 23(a), Rule 23(b)(2), and/or Rule 23(b)(3).

74.     Numerosity:  Plaintiff does not know the exact size or identities of the proposed Class, however, Plaintiff believes that the Class encompasses thousands of individuals who are dispersed geographically throughout California.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.  The Class is ascertainable by HCC's records, and Class Members may be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

75.     Existence and Predominance of Common Questions of Fact and Law: There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class.  The damages sustained by Plaintiff and the Class Members flow from the common nucleus of operative facts surrounding HCC's misconduct.  The common questions include, but are not limited to the following:

      a.    whether HCC employed a "five-year look-back" at legally irrelevant medical records;

      b.    whether HCC failed to comply with the terms of their health insurance policies;

      c.    whether HCC engaged in post-claims underwriting;

      d.    whether HCC employed unlawful claims-handing processes, whereby they deliberately delayed the processing of valid claims;

e.  whether HCC conducted constituted a breach of California Business & Professions Code §§ 17200 and 17500, *et seq.*;

f.  whether HCC's policies and procedures codified or effected systematic omissions and/or misrepresentations, breaches of contract, or other illegalities;

g.  whether a reasonable consumer would consider HCC's omissions and/or misrepresentations material in purchasing HCC's health insurance policies;

h.  whether, as a result of HCC's omissions and/or misrepresentations of material facts, Plaintiff and Class Members have suffered a loss of monies and/or property and/or value; and

i.  whether Plaintiff and Class Members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

76.    Typicality:  Plaintiff's claims are typical of the Class' claims, because Plaintiff and the Class sustained damages arising out of HCC's wrongful conduct in violation of California law, and because Plaintiff and the other members of the Class have an interest in preventing HCC from engaging in such activity in the future.

77.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel competent and experienced in class and consumer litigation and have no conflict of interest with other Class Members in the maintenance of this class action. Plaintiff has no relationship with HCC except as policyholders who entered contracts with HCC.  Plaintiff will vigorously pursue the claims of the Class.

78.    Superiority:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, because the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class Members to individually seek redress for the wrongs done to them.  Plaintiff believes that Class Members, to the extent they are aware of their rights against HCC herein, would be unable to

secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages, and that a class action is the only feasible means of recovery for the Class Members. Individual actions also would present a substantial risk of inconsistent decisions, even though each Class Member has an identical or substantially similar claim of right against HCC. Plaintiff envisions no difficulty in the management of this action as a class action.

79.     A Rule 23(b)(2) class for injunctive relief is warranted because:

a.     the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members which would establish incompatible standards of conduct for HCC;

b.     the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications, or substantially impair or impede the ability to protect their interests; and HCC has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE § 17200, *et seq.*

80.     Plaintiff repeats and re-alleges each of the allegations above and below as if fully set forth here.

81.     HCC's conduct in selling its health insurance policies was an unfair, unlawful, and/or fraudulent business practice in violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*

82.     The conduct described throughout this complaint took place in the State of California and harmed California consumers.

83.     HCC's conduct is "unlawful" within the meaning of the UCL because it violates California Insurance Code § 332.  HCC failed to communicate, in bad faith, material facts within their knowledge that Plaintiff had no means of ascertaining.  These facts include, but are not limited to: that HCC employs a "five-year look-back" to effectively extend their pre-existing conditions exclusion well beyond the contracted-to period of six months; that HCC engages in unlawful post-claims underwriting; that HCC employs unlawful claims handling procedures, including deliberately preventing policyholders from satisfying burdensome document requirements and training customer service representatives to discourage policyholders from seeking payment or pursuing an appeal; and that HCC employs the services of unlicensed brokers who use misleading sales tactics.

84.     HCC's conduct is also "unlawful" within the meaning of the UCL because it violates California Insurance Code § 10384.  HCC's five-year look-back—through which they seek out medical conditions that would have made the policyholder ineligible for HCC's insurance in the first place, and use any such condition to justify denial—constitutes "post-claims underwriting," which is squarely prohibited by California Insurance Code § 10384.

85.     HCC's conduct is also "unfair" and "fraudulent" within the meaning of the UCL. The unfairness and fraudulence of HCC's conduct does not depend on whether that conduct is separately unlawful.  Furthermore, HCC's unlawful acts are not identical to the acts forming the corpus of HCC's unfair and fraudulent conduct.

86.     HCC's practices are likely to deceive the public.  A reasonable consumer would be deceived by HCC's statements and omissions in the selling of HCC health insurance policies— including HCC's failure to disclose the "five-year look-back" policy—and Plaintiff and members of the Class have in fact been deceived.

87.     HCC's practices are unfair, unscrupulous, and injurious to consumers.  They are contrary to the public policy of the State of California, as codified in California Insurance Code

§ 330 *et seq.*, California Insurance Code § 10198.7, and California Insurance Code § 790 *et seq.*, as well as of the United States, as codified in the ACA.

88.    HCC's practices are unfair, and injurious to competition, because they allow HCC to undercut competitors' prices, and create an incentive for competitors to pursue similarly unscrupulous and deceptive tactics. The harm to consumers outweighs any utility of HCC's acts.

89.    Plaintiff has standing to pursue claims under the UCL because money or property was lost as a result of HCC's unlawful, unfair, and fraudulent business practices. For instance, as alleged herein, Plaintiff paid money for ▉ premiums and received an unlawful and effectively worthless insurance policy in return; in the alternative, Plaintiff paid more for the insurance policies than ▉ would have had the true nature of the policies been disclosed.

90.    Further, Plaintiffs who had claims denied suffered additional injuries in the form of out-of-pocket medical costs incurred due to HCC's acts.

91.    As a direct and proximate result of HCC's unfair, unlawful, and/or fraudulent business practices as set forth above, HCC has been unjustly enriched by Plaintiff and the Class' payment of consideration in the purchase of their insurance policies. As such, Plaintiff and the Class are entitled to restitution of all consideration paid to HCC under the UCL.

92.    Further, Plaintiff is entitled to an order (i) enjoining the practices complained of herein, and (ii) ordering HCC to establish a common fund for the payment of medical expenses incurred by Plaintiff and the Class as a result of HCC's practices.

## COUNT II

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL") CAL. BUS. & PROF. CODE § 17500, *et seq.*

93.    Plaintiff re-alleges and incorporates by reference each of the allegations above and below, as if fully set forth here.

94.    The conduct described throughout this Complaint took place in the State of California and harmed California consumers, and constitutes deceptive or false advertising in

violation of California's False Advertising Law ("FAL"), California Business & Professions Code § 17500.

95.     The FAL applies to all claims of all Class Members because the alleged conduct occurred within the State of California.

96.     The FAL prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products including insurance policies.

97.     HCC, when they marketed, advertised and sold health insurance policies to Plaintiff and Class Members, falsely represented to Plaintiff and Class Members that their insurance policies included a six-month pre-existing condition exclusion, and that all claims would be paid within 30 days of receipt of the proof of loss form. HCC also omitted all of the following material information: that HCC employed a "five-year look-back" to effectively extend their pre-existing conditions exclusion well beyond the contracted-to period of six months; that HCC engaged in unlawful post-claims underwriting; that HCC employed unlawful claims handling procedures, including deliberately preventing policyholders from satisfying burdensome document requirements and training customer service representatives to discourage policyholders from seeking payment or pursuing an appeal; and that HCC employed the services of unlicensed brokers who use misleading sales tactics.

98.     At the time of its omissions and/or misrepresentations, HCC was either aware that their statements were untrue or that HCC lacked the information and/or knowledge required to make such representations truthfully.

99.     HCC's descriptions of their insurance policies, claims processes, and customer service practices were false, misleading, and likely to deceive Plaintiff and other reasonable consumers. HCC's conduct therefore constitutes deceptive or misleading advertising.

100.    Plaintiff has standing to pursue claims under the FAL because they reviewed and relied upon HCC's written and oral statements.

101.    In reliance on the statements made in HCC's advertising, marketing, or sales, which were ultimately untrue, Plaintiff purchased HCC's health insurance policies.

102.    Had HCC's representations regarding their health insurance policies, claims processes, and customer service disclosed their true nature, Plaintiff and Class Members would not have purchased them.

103.    HCC's statements in their advertising, marketing, and sales, referenced herein, were part of a scheme or plan by HCC to sell insurance policies they knew to be inferior to the policies they advertised and promised.

104.    As a direct and proximate result of HCC's violations of the FAL, Plaintiff and the Class seek restitution of any monies wrongfully acquired or retained by HCC by means of their deceptive or misleading representations.

105.    Further, Plaintiff is entitled to an order (i) enjoining the practices complained of herein, and (ii) ordering HCC to establish a common fund for the payment of medical expenses incurred by Plaintiff and the Class as a result of HCC's practices.

## COUNT III

### BREACH OF CONTRACT

106.    Plaintiff re-alleges each of the allegations above and below as if fully set forth here.

107.    The policies that HCC sold Plaintiff, combined with the timely payment of premiums amounted to legally enforceable promises and obligations owed via contract.

108.    By accepting the premium payments from Plaintiff, HCC agreed to timely process, reasonably investigate, and pay claim amounts for certain medical expenses according to the terms of the policies.

109.    In practice, however, HCC fails to abide by their contracts with policyholders. Specifically, HCC employs a "five-year look-back" to effectively extend their pre-existing conditions exclusion well beyond the contracted-to period of six months, and deny policyholder

claims based on medical conditions suffered well before the disclosed six-month period, in violation of these contracts.

110.    Moreover, when HCC failed to perform timely process claims and make payments required by the policies, they breached contractual duties owed to Plaintiff.  Specifically, the delays associated with HCC's obstructionist tactics violate its contractual duty to pay benefits within 30 days of the filing of a proof of loss form.

111.    HCC's breaches caused damage to Plaintiff including but not limited to: interest and penalties charged by medical facilities on amounts due and outstanding; additional monies paid over and above Plaintiff's maximum out of pocket under the policies; costs incurred to force HCC to perform their contractual obligations, make necessary payments, and enforce Plaintiff's policies; lost time from work as a result of repeated calls to HCC or otherwise attempting to track down information related to Plaintiff's claims; medical treatments foregone or not pursued because of the fear of denial, incurring more debt, and additional harassment from collection or billing personnel at medical facilities; and interest on the claim amounts that were improperly denied.

112.    Plaintiff and Class Members owe monies to certain medical providers for reasons directly and proximately related to HCC's denials, and HCC continues to be in breach of their insurance contracts.

113.    The breaches by HCC have been material, going to the heart of the contract.

114.    All damages sustained by Plaintiff and Class Members are the result of HCC's breach of obligations owed the Plaintiff and Class Members under the policies they purchased. Plaintiff and Class Members are entitled to damages, including damages sustained and refund of premiums.

## COUNT IV

## BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

115.    Plaintiff repeats and re-alleges each of the above and below allegations as if fully set forth herein.

- 24 -

116.    Through the unlawful "five-year look-back" and unlawful post-claims underwriting—and the attendant, unduly burdensome records requests that arise from those policies, acts, and practices—HCC unreasonably denied Plaintiff coverage for care that was covered under their insurance policies.

117.    Without exclusion, HCC also trained their customer service representatives to consciously mislead, obstruct, and delay Plaintiffs seeking payment of claims.  This claims-handling conduct was a matter of company policy and was without proper cause.

118.    HCC engaged in a pattern and practice of unreasonably failing to give at least as much consideration to its insureds' interests as it gave its own interests, in the investigation and handling of claims.

119.    HCC has committed institutional bad faith.  HCC's institutional bad faith amounts to reprehensible conduct because the conduct is part of a repeated pattern of unfair practices and not an isolated occurrence.  The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in the established company policies of HCC.

120.    Plaintiff believes and alleges that HCC has breached their duty of good faith and fair dealing by other acts and omissions, of which Plaintiff is presently unaware and which will be shown in the course of discovery.

121.    As a direct and proximate result of the conduct of HCC, the Plaintiff and the Class Members have suffered, and will continue to suffer in the future, financial and other consequential damages, for a total amount to be shown at the time of trial.

122.    As a further proximate result of the aforementioned conduct of HCC, Plaintiff has been compelled to retain legal counsel to obtain the benefits due under the policy.  Therefore, HCC is liable to Plaintiff for those attorneys' reasonably necessary fees in an amount to be determined at the time of trial.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class Members, prays for judgment and relief against HCC as follows:

- 25 -

A.     For an order certifying the case as a class action and appointing Plaintiff and Plaintiffs' counsel to represent the Class;

B.     For an order awarding, as appropriate, damages to Plaintiff and the Class Members, including all monetary relief to which Plaintiff and the Class Members are entitled under California law, in particular under the UCL and FAL;

C.     For an order awarding restitutionary disgorgement to Plaintiff and the Class;

D.     For an order awarding non-restitutionary disgorgement to Plaintiff and the Class;

E.     For an order requiring HCC to immediately cease and desist their unlawful, deceptive, and obstructive practices with respect to the sales, claims processing, and customer service connected with their health insurance policies;

F.     For an order requiring HCC to establish a common fund for the payment of medical expenses incurred by Plaintiff and the Class as a result of HCC's practices;

G.     For an order awarding attorneys' fees and costs;

H.     For an order awarding punitive damages;

I.     For an order awarding pre-judgment and post-judgment interest; and

J.     For an order providing such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 21, 2017               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


By:    /s/ Rachel Geman
Rachel Geman (*pro hac vice*)
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013-1413
(212) 355-9500

Kelly M. Dermody (State Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (State Bar No. 308174)
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
(415) 956-1000

CARNEY BATES & PULLIAM, PLLC
Allen Carney (*pro hac vice*)
acarney@cbplaw.com

- 26 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David Slade (*pro hac vice*)
dslade@cbplaw.com
519 W. 7th Street
Little Rock, AR 72201
(501) 312-8500

CUNEO GILBERT & LADUCA, LLP
Michael J. Flannery (State Bar No. 196266)
mflannery@cuneolaw.com
7733 Forsyth Boulevard, Suite 1675
Clayton, MO 63105
(314) 226-1015

Matthew Prewitt (State Bar No. 291593)
mprewitt@cuneolaw.com
16 Court Street, Suite 1012
Brooklyn, NY 11241
(202) 789-3960

MEHRI & SKALET
Jay Angoff (*pro hac vice*)
jay.angoff@findjustice.com
1250 Connecticut Avenue, NW, Suite 300
Washington, D.C. 20036
(202) 822-5100

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT 3

1
2
3
4
5
6
7
8
9                           IN THE UNITED STATES DISTRICT COURT

10                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                                    OAKLAND DIVISION

12

13  ████████████████, on behalf of ███         Case No.: 4:17-cv-00618-PJH
    and all others similarly situated,
14                                              **JOINT STIPULATION TO AMEND**
                  Plaintiff,                    **COMPLAINT UNDER FEDERAL**
15                                              **RULE OF CIVIL PROCEDURE 15**

16          v.

17  HCC MEDICAL INSURANCE SERVICES,
    LLC and HCC LIFE INSURANCE               Complaint Filed:  February 7, 2017
18  COMPANY,

19                Defendants.

20

21          WHEREAS, Plaintiffs Mohammed Azad and Danielle Buckley ("Plaintiffs") filed the

22  Complaint in this action on February 7, 2017;

23          WHEREAS, this Court granted Defendants' Motions to Dismiss the Complaint on July

24  14, 2017, and ordered that Plaintiffs may amend the Complaint by August 7, 2017;

25          WHEREAS, on August 7, 2017, this Court granted the parties' stipulation to extend the

26  deadline for Plaintiffs' to amend the Complaint to August 21, 2017, due to the tentative

27  settlement of Plaintiffs' claims; and

28

1359668.3                                    - 1 -

1    WHEREAS, this Court further ordered that no additional claims or parties may be added

2   to the Complaint without leave of Court or stipulation of Defendants;

3       IT IS HEREBY STIPULATED AND AGREED THAT:

4       1.    Plaintiff ███████████ ("Plaintiff") shall file the attached First Amended

5   Complaint—which, in relevant part, substitutes ███████████ for Plaintiffs Azad and Buckley,

6   and asserts the same claims for relief as in the Complaint (with the exception of the unjust

7   enrichment claim that was dismissed with prejudice)—on or before August 21, 2017.

8       The parties respectfully request that the Court so order.

9

10  Dated: August ██, 2017                LIEFF CABRASER HEIMANN & BERNSTEIN,
                                          LLP
11

12                                        By __/s/_____
                                               Rachel Geman
13
                                          *Attorneys for* ███████████
14  Dated: August ██, 2017                NORTON ROSE FULBRIGHT US LLP

15                                        By __/s/_____
                                               Gerard G. Pecht
16

17                                        *Attorneys for Defendants HCC Life Insurance
                                          Company and HCC Medical Insurance Services,
18                                        LLC*

19

20              ATTESTATION REGARDING SIGNATURES

21      I, Rachel Geman, attest that all signatories listed, and on whose behalf this filing is

22  submitted, concur in the filing's content and have authorized the filing.

23  DATED:  August ██, 2017               By:    /s/_____
                                                 Rachel Geman
24

25

26

27

28

- 2 -

# EXHIBIT 4

^
NORTON ROSE FULBRIGHT

August 21, 2017

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
United States

*Via Electronic Mail*

**Gerard G. Pecht**
**Global Head of Dispute Resolution and Litigation**
Direct line +1 713 651 5243
gerard.pecht@nortonrosefulbright.com

David Slade
CARNEY BATES & PULLMAN
519 West 7th Street
Little Rock, AR 72201

Tel +1 713 651 5151
Fax +1 713 651 5246
nortonrosefulbright.com

Re:  *Mohammed Azad and Danielle Buckley, et. al. v. HCC Life Ins. Co., et. al.*, Case No.
3:17-cv-618

David:

HCC opposes the request Plaintiff made to them Friday night, August 18, 2017 at 6:00 p.m.
PST to substitute a new party to the amended complaint and add new claims because, among
other reasons, the version sent to HCC for approval redacts the name of the new Plaintiff and
redacts over 15 substantive paragraphs, including all factual allegations about the Plaintiff's
specific claims experience.  On July 14, 2017, Dkt. 86, and again on August 7, 2017, Dkt. 88,
the Court ordered that Plaintiffs' counsel obtain Defendants' consent prior to amending the
complaint: "No additional claims or parties may be added without leave of court or stipulation of
defendants." HCC believes that Plaintiff's Friday evening request to them to approve filing a
heavily redacted complaint fails to comply with the Court's order, and therefore, HCC opposes
such request.  HCC intends to file an opposition to any request by Plaintiffs to the Court to
amend its complaint for failing to provide complete and timely information to HCC with a full
opportunity to analyze the issues and raise objections--all of which have been denied to HCC.
Also, as HCC has repeatedly notified the Plaintiffs' counsel, Tokio Marine HCC is not a legal
entity and thus not a proper party.  Although Tokio Marine HCC is not included in the case
caption, Plaintiffs continue to improperly include it as a party.  FAC ¶ 4.  There are other ways in
which the amended complaint defies the Court's orders that we propose to explain to the Court
once we have access to the unredacted complaint.

Since the Court specifically requested in her July 14, 2017 order, Dkt. 86, that Plaintiff confer
with HCC in connection with any amended complaint, we request that you include a copy of this
letter along with your motion for leave to amend.

Very truly yours,

Gerard G. Pecht

GGP

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose
Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose
Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain
regulatory information, are available at nortonrosefulbright.com.

28626511.1